UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANNON E. HALL, as ADMINISTRATOR OF THE ESTATE OF ELI GREY HALL,<br><br>    Plaintiff,<br><br>    vs.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | Case No.: 1:22-cv-00071<br><br>Judge John J. Tharp<br><br><br><br>January 27, 2022 |

**DEFENDANT ABBOTT LABORATORIES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A STAY PENDING JPML RULING ON <u>CONSOLIDATION AND TRANSFER</u>**

    This lawsuit is one of 19 federal lawsuits filed against Abbott Laboratories and Abbott Laboratories, Inc. (together, "Abbott") relating to certain of its preterm nutrition products. These suits substantially overlap in many ways. All the complaints name Abbott as a defendant. All allege state common-law tort and/or product liability claims or their statutory equivalents. And all center around the same or closely related operative theories of alleged wrongdoing. Because litigating the plaintiff's claims in centralized proceedings would avoid burdensome discovery and inconsistent rulings while promoting judicial economy, Abbott moved in the Judicial Panel on Multidistrict Litigation (JPML or the "Panel") for an order consolidating the then-filed 17 cases in one district. *See In re: Preterm Infant Nutrition Product Liability Litig.*, Docket No. 7-1 (Jan. 18, 2022). Since that filing, plaintiffs have filed an additional two cases in federal courts as of this filing. This action is one of the many Abbott seeks to centralize through its Motion to Transfer, meaning that as

1

proceedings continue in this Court, the Panel will be considering whether to transfer this and other actions for centralized proceedings.

In these circumstances, a stay of proceedings until the Panel determines whether to grant Abbott's motion is appropriate. A stay will preserve judicial resources, minimize the risk of inconsistent decisions on the same pretrial issues, and avoid burdening the parties with duplicative proceedings, all without any risk of prejudice to the parties. For these reasons, multiple courts in jurisdictions around the country have already entered stays.[1] Abbott respectfully requests that this Court grant this motion and stay all proceedings in this case, and suspend all deadlines until the Panel resolves Abbott's motion.

## I. FACTUAL BACKGROUND

The cases included in Abbott's Motion to Transfer—are about infants who were born too early—before 37 weeks of gestation—and developed necrotizing enterocolitis (NEC).[2] NEC is an umbrella term for an inflammatory disease of the gastrointestinal tract occurring in up to 8% of

---

[1] *See Hunte, et al. v. Abbott Laboratories, Inc.*, No. 3:20-cv-01626-SRU, Dkt. No. 109 (D. Conn., Jan. 19, 2022); *George, et al. v. Abbott Laboratories, Inc.*, No. 1:20-cv-02537-APM, Dkt. No. 48 (D.D.C., Jan. 21, 2022); *Sanchez Juan v. Abbott Laboratories, Inc., et al.*, No. 6:21-cv-00502-RBD-EJK, Dkt. No. 67 (M.D. Fla., Jan. 25, 2022); *Crawford v. Mead Johnson & Co., LLC, et al.*, No. 1:21-cv-00201-AW-GRJ, Dkt. No. 15 (N.D. Fla., Jan. 26, 2022).

[2] The federal lawsuits included in Abbott's Motion to Transfer are as follows: *Hunte, et al. v. Abbott Laboratories, Inc.*, 3:20-cv-1626-SRU (D. Conn. Filed 10/28/2020); *Sanchez Juan v. Abbott Laboratories, Inc., et al.*, 6:21-cv-502-RBD-EJK (M.D. Fla. Filed 3/18/2021); *George v. Abbott Laboratories, Inc.*, 1:20-cv-02537-APM (D.D.C. Filed 8/3/2020 (D.C. Super. Ct.), Removed Sept. 10, 2020); *Davis v. Abbott Laboratories, Inc.*, et al., 5:21-cv-00481-JGB-KK (C.D. Cal. Filed 3/18/2021); *Kelton v. Abbott Laboratories, Inc.*, 5:21-cv-2145-JGB-KK (C.D. Cal. Filed 12/27/2021); *Littles v. Abbott Laboratories, Inc., et al.*, 5:21-cv-2146-JGB-KK (C.D. Cal. Filed 12/27/2021); *Richardson v. Abbott Laboratories, Inc., et al.*, 2:21-cv-9932-JGB-KK (C.D. Cal. Filed 12/27/2021); *Hall v. Abbott Laboratories, Inc.*, 1:22-cv-00071 (N.D. Ill., Filed 1/5/2022); *Gschwend, et al. v. Abbott Laboratories, et al.*, 1:22-cv-00197 (N.D. Ill., Filed 1/10/2022 (Cir. Ct. Cook Cty., Ill.), Removed 1/12/2022); *Rinehart, et al. v. Abbott Laboratories, et al.*, 1:22-cv-00192 (N.D. Ill., Filed 1/10/2022 (Cir. Ct. Cook Cty., Ill.), Removed 1/12/2022); *Stuper, et al. v. Abbott Laboratories*, 1:22-cv-00204 (N.D. Ill., Filed 1/10/2022, Removed 1/12/2022); *Taylor, et al. v. Abbott Laboratories, et al.*, 1:22-cv-00203 (N.D. Ill., Filed 1/10/2022, Removed 1/12/2022); *Mar ex rel. Estate of Railee Mar v. Abbott Laboratories*, 1:22-CV-00232 (N.D. Ill., Filed 1/14/2022); *Rhodes ex rel. Rhodes v. Abbott Laboratories*, 1:22-CV-00239 (N.D. Ill., Filed 1/14/2022); *Brown, et al., v. Abbott Laboratories, Inc.*, et al., 3:21-cv-00687-SDD-EWD (M.D. La., Filed 11/28/2021); *Crawford v. Abbott Laboratories, et al.*, 1:21-cv-00201-AW-GRJ (N.D. Fla., Filed 12/10/2021); *Monzon v. Abbott Laboratories, Inc.*, 3:21-cv-01703-SMY (S.D. Ill., Filed 12/15/2021).

infants in neonatal intensive care units (NICUs), and is a leading cause of death among premature, very low birth-weight infants (those born weighing under 1500 grams or 3.3 pounds).

NEC's causes are both complex and multifactorial, meaning that it has many known contributing factors. Among these many risk factors, there are only two reliable prognostic parameters: gestational age and birth weight. The younger the infant's gestational age and the less an infant weighs, the greater the risk that the infant will develop NEC. This is because infants born prematurely and who are small for their gestational age have underdeveloped or maldeveloped gastrointestinal systems; these premature infants' systems are not prepared to receive nutrition outside of their mother's womb. These infants also lack the muscle coordination to simultaneously breathe, suck, and swallow, so they cannot breast or bottle feed in their first days or weeks of life, requiring nutrition through their veins ("parenteral" feeding) or through a tube directly to their intestines or stomach ("enteral" feeding). Accordingly, administering nutrition to these premature infants is a daunting medical challenge, and NEC is an inherent risk.

Neonatologists and healthcare professionals constantly monitor all infants under their care in the NICU for early signs of NEC, regardless of how their nutrition is administered or whether they are receiving their own mother's breastmilk, human donor milk, formula or fortifier, or some combination. Indeed, even infants who are fed only their own mother's breastmilk or nothing at all develop NEC. Notwithstanding these inherent risks and the complex and multifactorial etiology of NEC, the 17 federal lawsuits against Abbott (as well as 43 state lawsuits) allege that formula and fortifier products selected by neonatologists for administration in NICUs to premature infants *caused* the infants in those cases to develop NEC—allegations Abbott vehemently denies.

On January 18, 2022, Abbott filed in the JPML a Motion to Transfer all of the then-filed 17 cases for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, Abbott is aware of two more cases having been filed in federal court. The JMPL has accepted Abbott's petition,

designated it as MDL No. 3026, and set a schedule under which responses to the petition are due no later than February 9, 2022.

As Abbott explains in its Motion to Transfer, the pending actions satisfy the requirements for transfer under Section 1407. *See* Dkt. 7-1 at 12–17. These suits substantially overlap in many ways. All the complaints name Abbott as a defendant, and five actions also name Mead Johnson & Company, LLC. The legal theories and causes of action asserted in the various complaints also extensively overlap. All allege state common-law torts and/or product liability claims or their statutory equivalents. And all center around the same or closely related operative theories of alleged wrongdoing: that preterm infant formula and fortifier products that contain cow's milk protein are unreasonably dangerous, that those products caused the NEC of the premature infants at issue, and that Abbott failed to adequately warn of the relevant risks.

Further, all of the actions are in their early stages. Preliminary motions have been decided in only three cases (*Hunte*, *Sanchez-Juan* and *Davis*). *Id.* at 7–9. Likewise, case management orders have been entered and discovery has begun in only three cases (*Hunte*, *George,* and *Sanchez-Juan*). *Id*. at 7–8. The discovery that has taken place, moreover, has been limited: initial sets of interrogatories and requests for production have been served, but no depositions have been taken in any of the cases. Further, 13 of the 19 cases are newly filed, having been filed within the last two months. *Id.* at 7–9. Centralized proceedings would therefore allow for an efficient, streamlined discovery process with a reduced risk of duplication and a significantly reduced burden on the parties and the courts.

In the absence of a stay of this case, litigation will proceed in this case as the Panel considers whether to transfer the case for centralized proceedings. For example, without a stay, discovery will likely commence here and in other pending cases before the Panel resolves Abbott's Motion to Transfer. Such duplication in discovery, including the potential for repeated depositions of the same

witnesses, is one of the bases for Abbott's request for centralization of the cases for pretrial purposes. Dkt. 7-1 at 14. Proceeding with this litigation during the pendency of the Panel's consideration of Abbott's Motion to Transfer will thus lead to the exact risks of duplication, burdensome discovery, and inconsistent rulings that centralized proceedings are designed to eliminate.

Granting a stay, in contrast, will preserve the parties' and the Court's resources while delaying this litigation for a short period of time. (Abbott requests a stay only pending the resolution of its Motion to Transfer, which Abbott anticipates the Panel will hear at its next hearing on March 31, 2022 based on the briefing schedule the JPML has set). Staying this litigation pending the resolution of Abbott's Motion to Transfer would thus best serve judicial economy without prejudicing plaintiff or Abbott.

## II. ARGUMENT

This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *accord Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) ("[A] federal judge may stay an action when some other suit offers the advantage of a speedy and comprehensive solution[.]"); *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) ("[I]n exceptional cases, a federal court should stay a suit and await the outcome of parallel proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'"). A "common" exercise of this discretion is to stay cases pending the disposition of transfer motion by the JPML. *Pierre v. Prospect Mortg., LLC*, No. 1:13-CV-453 (NAM/RFT), 2013 WL 5876151, at *2, (N.D.N.Y. Oct. 31, 2013); *see, e.g.*, *Equity One (Ne. Portfolio), Inc. v. Gap, Inc.*, No. 3:20-cv-01069 (D. Conn. August 11, 2020) (granting motion to stay proceedings pending a decision by the JPML on a motion for consolidated proceedings under 28 U.S.C. § 1407); *Am. C.L. Union of Ill. v. U.S. Dep't of Homeland Sec.*, No. 17-cv-2768, 2017 WL 11558309, at *2 (N.D. Ill. Jun. 28, 2017); *Paul v. Aviva*

*Life & Annuity Co.*, No. 09-1038, 2009 WL 2244766, at *2 (N.D. Ill. July 27, 2009) (same); *Kirschner v. Grant Thornton LLP,* No. 07 C 5306, 2007 WL 9821298, at *3 (N.D. Ill. Nov. 16, 2007) (same); *Kavalir v. Medtronic*, No. 07 C 0835, 2007 WL 1225358, at *4 (N.D. Ill. Apr. 19, 2007) (same); *Benoit v. Merck & Co., Inc.*, No. 05 C 0118, 2005 WL 8179199, at *2 (N.D. Ill. Feb. 15, 2005) (same); *Piper v. Bayer Crop Science LP*, No. 3:21-CV-21-NJR, 2021 WL 2801466, at *1 (S.D. Ill. May 17, 2021) (same); *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, No. 3:20-cv-00640 (D. Conn. July 24, 2020) (same); *One40 Beauty Lounge, LLC v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-00643 (D. Conn. July 8, 2020) (same); *Cosmetic Laser, Inc. v. Twin City Fire Ins. Co.*, No. 3:20-cv-00638 (D. Conn. July 8, 2020) (same); *Cravens et al. v. Boehringer Ingelheim Pharms., Inc. et al.*, No. 3:19-cv-01683 (D. Conn. Dec. 5, 2019) (same).[3] Such stays are common for good reason: They serve the aims of multidistrict litigation by preserving the resources of both courts and litigants and avoiding inconsistent decisions on the same pretrial issues. *See Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) ("[A] majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources conserved."); Manual for Complex Litigation (Fourth) § 22.35 ("A stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well.").

In deciding whether to stay proceedings pending the Panel's consideration of whether to transfer the case, district courts generally consider three factors: "(1) potential prejudice to the non-

---

[3] *See also Ritchie Cap. Mgmt., LLC, v. Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d 463, 471 (S.D.N.Y. 2015); *Pierre v. Prospect Mortg. LLC*, Civ. No. 1:13-CV-453 (NAM/RFT), 2013 WL 5876151, at *2 (N.D.N.Y. Oct. 31, 2013); *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 374 (S.D.N.Y. 2013); *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. CIVACV-05-453DGT, 2005 WL 3555926, at *1 (E.D.N.Y. Dec. 23, 2005); *Med. Soc'y of State of N.Y. v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001); *Rosenfeld v. Hartford Fire Ins. Co.*, No. 88–CV–2153, 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988).

moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers* v. *Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal 1997); *accord Bd. Of Trs. Of Tchrs.' Ret. Sys. Of State of Ill. V. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002); *Hess v. Volkswagen Grp. Of Am., Inc.*, No. 2:16-CV-00668-KOB, 2016 WL 3483166, at *4 (N.D. Ala. June 27, 2016). These factors weigh heavily in favor of a stay here.

> A. **Plaintiff Is Unlikely to Suffer Prejudice Because of a Stay.**

Plaintiff will suffer little, if any, prejudice from a stay. Abbott requests a stay only until the Panel resolves whether to transfer this and the other pending lawsuits to one district for multidistrict proceedings. Any stay will thus likely be of limited duration. As courts have recognized many times over, a short stay in proceedings until the Panel resolves a motion to transfer, without more, does not prejudice plaintiffs.[4] Indeed, "[w]hile [plaintiffs] may suffer some initial delay, once the cases are coordinated . . . more time may well be saved than was lost." *Rosenfeld v. Hartford Fire Ins. Co.*, No. 88– CV–2153, 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988).

Moreover, this case is still in its relatively early stages. No trial date has been set, no case management order has been entered, no Rule 26(f) conference has occurred, and discovery has not yet commenced. Granting a stay during such an early stage of this case causes minimal, if any, prejudice to plaintiff. *See e.g.*, *Am. C.L. Union of Ill.*, 2017 WL 11558309, at *2 ("Even accepting that a stay *might* delay disclosure . . . any prejudice from this short delay is modest.") (emphasis in original); *Paul*, 2009 WL 2244766, at *1 ("[A]ny potential prejudice appears minimal."); *Kavalir*, 2007 WL 1225358, at *4; *Benoit*, 2005 WL 8179199, at *2.

---

[4] *See Ritchie Cap. Mgmt.*, 87 F. Supp. 3d at 471; *Stark v. Pfizer*, 14-CV-01488-JST, 2014 WL 2938445, at *2 (N.D. Cal. June 27, 2014); *Gray v. Target Corp.*, Case No. 13-62769-Civ-SCOLA, 2014 WL 12600138, at *1 (S.D. Fla. Jan. 27, 2014) *Royal Park Invs.*, 941 F. Supp. 2d at 372; *Alves v. Prospect Mortg., LLC*, No. CIV.A. 13-10985-JLT, 2013 WL 5755465, at *3 (D. Mass. Oct. 22, 2013); *Cajun Offshore Charters, LLC v. BP Prods. N. Am., Inc.*, Civ. A. No. 10-1341, 2010 WL 2160292, at *2 (E.D. La. May 25, 2010); *Animal Sci. Prods.*, 2005 WL 3555926 at *1; *Med. Soc'y of State of N.Y.*, 187 F. Supp. 2d at 92.

On January 19, 2022, the *Hunte* court granted Abbott's motion to stay pending the JPML's decision, despite the fact that trial was set for May 2023 and plaintiffs in that case had noticed depositions for four Abbott employees to take place between January 26, 2022, and February 24, 2022. *See Hunte v. Abbott Laboratories, Inc.*, 3:20-cv-1626 (D. Conn.) at Dkt. 103 (granting Abbott's motion to stay).

### B.     Abbott Faces Significant Burdens in the Absence of a Stay.

In contrast, the burdens Abbott will face in the absence of a stay are substantial. Abbott will be forced to litigate this and potentially other overlapping actions, leading to the possibility of inconsistent pretrial rulings and conflicting obligations across cases and duplicative discovery requests. *See Ritchie Cap. Mgmt.*, 87 F. Supp. 3d at 471; *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. CIVACV-05-453DGT, 2005 WL 3555926, at *1 (E.D.N.Y. Dec. 23, 2005); *North v. Merck & Co., Inc.*, No. 05-CV-6475L, 2005 WL 2921638, at *2 (W.D.N.Y Nov. 4, 2005). Further, Abbott will also face the financial burden of proceeding with discovery and litigating issues that might be relitigated in another forum if the case is transferred to another district. The risk of duplication is heightened here where the actions satisfy the requirements of Section 1407. *See* Dkt. 7-1 at 12–17. Such burdens outweigh any prejudice to plaintiff of a "slight delay pending the JPML decision" and counsel in favor of a stay. *Royal Park*, 941 F. Supp. 2d at 372.

### C.     A Stay Will Conserve Judicial Resources, Which Serves the Interests of the Court, Third Parties, and the Public.

A stay pending disposition of Abbott's motion by the Panel will also conserve considerable judicial resources, thereby "serv[ing] not only the interests of the courts, but also the interests of the Parties, the nonparties, and the public in an 'orderly and efficient use of judicial resources.'" *Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States E.P.A.*, 630 F. Supp. 2d 295, 204 (S.D.N.Y. 2009).

Counsel for plaintiffs in other NEC cases against Abbott have stated that because neither party in those cases opposes an MDL, "there is a high probability of the JPML granting the application." *Hunte v. Abbott Laboratories, Inc.*, (Conn. Sup. Ct., Docket No. SC 20668), Motion for Stay (filed on Jan. 20, 2022) at 2. And if the Panel grants Abbott's Motion to Transfer, discovery will proceed in centralized proceedings before a single court, and the JPML will have the authority to supersede previous orders. *Pierre*, 2013 WL 5876151 at *4. A temporary stay therefore obviates the risk of "duplicative efforts by this Court and the transferee court." *Id.*; *see also Rivers*, 980 F. Supp. at 1361. A stay further serves "the judicial and public interest in letting the JPML decide if the interests in efficiency and economy favor consolidation and transfer." *Ritchie Cap. Mgmt.*, 87 F. Supp. 3d at 471. Put simply, it would be a waste of resources for this Court to proceed before the Panel makes a decision regarding whether to transfer. *Paul*, 2009 WL 2244766, at *1 ("[A] stay would conserve judicial resources by avoiding duplicative litigation."); *Kirschner*, 2007 WL 9821298, at *3; *Kavalir*, 2007 WL 1225358, at *4; *Benoit*, 2005 WL 8179199, at *2.

## III. CONCLUSION

The Panel will soon decide whether to transfer and consolidate this case and 16 others (along with any other federal cases filed between now and the JPML's decision). A stay pending that decision will conserve this Court's resources, avoid duplicative litigation, and generally increase efficiency without prejudicing the parties. Accordingly, Abbott respectfully requests that this Court stay all proceedings, and suspend all deadlines in this case pending the Panel's decision on Abbott's motion.

Dated: January 27, 2022

Respectfully submitted,

ABBOTT LABORATORIES

By: */s/ Bryce A. Cooper*

Stephen V. D'Amore
Bryce A. Cooper
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)
Email: sdamore@winston.com
Email: bcooper@winston.com

*Attorneys for Abbott Laboratories*

10

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 27th day of January 2022 the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECMF System.

                                            */s/ Bryce A. Cooper*
                                            *Attorney for Abbott Laboratories*