**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

DEONDRICK BROWN, SR., Individually
and on behalf of THE ESTATE OF
DEONDRICK W. BROWN, JR.; and
REBEKAH ETIENNE, Individually and on
behalf of THE ESTATE OF DEONDRICK
W. BROWN, JR.

                Plaintiffs,

     v.

ABBOTT LABORATORIES, INC.; MEAD
JOHNSON & COMPANY, LLC,

                Defendants.

Case No. 21-687-SDD-EWD

## AMENDED COMPLAINT

Plaintiffs bring this Amended Complaint and Demand for Jury Trial ("the Complaint")
against Abbott Laboratories, Inc. and Mead Johnson & Company, LLC ("Defendants"). As more
specifically set forth below, Plaintiffs allege the following based upon personal knowledge as to
Plaintiffs' own acts and experiences and upon information and belief, including investigation
conducted by Plaintiffs' attorneys, as to all other matters.

This is a survival claim and wrongful death action as well as individual actions brought by
DEONDRICK W. BROWN, SR. and REBEKAH ETIENNE the biological parents and legal heirs
of DEONDRICK W. BROWN, JR., as a direct and proximate result of Defendants' negligent and
wrongful conduct in connection with the design, development, manufacture, testing, packaging,
promoting, marketing, distribution, labeling, and/or sale of Similac products and Enfamil products
(at times referred to herein as "the subject products"), which products were

1

prescribed/administered to and consumed by their minor child, DEONDRICK W. BROWN, JR., and which products caused the suffering and death of DEONDRICK W. BROWN, JR.

## PARTIES, JURISDICTION, AND VENUE FACTS

1.      Plaintiff Deondrick Brown, Sr., individually and on behalf of the Estate of Deondrick W. Brown, Jr., is of the age of majority and domiciled in New Iberia, Iberia Parish, Louisiana. He is the biological and legal father of Deondrick W. Brown, Jr., who was a minor and is now deceased. Deondrick Brown Sr. sues as the successor-in-interest for causes of action that survive Deondrick W. Brown, Jr.'s death. Deondrick Brown, Sr. also brings this suit individually, for all causes of action and damages outlined herein.

2.      Plaintiff Rebekah Etienne, individually and on behalf of the Estate of Deondrick W. Brown, Jr., is of the age of majority and domiciled in New Iberia, Iberia Parish, Louisiana. She is the biological and legal mother of Deondrick W. Brown, Jr., who was a minor and is now deceased. Rebekah Etienne sues as his successor-in-interest for causes of action that survive Deondrick W. Brown Jr.'s death. Rebekah Etienne also brings this suit individually, for all causes of action and damages outlined herein.

3.      On July 7, 2021, Deondrick Willie Brown, Jr. ("the baby" or "Deondrick, Jr.") was born at Our Lady of Lourdes Hospital in Lafayette, Louisiana.

4.      The baby, Deondrick Jr., was the son of Deondrick Brown, Sr. ("the father") and Rebekah Etienne ("the mother") (collectively, the "Plaintiffs").

5.      At all times, baby Deondrick, Jr., was a minor domiciled in the State of Louisiana.

6.      On September 16, 2021, baby Deondrick, Jr. died at Lady of Lourdes Hospital in Lafayette, Louisiana as a result of ingesting Defendants' fortified milk baby formula for infants

and preemies, namely Similac Special Care (all varieties), Similac NeoSure Enfamil Human Milk fortifier, EnfaCare Powders and Enfamil Human Milk Fortifiers.

7.      Defendant, Abbott Laboratories, Inc. ("Abbott") manufactures, designs, formulates, prepares, tests, provides instructions, markets, labels, packages, places into the stream of commerce in all fifty states, including Louisiana, and sells premature infant formula including Similac Special Care and Similac NeoSure formulas.  At all material times herein, including from 2016 through present, Abbott solely or jointly designed, developed, manufactured, packaged, labeled, promoted, marketed, distributed and/or sold Similac products specifically targeting medical providers and parents of preterm infants, including but not limited to Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, and "Similac Special Care Formulas" such as Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30.

8.      Defendant Abbott Laboratories, Inc. is a corporation incorporated under the laws of the State Delaware.  Its principal place of business is in Illinois, with its principal business office at 100 Abbott Park Road, Abbot Park, Illinois.

9.      Defendant, Mead Johnson & Company, LLC ("Mead Johnson") manufactures, designs, formulates, prepares, tests, provides instructions, markets, labels, packages, places into the stream of commerce in all fifty states, including Louisiana, and sells premature infant formula including Enfamil Human Milk Fortifiers and EnfaCare formulas.  At all material times herein, including from 2016 through present, Mead Johnson solely or jointly designed, developed, manufactured, packaged, labeled, promoted, marketed, distributed and/or sold Enfamil products specifically targeting medical providers and parents of preterm infants, including but not limited to Enfamil

Human Milk Fortifiers including, Enfamil A+, Enfamil NeuroPro, Enfamil Enspire and EnfaCare Power.

10.     Defendant Mead Johnson & Company, LLC is a limited liability company with a domicile address in Wilmington, Delaware and its principal business office and principal place of business in Chicago, Illinois.

11.     Defendant Mead Johnson & Company, LLC is a limited liability company organized under the laws of the State of Delaware.  Its citizenship is that of its sole member, Mead Johnson Nutrition Company.  Mead Johnson Nutrition Company is a company incorporated under the laws of Delaware with a domicile address in Wilmington, Delaware and a principal place of business in Evansville, Indiana.

12.     The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiffs and Defendant, and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

13.     The Court has personal jurisdiction over Defendants, because they conduct business in Louisiana, purposefully direct and/or directed their actions toward Louisiana, consented to being sued in Louisiana by registering an agent for service of process in Louisiana, and/or consensually submitted to the jurisdiction of Louisiana when obtaining a manufacturer or distributor license, and have the requisite minimum contacts with Louisiana necessary to constitutionally permit this Court to exercise jurisdiction. Moreover, Defendants' actions and/or inactions described herein were purposefully directed at and/or within the State of Louisiana, the damages were sustained by Plaintiff within the State of Louisiana, and the damages sustained by Plaintiff were a result of Defendants' actions and/or inactions—described herein—that were purposefully directed at and/or within the State of Louisiana.

14.     Venue is appropriate in this court, as defendants herein are registered to do business in the judicial district in which this matter is filed, may be served in this judicial district, conduct the business activities described herein in this judicial district, and various actions and/or inactions sued upon occurred in this judicial district. 28 U.S.C. §1391(b)(2).

## BACKGROUND FACTS

15.     The protein ingredients most often found in Defendants' infant formulas are nonfat milk and whey protein concentrate from cow's milk. In recent years, there has been a growing scientific link between the use of cow's milk in infant formulas like Similac and Enfamil and an increased risk of necrotizing enterocolitis ("NEC").

16.     If developed in premature infants, NEC can result in serious injuries, including death.

17.     NEC causes the intestinal tissues to become inflamed, then perforated, which allows bacteria to leak into the abdomen or infiltrate the bloodstream. Once NEC develops, the condition can progress rapidly from mild intolerance to fatal sepsis.

18.     Preterm and low-birth-weight infants are especially susceptible to NEC because of their underdeveloped digestive systems. Scientific research, including randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants.

19.     According to the American Academy of Pediatrics, premature infants should be fed human breast milk, in part because premature babies fed human breast milk have lower incidences of NEC.

20.     In 2010 the Journal of Pediatrics published a study that established premature babies fed exclusive diets of mother's milk, donor milk, and human milk fortifier were 90% less likely to develop surgical NEC. Sullivan, S., et al, *An Exclusively Human Milk-Based Diet Is Associated*

*with a Lower Rate of Necrotising Enterocolitis than a Death of Human Milk and Bovine Milk-Based Products.* (J Pediatr 2010; 156:562-7, doi: 10.1016/j.jpeds.2009.10.040)

21. The Surgeon General's Call to Action to Support Breastfeeding, 2011, warned that, "[f]or vulnerable premature infants, formula feeding is associated with higher rates of necrotizing enterocolitis (NEC)." *U.S. Department of Health and Human Services. The Surgeon General's Call to Action to Support Breastfeeding.* Washington, DC: U.S. Department of Health and Human Services, Office of the Surgeon General; 2011, p. 1, *available at* https://www.ncbi.nlm.nih.gov/books/NBK52682/.

22. A 2014 published study reported that diets for extremely premature babies that exclusively consisted of human milk "should be considered as an approach to nutritional care of these infants." Abrams, Steven, et al. *Greater Mortality and Morbidity in Extremely Preterm Infants Fed a Diet Containing Cow Milk Protein Products.* (Breastfeeding Medicine. 2014, Jul-Aug.; 9(6):281-285, doi: 10.1089/bfm.2014).

23. Another 2014 study observed, "Necrotizing enterocolitis (NEC) is the most frequent and lethal gastrointestinal disorder affecting preterm infants [1,2], and is characterized by intestinal barrier disruption leading to intestinal necrosis, multi-system organ failure and death. NEC affects 7-12% of preterm infants weighing less than 1500 grams, and the frequency of disease appears to be either stable or rising in several studies [1-3]. The typical patient who develops NEC is a premature infant who displays a rapid progression from mild feeding intolerance to systemic sepsis, and up to 30% of infants will die from this disease [3,4]." "A wide variety of feeding practices exist on how to feed the premature infant in the hopes of preventing necrotizing enterocolitis. There have been several meta-analysis medical journal articles reviewing the timing of administration and rate of advancement of enteral feedings in the premature infant as reviewed

6

above, but there is no consensus on the precise feeding strategy to prevent this disease. The exclusive use of human breast milk is recommended for all premature infants and is associated with a significant decrease in the incidence of NEC [11–13]. By determining the specific ingredients in breast milk that are protective against NEC, it is our hope that this devastating disease will one day be preventable." Good, et al., *Evidence Based Feeding Strategies Before and After the Development of Necrotizing Enterocolitis.* (Expert Rev Clin Immunol. 2014 July; 10 (7): 875-884. doi: 10.1586/1744666X.2014.913481).

24.     Again, in 2016, a study observed the health benefits of exclusive human milk diets in extreme premature infants and within those findings noted that there was a significant decrease of both medical and surgical NEC.  The authors concluded that "the use of an exclusive HUM [human milk] diet is associated with significant benefits for extremely premature infants" and "while evaluating the benefits of using an exclusive HUM-based protocol, it appears that there were no feeding-related adverse outcomes." Hair, et al., *Beyond Necrotizing Enterocolitis Prevention: Improving Outcomes with an Exclusive Human Milk-Based Diet*, (BREASTFEEDING MEDICINE, 2016 Nov.; 11(2), doi: 10.1089/bfm.2015.0134).

25.     In a study published in 2017, it was reported (using the acronym "HM" to stand for human milk): "In summary, HM has been acknowledged as the best source of nutrition for preterm infants and those at risk for NEC. Two RCTs on preterm infants weighing between 500 and 1250 g at birth compared the effect of bovine milk-based preterm infant formula to MOM or DHM on the incidence of NEC. Both trials found that an exclusive HM diet results in a lower incidence of NEC." Shulhan, et al., *Current Knowledge of Necrotizing Entercolitis in Preterm Infants and the Impact of Different Types of Enteral Nutrition Products*. (Adv. Nutr. 2017, Jan.; 8(1):80-91, doi: 10.3945/an.116.013193).

## MISLEADING MARKETING FACTS

26.     Despite strong medical and scientific evidence describing the dangers and risks that cow-based milk products pose for premature infants; during the period in question, including but not limited to throughout the last five (5) years and through September 16, 2021, Defendants have marketed their cow-milk based formulas and powdered products, including their respective Similac and Enfamil products, as equally safe alternatives to breast milk.

27.     Defendants, Abbott Laboratories and Mead Johnson, manufacture, design, formulate, prepare, test, provide instructions, market, label, package, and place into the stream of commerce in all fifty states, including Louisiana, and sell premature infant formula including Similac Special Care Formulas and Enfamil Formulas.

28.     From 2016 through September 16, 2021, Abbott's aggressive marketing for its Similac products included and still includes targeting medical providers and parents of preterm infants with messages that Abbott's cow's milk formulas are necessary for the growth and development of their premature children.  Indeed, it is believed that these marketing practices discourage some mothers from breastfeeding.  All the while, Abbott's promotional websites have been and still are silent as to the growing science that describes the risks cow's milk formulas, including its Similac formulas, pose to premature infants.

29.     From 2016 through September 16, 2021, Abbott marketed and sold (and still does market and sell) multiple products specifically targeting medical providers and parents of preterm infants, including Similac Special Care Formulas such as Similac Special Care 20, Similac Special

Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30 (collectively "Similac Special Care").

30.     From 2016 through September 16, 2021, Abbott specifically targeted medical providers and parents of premature infants in their marketing. Numerous web-based advertisements tout phrases like "Similac is the #1 Pediatrician Recommended Brand for Immune Support" and "you can be confident in the nourishment of Similac". Yet, searches of Abbott's webpages yield no results or reference to necrotizing enterocolitis or NEC.

31.     From 2016 through September 16, 2021, Abbott's website includes several promises to mothers and their premature babies with zero warning as to NEC or death resulting from NEC.

32.     From 2016 through September 16, 2021, Abbott's infant formulas including Similac Special Care Formulas such as Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30 did not include labels that warned parents or healthcare providers over the risks of NEC.

33.     Abbott's misleading marketing campaign which occurred during the time-period in question, including through the present day, deceive(s) medical providers and parents to believe that: (1) cow's milk-based formulas are safe; (2) cow's milk-based formulas are equal substitutes to human breast milk; and (3) health care professionals prefer cow's milk-based formulas. Abbott has marketed its products for premature infants as necessary for growth, and perfectly safe for premature infants, despite knowing of the extreme risk of NEC and death.

34.     From 2016 through September 16, 2021, Mead Johnson's aggressive marketing for its Enfamil infant baby products included and still includes targeting medical providers and parents of preterm infants with messages that Mead Johnson's cow's milk formulas are necessary for the growth and development of their premature children. Indeed, it is believed that these marketing

practices discourage some mothers from breastfeeding. All the while, Mead Johnson's promotional websites have been and still are silent as to the growing science that describes the risks cow's milk formulas, including its Similac formulas, pose to premature infants.

35.     From 2016 through September 16, 2021, Mead Johnson marketed and sold (and still does market and sell) multiple products specifically targeting medical providers and parents of preterm infants, including Enfamil infant Human Milk Fortifiers such as Enfamil Human Milk Fortifier Liquid High Protein, Enfamil NeuroPro EnfaCare, Enfamil Premature 20 Cal, Enfamil Premature 24 Cal, Enfamil Premature 30 Cal, and Enfamil Human Milk Fortifier Powder.

36.     From 2016 through September 16, 2021, Mead Johnson specifically targeted medical providers and parents of premature infants in their marketing. Numerous web-based advertisements tout phrases like "Discover Your Baby's Trusted Formula with over 100 Years of Pediatric Nutrition Experience" and "Enfamil: What a baby needs". Yet, searches of Mead Johnson's webpages yield no results or reference to necrotizing enterocolitis or NEC.

37.     From 2016 through September 16, 2021, Mead Johnson's website includes several promises to mothers and their premature babies with zero warning as to NEC or death resulting from NEC.

38.     From 2016 through September 16, 2021, Mead Johnson's infant formulas including Enfamil infant Human Milk Fortifiers such as Enfamil Human Milk Fortifier Liquid High Protein, Enfamil NeuroPro EnfaCare, Enfamil Premature 20 Cal, Enfamil Premature 24 Cal, Enfamil Premature 30 Cal, and Enfamil Human Milk Fortifier Powder did not include labels that warned parents or healthcare providers over the risks of NEC.

39.     Mead Johnson's misleading marketing campaign which occurred during the time-period in question, including through the present day, deceive(s) medical providers and parents to

believe that: (1) cow's milk-based formulas are safe; (2) cow's milk-based formulas are equal substitutes to human breast milk; and (3) health care professionals prefer cow's milk-based formulas. Mead Johnson has marketed its products for premature infants as necessary for growth, and perfectly safe for premature infants, despite knowing of the extreme risk of NEC and death.

40. The subject products made from cow's milk, specifically for premature infants such as Similac and Enfamil, are unsafe to premature infants and are avoidable for use in that there is human donor milk available and/or human milk derived fortifier products available made from human milk instead of cow's milk.

41. Despite knowing that its cow's milk-based Similac and Enfamil products were causing NEC, devastating injuries, and death in premature infants, Defendants did not recommend to the FDA, hospitals, NICUs or physicians that they should discuss the risks of NEC or death with the parents.

42. There are human milk based formulas and fortifier products which are feasible alternatives to the subject Similac and Enfamil products offered by Defendants.

## SPECIFIC ALLEGATIONS

43. Baby Deondrick, Jr. was born prematurely on July 7, 2021, weighing between 750-999 grams (1.6-2.2 lbs.) and was the product of a 25 to 26-week pregnancy.

44. Baby Deondrick, Jr. was placed in the Neonatal Intensive Care Unit (NICU) at Lady of Lourdes Women and Children Hospital.

45. Baby Deondrick, Jr. received donor breast milk for several weeks before transitioning to Similac Special Care Formula, Similac Human Milk Fortifier, and/or other Similac-branded formulas on or around September 11, 2019, which meant Baby Deondrick, Jr. was fed with both breast milk and formula.

46.     Rebekah Etienne and Deondrick Brown, Sr., mother and father to Baby Deondrick, had no knowledge that Similac Special Care, Similac Human Milk Fortifier, and/or other Similac-branded formulas would increase the risk of their baby developing necrotizing enterocolitis.

47.     On or about September 15, 2021, Baby Deondrick, Jr. was scheduled to, and did, primarily receive one or more of Defendants' subject products for his infant feeding regimen.

48.     Within a matter of hours, Baby Deondrick, Jr. was referred to pediatric surgery based on findings suspicious of necrotizing enterocolitis.

49.     Prior to baby Deondrick, Jr. being fed Similac and/or Enfamil formula, Rebekah Etienne, Deondrick Brown, Sr. and Deondrick Brown, Jr.'s healthcare providers were exposed to marketing for Defendants' products, including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, which marketing represented that these products were safe and necessary to the growth and nutrition of premature infants.

50.     Although Abbott promotes an aggressive marketing campaign designed to make parents and healthcare providers believe that Similac Special Care, Similac Human Milk Fortifier, and/or other Similac-branded formulas are safe and necessary for growth of a premature infant, the products are in fact extremely dangerous for premature infants. Similac Special Care, Similac Human Milk Fortifier, and/or other Similac-branded formulas substantially increase the chances of a premature infant getting NEC and of dying.

51.     Defendants' Similac and Enfamil products are commercially available at retail locations and online.

52.     Despite knowing of the risk of NEC, Defendants did not properly warn parents (including Deondrick Brown, Jr.'s parents) of the risk of NEC or dying associated with Similac

Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas.

53.     Despite knowing of the risk of NEC, Defendants did not warn doctors, hospital, nurses and medical staff (including Deondrick Brown, Jr.'s healthcare providers) of the risk of NEC or dying associated with Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas.

54.     Defendants failed to properly warn parents (including Deondrick Brown, Jr.'s parents) and medical providers (including Deondrick Brown, Jr.'s healthcare providers) that its cow's milk-based formulas, including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas can significantly increase the risk that the premature infant will develop NEC and/or death, failed to design said products such as to make them safe, and deceived the public, parents (including Deondrick Brown, Jr.'s parents), physicians and medical staff (including Deondrick Brown, Jr.'s healthcare providers) into believing that the products were a safe and necessary alternatives, supplements and/or and substitutes to human milk.

55.     Baby Deondrick, Jr. developed Necrotizing enterocolitis after transfer from the NICU and died on September 16, 2021 at only 71 days old.

56.     Despite knowing that its subject products were being fed to premature infants without the parents' informed consent, Defendants failed to require or recommend that Hospitals inform the parents of the significant risks, and to require that the consent of the parent be obtained prior to feeding it to babies.

57.     Defendants' cow's milk-based formula products did cause Baby Deondrick, Jr. to develop NEC, which resulted in his death.

## FIRST CAUSE OF ACTION
## DESIGN DEFECT UNDER LA. R.S. 9:2800.56
## (PRODUCTS LIABILITY)

58. Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

59. Defendants' subject products which were consumed by DEONDRICK W. BROWN, JR. and which caused his death, were defective in its design or formulation in that they are not reasonably fit, suitable, or safe for their intended purpose and/or the foreseeable risks exceed the benefits associated with their design and formulation. The subject products were unreasonably dangerous in design as provided by La. R.S. 9:2800.56.

60. At all times material to this action, Defendants' subject products expected to reach, and did reach, consumers in the State of Louisiana and throughout the United States, including Plaintiffs herein, without substantial change in the condition in which it was sold.

61. At all times relevant, Defendants' subject products were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a) When placed in the stream of commerce, Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Baby Deondrick, Jr. to risks that exceeded the benefits of the subject product, including personal injury and death;

b) When placed in the stream of commerce, Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas were defective in design and formulation, making the use of Defendants' products more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with non-cow's milk-based formulas;

c) The design defects with Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas existed before they left the control of the Defendants;

d) Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas harmful side effects outweighed any potential utility;

e) Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas were not accompanied by adequate instructions and/or adequate warnings to fully apprise consumers, including Plaintiffs, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiffs;

f) At the time Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas left Defendant's control, there existed one or more alternative designs for said products, with such alternative design(s) capable of preventing the claimant's damage, and the danger of the damage from Defendants' subject products outweighed the burden on Defendants of adopting the alternative design(s).

62. Defendants did foresee or should have foreseen that its respective products would be used in situations similar to Baby Deondrick, Jr. and that such use would significantly increase the risk of NEC and death in Baby Deondrick, Jr.

63. Defendants took no steps to prevent the use of its cow's milk-based formulas.

64. The products, Similac Special Care, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas were designed, manufactured, and distributed respectively by Defendants Abbott Laboratories and Mead Johnson.

65. Defendants' subject products were not safe to be used as they were in the case of Baby Deondrick, Jr. and the Defendants knew or should have known they was unsafe, yet they failed to provide any instructions or guidelines on when and how its products would be safe to administer/use to or with a premature infant like Baby Deondrick, Jr.

66. Defendants marketed their respective products as safe and beneficial for premature infants like Baby Deondrick, Jr.

67. As a result of the foregoing acts and omissions, Defendants' Similac Special Care and/or Enfamil Human Milk Fortifier products were a substantial factor in causing Baby Deondrick, Jr.'s NEC and death.

68. As a result of the foregoing acts and omissions, Plaintiffs Rebekah Etienne and Deondrick Brown, Sr., suffered and are suffering physical pain and mental anguish, as well as the other damages outlined herein.

## SECOND CAUSE OF ACTION
## INADEQUATE WARNING UNDER LA. R.S. 9:2800.57
## (PRODUCTS LIABILITY)

69. Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

70.     Defendants' Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas which were consumed by DEONDRICK W. BROWN, JR. and which caused his death, were defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including Plaintiffs and DEONDRICK W. BROWN, JR.'s health care providers, of the dangerous risks and reactions associated with the subject products, including but not limited to heightened risk of developing NEC that could result in death. Thus, the subject products were unreasonably dangerous because an adequate warning was not provided as required pursuant to La. R.S. 9:2800.57.

71.     Defendants, as manufacturers and/or distributors of the subject products, are held to the level of knowledge of an expert in the field.

72.     Defendants had a continuing duty but failed to warn users (including the parents of DEONDRICK W. BROWN, JR.) and the medical field (including DEONDRICK W. BROWN, JR.'s healthcare providers) of all of the known and/or potential dangers associated with the subject products, including NEC and death.

73.     Scientific studies establish that Defendants' cow's milk-based formulas pose significant risk and dangers to premature infants, yet Defendants did not properly change its product, packaging, guidelines, instructions, and warnings.

74.     Despite that it knew or should have known that their products were linked to NEC and death, Defendants failed to properly collect data from doctors and hospitals in order to develop evidence-based strategies, instructions, and warnings to reduce or prevent its product from causing NEC and death.

75.     Despite that they knew or should have known that their respective cow's milk-based products were causing NEC and death in premature infants, Defendants did not conduct any testing, data analysis, or research to determine when its products should not be used or when and how its products were safe for use.

76.     Defendants did not contact the FDA, NICUs, hospitals, or health care providers to inform them that their products at issue were linked to causing NEC and death.

77.     The subject products, Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, manufactured and supplied by Defendants, were defective due to  inadequate  post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of the subject products, Defendants failed to provide adequate warnings to consumers, including to Plaintiffs and DEONDRICK W. BROWN, JR.'s health care providers, of the defects of their respective products, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that their respective products could cause serious injury and/or death.

78.     Defendants did not properly inform the health care providers for Baby Deondrick, Jr. that their respective cow's milk-based formulas, including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, could cause NEC and result in death.

79.     Defendants did not properly inform Baby Deondrick, Jr.'s parents that their respective cow's milk-based formulas, including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, could case NEC and result in death.

80. DEONDRICK W. BROWN, JR. was prescribed and consumed the subject products, , including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, for their intended purpose, and neither his parents nor his health care providers could have discovered the relevant defects in the subject products through the exercise of reasonable care.

81. Plaintiffs, individually and through DEONDRICK W. BROWN, JR.'s healthcare providers, reasonably relied upon the skill, superior knowledge, and judgment of Defendants, particularly as same related to the warnings regarding Defendants' respective products at issue herein.

82. The warnings that were given by Defendants regarding their respective subject products, including Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, were not accurate, were not clear, and/or were ambiguous. The respective warnings that were given by Defendants failed to properly warn users, consumers and the medical field (including the parents of DEONDRICK W. BROWN, JR. and DEONDRICK W. BROWN, JR.'s healthcare providers) of the increased risks associated with the subject products, including NEC and death.

83. Defendants also failed to properly warn users, consumers and the medical field (including the parents of DEONDRICK W. BROWN, JR. and DEONDRICK W. BROWN, JR.'s healthcare providers) of the importance of properly monitoring patients using Defendants' respective subject products to identify, prevent and/or respond to these conditions.

84. If Defendants had properly warned users, consumers and the medical field (including the parents of DEONDRICK W. BROWN, JR. and DEONDRICK W. BROWN, JR.'s healthcare providers) of the related dangers and risks of Defendants' respective subject products outlined

herein, the parents of DEONDRICK W. BROWN, JR. would not have purchased and/or would not have allowed their baby to consume Defendants' respective subject products, and their baby would not have suffered and died as a result of consuming Defendants' respective subject products.

85.     If Defendants had properly warned users, consumers and the medical field (including the parents of DEONDRICK W. BROWN, JR. and DEONDRICK W. BROWN, JR.'s healthcare providers) of the related dangers and risks of their respective subject products outlined herein, DEONDRICK W. BROWN, JR.'s healthcare providers would not have prescribed/administered Defendants' respective subject products to DEONDRICK W. BROWN, JR., and/or would not have allowed DEONDRICK W. BROWN, JR. to consume Defendants' respective subject products, and DEONDRICK W. BROWN, JR. would not have suffered and died as a result of consuming Defendants' respective subject products.

86.     As a result of the foregoing acts and omissions of Defendants, Baby Deondrick, Jr. was prescribed/administered and consumed Defendants' respective subject products which caused him to develop NEC that resulted in his death.

87.     Defendants acts and omissions resulted in the death of Baby Deondrick, Jr. and has caused Plaintiffs, Rebekah Etienne and Deondrick Brown, Sr., significant physical pain and mental anguish, as well as the other damages outlined herein.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY UDNER LA. R.S. 9:2800.58
### (PRODUCTS LIABILITY)

88.     Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

89.     At all times herein mentioned, Defendants packaged, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold their

respective Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, which were consumed by DEONDRICK W. BROWN, JR. and which caused his death.

90. Defendants expressly represented to Plaintiffs, consumers, and the medical community (including DEONDRICK W. BROWN, JR.'s healthcare providers) that Defendants' respective Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas were safe and fit for their intended purposes, were of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

91. Defendants' respective products at issue, Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, do not conform to Defendants' respective express representations because they are not safe, have numerous and serious side effects, and cause severe and permanent injuries and death.

92. At the time of the making of the respective express warranties, Defendants knew or should have known of the purpose for which the subject products were to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purposes. The subject products were unreasonably dangerous because they failed to conform to an express warranty of the respective Defendants as provided by La. R.S. 9:2800.58.

93. At the of the making of the respective express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject products were not safe, increase the risk of injury, and may result in conditions that cause death.

21

94.     At all relevant times Defendants' respective Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas did not perform as safely as an ordinary consumer and the medical community (including DEONDRICK W. BROWN, JR.'s healthcare providers) would expect when used as intended or in a reasonably foreseeable manner.

95.     Plaintiffs, consumers, and the medical community (including DEONDRICK W. BROWN, JR.'s healthcare providers) relied upon the express warranties made by Defendants relative to each Defendant's respective products at issue.

96.     Members of the medical community, including physicians and healthcare professionals (and specifically including DEONDRICK W. BROWN, JR.'s healthcare providers), relied upon the respective representations and warranties made by Defendants in recommending, prescribing and/or using the Defendants' respective products Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas in connection with the care of DEONDRICK W. BROWN, JR.

97.     Defendants knew or should have known that, in fact, that their respective representations and warranties were false, misleading, and untrue in that the Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas were not safe or fit for the use intended and, in fact, produced serious injury and/or death to users not accurately identified and represented by Defendants.

98.     Among other warranties, Defendants expressly warranted that their respective subject products were similar and/or equivalent to human milk.

99.    Among other warranties, Defendants expressly warranted that their respective subject products were necessary for growth, would "support an infant's growth", would "give babies a strong start", and would "keep your baby fed, happy, and healthy."

100.    Defendants' respective Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas did not conform to these Defendants' respective express representations because they cause serious injury when used to feed premature infants.

101.    The aforementioned breached warranties by Defendants were a proximate cause of Baby Deondrick, Jr.'s NEC, and the proximate cause of his death. Accordingly, Defendants' acts and omissions resulted in the death of Baby Deondrick, Jr. and have caused Plaintiffs, Rebekah Etienne and Deondrick Brown, Sr., significant physical pain and mental anguish, as well as the other damages outlined herein.

## FOURTH CAUSE OF ACTION
## REDHIBITION

102.    Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

103.    Defendants' respective subject products which were consumed by DEONDRICK W. BROWN, JR. and which caused his death, Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, contain a vice or defect which effectively renders them useless or their use so inconvenient or dangerous that buyers would not have purchased them.

104.    Defendants respectively manufactured, sold and promoted Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or

Enfamil cow's milk-based formulas, which Defendants respectively placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. Art. 2520. The subject products, respectively sold and promoted by Defendants, possess a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or are unreasonably dangerous, as described above, which renders the subject products useless or so inconvenient that it must be presumed that a buyer would not have bought the subject products had s/he known of the defect. Pursuant to La. C.C. Art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject products.

105.    Defendants are liable as bad faith sellers for selling the subject defective products with knowledge of the defects, and thus, are liable to Plaintiffs for the price of the subject products, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject products, and attorneys' fees. As the manufacturers of the subject products, under Louisiana law, Defendants are deemed to know that their respective subject products, Similac Special Care Formula, Similac Human Milk Fortifier, Enfamil Human Milk Fortifier and/or other Similac or Enfamil cow's milk-based formulas, possessed redhibitory defects. La. C.C. art. 2545.

106.    As a result of the Defendants' respective subject-products' redhibitory defects, Plaintiffs suffered and incurred damages, including medical expenses and other economic and non-economic damages, including loss of consortium and other damages as outlined herein.

107.    By reason of the foregoing, Plaintiffs suffered injuries and damages as alleged herein and incurred attorneys' fees which they are entitled to recover from Defendants.

## FIFTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

108.    Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

109.     Loss of consortium is a derivative claim.  It is derivative of each of the claims and allegations above. La. C.C. art. 2315(B); La. C.C. art. 2315.2.

110.     At all times relevant, Plaintiffs Rebekah Etienne and Deondrick Brown, Sr., were the lawful parents of Baby Deondrick, Jr.

111.     As a result of Defendants' acts and omissions, Plaintiffs Rebekah Etienne and Deondrick Brown, Sr. suffered a loss of affection, companionship, and consortium relative to their child Deondrick Brown, Jr.

## DAMAGES

112.     Plaintiffs incorporate by reference each of the paragraphs of this Complaint as if fully set forth herein.

113.     As a direct and proximate result of the actions and omissions of Defendants, Plaintiffs sustained serious, significant, and permanent injuries. In addition, Plaintiffs were required to incur substantial treatment, medical, and hospital expenses.

114.     DEONDRICK W. BROWN, JR. died as a direct and proximate result of the actions and omissions of Defendants as outlined herein.

115.     DEONDRICK W. BROWN, JR. suffered extensively and unnecessarily, prior to his death, as a direct and proximate result of the actions and omissions of the Defendants as outlined herein.

116.     As a direct and proximate result of the extensive and unnecessary pain and suffering of DEONDRICK W. BROWN, JR., and/or as a direct and proximate result of the wrongful death of DEONDRICK W. BROWN, JR., Plaintiffs DEONDRICK W. BROWN, SR. and REBEKAH ETIENNE, biological and legal surviving parents of DEONDRICK W. BROWN, JR., endured

and continue to endure grief, pain and suffering, mental anguish and distress, irreparable loss of love and affection, companionship and moral support.

117. As a direct and proximate result of personally witnessing the extensive and unnecessary pain and suffering of DEONDRICK W. BROWN, JR., and/or as a direct and proximate result of personally witnessing the wrongful death of DEONDRICK W. BROWN, JR., Plaintiffs DEONDRICK W. BROWN, SR. and REBEKAH ETIENNE, biological and surviving parents of DEONDRICK W. BROWN, JR., endured and continue to endure severe and debilitating pain, suffering, mental anguish and distress.

118. As a direct and proximate result of the extensive and unnecessary pain and suffering of DEONDRICK W. BROWN, JR., and/or as a direct and proximate result of the wrongful death of DEONDRICK W. BROWN, JR., Plaintiffs DEONDRICK W. BROWN, SR. and REBEKAH ETIENNE, biological and surviving parents of DEONDRICK W. BROWN, JR., sustained medical expenses, and funeral expenses.

119. As a direct and proximate cause of Defendants' acts and omissions which resulted in the extensive and unnecessary pain and suffering of DEONDRICK W. BROWN, JR. as well as the wrongful death of DEONDRICK W. BROWN, JR., the damages suffered, sustained and being claimed by DEONDRICK W. BROWN, SR. and REBEKAH ETIENNE also include:

    a) Survival;

    b) Wrongful death;

    c) Pain and suffering;

    d) Loss of consortium;

    e) Deprivation of love and affection;

    f) Medical expenses;

g) Funeral expenses;

h) Grief, mental anguish, and distress; and

i) All other damages to be determined by the trier of fact at trial.

By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that Defendants be duly cited and served, and that after due proceedings, there be judgment in Plaintiffs' favor and against Defendants in such sums as the Court deems just, together with legal interest, costs, and all general and equitable relief to which they are entitled. Further, Plaintiffs pray for relief and judgment against the Defendants, as follows:

1. Compensatory damages, including but not limited to survival and wrongful death damages, loss of consortium damages, and damages for severe and debilitating pain, suffering, mental anguish and distress, in excess of the jurisdictional amount, including but not limited to, non-economic damages in excess of $75,000.

2. Medical expenses, funeral expenses and other economic damages in an amount to be determined at trial of this action;

3. Pain and suffering;

4. Punitive damages;

5. Prejudgment interest at the highest lawful rate allowed by law;

6. Interest on the judgment at the highest legal rate from the date of judgment until collected;

7. Attorneys' fees, expenses, and costs of this action; and

8. Such further relief as this Court deems necessary, just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Filed this 17th day of January, 2022.

Respectfully Submitted:

**IRPINO, AVIN & HAWKINS**

_____
ANTHONY D. IRPINO (#24727)
PEARL A. ROBERTSON (#34060)

probertson@irpinolaw.com
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501

*Attorneys for Plaintiffs*