# Proposed Co-Lead and Plaintiffs' Liaison Counsel

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

IN RE: ABBOT LABORATORIES,     )
ET AL.,     )
     )
PRETERM INFANT NUTRITION     )     MDL No. 3026
PRODUCT LIABILITY LITIGATION     )
     )

_____

This Document Relates to: All Cases     Civ File No.: 1:22-cv-0071
_____     Hon. Rebecca Pallmeyer

## <u>DECLARATION OF TIMOTHY J. BECKER'S IN SUPPORT OF APPLICATION FOR APPOINTMENT AS CO-LEAD COUNSEL</u>

COMES NOW YOUR DECLARANT, Timothy J. Becker who states the following: I respectfully submit this Application in support of my proposed appointment as Co-Lead Counsel for Multi-District Litigation ("MDL") No. 3072 or in such other role this Court deems appropriate. This Declaration is submitted with the consent and agreement of other interested counsel comprising the proposed Plaintiffs' Executive Committee ("PEC") and Plaintiffs' Steering Committee ("PSC") that I serve as Co-Lead Counsel. *See generally Joint Motion to Appoint Plaintiffs' Co-Lead Counsel, Liaison Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee ("Joint Motion")*.

1.     I am a founding partner at the law firm of Johnson Becker, PLLC based in St. Paul, Minnesota. Johnson Becker, PLLC is a national plaintiffs' products liability firm representing thousands of persons injured by defective medical devices, pharmaceuticals and products. Since opening its doors in 2011, Court's throughout the nation have repeatedly selected the Firm's Partners and Associates to lead complex mass tort cases.

2.     I received my law degree in 1995 from William Mitchel College of Law in St. Paul, Minnesota where I graduated with honors. Since receiving my license to practice law in the State of Minnesota I have remained in good standing. For the past twenty-five years, I devoted my career to representing injury victim and consumers, particularly those injured by medical devices and pharmaceutical products. To date, I am actively involved in prosecuting claims on behalf of plaintiffs who were injured by a variety of products.

3.     During my career, I amassed significant professional experience in leading complex product liability and pharmaceutical litigation. Specifically, I was appointed by this Court to serve as Co-Lead Counsel in *In re: Zimmer NexGen Knee Implant Products Liability Litigation*, MDL 2272 (Co-Lead Counsel). As Co-Lead Counsel, I worked with my colleagues and defense counsel to litigate the case in a professional and cooperative

manner. I was responsible for all aspects of the litigation including: a) drafting and negotiating preliminary procedural orders; b) deposition practice; c) expert reports; d) preparation and completion of all *Daubert* motions; and e) trial counsel. In addition to my work in *In re: Zimmer*, Courts throughout the Nation have tasked me to serve as Co-Lead Counsel or as a member of the Executive Committee. A sample of those cases include the following: *In re: Testosterone Replacement Therapy Products Liability Litigation,* Civ. File No.: 14-C-1748, MDL No. 2545 pending before the Honorable Mathew Kennelly; *In re: AMS Transvaginal Mesh State Court Litigation*, 27-CV-11-3933, pending before the Honorable James A. Moore (Hennepin County, Minnesota) (Co-Lead Counsel); and *In re: Propecia (Finasteride) Products Liability Litigation,* MDL No. 2331 (Plaintiffs' Executive Committee), pending before the Honorable John Gleason in the United States District Court for the Eastern District of New York.

4.     In addition to serving in multiple leadership roles, I also served on numerous Plaintiffs' Steering Committees or in other capacities in the following mass tort cases:  *In re: Effexor (Venlafaxine Hydrochloride) Products Liability Litigation* (Plaintiffs' Steering Committee), MDL 2458 before the Honorable Cynthia Ruffe in the Eastern District of Pennsylvania; and *In re: DePuy Orthopedics, Inc., ASR Hip Implant Products Liability Litigation*, MDL 2197 pending before the Honorable Jeffrey Helmick (previously the Honorable David S. Katz) in the United States District Court for the Northern District of Ohio (Law and Briefing) where I played a substantive role in drafting and preparing numerous *motions in limine* for use in several state court actions who worked in coordination with the leadership of the MDL. In addition to these mass tort cases, I have served as court appointed Co-Lead counsel in numerous complex class cases a sample of which include: *Williams et al. v. Sykes Enterprises, Inc. et al.*, (J. Thunheim, D. Minn) (Co-Lead Class Counsel/FLSA Class of 30,000 workers); *Flores et. al v. Velocity Express, LLC,* (J. Tigar, N.D. Cal) (Co-Lead Class Counsel/FLSA Class of over 3,000 workers).

5.     In addition to my experience in leading multi-district mass tort litigation, I also possess a variety of practical skills required to effectively litigate a mass tort case.  For example, in *In re: Incretin-Based Therapies Prod. Liab. Litig.*, MDL 2452 pending before the Honorable Anthony Battaglia I was tasked with preparing the majority of Plaintiffs' experts, confronting Defendants' experts, and  *Daubert* briefs. Additionally, I served as trial counsel in a three-week trial before this Court in the *In re: Zimmer* MDL, and a four week complex product's liability claim in the Northern District of Ohio representing a welder who suffered permanent brain damages as a result of his use of welding products. *See In re Welding Rods Products Liability Litigation*, MDL 1535 (Lead Trial Counsel in *Mann v. Lincoln Elec.*). Prior to that, I was Lead Trial Counsel in the *In re: Farmers Insurance Exchange Wage and Hour Litigation,* Hennepin County Court, State of Minnesota—a class action seeking to recover unpaid overtime on behalf of personal injury claims administrators. In *In re: Zicam Cold Remedy Marketing Sales Practice Litigation*, MDL 2096 (D. Ariz., 2011), I led the science and briefing team that successfully fended off a vigorous *Daubert* challenge. *See In re Zicam Cold Remedy Marketing Sales and Products Liability Litigation*, 2011 WL 798898 (D.Az. 2011). Finally, In *In re: Uloric Prod. Liab. Litig.*, 20-CV-00623 pending before the Honorable Mathew Kennelly, I worked with my partner, Stacy Hauer, to secure a settlement on behalf of Plaintiffs' who

were allegedly harmed by Defendants' product. This background establishes I am well-versed in all aspects of litigation.

6.  In addition to my trial experience, I also have an extensive appellate court background. Specifically, I am authorized to practice before the United States Court of Appeals for the First, Fourth, Sixth, Eighth, Ninth and Tenth Circuits. I was the principal author and counsel in multiple appeals before the Eighth, Ninth and Tenth United States Circuit Courts of Appeal, including in the appeal before the Ninth Circuit in *In re: Incretin-Based Therapies Prod. Liab. Litig.*, MDL 2452. I have made numerous arguments before the Minnesota Court of Appeals and successfully defended a favorable class verdict before the Minnesota Supreme Court in *Milner et. al. v. Farmers Insurance Exchange,* 748 N.W.2d 608 (Minn. 2008). The combination of MDL leadership positions, court room trial skills and appellate advocacy provide a broad assortment of skills which I will rely upon to prosecute this case.

7.  In addition to the qualifications set forth above, Johnson Becker—at the earliest stages of this case—demonstrated it will remain committed to the litigation from beginning to end. Specifically, Johnson Becker filed some of the earliest cases before this Court and has worked cooperatively with interested Counsel to form an agreed-to Leadership Slate. Finally, as with our work in *In re: Zimmer*, this Firm will see the case through from beginning to end.

8.  Following the Judicial Panel on Multi-District Litigation's decision to centralize the case before this Court, and in response to this Court's past practices and observations regarding the make-up of any potential leadership team, I joined with several other Firms in an effort to reach out to law firms from around the Country who expressed interest in participating in this MDL so as to form a cohesive "agreed to" proposed leadership team. Those efforts ultimately culminated in the proposed leadership group that is set forth in the moving papers filed in connection with this Application. *See Joint Motion*. The proposed leadership team includes an assortment of diverse individuals from around the Country experienced in mass tort litigation. I note this because the success in bringing together this group of diverse and competing firms—some of whom were litigating in this District and many who were not—demonstrates the type of inclusive leadership I will bring to this case.

9.  Finally, I note that my Firm represents a large number of persons injured by Defendants' products. We anticipate that the number of filed actions and clients we represent will grow substantially as this litigation continues. Given the number of Clients we represent, if selected to serve as Co-Lead Counsel, Johnson Becker will commit the resources, personnel, and time to oversee this litigation from beginning to end. The lawyers of Johnson Becker possess extensive experience in all aspects of mass tort cases, from discovery, to trial, and through settlement. Our Firm is willing to contribute to every phase of the litigation and has demonstrated the ability to work professionally and cooperatively with others. The ability to forge this type of consensus, amongst a multitude of different lawyers, with divergent views, evidences my ability to effectively work with the proposed leadership team in this MDL. Based upon the foregoing, I respectfully seek this Court's appointment to this MDL as Co-Lead Counsel.

Respectfully submitted,

Dated this 18th day of April, 2022

JOHNSON BECKER, PLLC

/s/
_____
Timothy J. Becker (MN #256663)
444 Cedar Street
Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
Email: tbecker@johnsonbecker.com

## CURRUCULM VITAE
## TIMOTHY J. BECKER

For more than two decades, Tim Becker has protected the rights of clients injured by defective drugs, medical devices and products. As a founding partner at Johnson Becker, PLLC, Mr. Becker plays a pivotal role in the firm's commitment to successfully representing clients by dedicating his practice to representing the rights of those injured by dangerous and defective drugs or medical devices. He is actively involved in prosecuting claims on behalf of his clients who suffered injuries ranging from defective knee and hip implants to catastrophic organ failure stemming from pharmaceuticals.

During the course of his career, Mr. Becker has developed an extensive background as a trial lawyer willing to vigorously prosecute claims on his client's behalf. Most recently, in October 2015, Mr. Becker and his team tried a complex product's liability claim in the Northern District of Illinois for over a month on behalf of a welder who suffered permanent brain damage as a result of his use of welding products. Not limited to his court room trial experience, Mr. Becker successfully led the science team in MDL 2096: In re: Zicam Cold Remedy Marketing Sales Practice Litigation, (D. Az. 2011) fending off a vigorous Daubert challenge. Additionally, he has been admitted to practice before the First, Fourth, Sixth, Eighth, Ninth, and Tenth Circuits of the United States Court of Appeals where he acted as the primary author of several appellate briefs. This combination of court room trial experience and appellate advocacy provides unique perspective in effectively representing his clients' interests.

## NATIONAL LEADERSHIP POSITIONS & CASE RESUME

- *MDL 1285: In re Vitamins Antitrust Litigation,* United States District Court, District of Columbia (Kansas, Minnesota and Illinois Hog Farmer Class)

- *MDL 1535: In re: Welding Rods Products Liability Litigation,* United States District Court, Northern District of Ohio (Lead Trial Counsel Mann v. Lincoln Electric et al.)

- *In re Ditropan XL Litigation,* United States District Court, Northern District of California (Lead Counsel)

- *In re: American Express Financial Advisors Securities Litigation,* United States District Court, South District of New York (Lead Trial Counsel Haritos v. American Express Financial Advisors)

- *In re: Farmers Insurance Exchange Wage and Hour Litigation,* Hennepin County District Court, State of Minnesota (Lead Trial Counsel Milner et al. v. Farmers Insurance Exchange)

- *MDL 2096: In re: Zicam Cold Remedy Marketing Sales Practice Litigation,* United States District Court, District of Arizona (led science committee successfully opposing Daubert challenge)

- *MDL 2197: In re: DePuy Orthopedics, Inc., ASR Hip Implant Products Liability Litigation,* United States District Court, Northern District of Ohio (Law and Briefing committee)

- *MDL 2172: In re: Zimmer NexGen Knee Products Liability Litigation,* United States District Court, Northern District of Illinois (Co-Lead Counsel)

- *MDL 2545: In re: Testosterone Replacement Therapy Products Liability Litigation,* Civ. File No.: 14-C-1748 United States District Court, Northern District of Illinois (Plaintiffs' Executive Committee)

- *In re: AMS Transvaginal Mesh State Court Litigation*, 27-CV-11-3933, pending before the Honorable Ronald Abrams (Hennepin County, Minnesota) (Co-Lead Counsel)

- *MDL 2331: In re: Propecia (Finasteride) Products Liability Litigation,* United States District Court, Eastern District of New York (Plaintiffs' Executive Committee)

- *MDL 3458: In re: Effexor (Venlafaxine Hydrochloride) Products Liability Litigation*, United States District Court, Eastern District of Pennsylvania (Plaintiffs' Steering Committee)

- *MDL 2197: In re: DePuy Orthopedics, Inc., ASR Hip Implant Products Liability Litigation*, United States District Court for the Northern District of Ohio (Law and Briefing)

- *MDL 2452: In re: Incretin-Based Therapies Prod. Liab. Litig.*, United States District Court for the Southern District of California (Science and Law and Briefing, Chief Appellate Counsel)

- *In re: Uloric Prod. Liab. Litig.*, 20-CV-00623, United States District Court for the Northern District of Illinois (Co-Counsel to Lead Counsel)

- *Williams et al. v. Sykes Enterprises, Inc. et al.*, (J. Thunheim, D. Minn), United States District Court, District of Minnesota (Co-Lead Class Counsel/FLSA Class of 30,000 workers);

- *Flores et. al v. Velocity Express, LLC,* (J. Tigar, N.D. Cal), United States District Court, Northern District of California (Co-Lead Class Counsel/FLSA Class of over 3,000 workers).

## AREAS OF PRACTICE

Exclusively representing Plaintiffs in the following types of cases:

- Pharmaceutical and Medical Device Litigation
- Wage and Hour Litigation

**HONORS AND AWARDS**

- Minnesota Super Lawyers 2004, 2011-2022
- Minnesota Super Lawyers 2003

**PRESENTATIONS AND/OR PUBLICATIONS**

A brief overview of noted publications and presentations:

- *Anatomy of a Personal Injury Lawsuit: Fourth Edition,* Trial Guides, 2015

- *Is the Doctor In? Reasonableness and the Neal Decision,* Hennepin County Lawyer, 1998

- January, 2011: *Orthopedic Litigation Conference – DePuy and Zimmer Implant Updates,* HB Litigation CLE Presentation

- March, 2011: *Darvon and Hip Implant Litigation Conference: New Developments in These Emerging Mass Torts: The Science of Darvon and Darvocet,* Harris Martin CLE Presentation

- July, 2011: *Zimmer NexGen Knee and DePuy Hip Implant Litigation – Faculty Chair,* Harris Martin CLE Presentation

**PROFESSIONAL MEMBERSHIPS**

- American Association for Justice
- Minnesota Association for Justice
- Hennepin County Bar Association

**BAR ADMISSIONS**

- Minnesota, 1995
- U.S. District Court of Minnesota, 1997
- U.S. District Court of Illinois, Northern District, 2008
- U.S. District Court of Michigan, Eastern District, 2008
- U.S. Court of Appeals 1st Circuit, 2007
- U.S. Court of Appeals 4th Circuit, 2010
- U.S. Court of Appeals 6th Circuit, 2010
- U.S. Court of Appeals 8th Circuit, 2001
- U.S. Court of Appeals 9th Circuit, 2001
- U.S. Court of Appeals 10th Circuit, 2009

**EDUCATION**

- WILLIAM MITCHELL COLLEGE OF LAW, *cum laude, St. Paul, Minnesota*
- UNIVERSITY OF ILLINOIS, *Chicago, Illinois* (B.A. History)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: ABBOT LABORATORIES, ET AL, PRETERM INFANT NUTRITION PRODUCT LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 3026 |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) | Civ File No: 1:22-cv-00071 Hon. Rebecca Pallmeyer |

**DECLARATION OF C. ANDREW CHILDERS IN SUPPORT
OF APPLICATION FOR APPOINTMENT AS CO-LEAD COUNSEL**

COMES NOW YOUR DECLARANT, C. Andrew Childers, who states the following: I respectfully submit this Application in support of my proposed appointment as Co-Lead Counsel for Multi-District Litigation ("MDL") No. 3072 or in such other role this Court deems appropriate. This Declaration is submitted with the consent and agreement of other interested counsel comprising the proposed Plaintiffs' Executive Committee ("PEC") and Plaintiffs' Steering Committee ("PSC") that I serve as Co-Lead Counsel. *See generally Joint Motion to Appoint Plaintiffs' Co-Lead Counsel, Liaison Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee ("Joint Motion").*

I am Of Counsel at Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A. ("LPR"), as well as a founding member of the firm Childers, Schlueter & Smith, LLC.[1] I graduated from Clemson University (B.A. 1995) and the University of Georgia School of Law (J.D. 1998). I am admitted to practice law in the States of Georgia, Florida, and Pennsylvania, as well as the United States Supreme Court and the United States District Courts for

---

[1] My resume and a Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A. firm resume are included herewith.

the Northern and Middle Districts of Georgia, the Middle and Southern Districts of Florida, and the Northern District of Illinois.[2]

I represent the Plaintiffs in the following cases currently pending in MDL 3026:

*Hall v. Abbott Laboratories*, Case No. 1:22-cv-00071 (NDIL); and

*Shindel v. Abbott Laboratories*, Case No. 1:22-cv-00561 (NDIL).[3]

**(a) Willingness and Availability to Commit to a Time-Consuming Project**

LPR represents numerous additional infants and families of infants who allege to have suffered necrotizing enterocolitis ("NEC") after ingesting the Defendants' preterm infant nutrition products, and we intend to file all such cases in this MDL. Prior to the JPML's April 8, 2022 Transfer Order, LPR undertook the lead role in informally coordinating the efforts of the various law firms representing NEC plaintiffs in suits filed against the Defendants in District Courts around the country. After the Abbott Defendants filed their 21 U.S.C. § 1407 motion with the JPML, LPR filed the initial Response Brief, requesting that the MDL be assigned in the Northern District of Illinois, and assisted other plaintiffs' counsel with their Response Briefs. At the March 31, 2022 JMPL hearing, I was the only counsel who argued solely in favor of transfer and coordination in the Northern District of Illinois – an argument the JPML ultimately agreed with in transferring the cases to this Court.

LPR is committed to continue investing as much time and effort as is necessary to complete this litigation, both for our individual cases and for the greater good of all plaintiffs involved in this litigation. Although I currently serve as Plaintiff's Liaison Counsel in MDL 2947 (In Re:

---

[2] I have been an active member of both the General Bar and the Trial Bar of the Northern District of Illinois since November 2014.

[3] Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A. represents numerous additional infants and families of infants who have suffered necrotizing enterocolitis ("NEC") after ingesting the Defendants' preterm infant nutrition products, and the firm plans to file our cases in this MDL as soon as possible.

Paragard IUD Products Liability Litigation), pending in the Northern District of Georgia, my duties in that MDL are such that I am able to devote the majority of my focus and attention to MDL 3026.

**(b) Ability to Work Cooperatively With Others**

For more than 22 years, I have litigated mass tort cases in State and Federal courts throughout the country. During that time I have served as lead counsel, co-counsel, and/or local counsel alongside a number of well-respected plaintiff's attorneys and law firms, many of whom are included in the leadership slate currently being proposed to the Court. Throughout these experiences, I have demonstrated the ability to successfully collaborate with other counsel, working to resolve issues through consensus building and cooperation. I believe those I have worked with would agree that ego and self-interest are not driving forces for me, and that I form connections with and genuinely enjoy the people I work with in these scenarios. I have also had the privilege of litigating against some of the most respected and well-trained defense counsel in the country. Despite the adversarial positions we occupy by virtue of the legal process, I work hard to establish common ground with opposing counsel whenever possible. This approach often helps to pave the way for mutually agreeable solutions, and allows both parties to effectively move cases forward while avoiding unnecessary tension and disputes. For this reason I also make it a practice to maintain considerable flexibility in granting extensions and other courtesies to opposing counsel, while at the same time limiting any requests I submit.

Throughout my career I have been actively involved in both national and local trial lawyer organizations, including serving in numerous leadership roles. This has allowed me to work with

attorneys from a wide variety of backgrounds and locations and establish a wide network of colleagues all over the country.  The attorneys in my firm are also leaders in the legal community.[4]

**(c)  Professional Experience in this Type of Litigation**

I have been actively representing plaintiffs in mass tort litigation (in MDLs, consolidated state-court proceedings, and in individually filed cases) since 1999.[5] The focus of my practice has been on pharmaceutical and medical device product liability litigation since that time.

I currently serve as Plaintiff's Liaison Counsel in in MDL 2947 (In Re: Paragard IUD Products Liability Litigation), pending in the Northern District of Georgia, having been appointed in February 2021.  I am also a member of the Plaintiff's Steering Committee ("PSC") in MDL 2782 (In Re: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation), U.S. District Court for the Northern District of Georgia, having been appointed in August 2017.[6]

I have been a member of the Plaintiff's Leadership Committee ("PLC") in the Consolidated Pradaxa[7] Docket in the Superior Court, J.D. at Hartford, Hartford, Connecticut, since 2016 (and have been co-lead counsel in that litigation since 2018). I was lead or co-lead trial counsel in three (3) of the four (4) bellwether trials conducted in that litigation (two multi-week trials in 2018[8] and

---

[4] As noted on the LPR resume included herewith, the firm's attorneys have been appointed to MDL leadership positions more than 60 times.

[5] I have represented plaintiffs in mass tort cases including, but not limited to: Paragard; Pradaxa; Xarelto; Actos; Pelvic Mesh; GranuFlo; Gadolinium Based Contrast Agents; DePuy ASR hip implants; DePuy Pinnacle hip implants; Stryker hip implants; Fen Phen (Pondimin and Redux); Dilantin; Bextra; Celebrex; Vioxx; Phenytoin; Reglan, Metoclopramide; Fosamax; Yaz and Yasmin; Renu with MoistureLoc; Ethex/K-V Morphine; Topamax; Total Body Formula; Yamaha Rhino UTV's; Baycol; Rezulin; Trasylol; Guidant defibrillators; Icy Hot patches; Kugel Mesh; Lotronex; Zyprexa; Ortho Evra; PPA.

[6] The vast majority of the cases in MDL 2947 were resolved through a global settlement that was reached in September 2021.

[7] Pradaxa is an anticoagulant medication prescribed to patients to help prevent thromboembolic events.

[8] *Boone v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. CPL HHD-CV-16-6067796-S (Connecticut Superior Court, Judicial District of Hartford) and *Gallam v. Boehringer Ingelheim*

one multi-week trial in 2019[9]) after extensive general and case-specific work-up, including deposing numerous defense employees in the United States and in Europe. In addition to the three (3) Connecticut bellwether trials, I was lead trial counsel in a multi-week Pradaxa trial conducted in the U.S. District Court for the Southern District of West Virginia in October 2018.[10] The two plaintiff's verdicts we obtained in those trials (SDWV in 2018 and Connecticut Superior Court in 2019) are the only plaintiff's verdicts ever obtained in any Novel Oral Anticoagulant ("NOAC") product liability litigation, and the juries awarded punitive damages against the defendant in both of those cases. Following the above trials, I participated in the negotiation of a global settlement for all pending Pradaxa cases that was reached in 2020, thereby successfully resolving more than four thousand (4,000) cases in that consolidated mass tort litigation that I initiated with co-counsel and then worked up and tried over a period of approximately five (5) years.

In April-May 2017, during the time I was working up Pradaxa cases for trial, I was co-lead counsel in a multi-week pharmaceutical injury trial that resulted in the largest pharmaceutical product liability verdict ever awarded in the State of Georgia – $20,543,981.00 ($3,043,981.00 in compensatory damages and $17,500,000.00 in punitive damages).[11] Starting with that trial, I obtained at least one pharmaceutical products liability plaintiff's verdict that also included an award of punitive damages three (3) years in a row – 2017, 2018, and 2019.

---

*Pharmaceuticals, Inc.*, No. CPL HHD-CV-16-6067874-S (Connecticut Superior Court, Judicial District of Hartford).

[9] *Roberto v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. CPL HHD-CV-16-6068484-S (Connecticut Superior Court, Judicial District of Hartford).

[10] *Knight v. Boehringer Ingelheim Pharmaceuticals, Inc.*, Civil Action No. 3:15-cv-05424 (Southern District of West Virginia).

[11] *Ann Pope and Anthony Pope v. Akorn, Inc.*, Civil Action File No. 2015V048780 (State Court of Houston County, Georgia). The verdict was affirmed on by the Georgia Court of Appeals in November 2018, and the defendant's petition for writ of certiorari was denied by the Georgia Supreme Court in August 2019.

I served as Co-Lead of the Marketing Subcommittee of the Discovery Committee for the PSC in MDL 2592 (In Re: Xarelto Products Liability Litigation). In that role I deposed several defendant employees and defense expert witnesses on behalf of the PSC, and was awarded substantial common benefit fees by the Hon. Eldon E. Fallon for my work.

I was a member of the PSC for MDL 2016 (In Re: Yamaha Motor Corp. Rhino ATV Products Liability Litigation), serving in the role of Federal-State Liaison counsel. I also served as counsel for the plaintiffs in the majority of the consolidated Rhino ATV cases that were litigated in the State Court of Gwinnett County, Georgia, and I was co-lead counsel in the first Rhino ATV trial to result in a plaintiff's verdict.[12]

I actively participated in the discovery and settlement negotiations in MDL 1985 (In Re: Total Body Formula Products Liability Litigation). As a result of my work in MDL 1985, I was awarded a significant portion of the common benefit fees despite not being a member of the PSC.[13]

**(d) Willingness to Commit the Necessary Resources to Pursue this Matter**

For more than 65 years, Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A. has been at the forefront of complex and difficult litigation, including MDL and state-court consolidated mass torts. LPR will commit all resources of the firm that are necessary to move the cases in MDL 3026 from beginning to resolution. In addition to myself, two additional LPR attorneys are currently dedicated to this litigation, and the firm is willing and able to devote additional attorneys if and when the need arises.[14] With respect to financial resources, LPR is well

---

[12] *McTaggart v. Yamaha Motor Corporation, USA et al.*, Case No. 08C-18950-2 (State Court of Gwinnett County, Georgia).

[13] The Hon. R. David Proctor of the Northern District of Alabama, formerly a member of the JPML, was the transferee judge for MDL 1985, and he personally observed my cooperative work with counsel for all parties in that litigation and approved my award of common benefit fees in that MDL.

[14] There are currently 48 attorneys at LPR.

aware of the amounts necessary to participate on and/or fund a litigation such as this one, and I warrant that we are fully capable of doing so.[15]

## **CONCLUSION**

I would be honored to serve as Co-Lead Counsel in MDL 3026, and I fully support the proposed leadership Slate being submitted to the Court. If selected, I will dedicate my time and resources, as well as those of my firm, to working with all plaintiffs' and defense counsel and with this Honorable Court to ensure the fair and just resolution of the cases in this MDL.


Dated: April 19, 2022                    Respectfully submitted,

                                         /s/ C. Andrew Childers
                                         C. Andrew Childers
                                         Of Counsel
                                         LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
                                         BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.
                                         316 S. Baylen Street, Sixth Floor
                                         Pensacola, FL 32502
                                         (850) 435-7000
                                         achilders@levinlaw.com

---

[15] As noted above, LPR attorneys have been appointed to more than 60 MDL leadership positions, and the firm has promptly contributed all requested common benefit assessments in those MDLs.

# C. ANDREW CHILDERS

Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr & Mougey, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
(850) 435-7000
achilders@levinlaw.com

Accomplished attorney in the area of mass tort litigation, representing individuals throughout the United States who have been injured by pharmaceutical products, medical devices, and other dangerous and defective products.

## PROFESSIONAL ACCOMPLISHMENTS

- Plaintiff's Liaison Counsel for MDL 2947 (In Re: Paragard IUD Products Liability Litigation), U.S. District Court for the Northern District of Georgia
- Member of Plaintiff's Steering Committee for MDL 2782 (In Re: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation), U.S. District Court for the Northern District of Georgia
- Co-Lead Counsel for Plaintiffs, Consolidated Pradaxa Docket in the Superior Court, J.D. at Hartford, Hartford, Connecticut
- Member of Plaintiff's Leadership Committee, Consolidated Pradaxa Docket in the Superior Court, J.D. at Hartford, Hartford, Connecticut
- Member of Plaintiff's Steering Committee for MDL 2016 (In Re: Yamaha Motor Corp. Rhino ATV Products Liability Litigation), U.S. District Court for the Western District of Kentucky
- Co-Lead of the Marketing Subcommittee of the Discovery Committee for the PSC in MDL 2592 (In Re: Xarelto Products Liability Litigation), U.S. District Court for the Eastern District of Louisiana
- Member of Discovery Committee for MDL 1657 (In Re: Vioxx Products Liability Litigation)
- Obtained the only two Plaintiff's verdicts ever awarded in Novel Oral Anticoagulant ("NOAC") product liability litigation in October 2018 and May 2019
- Obtained the largest Plaintiff's pharmaceutical product liability verdict in Georgia history ($20,543,981.00) in April 2017
- Co-lead trial counsel in the first Plaintiff's verdict in nationwide product liability litigation involving Yamaha Rhino off-road vehicles in May 2010
- Moderator of the semi-annual Mass Torts Made Perfect Seminar
- 2014-2022 – "Georgia Super Lawyer" – Class Actions/Mass Torts
- 2011-2013, 2009, and 2007 – "Georgia Super Lawyers Rising Star" – Class Actions/Mass Torts
- 2012 – University of Georgia's 40 Under 40 – one of only 40 UGA alumni honored for making an impact in business, leadership, community, educational and philanthropic endeavors
- Frequent guest lecturer for graduate level classes at the Rollins School of Public Health at Emory University – "Litigation as a Health Policy Tool"

- Frequent presenter on pharmaceutical and other mass tort litigation at legal education seminars throughout the United States

## LEGAL EXPERIENCE

**Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A.**
Pensacola, Florida
*Of Counsel*, October 2021 – Present
- Has been the leader of Levin Papantonio Raffery's Baby Formula Litigation group since joining the firm as Of Counsel in 2021. Has also organized and led the informal collaboration efforts of more than a dozen law firms around the country with regard to the Federal NEC litigation, including the formation of MDL 3026 before the Hon. Rebecca Pallmeyer, Chief Judge, U.S. District Court for the Northern District of Illinois.

**Childers, Schlueter & Smith, LLC**
Atlanta, Georgia
*Founding Partner*, February 2001 – Present
- Mass Torts – Has represented thousands of individuals across the United States who have been injured by products including: Paragard, Xarelto; Pradaxa; Stryker hip implants; DePuy hip implants; Risperdal; Gadolinium-Based Contrast Agents; Fen Phen (Pondimin and Redux); Dilantin; Bextra; Celebrex; Vioxx; Phenytoin; Reglan, Metoclopramide; Fosamax; Yaz and Yasmin; Renu with MoistureLoc; Ethex/K-V Morphine; Topamax; Total Body Formula; Yamaha Rhino UTVs; Baycol; Rezulin; Trasylol; Guidant defibrillators; Icy Hot patches; Kugel Mesh; Lotronex; Zyprexa; Ortho Evra; and PPA.
- Individual Claims – Represents individuals throughout the United States who have suffered from Stevens-Johnson Syndrome (SJS) and Toxic Epidermal Necrolysis (TEN) – severe allergic reactions that cause the person's skin to slough off, and that can lead to blindness, permanent disability, and/or death.

**Rich & Smith, P.C.**
Lawrenceville, Georgia
*Associate*, June 1998 – February 2001
- Represented approximately 200 Georgia citizens who suffered heart and lung damage as a result of ingesting Fen Phen (Pondimin and Redux)
- Litigated probate matters, criminal defense, and other civil cases on behalf of plaintiffs and defendants

## EDUCATION

**University of Georgia School of Law,** Athens, Georgia
*Juris Doctor*, May 1998
Honors & Activities:
- Order of Barristers
- Student Member – Lumpkin Inn of Court

- National Champion – 1997 ATLA Student Trial Advocacy Competition
- National Quarterfinalist – 1998 ATLA Student Trial Advocacy Competition
- Executive Committee – Mock Trial Board

**Clemson University,** Clemson, South Carolina
*Bachelor of Arts,* English (Psychology Minor), May 1995
Honors & Activities:
- Dean's List
- Student Senate

## PROFESSIONAL AFFILIATIONS

- Member – State Bars of Georgia, Florida, and Pennsylvania
- Board Member – Formal Advisory Opinion Board of the State Bar of Georgia
- Former President and Executive Committee Member – Law School Alumni Council of the University of Georgia School of Law
- Member – Law School Alumni Council of the University of Georgia School of Law
- Executive Committee Member – Georgia Trial Lawyers Association
- State Delegate (Georgia) – American Association for Justice
- Former Executive Committee Member - National Trial Lawyers Association: Top 40 Under 40
- Former Chair – Georgia Trial Lawyers Association's EEO Committee
- Former Chair – Civil Justice PAC
- Former Chair – Communications Committee for the Georgia Trial Lawyers Association
- Former Chair – Education Committee for the Georgia Trial Lawyers Association
- Member – Georgia Trial Lawyers Association
- Member – American Association for Justice
- Top 100 Diplomat – National Trial Lawyers Association
- Member – Mass Tort Trial Lawyers Association
- Member – DeKalb County Bar Association
- Member – Trial Lawyers Section of the DeKalb Bar Association



# Levin Papantonio Rafferty Law Firm History

In 1955, David Levin and Reubin Askew founded the law firm of Levin & Askew. The two were the sole attorneys in the firm, assisted by just one additional staff member. As did most young attorneys, David and Reubin accepted virtually every case regardless of the area of law involved. In 1961, David's brother Fred Levin joined the firm and quickly became recognized as one of America's premier personal injury lawyers after achieving several multi-million dollar jury verdicts, including one in 1980 that was the largest compensatory damage verdict in U.S. history at the time.

## 1961 – FRED LEVIN JOINS THE LAW FIRM (1961-2021)

Fred Levin received more than 30 jury verdicts in excess of $1 million. At various points in his career, he has held the national record for jury verdicts involving the wrongful death of a child, the wrongful death of a housewife, the wrongful death of a wage earner, the wrongful death of an African American, and the largest personal injury verdict in the state of Florida.

Fred appeared in every edition of Best Lawyers in America. He was a member of the Inner Circle of Advocates (limited to 100 of the nation's top trial attorneys) and was inducted into The National Trial Lawyers Hall of Fame. His greatest legacy, however, was the rewriting of Florida's Medicaid Third-Party Recovery Act to allow the State of Florida to sue and recover billions of dollars from the tobacco industry for smoking-related illnesses. In 2014, *New York Times* bestseller Josh Young published a comprehensive biography of Fred's life: *And Give Up Showbiz? How Fred Levin Beat Big Tobacco, Became a Chief of Ghana, Earned Boxing Manager of the Year & Transformed American Law.* In 2015, Mr. Levin was named Trial Lawyer of the Year by The National Trial Lawyers.

## 1982 - MIKE PAPANTONIO JOINS THE LAW FIRM

Forty years ago, Mike Papantonio joined the law firm and started one of the most respected mass torts departments in America. His work in complex litigation involving prescription drugs and medical devices has placed Mike at the center of the nationwide mass torts and class action legal community.

In 2000, Mike helped launch a nationwide organization called Mass Torts Made Perfect. Today, this organization holds annual conferences attended by more than a thousand top personal injury and mass tort attorneys across America in an effort to develop successful litigation strategies for confronting wrongdoing by multi-national corporations.

In 2017, Mike and the firm's C8 trial team helped secure a $920 million-dollar settlement against DuPont. The settlement related to Dupont's West Virginia plant discharging the chemical PFOA (C8) into the air and water around the Ohio River Valley and exposing citizens to this toxic Teflon chemical. As part of this settlement, Dupont had to pay to clean up the river as well as make specific awards to families injured by their chemical.

In 2014, the Stephen and Sandra Sheller Center of Temple University Beasley School of Law presented Mr. Papantonio with the Inaugural Award for Social Justice, honoring him for his outstanding contributions to social justice. In 2011, Mr. Papantonio was awarded the Perry Nichols Award, the highest honor given by the Florida Justice Association. The award recognizes individuals who fight valiantly and with distinction for justice throughout their lives.

Mike is listed in the publications Best Lawyers in America and Leading American Attorney. In 2008, he was selected by the Public Justice Foundation as a finalist for its Trial Lawyer of the Year. In 2014, the Stephen and Sandra Sheller Center of Temple University Beasley School of Law presented Mr. Papantonio with the Inaugural Award for Social Justice, honoring him for his outstanding contributions to social justice. In 2011, Mr. Papantonio was awarded the Perry Nichols Award, the highest honor given by the Florida Justice Association. The award recognizes individuals who fight valiantly and with distinction for justice throughout their lives. In 2015, he was inducted into The National Trial Lawyers Hall of Fame. Today, he continues to lead the charge taking depositions and going to trial against some of the largest corporations in the world.

## 1994 - TROY RAFFERTY JOINS THE LAW FIRM

Troy Rafferty joined the law firm in 1994 and continues to build upon the firm's legacy of success. Troy has achieved national recognition for his work as a trial lawyer, including being appointed to handle some of the nation's largest mass tort cases, such as the opiate litigation.

In addition to being appointed to lead several other national litigations, Troy currently serves as Liaison Counsel in the national prescription opiate litigation.

Troy has obtained numerous multi-million dollar jury verdicts. In 2017 alone, he obtained two major pharmaceutical trial verdicts of $150 million and $140 million. These were the 13th and 15th largest jury verdicts in the United States that year.

Troy is listed in the publications Best Lawyers in America and The Legal 500. In 2016, he was awarded the prestigious Perry Nichols Award from the Florida Justice Association. This is the highest award given by the Association and is awarded to a trial lawyer in recognition of a lifetime of outstanding and distinguished service in the pursuit of justice. He has achieved state and national recognition for his work and success as a trial lawyer and has been appointed to handle some of the nation's largest pharmaceutical and mass tort cases.

Board certified in civil trial law by The Florida Bar, Troy is active in the Florida Justice Association, where he served as President from 2014–2015.

He is a fellow in the International Society of Barristers and, one of only 500 U.S. attorneys inducted into the International Academy of Trial Lawyers.  He has been recognized as one of the country's top lawyers through inclusion in the publication, The Best Lawyers in America, as well as The Legal 500. Troy was also recognized as one of Florida's top lawyers by Florida Super Lawyers and was awarded an AV rating by Martindale-Hubbell legal directory.

## A TRADITION OF EXCELLENCE THAT PROPELS US INTO THE FUTURE

Much has changed for our law firm since it was formed more than sixty-five years ago. Reubin Askew, one of the two founders, went on to become a two-term governor for the State of Florida and a candidate for President of the United States.

Levin Papantonio Rafferty (LPR) attorneys and staff continue to reflect a growing wealth of talent to fulfill the firm's mission of justice. Levin Papantonio Rafferty now has more than 45 lawyers and has successfully represented tens of thousands of clients throughout the country.

Our attorneys have changed laws and legislation to protect citizens across the country and have successfully litigated against some of the world's largest corporations. In total, the firm has received **jury verdicts and settlements in excess of $4 billion**.

## OUR AWARDS & RECOGNITION

Since 1955, Levin Papantonio Rafferty has received many of the top honors that are awarded in American trial law.  One or more of our attorneys are listed in Best Lawyers in America; National Trial Lawyers Hall of Fame; America's Elite Trial Lawyers; U.S. News & World Report Best Law Firms; Martindale-Hubbell Preeminent Woman Attorney; and SuperLawyers.

Our accomplishments have been featured on CNN, Fox, ABC, CBS & NBC. Our lawyers have appeared in The Wall Street Journal; The New York Times; Forbes magazine; Time magazine; National Law Journal; and US magazine.

A Sample of Our Honors & Awards

- American Association for Justice – Board of Governors
- Best Law Firms – U.S. News & World Report
- Best Lawyers in America
- Best Lawyers, Lawyer of the Year
- Florida Justice Association – Board of Directors
- Florida Justice Association – Lifetime Achievement Award
- Florida Justice Association – Perry Nichols Award (highest honor awarded)
- Florida Justice Association – President
- Florida Trend Legal Elite
- Inner Circle of Advocates (limited to 100 of the nation's top trial lawyers)
- Martindale-Hubbell – Preeminent Woman Lawyer
- National Law Journal – America's Elite Trial Lawyers
- National Law Journal – Top Ten Litigator
- National Trial Lawyers – Hall of Fame
- National Trial Lawyers – President
- National Trial Lawyers – President, Women's Caucus
- National Trial Lawyers – Top 40 Under 40

- • National Trial Lawyers – Top 100 Florida Lawyers
- • Public Investors Arbitration Bar Association – President
- • Public Justice Association – Trial Lawyer of the Year Finalist
- • SuperLawyers
- • The Summit Council – Top Civil Justice Attorneys in US

## MASS TORTS - EXPERIENCE MATTERS

In complex litigation, federal judges often select a small number of lawyers to conduct the national investigation on behalf of the thousands of people injured. Judges require these lawyers to have the experience, resources, and expertise to handle the litigation. To date, our attorneys have been selected by federal judges more than 70 times. Below is a partial list of projects in which Federal Judges have appointed our lawyers to leadership positions:

Bon Secour Fisheries, Inc. v. **BP Exploration & Production, Inc.,** No. 12-970 (E.D. La.) (Class Counsel)

Cardoza v. **Bloomin' Brands, Inc.,** No. 2:13-cv-1820 (D. Nev.) (Class Counsel)

Gress v. **Freedom Mortgage Corp.,** No. 1:19-cv-00375-JEJ (W.D. Pa.) (Class Counsel)

Hardwick v. **3M Co.,** No. 2:18-cv-1185 (S.D. Ohio) (Class Counsel)

In re **3m Combat Arms Earplug** Prods. Liab. Litig.; MDL 2885 (N.D. FL) (Plaintiffs' Co-Liaison Counsel)

In re **Abilify (Aripiprazole)** Prods. Liab. Litig.; MDL 2734 (N.D. FL) (Plaintiffs' Executive Committee)

In re **Accutane** Prods. Liab. Litig.; MDL 1626 (M.D. FL) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee)

In re **Actos** Prods. Liab. Litig.; MDL 2299 (W.D. LA) (Plaintiffs' Steering Committee)

In re **Allergan Biocell Textured Breast Implant** Prods. Liab. Litig.; MDL 2921 (D. N.J.) (Co-Lead Counsel)

In re **Allura Fiber Cement Siding** Prods. Liab. Litig.; MDL 2886 (D. S.C.) (Class Counsel)

In re **America Online**, Inc., Version 6.0 Software Litig., MDL 1412 (N.D. IL) (Co-Lead Counsel)

In re **American Medical Systems**, Inc., Pelvic Repair System Prods. Liab. Litig.; MDL 2325 (S.D. WV) (Plaintiffs' Steering Committee)

In re **Amtrak** "Sunset Limited" Train Crash in Bayou Canot, Alabama on September 22, 1993; MDL 1003 (S.D. AL) (Plaintiffs' Steering Committee; Liaison Counsel; Electronic Document Repository; Research Committee)

In re **Aqueous Film-Forming Foams** Prods. Liab. Litig.; MDL 2873 (D. SC) (Plaintiffs' Executive Committee)

In re **Bair Hugger Forced Air Warming Devices** Prods. Liab. Litig., MDL 2666 (D.MN) (Co-Lead Counsel)

In re **Bard IVC Filters** Prods. Liab. Litig., MDL 2641 (D. Ariz.) (Plaintiffs' Steering Committee)

In re **Benicar** (Olmesartan) Prods. Liab. Litig., MDL 2606 (D.NJ) (Plaintiffs' Executive Committee)

In re **Bextra** and Celebrex Marketing Sales Practices and Prods. Liab. Litig.; MDL 1699 (N.D. CA) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee; Science Committee)

In re **Blue Cross Blue Shield** Antitrust Litig.; MDL 2406 (N.D. AL) (Co-Chair, Class Certification Committee, State Liaison Committee)

In re **Boston Scientific**, Inc. Pelvic Repair Systems Prods. Liab. Litig.; MDL 2326 (S.D. WV) (Plaintiffs' Steering Committee)

In re **Breast Impant** Prods. Liab. Litig.; MDL 926 (D.C. AL) (Florida Liaison Counsel)

In re **Chinese Drywall** Prods. Liab. Litig.; MDL 2047 (E.D. LA) (Plaintiffs' Steering Committee; Science Committee)

In re **Cisco** Systems, Inc., Securities & Derivative Litig.; MDL 1527 (N.D. CA) (Class Counsel)

In re **Consolidated Class Actions against CSX Railroad**; No. 7:18-cv169-BO (E.D. N.C.) (Plaintiffs' Steering Committee)

In re **Cook Medical, Inc., IVC Filters** Marketing, Sales Practices and Prods. Liab. Litig.; MDL 2570 (S.D. IN) (Plaintiffs' Steering Committee, Plaintiffs' Discovery Liaison & Bellwether Trial Counsel)

In re **Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.**; MDL 2846 (S.D. OH) (Co-Lead Counsel, Co-Chair Discovery Committee)

In re **Deepwater Horizon (BP)** Oil Spill in the Gulf; MDL 2179 (E.D. LA) (Plaintiffs' Executive Committee)

In re **DePuy Orthopaedics**, Inc., ASR Hip Implant Prods. Liab. Litig.; MDL 2197 (N.D. OH) (Plaintiffs' Executive Committee)

In re **Diet Drugs** (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.; MDL 1203 (E.D. PA) (Plaintiffs' Management Committee; Discovery Committee; Science/Expert Committee)

In re **Digitek** Prods. Liab. Litig.; MDL 1968 (S.D. WV) (Plaintiffs' Steering Committee)

In re **Dominion Dental Services USA, Inc. Data Breach Litig.,** (E.D. VA) (Plaintiffs' Steering Committee)

In re **E.I. Du Pont** De Nemours & Co. C-8 Personal Injury Litig.; MDL 2433 (S.D. OH) (Plaintiffs' Steering Committee)

In re **Elmiron (Pentosan Polysulfate Sodium)** Prods. Liab. Litig.; MDL 2973 (D. NJ) (Plaintiffs' Executive Committee; Chair of Discovery Committee)

In re **Ethicon**, Inc. Pelvic Repair Systems Prods. Liab. Litig.; MDL 2327 (S.D. WV) (Plaintiffs' Steering Committee)

In re **Factor VIII** or IX Concentrate Blood Prods. Prods. Liab. Litig.; MDL 986 (N.D. IL) (Plaintiffs' Steering Committee; Settlement Committee; Chair, Document Depository)

In re **Fosamax** (Alendronate Sodium) Prods. Liab. Litig. (No. II); MDL 2243 (D. NJ) (Plaintiffs' Steering Committee)

In re **Fosamax** Prods. Liab. Litig.; MDL 1789 (S.D. NY) (Plaintiffs' Lead Counsel)

In re **Fresenius GranuFlo/** Naturalyte Dialysate Prods. Liab. Litig.; MDL 2428 (D. MA) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee; Science Committee; Bellwether Committee)

In re **Gadolinium** Based Contrast Agents; Prods. Liab. Litig.; MDL 1909 (N.D. OH) (Plaintiffs' Co-Lead Counsel)

In re **Guidant** Defibrillators Prods. Liab. Litig.; MDL 1708 (D. MN) (Plaintiffs' Steering Committee; Discovery Committee; Trial Team Committee)

In re **Heparin** Prods. Liab. Litig.; MDL 1953(N.D. OH) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee)

In re **High Sulfur** Content Gasoline Prods. Liab. Litig.; MDL 1632 (E.D. LA) (Plaintiffs' Steering Committee; Co-Chair, Trial Committee)

In re **Invokana** (Canagliflozin) Prods. Liab. Litig.; MDL 2750 (D. NJ) (Plaintiffs' Executive Committee)

In re **Johnson & Johnson Talcum Powder** Prods. Marketing, Sales Practices & Prods. Liab. Litig.;, MDL 2738 (D. N.J.) (Plaintiff's Steering Committee)

In re **JUUL Labs, Inc.** Prods. Marketing, Sales Practices & Prods. Liab. Litig.;, MDL 2913 (N.D. CA) (Plaintiff's Steering Committee; Co-Chair, Discovery Committee )

In re **Katrina Canal Breaches Consolidated Litig.,** No. 05-4182 (E.D. LA) (Plaintiffs' Leadership Committee & Bellwether Trial Counsel)

In re **Medtronic**, Inc., Implantable Defibrillators Prods. Liab. Litig.; MDL 1726 (D. MN) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee)

In re **National Prescription Opiate Litigation**; MDL 2804 (N.D. OH) (Plaintiffs' Executive Committee; Liaison Counsel)

In re **Ortho Evra** Prods. Liab. Litig.; MDL 1742 (N.D. OH) (Plaintiffs' Steering Committee)

In re **Paraquat** Prods. Liab. Litig.; MDL 3004 (S.D. IL) (Plaintiffs' Executive Committee)

In re **Phenylpropanolamine (PPA)** Prods. Liab. Litig.; MDL 1407 (W.D. WA) (Plaintiffs' Steering Committee; Discovery Committee )

In re **Philips Recalled CPAP**, Bi-Level Pap, and Mechanical Ventilator Prods. Litig.; MDL 3014 (W.D. PA) (Plaintiffs' Steering Committee; Science and Expert Committee)

In re **Pradaxa** (Dabigatran Etexilate) Prods. Liab. Litig.; MDL 2385 (S.D. IL) (Plaintiffs' Executive Committee; Science Committee)

In re **Propulsid** Prods. Liab. Litig.; MDL 1355 (E.D. LA) (Plaintiffs' Executive Committee; Co-Chair, Discovery Committee; Science/Expert Witness Committee)

In re **Proton-Pump Inhibitor** Prods. Liab. Litig.; MDL 2789 (D. NJ) (Plaintiffs' Executive Committee)

In re **Rezulin** Prods. Liab. Litig.; MDL 1348 (S.D. NY) (Plaintiffs' Steering Committee; Co-Chair, Discovery Committee; Science Committee)

In re **Santa Fe Natural Tobacco Co. Marketing and Sales Practices Litig.,** MDL 2695 (D.N.M.) (Plaintiffs' Executive Committee & Plaintiffs' Oversight Committee)

In re **Sorin 3T Heater-Cooler Systems** Prods. Liab. Litig.; MDL 2816 (M.D. PA) (Plaintiffs' Executive Committee)

In re **Stryker** Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.; MDL 2241 (D. MN) (Plaintiffs' Lead Counsel Committee)

In re **Taxotere (Docetaxel)** Prods. Liab. Litig.; MDL 2740 (E.D. LA) (Plaintiffs' Settlement Committee)

In re **Testosterone Replacement Therapy** Prods. Liab. Litig.; MDL 2545 (N.D. IL) (Plaintiffs' Executive Committee)

In re **Trasylol** Prods. Liab. Litig.; MDL 1928 (S.D. FL) (Plaintiffs' Steering Committee)

In re **Valsartan** Prods. Liab. Litig.; MDL 2875 (D. NJ) (Co-Lead Counsel)

In re **Vioxx** Prods. Liab. Litig.; MDL 1657 (E.D. LA) (Co-Chair, Discovery Committee; Science Committee)

In re **Welding Fume** Prods. Liab. Litig.; MDL 1535 (N.D. OH) (Plaintiffs' Executive Committee; Co-Chair, Discovery Committee)

In re **Xarelto (Rivaroxaban)** Prods. Liab. Litig.; MDL 2592 (E.D. LA) (Co-Lead Counsel, Co-Chair-Science Committee)

In re **Yamaha** Motor Corp. Rhino ATV Prods. Liab. Litig.; MDL 2016 (W.D. KY) (Plaintiff Executive Committee)

In re **Yasmin & Yaz** (Drospirenone) Marketing, Sales, and Prods. Liab. Litig.; MDL 2100 (S.D. IL) (Plaintiffs' Steering Committee, Discovery Committee (Co-Chair), Bellwether Trial Team)

In re **Zantac** (Ranitidine) Prods. Liab. Litig.; MDL 2924 (S.D. FL) (Plaintiffs' Steering Committee; Chair, Science & Experts Committee)

In re **Zyprexa** Prods. Liab. Litig.; MDL 1596 (E.D. NY) (Plaintiffs' Steering Committee)

Perrine v. **E.I. Du Pont de Nemours & Co.,** 04-C-296-2 (Harrison Cty. Cir. Ct., W.V.) (Class Counsel)

Plaisance v. **BP Exploration & Production, Inc.,** No. 12-968 (E.D. La.) (Class Counsel)

Sher v. **Raytheon Corp.,** No. 8:08-cv-889 (M.D. Fla.) (Class Counsel)

Stanley v. **Direct Energy Services, LLC,** No. 7:19-cv-03759-KMK (S.D. NY) (Class Counsel)

Stevens v. **Britax Child Safety, Inc.,** No. 2:20-cv-07373 (C.D. Cal.) (Class Counsel)

Williams v. **Reckitt Benckiser,** No. 20-23564-CIV-COOKE/GOODMAN (S.D. Fla.) (Class Counsel)

## PERSONAL INJURY | WRONGFUL DEATH

Over the past 67 years, Levin Papantonio Rafferty has successfully represented many thousands of clients throughout America in every type of personal injury claim. Our practice comprises the following types of personal injury and wrongful death cases:

We have received more than 150 jury verdicts in the amount of $1 million or more, and achieved verdicts and settlements in excess of $4 billion.

### Notable Jury Verdicts

- $1 Billion in Go-Kart Fire Case
- $480 Million in Airplane Crash
- $380 Million in Environmental Pollution Case
- $150 Million in Defective Drug Case
- $140 Million in Defective Drug Case
- $43 Million in Defective Drug Case
- $42 Million in Fraud Case
- $31 Million in Medical Malpractice Case
- $30 Million in Tobacco Smoker Case
- $28 Million in Defective Drug Case
- $25 Million in Defective Drug Case
- $25 Million in Brain Injury Case
- $21 Million in Age Discrimination Case
- $18 Million in Defective Drug case
- $18 Million in Train Derailment
- $12.6 Million in Truck Accident
- $12.5 Million in Environmental Injury Case
- $11.5 Million in Dental Malpractice Case
- $10 Million in Asbestos Case
- $10 Million in Breach of Contract Case
- $9.2 Million in Automobile Accident
- $8 Million in Defective Drug Case
- $8 Million in DRAM Shop Case

- $7.25 Million in Defective Exercise Equipment Case
- $5.1 Million in Environmental Injury Case
- $4.8 Million in Truck Accident
- $4.3 Million in Electrocution Case
- $3.8 Million in Railroad Crossing Collision
- $3.6 Million for Publishing Wrong Toll Free Number
- $3.5 Million in Defective Tire Case
- $3.3 Million in Defective UTV Case
- $3.25 Million in Privacy Invasion Case
- $3.2 Million in Defective Dump Truck Case
- $3.2 Million in Defective Drug Case
- $2.6 Million in Natural Gas Flash Fire Case
- $2.6 Million in Automobile Accident Case
- $2.4 Million in Mismatched Boat Engine Case
- $2.3 Million for Chemical Waste Discharge
- $2.2 Million in Negligent Sale of Ammunition
- $2.0 Million against Federal Government for Negligence
- $1.8 Million against Federal Government for Negligence
- $1.5 Million in Rape Case
- $1.5 Million against State Government for Negligence
- $1.4 Million in Slip and Fall
- $1.4 Million in Trucking Accident Case
- $1.2 Million in Forklift Accident
- $1.2 Million in Bus Accident
- $1.1 Million in Post-Concussion Syndrome
- $1 Million against County Government for Negligence

## Environmental Litigation

The following are examples of the environmental cases we have litigated or are currently litigating.

**BP Oil Spill –** We represented more than 2,000 businesses and governmental entities harmed by the April 20, 2010, explosion and subsequent sinking of the Deepwater Horizon oil rig in the Gulf of Mexico. We served as one of the lead counsel in the national litigation against BP, which resulted in a multi-billion dollar settlement.

**Conoco/Agrico Superfund Site –** We represented a class of hundreds of property owners and residents in Pensacola, Florida seeking damages and medical monitoring relating to claims of groundwater contamination attributed to a former fertilizer facility. The case resulted in a $70 million settlement.

**Dupont C8 Contamination –** We reached a $670 million settlement on behalf of 3,500 individuals injured when Dupont released the chemical perflurooctanoate (aka PFOA or C8) into the Ohio River and the air around Parkersburg, West Virginia.

**Dupont GenX Contamination –** We are pursuing an action against Dupont and Chemours resulting from their release of the chemical GenX into the Cape Fear River in North Carolina.

**Dupont Spelter Contamination –** We represented a class of more than 2,300 persons harmed by heavy metal contamination in the Spelter, West Virginia area. The case resulted in a settlement valued in excess of $350 million.

**Paraquat –** In June 2021, an MDL for Paraquat was formed with all federal cases involving Paraquat being transferred to the Southern District of Illinois to be heard before Judge Nancy J. Rosenstengel. Our law firm is serving on the Plaintiffs' Executive Committee for the MDL.

**Perfluoroalkyl Substances (PFAS) –** Our firm is assisting public and private entitites in recovering costs involved in the removal and remediation of PFAS.

**Pinecastle Bombing Range –** We represented a class of property owners harmed after bombs and munitions were discovered in a residential and school area in Orlando, Florida. Litigation revealed that in 1943, the U.S. Government leased 12,483 acres of land to be used as a gunnery and demonstration range for testing and troop instruction in methods of tactical bombing and strafing.

## SIX DECADES OF COMMITMENT

Over the past 67 years, Levin Papantonio Rafferty has handled more than 100,000 claims involving personal injury. Each year we teach thousands of lawyers and hundreds of paralegals how to handle mass tort litigation successfully.

Today, Levin Papantonio Rafferty represents thousands of clients nationwide and takes the lead in litigation whether it is in a national complex MDL litigation, local workman's compensation or social security disability case, or in an effort to hold corporations accountable for facilitating human trafficking or funding terrorist attacks.  LPR is the firm who stands ready to fight for justice.

1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                        **NORTHERN DISTRICT OF ILLINOIS**

10                              **EASTERN DIVISION**

11  | IN RE: ABBOTT LABORATORIES, ET | MDL No. 3072 |
    | AL., | |
12  | | |
    | PRETERM INFANT NUTRITION | |
13  | PRODUCT LIABILITY LITIGATION | |
14  | | |
    | | Civ File No.: 1:22-cv-00197 |
15  | This Document Relates to: All Cases | Hon. Rebecca Pallmeyer |

16
17          **DECLARATION OF WENDY R. FLEISHMAN. ESQUIRE**
        **IN SUPPORT OF APPLICATION FOR PLAINTIFFS' CO-LEAD COUNSEL**

18                              **INTRODUCTION**

19
20          With the Court's permission, I, Wendy R. Fleishman hereby respectfully apply to this

21  Court to be appointed to the position of Co-Lead Counsel in this MDL.

22          I very much welcome the opportunity to serve for the common benefit of the parents,

23  guardians, children, executors, and administrators of the estates of deceased children who

24  comprise the plaintiffs in this litigation. I certify that I will personally commit my time and

25  energy, and that of key members of my firm and its staff, to this challenging and intensive task as

26  a matter of highest priority.

27          As discussed below, Lieff Cabraser Heimann & Bernstein is extremely well-suited to play

28  a lead role in this MDL litigation. I respectfully submit, and this application endeavors to

                                     -1-

1   demonstrate, that I and my firm have the requisite criteria for appointment to lead this MDL:

2   1) willingness and ability to commit to a time-consuming process;  2) the ability to work

3   cooperatively with others; 3) knowledge and professional experience in presenting mass tort and

4   complex litigation; 3) extensive experience serving in leadership roles in mass tort/ products

5   liability litigation; and, 4) access to sufficient resources to prosecute this litigation in a timely

6   manner for the common interests of  the plaintiffs.

7                                                    **DISCUSSION**

8   **I.**     **Lieff Cabraser's Involvement In In Re: Abbott Laboratories, et al, Preterm Infant**
            **Nutrition Products Liability Litigation**
9
                Lieff Cabraser will file several cases against Abbott Labs and mead Johnson involving
10
    cows milk formula and milk fortifier products in the federal courts, which we expect to be
11
    centralized before this Court. We have been contacted by and retained by many individuals and
12
    are in the process of evaluating their cases for filing.  In most instances, we are awaiting
13
    confirmation of the identity of the NeoIntensive Care Unit ("NICU") medical records to confirm
14
    that the children were fed bovine or cows milk formula manufactured and sold by either Abbott
15
    Labs or Mead Johnson, and that following being fed these infant baby formula products, the
16
    children were diagnosed with and attempted to be treated for necrotizing enterocolitis ("NEC").
17
    **II.**    **Lieff Cabraser's Experience, Qualifications, And Resources**
18
                Lieff Cabraser is an AV rated 100 plus lawyer firm with a support staff of over 200,
19
    including nurses, investigators, statisticians, accountants and litigation support specialists.[1]  Our
20
    offices in San Francisco, New York, Nashville and Munich, provide a depth of resources always
21
    available in support of the *In re Abbott laboratories, Inc., et al Preterm Infant Nutrition Products*
22
    *Liability Litigation* MDL.
23
                Lieff Cabraser represents plaintiffs in complex and class action litigation in federal and
24

25   ───────────────
     [1] *US WORLD and NEWS Report* named Lieff Cabraser the Number One Mass Torts firm throughout the country for
26   the last two years.  *The American Lawyer* recently called Lieff Cabraser "one of the nation's premier plaintiff firms."
     Every year since 2003, *The National Law Journal* has selected Lieff Cabraser as one of the top plaintiffs' law firms
27   in the nation.  In compiling the annual "Plaintiffs' Hot List," *The National Law Journal* examines verdicts and
     settlements in addition to overall track records.  Lieff Cabraser is one of only two plaintiffs' firms in the United
28   States to receive this honor every year for the last ten years, each year since the award's inception.

                                                          -2-

1    state courts across the nation. Since 2001, I have served as Lead or Co-Lead counsel, or as a

2    member of the Plaintiffs' Executive Committee, or Plaintiffs' Steering Committee, or as Lead

3    Trial counsel in more than fifteen (15) MDL and Joint Prosecution proceedings in state and

4    federal courts across the country, in the substantive legal areas of defective medical devices,

5    defective product design, manufacture, marketing and sales practices of medical devices and

6    pharmaceutical drugs, and significant injuries in the concussion litigation. In addition, members

7    of my firm, upon whom I rely, have served as court appointed class counsel and lead counsel or

8    trial counsel in several hundred actions, many of which include medical device cases. The

9    breadth and scope of our firm's experience as plaintiffs' advocates, as described in the Lieff

10   Cabraser firm resume attached as Exhibit 1, is unparalleled.[2]

11        In many MDLs, we represent large numbers of individual clients on personal injury

12   claims, as we are doing in *In Re Bard IVC Filter Products Liability Litigation, NFL Retired*

13   *Professional Football Players Concussion Litigation, 3M Ear Plug Products Liability Litigation,*

14   *JUUL Products Liability Litigation, Zimmer Prosthetic Hip Implant Litigation*, *Zimmer Durom*

15   *Cup Hip Implant Products Liability litigation*, *Stryker Rejuvenate and ABG II Hip Implant*

16   *Litigation*, the *Yaz/Yasmin* (oral contraceptives), among multiple other mass tort MDLs referred

17   to herein and in the attached Curriculum Vitae for myself and for my lawfirm Lieff Cabraser

18   Heimann & Bernstein, LLP, exhibits A and B. We understand the interplay of issues and

19   convergence of interests in medical device and pharmaceutical drug products liability litigation,

20   especially where the litigation is brought in both state and federal courts; and where certain cases

21   have progressed ahead of others.

22        Lieff Cabraser has consistently advocated for MDL/state coordination in multiple MDLs

23

---

24   [2] For the past 45 years, Lieff Cabraser has represented plaintiffs exclusively, with consistent success, in an array of
     substantive areas, serving in leadership roles in class actions, mass torts, and other complex cases, in federal and state
     courts across the county. Our leadership in tort, consumer, investment and human rights litigation has generated

25   verdicts and settlements of over $62 billion, including Tobacco litigation for California cities and counties
     ($12.5 billion) and the Commonwealth of Massachusetts ($7.9 billion); reparations to Holocaust victims and their

26   survivors ($6.2 billion recovered from Swiss, German and Austrian Nazi collaborators); $4.2 billion in recoveries for
     women injured by defective silicone gel breast implants; over $1.3 billion to homeowners across America to repair

27   and replace defective pipes and exterior siding; $1.225 billion in the National Gas Antitrust cases; over $1 billion to
     victims of failed implants in the *Sulzer Hip and Knee Implants Litigation*, MDL 1401 (N.D. Ohio); and over $700

28   million to uninsured Californians overcharged for healthcare by major private hospitals.

1  involving medical device and pharmaceutical drugs as well as other products liability actions.

2  For example, in *In re Toyota Sudden Acceleration Products Liab. Litig.,* MDL. (NDCA) the state

3  and federal court actions were proceeding on independent paths, until Lieff Cabraser and the

4  other firms in charge of both sets of cases were able to work out the trust issues and ultimately

5  work together.  We advocated for the same approach to state and federal coordination in In Re;

6  *Bard IVC Filter Litigation* at the operational level between and among counsel and the Courts in

7  order to save money and more efficiently and effectively represent the claimants, in Re JUUL

8  Labs, Inc., Marketing, Sales practices, and products Liability Litigation, Case No. Case No. 19-

9  md-02913-WHO.

10  Here, we are again advocating to work in a coordinated manner with the counsel for the

11  state litigants in this litigation, where multiple cases have been filed in state courts in Illinois

12  against Abbott Labs, Inc., and now are being filed in Indiana against Mead Johnson.

13  **III.**  **Products Liability Litigation Experience**

14  My pertinent medical device and products liability litigation, trial and settlement

15  experience includes work for plaintiffs in leadership roles in *In Re Bard Inferior Vena Cava Filter*

16  *Litigation*, Case No. MDL 15-02641-PHX-DGC (D Az.), in which I served on the Plaintiffs'

17  Executive Committee, as Co-Chair of the Common Benefit Committee and as Co-Chair of the

18  Settlement Committee, *In Re National Football League Players Concussion Injury Litigation*,

19  MDL. No. 2323 (EDPA) in which I served as Lead Counsel for the Opt-outs and serve as Co-

20  Lead Counsel for Plaintiffs who brought claims against Riddell (helmet manufacturers); in *In*

21  *Stryker Rejuvenate and ABG II Products Liab. Litig.*, MDL No. 2441 (D. Minn.) and in *In Re*

22  *Zimmer Durom Cup Hip Implant Products Liab. Litig.,* MDL 2158 (D.N.J.), I serves as the

23  Plaintiffs' Co-Lead Counsel, representing all claimants with personal injury claims as a result of

24  being implanted with an allegedly defective hip implant.  In *In Re DePuy ASR Hip Implant*

25  *Products Liab. Litig.*, MDL No. 2197 (N.D. OH.), I served as a member of the Plaintiffs' Steering

26  Committee.  In *Yaz/Yasmin (Birth Control) Products Liab. Litig*., Pennsylvania State Coordinated

27  Litig. (Ct. of Common Pleas, Philadelphia., PA) I was prepared to proceed as trial counsel in one

28  of the two first bellwether trials right before the cases settled.  The case I was handling was in the

-4-

2407421.1

1   state court coordinated litigation.  I also served as Plaintiffs' Co-Lead Liaison Counsel in the

2   Coordinated Special Proceedings *In Re Complete Cases*, JCCP No. 4521, pending in California

3   Superior Court, Orange County before the Hon. David C. Velasquez.  I have served as Plaintiffs'

4   Liaison Counsel in the Coordinated New Jersey Mass Tort Program *In Re Ortho Evra Patch*

5   *Products Liability Litigation*, pending in Middlesex County, before the Hon. Jessica Mayer.  I

6   have also served on the Plaintiffs' Executive Committee *In Re Bausch & Lomb ReNu*

7   *MoistureLoc Products Liability Litigation*, MDL No. 1785 (D.S.Ca.), as well as the Plaintiffs'

8   Steering Committee in *In re: Medtronic Fidelis Products Liability Litigation*, MDL No. 1905

9   (D. Minn.) and chaired expert discovery in *In re: Guidant Defibrillator Products Liability*

10  *Litigation*, MDL No. 1708 (D. Minn.)  I was also Co-Liaison Counsel in the New Jersey Mass

11  Tort Program *In Re Reglan Product Liability Litigation* (New Jersey Superior Court, Atlantic

12  County).

13          I have more than thirty-four (34) years' experience representing plaintiffs (and

14  defendants) in mass torts, consumer fraud, products liability, medical negligence, and toxic

15  contamination litigation in federal and state courts across the country.  I received my J.D. in 1977

16  from Temple University School of Law.  Before coming to Lieff Cabraser Heimann & Bernstein,

17  LLP, in 1991, I worked as Counsel to Skadden Arps, Meagher & Flom in the products

18  liability/mass torts practice group for more than eight years.  Before that, I was a partner at Fox

19  Rothschild in Philadelphia, Pennsylvania, where I worked on breast implant litigation.  Before

20  that, I was an associate at Ballard Spahr and an assistant district attorney on Philadelphia, PA. I

21  have written scholarly and practical treatises and articles and lectured intensively on mass tort

22  litigation, complex litigation and substantive tort law questions and have authored chapters and

23  co-edited a book on proving and defending damages, Proving and Defending Damages, *A Fifty*

24  *State Guide*, Wolters-Kluwer, published each year since 2008.  Please see my Curriculum Vitae

25  attached as Exhibit 3B.

26  **IV.    Lieff Cabraser Will Dedicate The Staffing And Resources Necessary To Prosecute**
        **This Litigation.**

27

28          The *Preterm Infant Nutrition Products Liability Litigation* is a team effort for my firm.  In

-5-

addition to the staff assigned to this case, which includes three paralegals, a senior researcher, and two nurse consultants, we have additional attorneys available for the litigation. Lieff, Cabraser, Heimann & Bernstein is extremely well suited to play a lead role in this MDL litigation. As this application endeavors to demonstrate, my law firm and I have the requisite criteria for appointment to a leadership position in this MDL.

## CONCLUSION

The MDL and individual plaintiff leadership experience summarized in this application demonstrates my commitment to the challenge of transforming complex litigation into cost-effective and efficient litigation, toward the goal of achieving economies of scale and net benefits to all plaintiffs. I acknowledge that none of the settlement and trial accomplishments that I or others proudly list on our applications to this Court could have been accomplished in isolation. They are the products of combined and coordinated efforts of multiple counsel. All true victories in complex litigation are team efforts, and we who have been privileged to amass the complex litigation experience, and enjoy the litigation success that we recount have done so as team members, not lone stars. I have been relied upon, over many years, by my colleagues in other firms to contribute my firm's professional and financial resources, and to provide leadership, scholarship, and advocacy in cases presenting challenging issues. I have consistently endeavored to perform these responsibilities, under the demanding conditions that always go with the MDL territory, and to give my best efforts to the broad array of tasks necessary to any successful MDL's function.

-6-

1         I pledge to do so on behalf of all plaintiffs in the *Preterm Infant Nutrition Product*

2    *Liability Litigation*.

3    Dated: April 19, 2022        Respectfully submitted,

4

5                       /s/ Wendy R. Fleishman
                   Wendy R. Fleishman

6                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                   250 Hudson Street, 8th Floor

7                       New York, NY  10013-1413
                   (212) 355-9500

8                       wfleishman@lchb.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

**WENDY FLEISHMAN, ESQUIRE**
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
**250 Hudson Street, 8th Floor**
**New York, New York   10013-1413**
**(212) 355-9500**
**wfleishman@lchb.com**

PROFESSIONAL EXPERIENCE

2001 – Present     **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
New York, New York

Partner – Specializing in Mass Torts/Products Liability Litigation, Medical Device and Pharmaceutical Litigation, Individual Catastrophic injury cases and Consumer Fraud Class Actions.  Professional experience includes:

Plaintiffs' Co-Lead, *Retired NFL Football Players v. Riddell, et al.* in the *In Re: NFL Players' Concussion Litigation*, MDL No. 2323(ABB)(EDPA);

In Re Plaintiffs' Co-Lead Counsel, *In Re: Stryker Rejuvenate and ABG II Products Liability Litigation*, MDL No MDL No. 13-2441 (DWF/FLN) (DMN);

Plaintiffs' Co-Liaison Counsel, *In Re: Zimmer Durom Cup Hip Implant Products Liability Litigation*, MDL No. 2158 (SDW) (DNJ)(Newark);

Opt Out Plaintiffs' Coordinating Counsel, *In Re: NFL Players' Concussion Litigation*, MDL No. 2323(ABB)(EDPA);

Plaintiffs' Steering Committee, *In Re: Zofran/Ondanestron Products Liability Litigation,* MDL No. 2657 (DMass.)(Boston);

Plaintiffs' Executive Committee, *In RE: Bard IVC Filters Products Liability Litigation*, MDL No. 2641 (DAz);

Plaintiffs' Co-Chair for the Settlement Committee and the Common Benefit Committee, I*n RE: Bard IVC Filters Products Liability Litigation*, MDL No. 2641 (DAz);

Plaintiffs' Steering Committee, *In re: DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, MDL No. 2197 (NDOH) (2010);

Plaintiffs' Liaison Counsel, New Jersey Mass Tort Program, *In Re: Reglan Product Liability Litigation* (NJ Superior Ct., Atlantic Cty) (2010);

Plaintiffs' Liaison Counsel, Coordinated New Jersey *Ortho Evra Patch Products Liability Litigation* (NJ Superior Ct., Middlesex Cty);

517556.1

Plaintiffs' Executive Committee and Plaintiffs' Liaison Counsel, *Coordination Special Proceedings In re: Complete Cases*, No. JCCP 4521 (CA Superior Ct., Orange Cty);

Plaintiffs' Executive Committee *In Re: Bausch & Lomb Renu MoistureLoc Products Liability Litigation*, MDL No. 1785 (DSCa);

Plaintiffs' Steering Committee, *In Re: Medtronic Sprint Fidelis Products Liability Litigation*, MDL No. 08-1905 (RHK/JSM) (DMN);

Co-Chair of Discovery Committee, *In Re: Guidant Defibrillator Products Liability Litigation,* MDL No. 05-1708 (DWF/AJB) (D. MN); and,

Plaintiffs' Steering Committee, Co-Chair Science and Experts Committee, Trial Team, Briefing Team and Discovery Team, *In re: Baycol Products Liability Litigation*, MDL No. 1431 (DMN).

1993 – 2001     **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
New York, New York

Counsel - Mass Torts and Complex Litigation.  Defense of international and national class actions involving complex corporate management issues, corporate and consumer fraud claims, sales and marketing of insurance and financial products, products liability and other tort defense practice concerning defense of claims ranging from effects of nuclear radiation, products liability ranging from pharmaceutical products, over-the-counter "drug" products, blood products, food substances, and environmental agents, including lead.

Practice areas included the defense of fraud in insurance sales practices, and defense of corporations in connection with securities claims in connection with mergers and acquisitions.

1987 – 1993     **FOX, ROTHSCHILD, O'BRIEN & FRANKEL**
Philadelphia, Pennsylvania

Partner - Litigation Department.  Chair of the Personal Injury Practice.  Trial Practice:  concentration in the areas of products liability, toxic tort, medical malpractice, legal malpractice defense, and white collar criminal defense. Tried several jury trials and non-jury trials on behalf of the firm's clients in matters ranging from employment discrimination, blood products coverage, medical malpractice, products liability, environmental hazards, contract disputes, and criminal matters in state and federal courts in Pennsylvania, Maryland and New Jersey.  Argued before appellate courts in Pennsylvania and Maryland. Additionally, represented defendants in white collar criminal matters in negotiations with federal agencies. Member of the Law Firm Ethics Committee.

1984 – 1987     **BALLARD, SPAHR, ANDREWS & INGERSOLL**
Philadelphia, Pennsylvania

517556.1

Associate - Litigation Department. Trial work involving contract, tort and white collar criminal matters. Most notably represented the plaintiffs in a product liability action in which the jury returned a $5 million verdict; represented banks in a $20 million judgment creditor action. Tried construction and commercial contract disputes; defended federal and state criminal matters. Represented corporate clients in defense of federal governmental agency prosecutions.

1977 – 1981     **ASSISTANT DISTRICT ATTORNEY FOR THE COMMONWEALTH OF PENNSYLVANIA, THE CITY OF PHILADELPHIA**

1982 – 1984

Homicide and Rape Units - Senior Trial Attorney. Prosecuted more than fifty major homicide and rape trials. Argued before the Pennsylvania Supreme and Superior Courts. Prosecuted bench felony and misdemeanor trials, specially assigned narcotics cases and preliminary hearings and motions. Lectured at Hahnemann Medical College, University of Pennsylvania Law School, University of Villanova Law School, area hospitals and various community groups as a representative of the District Attorney's office.

**PROFESSIONAL ASSOCIATIONS, LECTURES AND ARTICLES**

Professional Associations and Awards

2022 Nationally Ranked Top 10 Attorney Award

Ten Best –New York, Personal Injury Attorneys, 2022

Top 100, National Trial Lawyers, 2020- present

Top 25 National Women Trial Lawyers in the state of New York, 2021

Named New York's Top 10 Attorneys by Attorney and Practice Magazine, 2021

2020-The Fellows of the American Bar Foundation, Life Fellow

New York State Academy of Trial Lawyers, Officer 2011 - present

Past President, Section on Torts, Environmental Products Liability Litigation, American Association for Justice

American Bar Association, Class Actions & Derivative Suits Committee-Pharmaceutical & Health Subcommittee 2010

AAJ Advocate, Advocacy's Achievement Recognition Program, September 2010

Federal Bar Council Member, 2011 – present

517556.1

Best Attorneys of America, 2015

Fellow of the American Bar Foundation, 2015 - present

2012 - 2016 Benchmark Plaintiff Award

2012-Present, SuperLawyer

2014-Present Best Attorney, Life Time member

Top 100 Trial Attorneys in America

American Association for Justice, Women Trial Lawyers delegate to the Board of Governors. 2015- present

American Association for Justice, New York Delegate to the Board of Governors, 2012-2014

American Association for Justice, STEP President, 2013 – 2014;

American Association for Justice, STEP Executive Committee, 2009-present

New York State Trial Lawyers Association, Board of Directors (2004- 2009)

New York State Trial Lawyers, Officer (2010-2014)

NYSTLA, Mass Torts Committee, 2008 –2015

NYSTLA, Co-Chair Women's Caucus, 2008-2014

American Association for Justice, Board of Governors Outstanding Achievement 2019


Lectures and Publications

Mass Torts Made Perfect Spring Conference: Preterm Infant Bovine Formula Litigation, April 2022

New Jersey Association for Justice (NJAJ) Educational Foundation, Inc.: MS19: Arbitration Initial Training and Continuing Training, November 20, 2019

Mass Torts Made Perfect Fall Conference: JUUL, E-Cigarette & Vaping Litigation Conference, October 23-25, 2019

Harris Martin's JUUL, E-Cigarette & Vaping Litigation Conference: Science and MDL 2913 Update, October 18, 2019

Harris Martin's MDL Conference: JUUL and Capital One Data Breach Litigation, September 25, 2019

517556.1

AAJ's Traumatic Brain Injury Seminar: Mastering the Science (Part I of III), December 8, 2016

Harris Martin's Talcum Powder Ovarian Cancer Litigation Conference: Ovarian Cancer and Talcum Powder, May 17, 2016

Mass Torts Judicial Forum with Hon. Marina Corodemus (ret.) – Settling Strategies for MDLs, April 15, 2016

HarrisMartin's MDL Conference: Morcellator, Fluoroquinolone (FLQ) and Invokana Litigation – Laparoscopic Power Morcellators *Failure to Warn*, September 30, 2015

ALI CLE:  The Jurisdiction Game in Class Actions and Mass Torts: Removal, Remand and the Battle to Pick (and Stick With) A Chosen Forum, December 5, 2014

AAJ: Stryker Rejuvenate, December 2014

Strafford Live CLE Webinars: False Advertising Consumer Class Actions: Navigating Complex Issues of Standing, Damages, CAFA Removal and More, July 8, 2014

Harris Martin's Mass Tort Litigation Conference with Judge Marina Corodemus (Ret.): Settlement v. Trial – Coordination, Conflicts & Committees (Panel Discussion), April 4, 2014

British Institute of International and Comparative Law's Oral Contraceptives-Medical, Regulatory and Legal Perspectives Product Liability Forum: US Case Law & Regulatory Background, November 12, 2013

AAJ Convention: Partnering Up: Leveraging Your Assets as a Woman or Minority to Enter a New Realm – Medical Devices and Pharmaceuticals, July 22, 2013

NYSTLI Nursing Home Seminar:  Qui Tam actions for  Nursing Homes, June 19, 2013

Harris Martin Conference: Lessons Learned from IUD Litigation, March 20, 2013

Harris Martin's MDL Litigation Conference: Compounding Pharmacy Fungal Meningitis Claims, January 30, 2013

ALI CLE – International Discovery: Understanding and Dealing with Foreign Discovery Requirements (Panel Discussion), November 13, 2012

MDL Conference: Biomet and Metal-on-Metal Hip Implant Litigation  -- Zimmer Durom, September 19, 2012

Thomson Reuters and HB Litigation Conferences Present - Masters of the Courtroom: Elite Trial Attorneys Share Their Methods, July 12, 2012

National Complex Litigation Conference: A Symposium on Current and Emerging Issues -- Litigation in Active State Court Jurisdictions, June 27, 2012

517556.1

Mass Tort Ligation Conference with Judge Marina Corodemus (Ret.)- DOJ Prosecution of Fraud and Kick-Back Foreign Governments, June 4, 2012

Washington & Lee Law School, Professional Responsibility, February, 2012

Mass Torts Made Perfect Presents: Actos and Pelvic Mesh Litigation Update, A Plaintiffs Only Forum, February 8, 2012

Judicial Teleconference Series with Hon. Marina Corodemus – CPSA -- Buyer Beware, October 5, 2010

The Do's and Don'ts of Taking and Defending Depositions of a Party Deponent, July, 2010, AAJ Presentation, July 2010

AAJ Presentation, "Practice Tips I Wish I'd Known from the Beginning," July 10, 2010.

AAJ Presentation, "Heart Devices," July 10, 2010

AAJ Presentation. "Diffusing the Defense While Making Your Case Through Expert Testimony"

American Bar Association, Pharmaceutical Litigation, November 14, 2009, Nutley New Jersey

Presentation, "The Ethical Considerations incident to State and Federal Mass Tort Coordination", AAJ, San Francisco, CA 2009

Presentation, New York State Trial Lawyers, Three Part Panel Program, "Mass Torts: State and Federal Issues", New York, New York 2009

Presentation, Bar of the Association of the City of New York, Products Liability Committee, "*Post-Reigel v. Medtronic, Inc.*: the State of the Law", New York, New York, Spring 2009

American Bar Association, Women in Product Liability Law, New York, New York Spring 2008

Presentation, "The Advantages or Disadvantages of Trying a Mass Tort or Class Action in Stages", A Regional CLE Workshop on Mass Torts and Class Actions Involving Toxic Torts & Chemical and Industrial Products, September 18, 2008, Wilmington, Delaware

Proving and Defending Damages Claims, a Fifty State Survey, Wolters Kluwer/ Aspen Publishers (2007), and Supplement (2008); (2009); (2010)

American Bar Association, Pharmaceutical Litigation, "Ethics of Investigations" November 14, 2007, Nutley, New Jersey

Second Conference on Drug and Medical Device Litigation, "Effectively Managing Mass Tort Litigation and Class Actions", October 26, 2007 New York, New York

AAJ Presentation, Expert Witness/Daubert Litigation Group, Summer, 2007

517556.1

Chair, Mealey's Drug & Device Conference, Spring 2007

Member, Association of the Bar of the City of New York, Product Liability Committee

Mealey's Products Liability Advisory Board  (2006 – 2007)

American Bar Association, Products Liability Committee, "Current Issues in Pharmaceutical Litigation and Policy" November 16, 2006

Women in Products Liability, American Bar Association, "Ethics of Trial Litigation" September 14, 2006

New York Superlawyer Award, 2006 through 2011

Mealey's Heart Device Litigation Teleconference, July 21, 2005

New York State Trial Lawyers, Chaired Three Part Series, Rainmaking for Women Attorneys (2004-2005)

Association of the Bar of the City of New York, Judiciary Committee (2004- 2007)

Brooklyn Law School, Guest Faculty, Complex Litigation and Business Crimes  (2000-2006)

National Institute for Trial Advocacy, Faculty, New York Law School  (2000- 2005)

American Bar Association, Vice Chair, Trial Techniques, TIPS (2002- 2005)

National Institute Trial Advocacy, Federal Rules of Appellate Procedure (2002)

Scientific Evidence, Supplement (2001)

Scientific Evidence, The Defense Perspective, ed., Brown, J., Aspen Law Pub. (2000)

2000 - Affair Chair, ABA Annual Meeting, Torts & Insurance Practice Section, NYC

2000, London TIPS, Faculty Development of Program on Comparative Trial Advocacy

1999- Faculty, National Institute for Trial Advocacy, Trial Techniques, Rutgers Law School

1999 - Faculty, Trial of the 21st Century: The Visual Trial, Atlanta, ABA Annual Meeting

1999, Co-Author, Scientific Evidence, Chapter 6, From the Defense Perspective, Aspen Law Pub.

1998-99 - Chair, Practising Law Institute, How To Commence a Civil Action, a Three- Part, Twelve-Hour Series.

1998 - Chair, Women as Trial Advocates, New York, New York  Two-Day Presentation

1997 - Chair, Trial Techniques Committee, Tort & Insurance Practices, American Bar Association

517556.1

1996 - Chair Elect, Trial Techniques Committee, Tort & Insurance Practices, American Bar Association

Faculty, Rutgers Law School, Intensive Trial Advocacy Program, May 1997

Faculty, National Institute for Trial Advocacy, Deposition Skills, Rutgers Law School, July, 1996

Faculty, National Institute for Trial Advocacy, Trial Techniques, Rutgers Law School, March, 1997

Faculty and Planning Committee, Practising Law Institute, "First Annual Civil Litigation Institute," March, 1997

Faculty, National Institute for Trial Advocacy, Trial Techniques, Skadden, Arps, New York, Spring, 1996

Faculty, National Institute for Trial Advocacy, Trial Techniques, Rutgers Law School, February, 1996

Faculty, Mealey's Conference on Lead Liability, 1996

Practising Law Institute, Products Liability Advisory Committee, (1993 – present)

Chair, Practising Law Institute Program, "Tort Updates", Telecast September 21, 1995 to Seventy Satellite Cities

New York State Trial Lawyers Association, Faculty, "Proving a Design Defect", April, 1995

American Bar Association, Editor, Trial Techniques Newsletter, Tort and Insurance Practices Section, 1995-1996; and 1993-1994

American Bar Association Torts and Insurance Practices Section, Trial Techniques Committee, Vice Chair, 1993-1994 and August, 1995-1996

Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present

Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-1994

Faculty, Practising Law Institute, "Proving the Slip and Fall Case," May, 1993

Faculty, Pennsylvania Bar Association, "Continuing Legal Education, Ethics: Attorney Solicitation and Advertising", Fall, 1992

Pennsylvania Bar Association, Committee on Legal Ethics and Professionalism, (1993-present)

Pennsylvania Bar Association, Committee on Attorney Advertising, (1993-present)

517556.1

Vice-Chair of the Pennsylvania Bar Association Task Force on Attorney Advertising, 1991-1992

Member of Committee on Professionalism, Philadelphia Bar Association, 1991-1992

Faculty, and National Institute for Trial Advocacy, Temple University School of Law, 1991

Participant Faculty, Temple University School of Law Trial Advocacy Program, 1990-1992

Faculty, Pennsylvania Trial Lawyers Association, "Cross-Examination of Medical Experts in Multiple Plaintiffs' Toxic Tort Cases," July, 1990

Faculty, Philadelphia Bar Association, Trial Advocacy Program, 1990

Lecturer on Mammography and Medical Malpractice for the Mammography Society, 1989

Faculty, Philadelphia Trial Lawyers Association, "Use of Videotape in the Courtroom", 1989

Faculty, Temple University Trial Advocacy Program for Practitioners, "Proving Damages at Trial", 1989

Member of the American Bar Association, Pennsylvania Bar Association, New York State Bar Association, Federal Bar Association and New York Women's Bar Association.


## EDUCATION

| | |
|---|---|
| 1981 – 1983 | **UNIVERSITY OF PENNSYLVANIA POST-BACCALAUREATE PRE-HEALTH PROGRAM** |

Completed all requisite courses in the pre-medical curriculum. Volunteer Extern, Hospital of the University of Pennsylvania, Melanoma Clinic, Obstetrics-Gynecology High Risk Clinic, and Wednesday Ob-Gyn Open Clinic. Contributed to medico-legal research projects on pain maintenance, consent forms and alternatives to standard medical treatment of cancer.

| | |
|---|---|
| 1974 – 1977 | **TEMPLE UNIVERSITY SCHOOL OF LAW, Juris Doctorate** |

Dean's List; graduated top 5%

Legal Intern, Summer, 1976, Philadelphia District Attorney's Office

Legal Intern, September 1974 - April 1976, United States' Attorney's Office, Eastern District of Pennsylvania, Civil Division

Summer, 1975, 1975, Temple University School of Law, Rome, Italy, Comparative International Law Program

| | |
|---|---|
| 1971 – 1974 | **SARAH LAWRENCE COLLEGE, Bachelor of Arts** |

## COMMUNITY SERVICE

Judiciary Committee, Association of the Bar of the City of New York, 2004 - 2007

Board of Directors, Women's Way, Philadelphia, PA

Board of Directors, Women Organized Against Rape, Philadelphia, PA

Co-Chair of the Young Lawyers Division of United Federation of Jewish Charities Victim Assistance Project, New York, New York

Pro Bono criminal defense in matters throughout the U.S., particularly in Alabama and New York, life without parole and mandatory minimum cases, 1993-2001

1354738.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

# Lieff Cabraser Heimann & Bernstein

Attorneys at Law

|  |  |
|---|---|
| 275 Battery Street, 29th Floor | 250 Hudson Street, 8th Floor |
| San Francisco, CA 94111-3339 | New York, NY 10013-1413 |
| Telephone: 415.956.1000 | Telephone: 212.355.9500 |
| Facsimile: 415.956.1008 | Facsimile: 212.355.9592 |
| | |
| 222 2nd Avenue South, Suite 1640 | Frauenplatz 2 |
| Nashville, TN 37201 | 80331 Munich, GERMANY |
| Telephone: 615.313.9000 | Telephone: 49.89.25.55.2361 |
| Facsimile: 615.313.9965 | Facsimile: 49.89.25.55.2359 |

Email: mail@lchb.com
Website: www.lieffcabraser.com

***FIRM PROFILE:***

Lieff Cabraser Heimann & Bernstein, LLP, is a 120-attorney AV-rated law firm founded in 1972 with offices in San Francisco, New York, Nashville, and Munich. We have a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, consumer protection, antitrust, environmental and toxic exposures, False Claims Act, digital privacy and data security, and human rights. Our clients include individuals, classes and groups of people, businesses, and public and private entities.

Lieff Cabraser has served as Court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.

Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations. We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

1043044.1

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past four decades. We have assisted our clients in recovering over $124 billion in verdicts and settlements. Twenty-eight cases have been resolved for over $1 billion; another 55 have resulted in verdicts or settlements at or in excess of $100 million.

*The National Law Journal* has recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms for fourteen years, and we are a member of its Plaintiffs' Hot List Hall of Fame, "representing the best qualities of the plaintiffs' bar and demonstrating unusual dedication and creativity." *The National Law Journal* separately recognized Lieff Cabraser as one of the "50 Leading Plaintiffs Firms in America."

In January of 2021, *The American Lawyer* named Lieff Cabraser its "Boutique/Specialty Litigation Firm of the Year." We saw six partners named to *Lawdragon's* "500 Leading Lawyers" for 2021, along with our second partner named to the publication's "Hall of Fame." *Best Lawyers'* 2021 rankings include thirty individual "Best Lawyer" lawyer listings as well as thirteen tier one placements (including national mass tort/class actions) and three California "Lawyer of the Year" rankings for antitrust, product liability, and mass tort class actions.

In April of 2021, *Benchmark Litigation* named Lieff Cabraser its "California Plaintiff Firm of the Year" for the third year in a row, and we were 2019 finalists for the publication's national "Plaintiff Law Firm of the Year" award. In December 2019, *The American Lawyer* included Lieff Cabraser in its "Top 50 Litigation Departments in the U.S.," the only all-plaintiff-side litigation firm included among the firms recognized.

In September of 2019, *Law360* named Lieff Cabraser a "California Powerhouse" for litigation after naming our firm its "Class Action Firm of the Year" in January 2019. In July of 2019, Public Justice awarded Lieff Cabraser its "Trial Lawyer of the Year" award. *The National Law Journal* awarded our firm its 2019 "Elite Trial Lawyer" awards in the fields of Consumer Protection and Cybersecurity/Data Breach.

*U.S. News and Best Lawyers* has selected Lieff Cabraser as a national "Law Firm of the Year" six times in the last twelve years, in categories including Mass Torts Litigation/Class Actions – Plaintiffs and Employment Law – Individuals. In 2017, Lieff Cabraser's Digital Privacy and Data Security practice group was named "Privacy Group of the Year" by *Law360*, and the firm's Consumer Protection practice group was named the publication's "Consumer Protection Group of the Year" as well.

In 2016, *Benchmark Litigation* named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, *The National Law Journal* chose our firm as one of nine "Elite Trial Lawyers" nationwide, and *Law360* selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation." The publication separately noted that our firm "persists as a formidable agency of change, producing world class legal work against some of the most powerful corporate players in the world today."

*CASE PROFILES:*

**I.      Personal Injury and Products Liability Litigation**

      **A.      Current Cases**

          1.      ***Southern California Fire Cases (California Thomas Wildfire & Mudslide Litigation)***, JCCP No. 4965 (Cal. Supr. Ct.). Lieff Cabraser partners Lexi J. Hazam and Robert J. Nelson serve as Co-Lead Counsel in consolidated individual and class action lawsuits against Southern California Edison over the role of the utility's equipment in starting the devastating Thomas Fire that ravaged Southern California in December 2017 and the resulting subsequent mudslides in Montecito that killed 21 people. The action seeks restitution for personal and business losses alleged to have occurred as a result of Southern California Edison's failure to properly and safely maintain its electrical infrastructure in Santa Barbara and Ventura Counties.

              Thorough post-fire investigations through the spring of 2019 have determined that what became known as the Thomas Fire was a result of the merging of the Ventura County Koenigstein Fire (caused by the separation of an energized conductor near an insulator on an SCE-operated power pole, which then fell to the ground along with molten metal particles and ignited the dry vegetation below) and the Thomas Fire (caused by power lines owned by SCE coming into contact with each other during high winds). Both the Koenigstein Fire and the Thomas Fire started on the same electrical circuit; hours after they began, the Koenigstein Fire merged with the Thomas Fire and collectively became known as the Thomas Fire. The fire burned a total of 281,893 acres, destroying 1,063 structures and resulting in one civilian and one firefighter fatality.

          2.      ***2017 California North Bay Fire Cases***, JCCP No. 4955 (Cal. Supr. Ct.). Lieff Cabraser founding partner Elizabeth Cabraser and firm partner Lexi Hazam serve as Chairs of the Class Action Committee in the consolidated lawsuits against Pacific Gas & Electric relating to losses from the 2017 San Francisco Bay Wine Country Fires. Cabraser and Hazam also serve on the Individual Plaintiffs Executive Committee in the litigation. In November of 2017, Lieff Cabraser filed individual and class action lawsuits against PG&E for losses relating to the devastating October 2017 North Bay Fires. The lawsuit sought to hold PG&E accountable for damages to real and personal property, loss of income, and loss of business arising from the fires. In the wake of the devastating fires that burned throughout northern California in October of 2017, more than 50 separate lawsuits were filed in multiple courts seeking to hold PG&E liable.

In January 2018, the lawsuits were consolidated into a single action in San Francisco Superior Court. Cal Fire has determined that of the 21 major fires last fall in Northern California, at least 17 were caused by power lines, poles and other equipment owned by Pacific Gas and Electric Company. PG&E had attempted to coordinate the actions in five separate clusters, including in counties that to date have no pertinent cases, but the Court held that issues of commonality and efficiency mandated coordination on a single court in San Francisco.

PG&E made multiple demurrers to plaintiffs' inverse condemnation claims, seeking the outright dismissal of plaintiff's' claims for damages against the utility unless PG&E was granted the right to pass any damages award on to its ratepaying customers. In May 2018, the Court issued an order overruling PG&E's demurrers. The Court disagreed with PG&E's arguments on all counts, holding in favor of plaintiffs and directing PG&E to answer plaintiffs' pending complaints. In June of 2018, PG&E announced that it expected to be held liable for damage from most if not all of the deadly and widespread fires that coursed through the North San Francisco Bay Area in October of 2017, recording so far a $2.5 billion charge to cover losses. PG&E noted that the $2.5 billion charge represents the low end of its anticipated potential losses.

3.  ***Camp Fire Cases***, JCCP No. 4995 (Cal. Supr. Court). Lieff Cabraser represents the family of Ernest Francis "Ernie" Foss, beloved father and musician, who was killed in the November 2018 Camp Fire, the deadliest and most destructive wildfire in modern California history. The fire broke out in Northern California near Chico in early November 2018 and quickly grew to massive size, affecting over 140,000 acres and killing at least 80 people, destroying nearly 14,000 homes and nearly obliterating the town of Paradise, and causing the evacuation of over 50,000 area residents.

In addition, Lieff Cabraser represents plaintiffs in a class action lawsuit as well as hundreds of individual suits filed against PG&E for the devastating property damage, economic losses, and disruption to homes, businesses, and livelihoods caused by the Camp wildfire. The lawsuits allege the Camp Fire was started by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. The plaintiffs further claim that despite PG&E's knowledge that electrical infrastructure was aging, unsafe, and vulnerable to environmental conditions, PG&E failed to take action that could have prevented the deadliest and most destructive wildfire in California's history.

4.  ***In re PG&E Corporation***, Case No. 19-30088 and In re Pacific Gas and Electric Company, Case No. 19-30089 (U.S. Bankruptcy Court, N.D. Cal. – San Francisco Division). In January of 2019, in the face of

overwhelming liability from pending wildfire litigation, including the North Bay and Camp Fire JCCPs, PG&E Corporation and Pacific Gas and Electric Company filed voluntary petitions for relief under Chapter 11 of the federal Bankruptcy Code. As a result of the bankruptcy filing, the Camp Fire and North Bay Fires proceedings in state court have been stayed. In February 2019, Andrew R. Vara, the Acting United States Trustee for Region 3, appointed an official committee of tort claimants to represent the interests and act on behalf of all persons with tort claims against PG&E, including wildfire victims, in the bankruptcy proceedings. Lieff Cabraser represents Angela Foss Loo as a member of the Official Committee of Tort Claimants.

5. ***Woolsey Fire Cases***, JCCP No. 5000 (Cal Supr. Ct.). Judge William F. Highberger named Lexi J. Hazam as Co-Lead Counsel for Individual Plaintiffs in the coordinated Woolsey Fire Cases against Southern California Edison relating to the devastating 2018 fire that burned more than 1000 homes and 96,000 acres in Los Angeles and Ventura Counties. The action includes claims for negligence, trespass, inverse condemnation, and violation of the California Public Utilities and Health and Safety codes, and seeks damages for the fires victims' losses.

6. ***In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2151 (C.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court representing individuals injured, and families of loved ones who died, in Toyota unintended acceleration accidents. The complaints charge that Toyota took no action despite years of complaints that its vehicles accelerated suddenly and could not be stopped by proper application of the brake pedal. The complaints further allege that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate a brake override system and other readily available safeguards that could have prevented unintended acceleration.

In December 2013, Toyota announced its intention to begin to settle the cases. In 2014, Lieff Cabraser played a key role in turning Toyota's intention into a reality through assisting in the creation of an innovative resolution process that has settled scores of cases in streamlined, individual conferences. The settlements are confidential. Before Toyota agreed to settle the litigation, plaintiffs' counsel overcame significant hurdles in the challenging litigation. In addition to defeating Toyota's motion to dismiss the litigation, Lieff Cabraser and co-counsel demonstrated that the highly-publicized government studies that denied unintended acceleration, or attributed it to mechanical flaws and driver error, were flawed and erroneous.

7. ***Retrievable Inferior Vena Cava Blood Filter Injuries, In re Bard IVC Filters Prods. Liab. Litig.***, MDL No. 2641 (D. Ariz.). Inferior Vena Cava blood filters or IVC filters are small, basket-like medical devices that are inserted into the inferior vena cava, the main blood vessel that returns blood from the lower half of the body to the heart. Tens of thousands of patients in the U.S. are implanted with IVC filters in order to provide temporary protection from pulmonary embolisms. However, these devices have resulted in multiple complications including device fracture, device migration, perforation of various organs, and an increased risk for venous thrombosis. Due to these complications, patients may have to undergo invasive device removal surgery or suffer heart attacks, hemorrhages, or other major injuries. We represent injured patients and their families in individual personal injury and wrongful death lawsuits against IVC filter manufacturers, and Lieff Cabraser attorney Wendy R. Fleishman serves on the Plaintiffs Executive Committee in the IVC Filter cases in the federal multidistrict litigation.

8. ***Injury and Death Lawsuits Involving Wrongful Driver Conduct and Defective Tires, Transmissions, Cars and/or Vehicle Parts (Seat Belts, Roof Crush, Defective seats, and Other Defects)***. Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by wrongful driver conduct and by unsafe and defective vehicles, tires, restraint systems, seats, and other automotive equipment. The firm also represent clients in actions involving fatalities and serious injuries from tire and transmission failures as well as rollover accidents (and defective roofs, belts, seat back and other parts) as well as defective transmissions and/or shifter gates that cause vehicles to self-shift from park or false park into reverse. Our attorneys have received awards and recognition from *California Lawyer* magazine (Lawyer of the Year Award), the Consumer Attorneys of California, and the San Francisco Trial Lawyers Association for their dedication to their clients and outstanding success in vehicle injury cases.

9. ***In Re: Abilify (Aripiprazole) Products Liability Litigation***, MDL No. 2734 (N.D. Fla.). We represented clients who incurred crippling financial losses and pain and suffering from compulsive gambling caused by the drug Abilify. In May 2016 the FDA warned that Abilify can lead to damaging compulsive behaviors, including uncontrollable gambling. The gambling additions could be so severe that patients lost their homes, livelihoods, and marriages. The $6+ billion a year-earning drug was prescribed for nearly 9 million patients in 2014 alone. In December 2016, Lieff Cabraser partner Lexi Hazam was appointed by the court overseeing the nationwide Abilify gambling injuries MDL litigation to the Plaintiffs Executive Committee and Co-Chairs the Science and Expert Sub-

Committee for the nationwide Abilify MDL litigation. The Court issued a Daubert decision admitting almost all of Plaintiffs' experts in 2018, and on the eve of bellwether trials, the parties entered settlement negotiations. Almost all of the cases have now resolved through settlement.

10. ***In re Engle Cases***, No. 3:09-cv-10000-J-32 JBT (M.D. Fl.).  Lieff Cabraser represents Florida smokers, and the spouses and families of loved ones who died, in litigation against the tobacco companies for their 50-year conspiracy to conceal the hazards of smoking and the addictive nature of cigarettes.

On February 25th, 2015, a settlement was announced of more than 400 Florida smoker lawsuits against the major cigarette companies Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company.  As a part of the settlement, the companies will collectively pay $100 million to injured smokers or their families. This was the first settlement ever by the cigarette companies of smoker cases on a group basis.

Lieff Cabraser attorneys tried over 20 cases in Florida federal court against the tobacco industry on behalf of individual smokers or their estates, and with co-counsel obtained over $105 million in judgments for our clients.  Two of the jury verdicts Lieff Cabraser attorneys obtained in the litigation were ranked by *The National Law Journal* as among the Top 100 Verdicts of 2014. In 2020, the Eleventh Circuit found in favor of the plaintiff in one of our Engle progeny tobacco injury lawsuits against cigarette manufacturer Philip Morris, holding that a punitive damages award of over $20 million was constitutionally appropriate and not unconstitutionally excessive as Philip Morris had repeatedly argued after losing the original injury trial in 2013.

11. ***In re Takata Airbag Litigation***, MDL No. 2599 (S.D. Fl.). Lieff Cabraser served on the Plaintiffs Steering Committee in the national litigation related to Takata Corporation's defective and dangerous airbags manufactured by Japan-based Takata Corporation. Nearly 42 million affected vehicles were recalled worldwide, making this the largest automotive recall in U.S. history.

The airbags contained an unstable propellant that could cause the bags to explode upon impact in an accident, shooting metal casing debris towards drivers and passengers. Close to 300 injuries, including 23 deaths, were linked to the airbags. The complaints charged that the company knew of defects in its airbags a decade ago after conducting secret tests of the products that showed dangerous flaws. Rather than alert federal safety regulators to these risks, Takata allegedly ordered its engineers to delete the test data. The complaints also alleged that the vehicle manufacturers

who used these airbags ignored numerous warning signs that they were not safe.

To date, Lieff Cabraser and our co-counsel have secured over $1.5 billion in settlements from Honda, Toyota, Ford, Nissan, BMW, Subaru, and Mazda. Litigation continues against Volkswagen, Mercedes, Fiat Chrysler, and General Motors.

12. ***Stryker Metal Hip Implant Litigation***, MDL No. 2441 (D. Minn.). Lieff Cabraser represents over 60 hip replacement patients nationwide who received the recalled Stryker Rejuvenate and ABG II modular hip implant systems. Wendy Fleishman serves on the Plaintiffs' Lead Counsel Committee of the multidistrict litigation cases. These patients have suffered tissue damage and have high metal particle levels in their blood stream. For many patients, the Stryker hip implant failed necessitating painful revision surgery to extract and replace the artificial hip.

On November 3, 2014, a settlement was announced in the litigation against Stryker Corporation for the recall of its Rejuvenate and ABG II artificial hip implants. Under the settlement, Stryker will provide a base payment of $300,000 to patients that received the Rejuvenate or ABG II hip systems and underwent revision surgery by November 3, 2014, to remove and replace the devices. Stryker's liability is not capped. It is expected that the total amount of payments under the settlement will far exceed $1 billion dollars. Payments under the settlement program are projected for disbursement at the end of 2015.

13. ***DePuy Metal Hip Implants Litigation***, MDL No. 2244 (N.D. Tex.). Lieff Cabraser represents nearly 200 patients nationwide who received the ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson. In 2010, DePuy Orthopedics announced the recall of its all-metal ASR hip implants, which were implanted in approximately 40,000 U.S. patients from 2006 through August 2010. The complaints allege that DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the device. In January 2011, in *In re DePuy Orthopaedics, Inc.* ASR Hip Implant Products, MDL No. 2197, the Court overseeing all DePuy recall lawsuits in federal court appointed Lieff Cabraser partner Wendy R. Fleishman to the Plaintiffs' Steering Committee for the organization and coordination of the litigation. In July 2011, in the coordinated proceedings in California state court, the Court appointed Lieff Cabraser partner Robert J. Nelson to serve on the Plaintiffs' Steering Committee.

In 2013, Johnson & Johnson announced its agreement to pay at least $2.5 billion to resolve thousands of defective DePuy ASR hip implant lawsuits. Under the settlement, J&J offers to pay a base award of $250,000 to U.S.

citizens and residents who are more than 180 days from their hip replacement surgery, and prior to August 31, 2013, had to undergo revision surgery to remove and replace their faulty DePuy hip ASR XL or ASR resurfacing hip. The $250,000 base award payment will be adjusted upward or downward depending on medical factors specific to each patient. Lieff Cabraser also represents nearly 100 patients whose DePuy Pinnacle artificial hips containing a metal insert called the Ultamet metal liner have prematurely failed.

14. ***Mirena Litigation***. A widely-used, plastic intrauterine device (IUD) that releases a hormone into the uterus to prevent pregnancy, Mirena is manufactured by Bayer Healthcare Pharmaceuticals. Lieff Cabraser represents patients who have suffered serious injuries linked to the IUD. These injuries include uterine perforation (the IUD tears through the cervix or the wall of the uterus), ectopic pregnancy (when the embryo implants outside the uterine cavity), pelvic infections and pelvic inflammatory disease, and thrombosis (blood clots).

15. ***Birth Defects Litigation***. Lieff Cabraser represents children and their parents who have suffered birth defects as a result of problematic pregnancies and improper medical care, improper prenatal genetic screening, ingestion by the mother of prescription drugs during pregnancy which had devastating effects on their babies. These birth defects range from heart defects, physical malformations, and severe brain damage associated with complex emotional and developmental delays. Taking of antidepressants during pregnancy has been linked to multiple types of birth defects, neonatal abstinence syndrome from experiencing withdrawal of the drug, and persistent pulmonary hypertension of the newborn (PPHN).

16. ***Vaginal Surgical Mesh Litigation***. Lieff Cabraser represents more than 300 women nationwide who have been seriously injured as a result of polypropylene vaginal surgical mesh implantation as a treatment for pelvic organ prolapse or stress urinary incontinence. Manufactured by Johnson & Johnson, Boston Scientific, AMS, Bard, Caldera, Coloplast, and others, these products have been linked to serious side effects including erosion into the vaginal wall or other organs, infection, internal organ damage, and urinary problems. As of early 2016, the firm is in all phases of litigation and settlement on these cases.

17. ***Xarelto Litigation***. Lieff Cabraser represents patients prescribed Xarelto sold in the U.S. by Janssen Pharmaceuticals, a subsidiary of Johnson & Johnson. The complaints charge that Xarelto, approved to prevent blood clots, is a dangerous and defective drug because it triggers in certain patients uncontrolled bleeding and other life-threatening complications. Unlike Coumadin, an anti-clotting drug approved over 50

years ago, the concentration of Xarelto in a patient's blood cannot be reversed in the case of overdose or other serious complications. If a Xarelto patient has an emergency bleeding event -- such as from a severe injury or major brain or GI tract bleeding -- the results can be fatal.

18. ***Benicar Litigation***, MDL No. 2606 (D. N.J.). Lieff Cabraser represents patients prescribed the high blood pressure medication Benicar who have experienced chronic diarrhea with substantial weight loss, severe gastrointestinal problems, and the life-threatening conditions of sprue-like enteropathy and villous atrophy in litigation against Japan-based Daiichi Sankyo, Benicar's manufacturer, and Forest Laboratories, which marketed Benicar in the U.S.

The complaints allege that Benicar was insufficiently tested and not accompanied by adequate instructions and warnings to apprise consumers of the full risks and side effects associated with its use. Lieff Cabraser attorney Lexi J. Hazam serves on the Plaintiffs' Steering Committee for the nationwide Benicar MDL litigation and was appointed Co-Chair of the Benicar MDL Plaintiffs' Science and Experts Committee. Plaintiffs recently filed motions to compel defense to produce additional discovery. The judge ruled with plaintiffs in the fall of 2015. In August 2017, a settlement with Daiichi Sankyo Inc. and Forest Laboratories Inc. valued at $300 million covering approximately 2,300 Benicar injury cases in both state and federal courts was announced.

19. ***Risperdal Litigation***. In 2013, Johnson & Johnson and its subsidiary Janssen Pharmaceuticals, the manufacture of the antipsychotic prescription drugs Risperdal and Invega, entered into a $2.2 billion settlement with the U.S. Department of Justice for over promoting the drugs. The government alleged that J&J and Janssen knew Risperdal triggered the production of prolactin, a hormone that stimulates breast development (gynecomastia) and milk production.

Lieff Cabraser represents parents whose sons developed abnormally large breasts while prescribed Risperdal and Invega in lawsuits charging that Risperdal is a defective and dangerous prescription drug and seeking monetary damages for the mental anguish and physical injuries the young men suffered.

20. ***Power Morcellators Litigation***, MDL No. 2652 (D. Kan.). Lieff Cabraser represents women who underwent a hysterectomy (the removal of the uterus) or myomectomy (the removal of uterine fibroids) in which a laparoscopic power morcellator was used. In November 2014, the FDA warned surgeons that they should avoid the use of laparoscopic power morcellators for removing uterine tissue in the vast majority of cases due to the risk of the devices spreading unsuspected cancer. Based on current data, the FDA estimates that 1 in 350 women undergoing hysterectomy or

myomectomy for the treatment of fibroids have an unsuspected uterine sarcoma, a type of uterine cancer that includes leiomyosarcoma.

21.    ***In re New England Compounding Pharmacy Inc. Products Liability Litigation***, MDL No. 2419 (D. Mass.). Lieff Cabraser represents patients injured or killed by a nationwide fungal meningitis outbreak in 2012. More than 14,000 patients across the U.S. were injected with a contaminated medication that caused the outbreak. The New England Compounding Center ("NECC") in Framingham, Massachusetts, manufactured and sold the drug – an epidural steroid treatment designed to relieve back pain.  The contaminated steroid was sold to patients at a number of pain clinics. Nearly 800 patients developed fungal meningitis, and more than 70 patients died.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the multi-district litigation, and our attorneys act as federal-state liaison counsel. In May 2015, the U.S. Bankruptcy Court approved a $200 million partial settlement for victims of the outbreak. Bellwether trials against remaining defendants commenced in 2016. Lieff Cabraser is expected to play a lead role in the bellwether trials.

## B.    Successes

1.    ***Individual General Motors Ignition Switch Defect Injury Lawsuits***, MDL No. 2543 (S.D.N.Y.).  Lieff Cabraser was co-lead counsel in *In re General Motors LLC Ignition Switch Litigation*, an MDL involving economic loss and personal injury/wrongful death (PI/WD) cases arising out of GM's manufacture and sale of vehicles with defective ignition switches and other defects. Lieff Cabraser had primary co-responsibility for consumer claims, representing five nationwide classes of GM vehicle owners and lessees whose claims resolved for $121 million, plus fees, in a settlement granted final approval by Judge Jesse M. Furman, S.D.N.Y., on December 18, 2020.  Judge Furman also oversaw a series of bellwether PI/WD trials, as well as litigation resulting in multiple individual and group PI/WD settlements.

2.    ***Multi-State Tobacco Litigation***.  Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general.  The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking.  In California

alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025.

3.  ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represented patients who suffered heart attacks or strokes, and the families of loved ones who died, after having been prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, which was tried in the federal court in New Orleans. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced it had entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings. Merck paid $4.85 billion into a settlement fund for qualifying claims.

4.  ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser served on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

5.  ***Fen-Phen ("Diet Drugs") Litigation***. Since the recall was announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). The firm served as counsel for the plaintiff who filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of the risks associated with the drugs. In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation in federal court. In August 2000, the Court approved a

$4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser represented over 2,000 persons that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram screening for damage) due to and/or following exposure to Fen-Phen and obtained more than $350 million in total for clients in individual cases and/or claims.

6. ***In re Actos (Pioglitazone) Products Liability Litigation***, MDL No. 2299 (W.D. La.). Lieff Cabraser represents 90 diabetes patients who developed bladder cancer after exposure to the prescription drug pioglitazone, sold as Actos by Japan-based Takeda Pharmaceutical Company and its American marketing partner, Eli Lilly.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the Actos MDL. In 2014, Lieff Cabraser served on the trial team in the case of *Allen v. Takeda*, working closely with lead trial counsel in federal court in Louisiana. The jury awarded $9 billion in punitive damages, finding that Takeda and Lilly failed to adequately warn about the bladder cancer risks of Actos and had acted with wanton and reckless disregard for patient safety. The trial judge reduced the punitive damage award but upheld the jury's findings of misconduct, and ruled that a multiplier of 25 to 1 for punitive damages was justified.

In April 2015, Takeda agreed to settle all bladder cancer claims brought by Type 2 diabetes patients who took Actos prior to December 1, 2011 and who were diagnosed with bladder cancer on or before April 28, 2015 and were represented by counsel by May 1, 2015. The settlement amount is $2.4 billion. Average payments of about $250,000 per person will be increased for more severe injuries.

7. ***Jane Doe et al. v. George Tyndall and the University of Southern California***, Case No. 2:18-cv-05010 (C.D. Cal.). In June of 2018, Lieff Cabraser and co-counsel filed a class action lawsuit on behalf of women who were sexually abused, harassed, and molested by gynecologist George Tyndall, M.D., while they were students at University of Southern California ("USC"). As alleged in the complaint, despite the fact that USC has publicly admitted that it received numerous complaints of Tyndall's sexually abusive behavior, dating back to at least the year 2000, USC actively and deliberately concealed Tyndall's sexual abuse for years, continuing to grant Tyndall unfettered sexual access to the female USC students in his care. USC hid the complaints despite the fact that many of the complaints came directly from its own employees and staff, including nurses and medical assistants who were physically present during the examinations as "chaperones," and witnessed the sexual misconduct firsthand. Despite receiving years of serious complaints of

significant misconduct about Tyndall, including sexual misconduct, USC failed to take any meaningful action to address the complaints until it was finally forced to do so in June 2016.

On February 12, 2019, University of Southern California (USC) students and alumni filed a class action settlement agreement resolving claims related to gynecologist George Tyndall, M.D. that will require USC to adopt and implement significant and permanent procedures for identification, prevention, and reporting of sexual and racial misconduct, as well as recognize all of Tyndall's patients through a $215 million fund that gives every survivor a choice in how to participate. The settlement proposes a tiered structure for recovery that allows victims to choose the level of engagement they wish to have with the claims process and how they wish to communicate their stories. All women who USC's records show saw Tyndall for a women's health visit will automatically get a $2,500 check, and the further tiers are structured to allow victims to choose their level of engagement with the process – if they only want to submit claims in writing, they can choose that, which allows them a certain range of potential claim payments above the 2,500 floor; if they are willing and able to provide an interview, they can be eligible for a range up to the highest $250,000 amount. But at all levels, the settlement is designed to provide victims with a safe process within which to come forward, where they have control over how much they want to engage at their chosen level of comfort.

On February 19, 2020, Judge Steven V. Wilson of the U.S. District Court for the Central District of California granted final approval to the $215 million settlement of the gender violence and sexual abuse class action litigation filed on behalf of nearly 18,000 women against Dr. George Tyndall and the University of Southern California.

8.   ***Yaz and Yasmin Litigation***.  Lieff Cabraser represented women prescribed Yasmin and Yaz oral contraceptives who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications.  The complaints alleged that Bayer, the manufacturer of Yaz and Yasmin, failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz.  The complaints also charged that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs. To date, Bayer has announced settlements of 7,660 claims – totaling $1.6 billion – in the Yaz birth control lawsuits.

9.   ***Sulzer Hip and Knee Prosthesis Liability Litigation***.  In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant,

followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel. In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL No. 1410, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion. The revised settlement, approved by the Court in May 2002, provided patients with defective implants almost twice the cash payment as under an initial settlement. On behalf of our clients, Lieff Cabraser objected to the initial settlement.

10. ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL No. 1699 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc. and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel from both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues. The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary. The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

11. ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708 (D. Minn.). Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices. At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient

deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported since implantable cardio-defibrillators are not routinely evaluated after death. In January 2008, the parties reached a global settlement of the action. Guidant's settlements of defibrillator-related claims will total $240 million.

12. ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL No. 1013 (D. Wyo.). Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical. Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death. In October 1994, the District Court certified a nationwide class on liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995). In November 1995, the District Court approved a $150 million settlement of the litigation.

13. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the Court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the District Court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial, utilizing jury instructions and interrogatories designed by Lieff Cabraser, occurred in February 1998. A partial settlement was approved thereafter by the District Court but reversed by the Court of Appeals. In March 2001, the District Court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

14. ***Mraz v. DaimlerChrysler***, No. BC 332487 (Cal. Supr. Ct.). In March 2007, the jury returned a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father. Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park. The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for

failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

For their outstanding service to their clients in Mraz and advancing the rights of all persons injured by defective products, Lieff Cabraser partner Robert J. Nelson, the lead trial counsel, received the 2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and was also selected as finalists for Attorney of the Year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3-year-old daughter, Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as co-counsel in the trial.

15. ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron isotopes without consent while receiving prenatal care at the Vanderbilt University hospital as part of a study on iron absorption during pregnancy. The women were not informed of the nature and risks of the study. Instead, they were told that the solution they were fed was a "vitamin cocktail." In the 1960's, Vanderbilt conducted a follow-up study to determine the health effects of the plaintiffs' prior radiation exposure. Throughout the follow-up study, Vanderbilt concealed from plaintiffs the fact that they had been involuntarily exposed to radiation, and that the purpose of the follow-up study was to determine whether there had been an increased rate of childhood cancers among those exposed *in utero*. Vanderbilt also did not inform plaintiffs of the results of the follow-up study, which revealed a disproportionately high incidence of cancers among the children born to the women fed the radioactive iron.

The facts surrounding the administration of radioactive iron to the pregnant women and their children in utero only came to light as a result of U.S. Energy Secretary Hazel O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. 18 F. Supp.2d 786 (M.D. Tenn. 1998). The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

16. ***Simply Thick Litigation***. Lieff Cabraser represented parents whose infants died or suffered gave injuries linked to Simply Thick, a thickening

agent for adults that was promoted to parents, caregivers, and health professional for use by infants to assist with swallowing. The individual lawsuits alleged that Simply Thick when fed to infants caused necrotizing enterocolitis (NEC), a life-threatening condition characterized by the inflammation and death of intestinal tissue. In 2014, the litigation was resolved on confidential terms.

17. ***Medtronic Infuse Litigation***. Lieff Cabraser represented patients who suffered serious injuries from the off-label use of the Infuse bone graft, manufactured by Medtronic Inc. The FDA approved Infuse for only one type of spine surgery, the anterior lumbar fusion. Many patients, however, received an off-label use of Infuse and were never informed of the off-label nature of the surgery. Serious complications associated with Infuse included uncontrolled bone growth and chronic pain from nerve injuries. In 2014, the litigation was settled on confidential terms.

18. ***Wright Medical Hip Litigation***. The Profemur-Z system manufactured by Wright Medical Technology consisted of three separate components: a femoral head, a modular neck, and a femoral stem. Prior to 2009, Profemur-Z hip system included a titanium modular neck adapter and stem which was implanted in 10,000 patients. Lieff Cabraser represented patients whose Profemur-Z hip implant fractured, requiring a revision surgery. In 2013 and 2014, the litigation was resolved on confidential terms.

19. ***In re Zimmer Durom Cup Product Liability Litigation***, MDL No. 2158 (D. N.J.). Lieff Cabraser served as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings. First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components. In July 2008, Zimmer announced the suspension of Durom sales. The complaints charged that the Durom cup was defective and led to the premature failure of the implant. In 2011 and 2012, the patients represented by Lieff Cabraser settled their cases with Zimmer on favorable, confidential terms.

20. ***Luisi v. Medtronic***, No. 07 CV 4250 (D. Minn.). Lieff Cabraser represented over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc. Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks. A settlement of the litigation was announced in October 2010.

21. ***Blood Factor VIII and Factor IX Litigation***, MDL No. 986 (N.D. Il.) Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs

worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois.  The case was resolved through a global settlement signed in 2009.

22. ***In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation***, MDL No. 2016 (W.D. Ky.)  Lieff Cabraser served as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino.  The complaints charged that the Yamaha Rhino contained numerous design flaws, including the failure to equip the vehicles with side doors, which resulted in repeated broken or crushed legs, ankles or feet for riders.  Plaintiffs alleged also that the Yamaha Rhino was unstable due to a narrow track width and high center of gravity leading to rollover accidents that killed and/or injured scores of persons across the nation.

On behalf of victims and families of victims and along with the Center for Auto Safety, and the San Francisco Trauma Foundation, Lieff Cabraser advocated for numerous safety changes to the Rhino in reports submitted to the U.S. Consumer Product Safety Commission (CPSC).  On March 31, 2009, the CPSC, in cooperation with Yamaha Motor Corp. U.S.A., announced a free repair program for all Rhino 450, 660, and 700 models to improve safety, including the addition of spacers and removal of a rear-only anti-sway bar.

23. ***Advanced Medical Optics Complete MoisturePlus Litigation***. Lieff Cabraser represented consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi-Purpose Contact Lens Solution.  The product was recalled due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis,* caused by a parasite and use of AMO's contact lens solution.  Though AMO promoted Complete MoisturePlus Multi-Purpose as "effective against the introduction of common ocular microorganisms," the complaints charged that AMO's lens solution was ineffective and vastly inferior to other multipurpose solutions on the market.  In many cases, patients were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently.  The patients represented by Lieff Cabraser resolved their cases with AMO on favorable, confidential terms.

24. ***Gol Airlines Flight 1907 Amazon Crash***.  Lieff Cabraser served as Plaintiffs' Liaison Counsel and represents over twenty families whose loved ones died in the Gol Airlines Flight 1907 crash.  On September 29, 2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol plunged into the Amazon jungle after colliding with a smaller plane owned by the American company ExcelAire Service, Inc.  None of the 149 passengers and six crew members on board the Gol flight survived the accident.

The complaint charged that the pilots of the ExcelAire jet were flying at an incorrect altitude at the time of the collision, failed to operate the jet's transponder and radio equipment properly, and failed to maintain communication with Brazilian air traffic control in violation of international civil aviation standards.  If the pilots of the ExcelAire aircraft had followed these standards, the complaint charged that the collision would not have occurred.

At the time of the collision, the ExcelAire aircraft's transponder, manufactured by Honeywell, was not functioning.  A transponder transmits a plane's altitude and operates its automatic anti-collision system.  The complaint charged that Honeywell shares responsibility for the tragedy because it defectively designed the transponder on the ExcelAire jet, and failed to warn of dangers resulting from foreseeable uses of the transponder.  The cases settled after they were sent to Brazil for prosecution.

25. ***Comair CRJ-100 Commuter Flight Crash in Lexington, Kentucky***.  A Bombardier CRJ-100 commuter plane operated by Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway.  The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

26. ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.).  Lieff Cabraser served on the Plaintiffs' Executive Committee in federal court litigation arising out of Bausch & Lomb's 2006 recall of its ReNu With MoistureLoc contact lens solution.  Consumers who developed *Fusarium keratitis*, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective.  Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently.  The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

27. ***Helios Airways Flight 522 Athens, Greece Crash***. On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north

of Athens, Greece, resulting in the deaths of all passengers and crew. The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system. Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and eventually both were rendered unconscious, along with most of the passengers and cabin crew.

Lieff Cabraser represented the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing. Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

28.   ***Legend Single Engine "Turbine Legend" Kit Plane Crash***.  On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed.

Lieff Cabraser investigated the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration.  Lieff Cabraser represented the widow of the passenger, and the case was settled on favorable, confidential terms.

29.   ***Manhattan Tourist Helicopter Crash***. On June 14, 2005, a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represented a passenger on the helicopter and the case was settled on favorable, confidential terms.

30.   ***U.S. Army Blackhawk Helicopter Tower Collision***. Lieff Cabraser represented the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter.  The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service.  The tower warning lights

required by government regulations were inoperative. The case was resolved through a successful, confidential settlement.

31.    ***Air Algerie Boeing 737 Crash***. Together with French co-counsel, Lieff Cabraser represented the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members. The families represented by Lieff Cabraser obtained economic recoveries in a settlement of the case.

32.    ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.). Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide. In the federal multidistrict litigation, Lieff Cabraser served as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, our clients reached confidential favorable settlements with Bayer.

33.    ***United Airlines Boeing 747 Disaster***. Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.

Among other work, Lieff Cabraser developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

34.    ***Aeroflot-Russian International Airlines Airbus Disaster***. Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was en route from Moscow to Hong Kong. All passengers on board died.

According to a transcript of the cockpit voice recorder, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive.

Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered. The families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

35. ***Lockheed F-104 Fighter Crashes***. In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.

Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.

Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts and obtain substantial recoveries against an American manufacturer, based upon airplane accidents or crashes occurring outside the United States.

## II. <u>Securities and Financial Fraud</u>

### A. **Current Cases**

1. ***In re Emergent Biosolutions Inc. Derivative Litigation***, C.A. No. 2021-0974-MTZ (Del. Ch.) ("Emergent BioSolutions"). Lieff Cabraser serves as Co-Lead Counsel in this shareholder derivative action in the Delaware Court of Chancery against certain officers and directors of Emergent BioSolutions, a vaccine manufacturer, for breach of their fiduciary duties to the company by failing to implement mission-critical controls and procedures to ensure that the company manufactured safe and effective COVID-19 vaccines.

2. ***BlackRock Global Allocation Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.***, No. 3:18-cv-00343 (D.N.J.) ("Valeant"). Lieff Cabraser represents certain funds and accounts of institutional investor BlackRock in an individual action against Valeant Pharmaceuticals International, Inc. and certain of Valeant's senior officers and directors for violations of the Securities Act of 1933 and/or the Securities Exchange Act of 1934 arising from Defendants' scheme to generate revenues through massive price increases for Valeant-branded drugs while concealing from investors the truth regarding the Company's business operations, financial results, and other

material facts.  In September 2018, the court denied defendants' partial motions to dismiss, and BlackRock plaintiffs filed an amended complaint. The parties are currently engaged in discovery.

3.  ***Houston Municipal Employees Pension System v. BofI Holding, Inc., et al.,*** No. 3:15-cv-02324-GPC-KSC (S.D. Cal.).  Lieff Cabraser serves as class counsel for court-appointed lead plaintiff, Houston Municipal Employees Pension System ("HMEPS"), in this securities fraud class action against BofI Holding, Inc. and certain of its senior officers and directors.  The action charges defendants with issuing materially false and misleading statements and failing to disclose material adverse facts about BofI's business, operations, and performance.  In August 2021, the court certified a class of investors in BofI stock and call and put options.   The case is in discovery.

4.  ***Steinhoff International Holdings N.V. Securities Class Litigation.*** Lieff Cabraser, together with co-counsel, is currently funding a vehicle for investor recovery against Steinhoff International Holdings N.V. ("Steinhoff"), a Dutch corporation based in South Africa that sells retail brands of furniture and household goods throughout the world.  The vehicle, called the Stichting Steinhoff Investors Losses Foundation, is a Dutch legal entity governed by an independent board of directors.  It seeks recovery of investor losses caused by the massive, multi-year accounting fraud at Steinhoff that has wiped out billions of dollars in shareholder value.  The litigation is ongoing.

5.  ***Perrigo Company plc Securities Class Litigation***. Lieff Cabraser represents certain funds and accounts of BlackRock in an individual securities fraud action against Perrigo Company plc ("Perrigo") and certain of Perrigo's former senior executives for violations of the Securities Exchange Act of 1934.  The action charges defendants with misrepresenting and failing to disclose to investors that Perrigo was engaged in a generic drugs price-fixing scheme, that Perrigo was insulated from pricing pressures in the generic pharmaceuticals industry, and that Perrigo had successfully integrated Omega Pharma NV, the company's largest acquisition.

6.  ***Danske Bank A/S Securities Class Litigation.*** Lieff Cabraser, together with co-counsel, represents a large coalition of institutional investors, including state and government pension and treasury systems, in litigation pending in Denmark against Danske Bank A/S ("Danske"). The litigation arises from Danske's failure to disclose that its reported financial performance was inflated by illegal sources of income and that it was subject to significant risks as a result of such business activities. The litigation is ongoing.

**B.    Successes**

1.    ***In re The Boeing Company Derivative Litigation***, Consol. C.A. No. 2019-0907-MTZ (Delaware Chancery Court).  Lieff Cabraser served as Court-appointed Co-Lead Counsel representing Co-Lead Plaintiffs the New York State Comptroller Thomas P. DiNapoli, as trustee of the New York State Common Retirement, and the Fire and Police Pension Association of Colorado, in shareholder derivative litigation against current and former officers and directors of The Boeing Company ("Boeing"). Co-Lead Plaintiffs' amended complaint, filed January 2021, alleged that Boeing's officers and directors breached their fiduciary duties to the company by dismantling Boeing's lauded safety-engineering corporate culture in favor of what became a financial-engineering corporate culture. Despite numerous safety-related red flags, the Board and officers failed to monitor the safety of Boeing's aircraft. Ultimately, the Board and officers' consistent disregard for safety resulted in the flawed design of Boeing's 737 MAX, leading to the tragic deaths of 346 passengers and the grounding of all 737 Max aircraft.  On September 8, 2021, Vice Chancellor Morgan T. Zurn upheld Co-Lead Plaintiffs' claim for breach of fiduciary duty against the Company's directors.  In February 2022, the court approved a settlement comprised of a $237.5 million monetary payment and extensive corporate governance reforms including a new board director and an ombudsperson program.

2.    ***In re Wells Fargo & Company Shareholder Derivative Litigation***, No. 3:16-cv-05541 (N.D. Cal.).  Lieff Cabraser was appointed as Co-Lead Counsel for Lead Plaintiffs FPPACO and The City of Birmingham Retirement and Relief System in this consolidated shareholder derivative action alleging that, since at least 2011, the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, as part of Wells Fargo's intense effort to drive up its "cross-selling" statistics. Revelations regarding the scheme, and the defendants' knowledge or blatant disregard of it, have deeply damaged Wells Fargo's reputation and cost it millions of dollars in regulatory fines and lost business. In May and October 2017, the court largely denied Wells Fargo's and the Director and Officer Defendants' motions to dismiss Lead Plaintiffs' amended complaint. In April 2020, U.S. District Judge Jon S. Tigar granted final approval to a settlement of $240 million cash payment, the largest insurer-funded cash settlement of a shareholder derivative action, and corporate governance reforms.

3.    ***Arkansas Teacher Retirement System v. State Street Corp.***, Case No. 11cv10230 (MLW) (D. Mass.).  Lieff Cabraser served as co-counsel for a nationwide class of institutional custodial clients of State

Street, including public pension funds and ERISA plans, who allege that defendants deceptively charged class members on FX trades done in connection with the purchase and sale of foreign securities. The complaint charged that between 1999 and 2009, State Street consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for State Street's custodial FX clients.

State Street allegedly kept for itself, as an unlawful profit, the "spread" between the prices for foreign currency available to it in the FX marketplace and the rates it charged to its customers. Plaintiffs sought recovery under Massachusetts' Consumer Protection Law and common law tort and contract theories. On November 2, 2016, U.S. District Senior Judge Mark L. Wolf granted final approval to a $300 million settlement of the litigation.

4. ***Janus Overseas Fund, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.***, No. 1:15-cv-10086-JSR (S.D.N.Y.); ***Dodge & Cox Global Stock Fund, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.***, No. 1:15-cv-10111-JSR (S.D.N.Y.). Lieff Cabraser represented certain Janus and Dodge & Cox funds and investment managers in these individual actions against Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), related Petrobras entities, and certain of Petrobras's senior officers and directors for misrepresenting and failing to disclose a pervasive and long-running scheme of bribery and corruption at Petrobras. As a result of the misconduct, Petrobras overstated the value of its assets by billions of dollars and materially misstated its financial results during the relevant period. The actions charged defendants with violations of the Securities Act of 1933 (the "Securities Act") and/or the Securities Exchange Act of 1934 ("Exchange Act"). The action recently settled on confidential terms favorable to plaintiffs.

5. ***Normand, et al. v. Bank of New York Mellon Corp.***, No. 1:16-cv-00212-LAK-JLC (S.D.N.Y.). Lieff Cabraser, together with co-counsel, represented a proposed class of holders of American Depositary Receipts ("ADRs") (negotiable U.S. securities representing ownership of publicly traded shares in a non-U.S. corporation), for which BNY Mellon served as the depositary bank. Plaintiffs alleged that under the contractual agreements underlying the ADRs, BNY Mellon was responsible for "promptly" converting cash distributions (such as dividends) received for ADRs into U.S. dollars for the benefit of ADR holders, and was required to act without bad faith. Plaintiffs alleged that, instead, when doing the ADR cash conversions, BNY Mellon used the range of exchange rates available during the trading session in a manner that was unfavorable for ADR holders, and in doing so, improperly skimmed profits from distributions

owed and payable to the class.  In 2019, the court granted final approval to a $72.5 million settlement of the action.

6. ***In re Facebook, Inc. IPO Securities and Derivative Litigation***, MDL No. 12-2389 (RWS) (S.D.N.Y.).  Lieff Cabraser is counsel for two individual investor class representatives in the securities class litigation arising under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") concerning Facebook's initial public offering in May 2012.  In 2018, the court granted plaintiffs' motion for final approval of a settlement of the litigation.

7. ***The Regents of the University of California v. American International Group***, No. 1:14-cv-01270-LTS-DCF (S.D.N.Y.).  Lieff Cabraser represented The Regents of the University of California in this individual action against American International Group, Inc. ("AIG") and certain of its officers and directors for misrepresenting and omitting material information about AIG's financial condition and the extent of its exposure to the subprime mortgage market.  The complaint charged defendants with violations of the Exchange Act, as well as common law fraud and unjust enrichment.  The litigation settled in 2015.

8. ***Biotechnology Value Fund, L.P. v. Celera Corp.***, 3:13-cv-03248-WHA (N.D. Cal.).  Lieff Cabraser represented a group of affiliated funds investing in biotechnology companies in this individual action arising from misconduct in connection with Quest Diagnostics Inc.'s 2011 acquisition of Celera Corporation.  Celera, Celera's individual directors, and Credit Suisse were charged with violations of Sections 14(e) and 20(a) of the Exchange Act and breach of fiduciary duty.  In February 2014, the Court denied in large part defendants' motion to dismiss the second amended complaint.  In September 2014, the plaintiffs settled with Credit Suisse for a confidential amount.  After the completion of fact and expert discovery, and prior to a ruling on defendants' motion for summary judgment, the plaintiffs settled with the Celera defendants in January 2015 for a confidential amount.

9. ***The Charles Schwab Corp. v. BNP Paribas Sec. Corp.***, No. CGC-10-501610 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503206 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503207 (Cal. Super. Ct.); and ***The Charles Schwab Corp. v. Banc of America Sec. LLC***, No. CGC-10-501151 (Cal. Super. Ct.).  Lieff Cabraser, along with co-counsel, represents Charles Schwab in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities ("MBS") for materially misrepresenting the quality of the loans underlying the securities in violation of California state law.  Charles Schwab Bank, N.A., a subsidiary of Charles Schwab, suffered significant

damages by purchasing the securities in reliance on defendants' misstatements. The court largely overruled defendants' demurrers in January 2012. Settlements have been reached with dozens of defendants for confidential amounts.

10. ***Honeywell International Inc. Defined Contribution Plans Master Savings Trust. v. Merck & Co.***, No. 14-cv 2523-SRC-CLW (S.D.N.Y.); ***Janus Balanced Fund v. Merck & Co.***, No. 14-cv-3019-SRC-CLW (S.D.N.Y.); ***Lord Abbett Affiliated Fund v. Merck & Co.***, No. 14-cv-2027-SRC-CLW (S.D.N.Y.); ***Nuveen Dividend Value Fund (f/k/a Nuveen Equity Income Fund), on its own behalf and as successor in interest to Nuveen Large Cap Value Fund (f/k/a First American Large Cap Value Fund) v. Merck & Co.***, No. 14-cv-1709-SRC-CLW (S.D.N.Y.). Lieff Cabraser represented certain Nuveen, Lord Abbett, and Janus funds, and two Honeywell International trusts in these individual actions against Merck & Co., Inc. ("Merck") and certain of its senior officers and directors for misrepresenting the cardiovascular safety profile and commercial viability of Merck's purported "blockbuster" drug, VIOXX. The actions charged defendants with violations of the Exchange Act. The action settled on confidential terms.

11. ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies. The settlement was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

12. ***In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation***, MDL 2335 (S.D.N.Y.). Lieff Cabraser served as co-lead class counsel for a proposed nationwide class of institutional custodial customers of The Bank of New York Mellon Corporation ("BNY Mellon"). The litigation stemmed from alleged deceptive overcharges imposed by BNY Mellon on foreign currency exchanges (FX) that were done in connection with custodial customers' purchases or sales of foreign securities. Plaintiffs alleged that for more than a decade, BNY Mellon consistently charged its custodial customers hidden and excessive mark-ups on exchange rates for FX trades done pursuant to "standing instructions," using "range of the day" pricing, rather than the rates readily available when the trades were actually executed.

In addition to serving as co-lead counsel for a nationwide class of affected custodial customers, which included public pension funds, ERISA funds, and other public and private institutions, Lieff Cabraser was one of three firms on Plaintiffs' Executive Committee tasked with managing all activities on the plaintiffs' side in the multidistrict consolidated litigation. Prior to the cases being transferred and consolidated in the Southern District of New York, Lieff Cabraser defeated, in its entirety, BNY Mellon's motion to dismiss claims brought on behalf of ERISA and other funds under California's and New York's consumer protection laws.

The firm's clients and class representatives in the consolidated litigation included the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio, and the International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund.

In March 2015, a global resolution of the private and governmental enforcement actions against BNY Mellon was announced, in which $504 million will be paid back to BNY Mellon customers ($335 million of which is directly attributable to the class litigation).

On September 24, 2015, U.S. District Court Judge Lewis A. Kaplan granted final approval to the settlement. Commenting on the work of plaintiffs' counsel, Judge Kaplan stated, "This really was an extraordinary case in which plaintiff's counsel performed, at no small risk, an extraordinary service. They did a wonderful job in this case, and I've seen a lot of wonderful lawyers over the years. This was a great performance. They were fought tooth and nail at every step of the road. It undoubtedly vastly expanded the costs of the case, but it's an adversary system, and sometimes you meet adversaries who are heavily armed and well financed, and if you're going to win, you have to fight them and it costs money. This was an outrageous wrong committed by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

13.     ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.).  Lieff Cabraser served as Court-appointed Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities.  The complaint alleged that defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted.  In December 2009, U.S. District Judge Manuel L. Real granted final

approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom. The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. In May 2011, the Court approved a settlement with these defendants. The settlement provided substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action was $197 million, which constitutes the third-largest settlement ever in a derivative action involving stock options backdating.

14.     ***In re Scorpion Technologies Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales. In Scorpion I, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the Court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was

the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

15. ***In re Diamond Foods, Inc., Securities Litigation***, No. 11-cv-05386-WHA (N.D. Cal.). Lieff Cabraser served as local counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") and the class of investors it represented in this securities class action lawsuit arising under the PSLRA. The complaint charged Diamond Foods and certain senior executives of the company with violations of the Exchange Act for knowingly understating the cost of walnuts Diamond Foods purchased in order to inflate the price of Diamond Foods' common stock. In January 2014, the Court granted final approval of a settlement of the action requiring Diamond Foods to pay $11 million in cash and issue 4.45 million common shares worth $116.3 million on the date of final approval based on the stock's closing price on that date.

16. ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund v. McKesson HBOC***, No. 02-405792 (Cal. Supr. Ct.). Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson"). The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs. In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC. *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004). Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds. This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

17. ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra

preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

18. ***In re Qwest Communications International Securities and "ERISA" Litigation (No. II)***, No. 06-cv-17880-REB-PAC (MDL No. 1788) (D. Colo.). Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors, and other senior executives at Qwest. In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest that was announced in early 2006. The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.

19. ***In re AXA Rosenberg Investor Litigation***, No. CV 11-00536 JSW (N.D. Cal). Lieff Cabraser served as Co-Lead Counsel for a class of institutional investors, ERISA-covered plans, and other investors in quantitative funds managed by AXA Rosenberg Group, LLC and its affiliates ("AXA"). Plaintiffs alleged that AXA breached its fiduciary duties and violated ERISA by failing to discover a material computer error that existed in its system for years, and then failing to remedy it for months after its eventual discovery in 2009. By the time AXA disclosed the error in 2010, investors had suffered losses and paid substantial investment management fees to AXA. After briefing motions to dismiss and working with experts to analyze data obtained from AXA relating to the impact of the error, Lieff Cabraser reached a $65 million settlement with AXA that the Court approved in April 2012.

20.     ***In re National Century Financial Enterprises, Inc. Investment
Litigation***, MDL No. 1565 (S.D. Ohio).  Lieff Cabraser served as outside
counsel for the New York City Employees' Retirement System, Teachers'
Retirement System for the City of New York, New York City Police
Pension Fund, and New York City Fire Department Pension Fund in this
multidistrict litigation arising from fraud in connection with NCFE's
issuance of notes backed by healthcare receivables.  The New York City
Pension Funds recovered more than 70% of their $89 million in losses,
primarily through settlements achieved in the federal litigation and
another NCFE-matter brought on their behalf by Lieff Cabraser.

21.     ***BlackRock Global Allocation Fund v. Tyco International Ltd.,
et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and
Stock Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D.
N.J.).  Lieff Cabraser represented multiple funds of the investment firms
BlackRock Inc. and Nuveen Asset Management in separate, direct
securities fraud actions against Tyco International Ltd., Tyco Electronics
Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz,
and Frank E. Walsh, Jr.  Plaintiffs alleged that defendants engaged in a
massive criminal enterprise that combined the theft of corporate assets
with fraudulent accounting entries that concealed Tyco's financial
condition from investors.  As a result, plaintiffs purchased Tyco common
stock and other Tyco securities at artificially inflated prices and suffered
losses upon disclosures revealing Tyco's true financial condition and
defendants' misconduct.  In 2009, the parties settled the claims against
the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd.,
Covidien Ltd., and Covidien (U.S.).  The litigation concluded in 2010.  The
total settlement proceeds paid by all defendants were in excess of $57
million.

22.     ***Kofuku Bank and Namihaya Bank v. Republic New York
Securities Corp.***, No. 00 CIV 3298 (S.D.N.Y.); and Kita Hyogo Shinyo-
Kumiai v. Republic New York Securities Corp., No. 00 CIV 4114
(S.D.N.Y.).  Lieff Cabraser represented Kofuku Bank, Namihaya Bank and
Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against,
among others, Martin A. Armstrong and HSBC, Inc., the successor-in-
interest to Republic New York Corporation, Republic New York Bank and
Republic New York Securities Corporation for alleged violations of federal
securities and racketeering laws.  Through a group of interconnected
companies owned and controlled by Armstrong—the Princeton
Companies—Armstrong and the Republic Companies promoted and sold
promissory notes, known as the "Princeton Notes," to more than eighty of
the largest companies and financial institutions in Japan.  Lieff Cabraser's
lawsuits, as well as the lawsuits of dozens of other Princeton Note
investors, alleged that the Princeton and Republic Companies made
fraudulent misrepresentations and non-disclosures in connection with the

promotion and sale of Princeton Notes, and that investors' monies were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies. In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

23.    ***Alaska State Department of Revenue v. America Online***, No. 1JU-04-503 (Alaska Supr. Ct.). In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc. When the action was filed, the Alaska Attorney General estimated total losses at $70 million. The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement. The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction. "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

24.    ***Allocco v. Gardner***, No. GIC 806450 (Cal. Supr. Ct.). Lieff Cabraser represented Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arose out of Peregrine's August 2001 acquisition of Remedy. Plaintiffs charged that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements. The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview. The total amount received in settlements was approximately $45 million.

25. ***In re Cablevision Systems Corp. Shareholder Derivative Litigation***, No. 06-cv-4130-DGT-AKT (E.D.N.Y.). Lieff Cabraser served as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision. The suit alleged that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders. According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants. In September 2008, the Court granted final approval to a $34.4 million settlement of the action. Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.

26. ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit which alleged that certain Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against the two defendants in the amount of $188 million.

27. ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California

State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in Cal Micro Devices, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

28.   ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases . . ."

29.   ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel for investors defrauded in a "Ponzi-like" limited partnership investment scheme. The Court approved $15 million in partial, pretrial settlements. At trial, the jury returned a $24 million verdict, which included $10 million in punitive damages, against non-settling defendant Arthur Young & Co. for its knowing complicity and active and substantial assistance in the marketing and sale of the worthless limited partnership offerings. The Appellate Court affirmed the compensatory damages award and remanded the case for a retrial on punitive damages. In 1994, the Court approved a $17 million settlement with Ernst & Young, the successor to Arthur Young & Co.

30. ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

31. ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.). Lieff Cabraser served as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of purchasers of Brooks Automation securities. Plaintiffs charged that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six-year period, and failed to disclose the scheme in publicly filed financial statements. Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices. In October 2008, the Court approved a $7.75 million settlement of the action.

32. ***In re A-Power Energy Generation Systems, Ltd. Securities Litigation***, No. 2:11-ml-2302-GW- (CWx) (C.D. Cal.). Lieff Cabraser served as Court-appointed Lead Counsel for Lead Plaintiff in this securities class action that charged defendants with materially misrepresenting A-Power Energy Generation Systems, Ltd.'s financial results and business prospects in violation of the antifraud provisions of the Securities Exchange Act of 1934. The Court approved a $3.675 million settlement in August 2013.

33. ***Bank of America-Merrill Lynch Merger Securities Cases***. In two cases—*DiNapoli, et al. v. Bank of America Corp.*, No. 10 CV 5563 (S.D.N.Y.) and *Schwab S&P 500 Index Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv- 07779 PKC (S.D.N.Y.). Lieff Cabraser sought recovery on a direct, non-class basis for losses that a number of public pension funds and mutual funds incurred as a result of Bank of America's alleged misrepresentations and concealment of material facts in connection with its acquisition of Merrill Lynch & Co., Inc. Lieff Cabraser represented the New York State Common Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, and fourteen mutual funds managed by Charles

Schwab Investment Management.  Both cases settled in 2013 on confidential terms favorable for our clients.

34.  ***Albert v. Alex. Brown Management Services; Baker v. Alex. Brown Management Services*** (Del. Ch. Ct.).  In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars.  The suits named as defendants Deutsche Bank and its subsidiaries Alex. Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals.  Among the plaintiff-investors were 70 high net worth individuals.  In the fall of 2006, the cases settled by confidential agreement.

## III.  **Employment Discrimination and Unfair Employment Practices**

### A.  **Current Cases**

1.  ***Chen-Oster v. Goldman Sachs***, No. 10-6950 (S.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class action lawsuit against Goldman Sachs alleging Goldman Sachs has engaged in systemic and pervasive discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964 and New York City Human Rights Law.  The complaint charges that, among other things, Goldman Sachs pays its female professionals less than similarly situated males, disproportionately promotes men over equally or more qualified women, and offers better business opportunities and professional support to its male professionals.  In 2012, the Court denied defendant's motion to strike class allegations.

On March 10, 2015, Magistrate Judge James C. Francis IV issued a recommendation against certifying the class.  In April of 2017, District Court Judge Analisa Torres granted plaintiffs' motion to amend their complaint and add new representative plaintiffs, denied Goldman Sachs' motions to dismiss the new plaintiffs' claims, and ordered the parties to submit proposals by April 26, 2017, on a process for addressing Magistrate Judge Francis' March 2015 Report and Recommendation on class certification.

On March 30, 2018, Judge Torres issued an order certifying the plaintiffs' damages class under Federal Rule of Civil Procedure Rule 23(b)(3). Judge Torres certified plaintiffs' claims for both disparate impact and disparate treatment discrimination, relying on statistical evidence of discrimination in pay, promotions, and performance evaluations, as well as anecdotal evidence of Goldman's hostile work environment. In so ruling, the court also granted plaintiffs' motion to exclude portions of Goldman's expert

evidence as unreliable, and denied all of Goldman's motions to exclude plaintiffs' expert evidence.

2.  **Kassman v. KPMG, LLP**, Case No. 11-03743 (S.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class and collective action lawsuit alleging that KPMG has engaged in systemic and pervasive discrimination against its female Client Service and Support Professionals in pay and promotion, discrimination based on pregnancy, and chronic failure to properly investigate and resolve complaints of discrimination and harassment.  The complaint alleges violations of the Equal Pay Act, Title VII of the Civil Rights Act of 1964, the New York Executive Law § 296, and the New York City Administrative Code § 8-107.

    On November 27, 2018, Plaintiffs filed a motion in U.S. District Court for the Southern District of New York seeking class certification in the long-running lawsuit challenging gender disparities in pay and promotion on behalf of approximately 10,000 female Advisory and Tax professionals. Plaintiffs also sought final certification of the Equal Pay Act collective on behalf of the approximately 1,100 opt-in plaintiffs.

    On November 30, 2018, the Court declined to certify the class and decertified the Equal Pay Act collective. While the Court acknowledged KPMG's common pay and promotion policies and its gender disparities in pay and promotion, the Court held that the women challenging KPMG's pay and promotion policies cannot pursue their claims together. On December 14, 2018, Plaintiffs filed a Petition to Appeal the Denial of Class Certification under Rule 23(f) with the United States Court of Appeals for the Second Circuit. The Court of Appeals declined to hear the appeal. The case is now proceeding on an individual basis on behalf of the Named Plaintiffs and 444 Former Opt-In Plaintiffs.

3.  **Strauch v. Computer Sciences Corporation**, No. 2:14-cv-00956 (D. Conn.).  In 2005, Computer Sciences Corporation ("CSC") settled for $24 million a nationwide class and collective action lawsuit alleging that CSC misclassified thousands of its information technology support workers as exempt from overtime pay in violation of in violation of the federal Fair Labor Standards Act ("FLSA") and state law.  Notwithstanding that settlement, a complaint filed on behalf of current and former CSC IT workers in 2014 by Lieff Cabraser and co-counsel alleges that CSC misclassifies many information technology support workers as exempt even though they perform primarily nonexempt work.  Plaintiffs are current and former CSC System Administrators assigned the primary duty of the installation, maintenance, and/or support of computer software and/or hardware for CSC clients.  On June 9, 2015, the Court granted plaintiffs' motion for conditional certification of a FLSA collective action.

Since then, more than 1,000 System Administrators have opted into the case. On June 30, 2017, the Court granted plaintiffs motion for certification of Rule 23 classes for System Administrators in California and Connecticut.

On December 20, 2017, a jury in federal court in Connecticut ruled that Computer Sciences Corporation (CSC), which recently merged with Hewlett Packard Enterprise Services to form DXC Technology (NYSE: DXC), wrongly and willfully denied overtime pay to approximately 1,000 current and former technology support workers around the country. After deliberating over two days, the Connecticut jury unanimously rejected CSC's claim that its System Administrators in the "Associate Professional" and "Professional" job titles are exempt under federal, Connecticut and California law, ruling instead that the workers should have been classified as nonexempt and paid overtime. The jury found CSC's violations to be willful, triggering additional damages. The misclassifications were made despite the fact that, in 2005, CSC paid $24 million to settle similar claims from a previous group of technical support workers. Following the issuance of a Report and Recommendation from a Court-appointed special master, the Court entered judgment ordering CSC to pay damages totaling $18,755,016.46 to class members. That judgment is currently on appeal to the Second Circuit Court of Appeals.

4. ***Senne v. Major League Baseball***, No. 14-cv-00608 (N.D. Cal.). Lieff Cabraser represents current and former Minor League Baseball players employed under uniform player contracts in a class and collective action seeking unpaid overtime and minimum wages under the Fair Labor Standards Act and state laws. The complaint alleges that Major League Baseball ("MLB"), the MLB franchises, and other defendants paid minor league players a uniform monthly fixed salary that, in light of the hours worked, amounts to less than the minimum wage and an unlawful denial of overtime pay. In August 2019, the Ninth Circuit Court of Appeals upheld certification of a California Class, overturned the denial of certification of the Arizona and Florida Classes, and affirmed the certification of an FLSA collective action. The defendants have petitioned the Supreme Court for a writ of certiorari.

## B. Successes

1. ***Kalodimos v. Meredith Corporation d/b/a Wsmv Channel 4***, No. 3:18-cv-01321 (M.D. Tenn.). Lieff Cabraser represented Demetria Kalodimos, the longest running anchor in the history of Middle Tennessee's Channel 4 news network, in sex and age discrimination claims against the network. Ms. Kalodimos was the longest running anchor in the history of Channel 4, known within the community as the "face of Channel 4," and had received both local and national accolades

for journalistic excellence when she was terminated in 2017. On behalf of Ms. Kalodimos, Lieff Cabraser litigated claims for violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Tennessee Human Rights Act, and the common law. The parties resolved these disputes in 2019, following a private mediation.

2. ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel. . . . Even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

3. ***Rosenburg v. IBM***, No. C 06-0430 PJH (N.D. Cal.). In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime. The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry. Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

4. ***Satchell v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.). In 2007, the Court granted final approval to a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express. The settlement requires FedEx to reform its promotion, discipline, and pay practices.

Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination. The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

5.    ***Gonzalez v. Abercrombie & Fitch Stores***, No. C03-2817 SI (N.D. Cal.). In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement included a six-year period of injunctive relief requiring the company to institute a wide range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. Lieff Cabraser served as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

6.    ***Giles v. Allstate***, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

7.    ***Calibuso v. Bank of America Corporation, Merrill Lynch & Co.***, No. CV10-1413 (E.D. N.Y.). Lieff Cabraser served as Co-Lead Counsel for female Financial Advisors who alleged that Bank of America and Merrill Lynch engaged in a pattern and practice of gender discrimination with respect to business opportunities and compensation. The complaint charged that these violations were systemic, based upon company-wide policies and practices. In December 2013, the Court approved a $39 million settlement. The settlement included three years of programmatic relief, overseen by an independent monitor, regarding teaming and partnership agreements, business generation, account distributions, manager evaluations, promotions, training, and complaint processing and procedures, among other things. An independent consultant also conducted an internal study of the bank's Financial Advisors' teaming practices.

8.    ***Frank v. United Airlines***, No. C-92-0692 MJJ (N.D. Cal.). Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh

less than comparable male flight attendants. Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

9. ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.). The Court approved in July 2009 a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs. In addition to monetary relief, the settlement provided injunctive relief benefiting all employees. Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, currently the world's third largest corporation, vigorously denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as Court-appointed Co-Lead Class Counsel.

10. ***Amochaev. v. Citigroup Global Markets, d/b/a Smith Barney***, No. C 05-1298 PJH (N.D. Cal.). In August 2008, the Court approved a $33 million settlement for the 2,411 members of the Settlement Class in a gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment. In addition to the monetary compensation, the settlement included comprehensive injunctive relief for four years designed to increase business opportunities and promote equality in compensation for female brokers.

11.     ***Vedachalam v. Tata Consultancy Services***, C 06-0963 CW (N.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel for 12,700 foreign nationals sent by the Indian conglomerate Tata to work in the U.S.  After 7 years of hard-fought litigation, the District Court in July 2013 granted final approval to a $29.75 million settlement.  The complaint charged that Tata breached the contracts of its non-U.S.-citizen employees by requiring them to sign over their federal and state tax refund checks to Tata, and by failing to pay its non-U.S.-citizen employees the monies promised to those employees before they came to the United States.  In 2007 and again in 2008, the District Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India.  The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata.  In 2009, the Ninth Circuit Court of Appeals affirmed this decision.  In July 2011, the District Court denied in part Tata's motion for summary judgment, allowing Plaintiffs' legal claims for breach of contract and certain violations of California wage laws to go forward.  In 2012, the District Court found that the plaintiffs satisfied the legal requirements for a class action and certified two classes.

12.     ***Giannetto v. Computer Sciences Corporation***, No. 03-CV-8201 (C.D. Cal.).  In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court approved a $24 million settlement with Computer Sciences Corporation in 2005.  Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

13.     ***Curtis-Bauer v. Morgan Stanley & Co.***, Case No. C-06-3903 (TEH).  In October 2008, the Court approved a $16 million settlement in the class action against Morgan Stanley.  The complaint charged that Morgan Stanley discriminated against African-American and Latino Financial Advisors and Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley in compensation and business opportunities.  The settlement included comprehensive injunctive relief regarding account distributions, partnership arrangements, branch manager promotions, hiring, retention, diversity training, and complaint processing, among other things. The settlement also provided for the appointment of an independent Diversity Monitor and an independent Industrial Psychologist to effectuate the terms of the agreement.

14.     ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.).  Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a

freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act. The case settled in 1993 for $13.5 million.

15. ***Gerlach v. Wells Fargo & Co.***, No. C 05-0585 CW (N.D. Cal.). In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime. Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

16. ***Buccellato v. AT&T Operations***, No. C10-00463-LHK (N.D. Cal.). Lieff Cabraser represented a group of current and former AT&T technical support workers who alleged that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked, in violation of federal and state overtime pay laws. In June 2011, the Court approved a $12.5 million collective and class action settlement.

17. ***Buttram v. UPS***, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, Class Counsel monitored the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car drivers.

18. ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No. RG04141291 (Cal. Supr. Ct.). Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

19. ***Trotter v. Perdue Farms***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and

cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

20. ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement.

21. ***Ellis v. Costco Wholesale Corp.***, No. 04-03341-EMC (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for current and former female employees who charged that Costco discriminated against women in promotion to management positions. In January 2007, the Court certified a class consisting of over 750 current and former female Costco employees nationwide who were denied promotion to General Manager or Assistant Manager since January 3, 2002. Costco appealed. In September 2011, the U.S. Court of Appeals for the Ninth Circuit remanded the case to the District Court to make class certification findings consistent with the U.S. Supreme Court's ruling in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011). In September 2012, U.S. District Court Judge Edward M. Chen granted plaintiffs' motion for class certification and certified two classes of over 1,250 current and former female Costco employees, one for injunctive relief and the other for monetary relief. On May 27, 2014, the Court approved an $8 million settlement.

22. ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation***, MDL No. 1439 (D. Or.). Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a special master. The judgment was partially upheld on appeal. In August 2010, the Court approved an $8 million settlement.

23. ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

24. ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

25. ***Higazi v. Cadence Design Systems***, No. C 07-2813 JW (N.D. Cal.). In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime. Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

26. ***Zaborowski v. MHN Government Services***, No. 12-CV-05109-SI (N.D. Cal.) Lieff Cabraser represented current and former Military and Family Life Consultants ("MFLCs") in a class action lawsuit against MHN Government Services, Inc. ("MHN") and Managed Health Network, Inc., seeking overtime pay under the federal Fair Labor Standards Act and state laws. The complaint charged that MHN misclassified the MFLCs as independent contractors and as "exempt" from overtime and failed to pay them overtime pay for hours worked over 40 per week. In April 2013, the Court denied MHN's motion to compel arbitration and granted plaintiff's motion for conditional certification of a FLSA collective action. In December 2014, the U.S. Court of Appeals for the Ninth Circuit upheld the district court's determination that the arbitration clause in MHN's employee contract was procedurally and substantively unconscionable. MHN appealed to the United States Supreme Court.

MHN did not contest that its agreement had several unconscionable components; instead, it asked the Supreme Court to sever the unconscionable terms of its arbitration agreement and nonetheless send

the MFLCs' claims to arbitration. The Supreme Court granted MHN's petition for certiorari on October 1, 2015, and was scheduled to hear the case in the 2016 spring term in *MHN Gov't Servs., Inc. v. Zaborowski*, No. 14-1458. While the matter was pending before the Supreme Court, an arbitrator approved a class settlement in the matter, which resulted in payment of $7,433,109.19 to class members.

27.   ***Sandoval v. Mountain Center, Inc., et al.***, No. 03CC00280 (Cal. Supr. Ct.). Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

28.   ***Martin v. Bohemian Club,*** No. SCV-258731 (Cal. Supr. Ct.). Lieff Cabraser and co-counsel represented a class of approximately 659 individuals who worked seasonally as camp valets for the Bohemian Club. Plaintiffs alleged that they had been misclassified as independent contractors, and thus were not paid for overtime or meal-and-rest breaks as required under California law. The Court granted final approval of a $7 million settlement resolving all claims in September 2016.

29.   ***Lewis v. Wells Fargo***, No. 08-cv-2670 CW (N.D. Cal.). Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked in violation of federal and state overtime pay laws. In April 2011, the Court granted collective action certification of the FLSA claims and approved a $6.72 million settlement of the action.

30.   ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

31.   ***Wynne v. McCormick & Schmick's Seafood Restaurants***, No. C 06-3153 CW (N.D. Cal.). In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees. The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (*e.g.*, server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

32. ***Sherrill v. Premera Blue Cross***, No. 2:10-cv-00590-TSZ (W.D. Wash.). In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt. In June 2011, the Court approved a collective and class action settlement of $1.45 million.

33. ***Holloway v. Best Buy***, No. C05-5056 PJH (N.D. Cal.). Lieff Cabraser, with co-counsel, represented a class of current employees of Best Buy that alleged Best Buy stores nationwide discriminated against women, African Americans, and Latinos. The complaint charged that these employees were assigned to less desirable positions and denied promotions, and that class members who attained managerial positions were paid less than white males. In November 2011, the Court approved a settlement of the class action in which Best Buy agreed to changes to its personnel policies and procedures that will enhance the equal employment opportunities of the tens of thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

34. ***Lyon v. TMP Worldwide***, No. 993096 (Cal. Supr. Ct.). Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The settlement, approved in 2000, provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

35. ***Lusardi v. McHugh, Secretary of the Army***, No. 0120133395 (U.S. EEOC). Lieff Cabraser and the Transgender Law Center represent Tamara Lusardi, a transgender civilian software specialist employed by the U.S. Army. In a groundbreaking decision in April 2015, the Equal Employment Opportunity Commission reversed a lower agency decision and held that the employer subjected Lusardi to disparate treatment and harassment based on sex in violation of Title VII of the Civil Rights Act of 1964 when (1) the employer restricted her from using the common female restroom (consistent with her gender identity) and (2) a team leader intentionally and repeatedly referred to her by male pronouns and made hostile remarks about her transition and gender.

Lieff Cabraser attorneys have had experience representing employees in additional cases, including cases involving race, gender, sexual orientation, gender identity, and age discrimination; False Claims Act (whistleblower) claims; breach of contract claims; unpaid wages or exempt misclassification (wage/hour) claims; pension plan abuses under ERISA; and other violations of the law. For example, as described in the Antitrust section of this resume, Lieff Cabraser served as plaintiffs' Co-Lead Counsel in a class action charging that Adobe Systems Inc., Apple Inc., Google Inc., and Intel Corporation violated antitrust laws by conspiring to suppress the wages of certain salaried employees.

Lieff Cabraser is currently investigating charges of discrimination, wage/hour violations, and wage suppression claims against several companies. In addition, our attorneys frequently write amicus briefs on cutting-edge legal issues involving employment law.

In 2020, *Lawdragon* named Lieff Cabraser partners Lin Chan, Kelly Dermody, Rachel Geman, Daniel Hutchinson, and Anne Shaver to its "500 Leading Plaintiff Employment Lawyers" listing, showcasing "the heroic lawyers throughout the U.S. working to ensure that workers' rights are respected and fairly compensated."

In 2018, the *California Daily Journal* named Kelly Dermody and Anne Shaver as "Top Labor & Employment Lawyers" in the state.

In 2015, *The Recorder* named Lieff Cabraser's employment group as a Litigation Department of the Year in the category of California Labor and Employment Law. The Litigation Department of the Year awards recognize "California litigation practices that deliver standout results on their clients' most critical matters." *The Recorder* editors consider the degree of difficulty, dollar value and importance of each matter to the client; the depth and breadth of the practice; and the use of innovative approaches.

*U.S. News* and *Best Lawyers* earlier selected Lieff Cabraser as national "Law Firm of the Year" in the category of Employment Law – Individuals. *U.S. News* and *Best Lawyers* ranked firms nationally in 80 different practice areas based on extensive client feedback and evaluations from 70,000 lawyers nationwide. Only one law firm in the U.S. in each practice area receives the "Law Firm of the Year" designation.

*Benchmark Plaintiff*, a guide to the nation's leading plaintiffs' firms, has given Lieff Cabraser's employment practice group a Tier 1 national ranking, its highest rating. *The Legal 500* guide to the U.S. legal profession has recognized Lieff Cabraser as having one of the leading plaintiffs' employment practices in the nation.

Daniel M. Hutchinson chairs the firm's employment practice group and leads the firm's employment cases.

Daniel's practice has been focused on litigating, settling, and taking to trial complex class actions that have advanced the public interest. As a partner at Lieff Cabraser, Daniel served as lead or co-lead counsel on cases that recovered over $800 million for his clients in all variety of industries and across myriad discrimination, unpaid wages, ERISA, consumer protection, and financial fraud cases.

Daniel's employment litigation experience spreads across a wide variety of industries. He was a key player representing Indian nationals in wage theft litigation against Tata, taking the overtime claims of information technology workers to a trial victory against CSC, and litigating the discrimination claims of female managers at Costco.

Daniel has been recognized as a nationwide leader in employment law. In 2014, *Law360* named Daniel one of the nation's six top employment lawyers under 40. *The Daily Journal*

named him as a "Top 40 Under 40" leading lawyer in California. *The Recorder* endorsed him as one of "50 Lawyers on the Fast Track." Daniel has spoken and presented papers at national employment and consumer law conferences, including events sponsored by the American Bar Association's Section of Labor and Employment Law, the Mason Judicial Education Program, the Practising Law Institute, the Impact Fund, the UCLA School of Law, the National Employment Lawyers Association, and the Consumer Attorneys of California. Daniel has served as the Board Chair for the Lawyers Committee for Civil Rights.

## IV.    Consumer Protection

### A.    Current Cases

1.    ***In re Arizona Theranos, Inc. Litigation***, No. 2:16-cv-2138-HRH (D. Ariz.). This class action alleges that Walgreens and startup company Theranos Inc. (along with its two top executives) committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable. Hundreds of thousands of consumers in Arizona and California submitted to these "testing" services and blood draws under false pretenses. Consumers also made major health decisions (including taking actions and medication, and refraining from taking actions and medications) in reliance on these unreliable tests. Plaintiffs allege that Walgreens' and Theranos' conduct violates Arizona and California consumer protection statutes and common law.

2.    ***Fiat Chrysler Dodge Jeep Ecodiesel Litigation***, 17-MD-02777-EMC. Lieff Cabraser represents owners and lessors of affected Fiat Chrysler vehicles in litigation accusing Fiat Chrysler of using secret software to allow excess emissions in violation of the law for at least 104,000 2014-2016 model year diesel vehicles, including Jeep Grand Cherokees and Dodge Ram 1500 trucks with 3-liter diesel engines sold in the United States from late 2013 through 2016 (model years 2014, 2015, and 2016). In June 2017, Judge Edward M. Chen of the Northern District of California named Elizabeth Cabraser sole Lead Counsel for Plaintiffs and Chair of the Plaintiffs' Steering Committee for consolidated litigation of the case.

In May 2019, Judge Chen granted final approval to a $307.5 million settlement of the case, which will provide eligible owners and lessees with substantial cash payments and an extended warranty following the completion of a government-mandated emissions modification to affected vehicles.

Under the agreement between consumers and FCA and Bosch, approximately 100,000 owners and lessees of Ram 1500 and Jeep Grand Cherokee 3.0-liter diesel vehicles from model years 2014 to 2016 are eligible to file claims and receive the settlement's benefits. Most owners

will receive $3,075 once the repair – a software reflash – is completed. Current owners and lessees have until February 3, 2021 to submit a claim, and until May 3, 2021 to complete the repair and receive compensation.

3. ***In Re: General Motors Corp. Air Conditioning Marketing and Sales Practices Litigation***, MDL No. 2818 (E.D. Mich.). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a consumer fraud class action MDL against General Motors Company consolidated in Michigan federal court on behalf of all persons who purchased or leased certain GM vehicles equipped with an allegedly defective air conditioning systems. The lawsuit claims the vehicles have a serious defect that causes the air conditioning systems to crack and leak refrigerant, lose pressure, and fail to function properly to provide cooled air into the vehicles. These failures lead owners and lessees to incur significant costs for repair, often successive repairs as the repaired parts prove defective as well. The complaint lists causes of action for violations of various states' Consumer Protection Acts, fraudulent concealment, breach of warranty, and unjust enrichment, and seeks declaratory and injunctive relief, including an order requiring GM to permanently repair the affected vehicles within a reasonable time period, as well as compensatory, exemplary, and statutory damages.

4. ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fl.). Lieff Cabraser serves on the Plaintiffs' Executive Committee ("PEC") in Multi-District Litigation against 35 banks, including Bank of America, Chase, Citizens, PNC, Union Bank, and U.S. Bank. The complaints alleged that the banks entered debit card transactions from the "largest to the smallest" to draw down available balances more rapidly and maximize overdraft fees. In March 2010, the Court denied defendants' motions to dismiss the complaints. The Court has approved nearly $1 billion in settlements with the banks.

In November 2011, the Court granted final approval to a $410 million settlement of the case against Bank of America. Lieff Cabraser was the lead plaintiffs' law firm on the PEC that prosecuted the case against Bank of America. In approving the settlement with Bank of America, U.S. District Court Judge James Lawrence King stated, "This is a marvelous result for the members of the class." Judge King added, "[B]ut for the high level of dedication, ability and massive and incredible hard work by the Class attorneys . . . I do not believe the Class would have ever seen . . . a penny."

In September 2012, the Court granted final approval to a $35 million of the case against Union Bank. In approving the settlement, Judge King again complimented plaintiffs' counsel for their outstanding work and effort in resolving the case: "The description of plaintiffs' counsel, which

is a necessary part of the settlement, is, if anything, understated. In my observation of the diligence and professional activity, it's superb. I know of no other class action case anywhere in the country in the last couple of decades that's been handled as efficiently as this one has, which is a tribute to the lawyers."

5. ***Hale, et al. v. State Farm Mut. Auto. Ins. Co., et al.***, Case No. 3:12-cv-00660-DRH-SCW. In 1997, Lieff Cabraser and co-counsel filed a class action in Illinois state court, accusing State Farm of approving the use of lower-quality non-original equipment manufacturer (non-OEM) automotive parts for repairs to the vehicles of more than 4 million State Farm policyholders, contrary to the company's policy language. Plaintiffs won a verdict of more than nearly $1.2 billion that included $600 million in punitive damages. The state appeals court affirmed the judgment, but reduced it slightly to $1.05 billion. State Farm appealed to the Illinois Supreme Court in May 2013.

A two-plus-year delay in that Court's decision led to a vacancy in the Illinois Supreme Court. Plaintiffs alleged that State Farm recruited a little-known trial judge, Judge Lloyd A. Karmeier, to run for the vacant Supreme Court seat, and then managed his campaign behind the scenes, and secretly funded it to the tune of almost $4 million. Then, after Justice Karmeier was elected, State Farm hid its involvement in his campaign to ensure that Justice Karmeier could participate in the pending appeal of the $1.05 billion judgment. State Farm's scheme was successful: Justice Karmeier joined the otherwise "deadlocked" deliberations and voted to decertify the class and overturn the judgment.

In a 2012 lawsuit filed in federal court, Plaintiffs alleged that this secretive scheme to seat a sympathetic justice—and then to lie about it, so as secure that justice's participation in the pending appeal—violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), and deprived Plaintiffs of their interest in the billion-dollar judgment. Judge David R. Herndon certified the class in October 2016, and the Seventh Circuit denied State Farm's petition to appeal the ruling in December 2016 and again in May 2017. On August 21, 2018, Judge David R. Herndon issued two new Orders favorable to plaintiffs relating to evidence and testimony to be included in the trial. On September 4, 2018, the day the trial was to begin, Judge Herndon gave preliminary approval to a $250 million settlement of the case, and on December 13, 2018, Judge Herndon gave the settlement final approval.

6. ***Dover v. British Airways***, Case No. 1:12-cv-05567 (E.D.N.Y.). Lieff Cabraser represents participants in British Airways' ("BA") frequent flyer program, known as the Executive Club, in a breach of contract class action lawsuit. BA imposes a very high "fuel surcharge," often in excess of $500,

on Executive Club reward tickets. Plaintiffs alleged that the "fuel surcharge" was not based upon the price of fuel, and that it therefore violated the terms of the contract. The case was heavily litigated for five years, and settled on the verge of trial for a $42.5 million common fund. Class members have the choice of a cash refund or additional flyer miles based on the number of tickets redeemed during the class period. If all class members claim the miles instead of the cash, the total settlement value will be up to $63 million. U.S. Magistrate Judge Cheryl Pollak signed off on the settlement on May 30, 2018: "In light of the court's experience throughout the course of this litigation — and particularly in light of the contentiousness of earlier proceedings, the inability of the parties to settle during previous mediation attempts and the parties' initial positions when they appeared for the settlement conferences with the court — the significant benefit that the settlement will provide to class members is remarkable."

7.  ***Telephone Consumer Protection Act Litigation***.  Lieff Cabraser serves as a leader in nationwide Telephone Consumer Protection Act ("TCPA") class actions challenging abusing and harassing automated calls.  Based on Lieff Cabraser's experience and expertise in these cases, courts have appointed Lieff Cabraser as co-lead counsel in certified TCPA class actions against DIRECTV.  ***Brown v. DirecTV, LLC***, No. CV 13-1170 DMG (EX), 2019 WL 1434669 (C.D. Cal. Mar. 29, 2019); ***Cordoba v. DirecTV, LLC***, 320 F.R.D. 582 (N.D. Ga. 2017).  Lieff Cabraser also maintains leadership roles in ongoing nationwide class actions against several other companies that make automated debt-collection or telemarketing calls, including National Grid (***Jenkins v. National Grid USA, et al.***, Case No. 2:15-cv-01219-JS-GRB (E.D.N.Y.).

8.  ***Rushing v. The Walt Disney Company, et al.***, Case No. 3:17-cv-4419 (N.D. Cal.); ***Rushing v. Viacom, Inc., et al.***, Case No. 3:17-cv-4492 (N.D. Cal.); ***McDonald, et al. v. Kiloo Aps, et al.***, Case No. 3:17-cv-4344 (N.D. Cal.). Lieff Cabraser represents parents, on behalf of their children, in federal class action litigation against numerous online game and app producers including Disney, Viacom, and the makers of the vastly popular Subway Surfers game (Kiloo and Sybo), over allegations the companies unlawfully collected, used, and disseminated the personal information of children who played the gaming apps on smart phones, tablets, and other mobile device.  The actions are proceeding under time-honored laws protecting privacy: a California common law invasion of privacy claim, a California Constitution right of privacy claim, a California unfair competition claim, a New York General Business Law claim, a Massachusetts Unfair and Deceptive Trade Practices claim, and a Massachusetts statutory right to privacy claim.

9.     ***The People of the State of California v. J.C. Penney Corporation, Inc.***, Case No. BC643036 (Los Angeles County Sup. Ct); ***The People of the State of California v. Kohl's Department Stores, Inc.***, Case No. BC643037 (Los Angeles County Sup. Ct); ***The People of the State of California v. Macy's, Inc.***, Case No. BC643040 (Los Angeles County Sup. Ct); ***The People of the State of California v. Sears, Roebuck and Co., et al.***, Case No. BC643039 (Los Angeles County Sup. Ct). Working with the office of the Los Angeles City Attorney, Lieff Cabraser and co-counsel represent the People of California in consumer fraud and false advertising civil enforcement actions against national retailers J.C. Penney, Kohl's, Macy's, and Sears alleging that each of these companies has pervasively used "false reference pricing" schemes — whereby the companies advertise products at a purported "discount" from false "original" or "regular" prices — to mislead customers into believing they are receiving bargains. Because such practices are misleading — and effective — California law prohibits them. The suits seek civil penalties and injunctive relief. The cases are ongoing.

10.    ***Cody v. SoulCycle, Inc.***, Case No. 2:15-cv-06457 (C.D. Cal.). Lieff Cabraser represents consumers in a class action lawsuit alleging that indoor cycling fitness company SoulCycle sells illegally expiring gift certificates. The suit alleges that SoulCycle defrauded customers by forcing them to buy gift certificates with short enrollment windows and keeping the expired certificates' unused balances in violation of the U.S. Electronic Funds Transfer Act and California's Unfair Competition Law, and seeks reinstatement of expired classes or customer reimbursements as well as policy changes. In October of 2017, U.S. District Judge Michael W. Fitzgerald granted final approval to a settlement of the litigation valued between $6.9 million and $9.2 million that provides significant economic consideration to settlement class members as well as meaningful changes to SoulCycle's business practices.

11.    ***Moore v. Verizon Communications***, No. 09-cv-01823-SBA (N.D. Cal.); ***Nwabueze v. AT&T***, No. 09-cv-1529 SI (N.D. Cal.); ***Terry v. Pacific Bell Telephone Co.***, No. RG 09 488326 (Alameda County Sup. Ct.). Lieff Cabraser, with co-counsel, represents nationwide classes of landline telephone customers subjected to the deceptive business practice known as "cramming." In this practice, a telephone company bills customers for unauthorized third-party charges assessed by billing aggregators on behalf of third-party providers. A U.S. Senate committee has estimated that Verizon, AT&T, and Qwest place 300 million such charges on customer bills each year (amounting to $2 billion in charges), many of which are unauthorized. Various sources estimate that 90-99% of third-party charges are unauthorized. Both Courts have granted preliminary approval of settlements that allow customers to receive 100%

refunds for all unauthorized charges from 2005 to the present, plus
extensive injunctive relief to prevent cramming in the future. The
Nwabueze and Terry cases are ongoing.

12.     ***James v. UMG Recordings, Inc.***, No. CV-11-1613 (N.D. Cal);
        ***Zombie v. UMG Recordings, Inc.***, No. CV-11-2431 (N.D. Cal). Lieff
        Cabraser and its co-counsel represent music recording artists in
        a proposed class action against Universal Music Group. Plaintiffs allege
        that Universal failed to pay the recording artists full royalty
        income earned from customers' purchases of digitally downloaded music
        from vendors such as Apple iTunes. The complaint alleges that Universal
        licenses plaintiffs' music to digital download providers, but in its
        accounting of the royalties plaintiffs have earned, treats such licenses as
        "records sold" because royalty rate for "records sold" is lower than the
        royalty rate for licenses. Plaintiffs legal claims include breach of contract
        and violation of California unfair competition laws. In November 2011
        the Court denied defendant's motion to dismiss plaintiffs' unfair
        competition law claims.

13.     ***White v. Experian Information Solutions***, No. 05-CV-1070 DOC
        (C.D. Cal.). In 2005, plaintiffs filed nationwide class action lawsuits on
        behalf of 750,000 claimants against the nation's three largest repositories
        of consumer credit information, Experian Information Solutions, Inc.,
        Trans Union, LLC, and Equifax Information Services, LLC. The
        complaints charged that defendants violated the Fair Credit Reporting Act
        ("FCRA") by recklessly failing to follow reasonable procedures to ensure
        the accurate reporting of debts discharged in bankruptcy and by refusing
        to adequately investigate consumer disputes regarding the status of
        discharged accounts. In April 2008, the District Court approved a partial
        settlement of the action that established an historic injunction. This
        settlement required defendants comply with detailed procedures for the
        retroactive correction and updating of consumers' credit file information
        concerning discharged debt (affecting one million consumers who had
        filed for bankruptcy dating back to 2003), as well as new procedures to
        ensure that debts subject to future discharge orders will be similarly
        treated. As noted by the District Court, "Prior to the injunctive relief
        order entered in the instant case, however, no verdict or reported decision
        had ever required Defendants to implement procedures to cross-check
        data between their furnishers and their public record providers." In 2011,
        the District Court approved a $45 million settlement of the class claims
        for monetary relief. In April 2013, the Court of Appeals for the Ninth
        Circuit reversed the order approving the monetary settlement and
        remanded the case for further proceedings.

14.     ***Healy v. Chesapeake Appalachia***, No. 1:10cv00023 (W.D. Va.);
        ***Hale v. CNX Gas***, No. 1:10cv00059 (W.D. Va.); ***Estate of Holman v.***

*Noble Energy*, No. 03 CV 9 (Dist. Ct., Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources (USA)***, No. 07 CV 416 (Dist. Ct., Co.). Lieff Cabraser serves as Co-Lead Counsel in several cases pending in federal court in Virginia, in which plaintiffs allege that certain natural gas companies improperly underpaid gas royalties to the owners of the gas. In one case that recently settled, the plaintiffs recovered approximately 95% of the damages they suffered. Lieff Cabraser also achieved settlements on behalf of natural gas royalty owners in five other class actions outside Virginia. Those settlements -- in which class members recovered between 70% and 100% of their damages, excluding interest -- were valued at more than $160 million.

15. ***Marcus A. Roberts et al. v. AT&T Mobility LLC***, No. 3:15-cv-3418 (N.D. Cal.). Lieff Cabraser represents consumers in a proposed class action lawsuit against AT&T claiming that AT&T falsely advertised that its "unlimited" mobile phone plans provide "unlimited" data, while purposefully failing to disclose that it regularly "throttles" (*i.e.*, intentionally slows) customers' data speed once they reach certain data usage thresholds. The lawsuit also challenges AT&T's attempts to force consumers into non-class arbitration, claiming that AT&T's arbitration clause in its Wireless Customer Agreement violates consumers' fundamental constitutional First Amendment right to petition courts for a redress of grievances.

## B. Successes

1. ***In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2672 (N.D. Cal.). In September of 2015, the U.S. Environmental Protection Agency issued a Notice of Violation to Volkswagen relating to 475,000 diesel-powered cars in the United States sold since 2008 under the VW and Audi brands on which VW installed "cheat device" software that intentionally changed the vehicles' emissions production during official testing. Only when the programming detected that the vehicles were undergoing official emissions testing did the cars turn on their full emission control systems. The controls were turned off during actual road use, producing up to 40x more pollutants than the testing amounts in an extraordinary violation of U.S. clean air laws.

Private vehicle owners, state governments, agencies, and attorneys general, as well as federal agencies, all sought compensation and relief from VW through litigation in U.S. courts. More than 1,000 individual civil cases and numerous accompanying government claims were consolidated in federal court in Northern California, and U.S. District

Judge Charles R. Breyer appointed Lieff Cabraser founding partner Elizabeth Cabraser as Lead Counsel and Chair of the 22-member Plaintiffs Steering Committee in February of 2016.

After nine months of intensive negotiation and extraordinary coordination led on the class plaintiffs' side by Elizabeth Cabraser, a set of interrelated settlements totaling $14.7 billion were given final approval by Judge Breyer on October 25, 2016. The settlements offer owners and lessees of Volkswagen and Audi 2.0-liter diesel vehicles substantial compensation through buybacks and lease terminations, government-approved emissions modifications, and cash payments, while fixing or removing these polluting vehicles from the road. On May 11, 2017, a further settlement with a value of at least $1.2 billion relating to VW's 3.0-liter engine vehicles received final approval. This deal offers a combination of a projected emissions modification or buybacks for older 3.0-liter models. If a government-approved modification can't be found, VW will have to buy back all the vehicles, which could increase its costs for the 3.0-liter model settlement to as much as $4 billion.

The consumer class settlements have garnered overwhelming approval and response. Over 380,000 diesel owners have already signed up for the settlement, most doing so even before final approval was granted by Judge Breyer, who is overseeing all federal "clean diesel" litigation.

The Volkswagen emissions settlement is one of the largest payments in American history and the largest known consumer class settlement. It exemplifies the best of the American judicial system, illustrating the resolution of a significant portion of one of the most massive multidistrict class actions at what *Law360* referred to as "lightning speed." The settlements are unprecedented also for their scope and complexity, involving the Department of Justice, Environmental Protection Agency (EPA), California Air Resources Board (CARB) and California Attorney General, the Federal Trade Commission (FTC) and private plaintiffs.

2.   ***Williamson v. McAfee, Inc.***, No. 14-cv-00158-EJD (N.D. Cal.).  This nationwide class action alleged that McAfee falsely represented the prices of its computer anti-virus software to customers enrolled in its "auto-renewal" program.  Plaintiffs alleged that McAfee: (a) offers *non*-auto-renewal subscriptions at stated "discounts" from a "regular" sales price; however, the stated discounts are false because McAfee does not ever sell subscriptions at the stated "regular" price to *non*-auto-renewal customers; and (b) charges the auto-renewal customers the amount of the false "regular" sales price, claiming it to be the "current" regular price even though it does not sell subscriptions at that price to any other customer.  Plaintiffs alleged that McAfee's false reference price scheme violated California's and New York's unfair competition and false

advertising laws.  In 2017, a class settlement was approved that included monetary payments to claimants and practice changes.

3.   ***Hansell v. TracFone Wireless***, No. 13-cv-3440-EMC (N.D. Cal.); ***Blaqmoor v. TracFone Wireless***, No. 13-cv-05295-EMC (N.D. Cal.); ***Gandhi v. TracFone Wireless***, No. 13-cv-05296-EMC (N.D. Cal.).  In January 2015, Michael W. Sobol, the chair of Lieff Cabraser's consumer protection practice group, announced that consumers nationwide who purchased service plans with "unlimited data" from TracFone Wireless, Inc., were eligible to receive payments under a $40 million settlement of a series of class action lawsuits.  One of the nation's largest wireless carriers, TracFone uses the brands Straight Talk, Net10, Telcel America, and Simple Mobile to sell mobile phones with prepaid wireless plans at Walmart and other retail stores nationwide.  The class action alleged that TracFone falsely advertised its wireless mobile phone plans as providing "unlimited data," while actually maintaining monthly data usage limits that were not disclosed to customers.  It further alleged that TracFone regularly throttled (*i.e.* significantly reduces the speed of) or terminated customers' data plans pursuant to the secret limits.  Approved by the Court in July 2015, the settlement permanently enjoins TracFone from making any advertisement or other representation about amount of data its cell phone plans offer without disclosing clearly and conspicuously all material restrictions on the amount and speed of the data plan.  Further, TracFone and its brands may not state in their advertisements and marketing materials that any plan provides "unlimited data" unless there is also clear, prominent, and adjoining disclosure of any applicable throttling caps or limits.  The litigation is notable in part because, following two years of litigation by class counsel, the Federal Trade Commission joined the litigation and filed a Consent Order with TracFone in the same federal court where the class action litigation is pending.  All compensation to consumers will be provided through the class action settlement.

4.   ***Gutierrez v. Wells Fargo Bank***, No. C 07-05923 WHA (N.D. Cal.).  Following a two week bench class action trial, U.S. District Court Judge William Alsup in August 2010 issued a 90-page opinion holding that Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class.  Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.

Wells Fargo appealed.  In December 2012, the Appellate Court issued an opinion upholding and reversing portions of Judge Alsup's order, and remanded the case to the District Court for further proceedings.  In May

2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo and imposed post-judgment interest bringing the total award to nearly $250 million. On October 29, 2014, the Appellate Court affirmed the Judge Alsup's order reinstating the judgment.

For his outstanding work as Lead Trial Counsel and the significance of the case, *California Lawyer* magazine recognized Richard M. Heimann with a California Lawyer Attorney of the Year (CLAY) Award. In addition, the Consumer Attorneys of California selected Mr. Heimann and Michael W. Sobol as Finalists for the Consumer Attorney of the Year Award for their success in the case.

In reviewing counsel's request for attorneys' fees, Judge Alsup stated on May 21, 2015: "Lieff, Cabraser, on the other hand, entered as class counsel and pulled victory from the jaws of defeat. They bravely confronted several obstacles including the possibility of claim preclusion based on a class release entered in state court (by other counsel), federal preemption, hard-fought dispositive motions, and voluminous discovery. They rescued the case [counsel that originally filed] had botched and secured a full recovery of $203 million in restitution plus injunctive relief. Notably, Attorney Richard Heimann's trial performance ranks as one of the best this judge has seen in sixteen years on the bench. Lieff, Cabraser then twice defended the class on appeal. At oral argument on the present motion, in addition to the cash restitution, Wells Fargo acknowledged that since 2010, its posting practices changed nationwide, in part, because of the injunction. Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."

5.   ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

6.   ***Catholic Healthcare West Cases***, JCCP No. 4453 (Cal. Supr. Ct.). Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on

Medicare. In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million. The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income and uninsured patients to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices. Lieff Cabraser served as Lead Counsel in the coordinated action.

7. ***In re Neurontin Marketing and Sales Practices Litigation***, MDL No. 1629 (D. Mass.). Lieff Cabraser served on the Plaintiffs' Steering Committee in multidistrict litigation arising out of the sale and marketing of the prescription drug Neurontin, manufactured by Parke-Davis, a division of Warner-Lambert Company, which was later acquired by Pfizer, Inc. Lieff Cabraser served as co-counsel to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in Kaiser's trial against Pfizer in the litigation. On March 25, 2010, a federal court jury determined that Pfizer violated a federal antiracketeering law by promoting its drug Neurontin for unapproved uses and found Pfizer must pay Kaiser damages of up to $142 million. At trial, Kaiser presented evidence that Pfizer knowingly marketed Neurontin for unapproved uses without proof that it was effective. Kaiser said it was misled into believing neuropathic pain, migraines, and bipolar disorder were among the conditions that could be treated effectively with Neurontin, which was approved by the FDA as an adjunctive therapy to treat epilepsy and later for post-herpetic neuralgia, a specific type of neuropathic pain. In November 2010, the Court issued Findings of Fact and Conclusions of Law on Kaiser's claims arising under the California Unfair Competition Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of approximately $95 million. In April 2013, the First Circuit Court of Appeals affirmed both the jury's and the District Court's verdicts. In November 2014, the Court approved a $325 million settlement on behalf of a nationwide class of third party payors.

8. ***Sutter Health Uninsured Pricing Cases***, JCCP No. 4388 (Cal. Supr. Ct.). Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment. In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action. As part of the settlement, Class members were entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million. For a three year period, Sutter agreed to provide discounted pricing policies for uninsureds. In addition, Sutter agreed to maintain more compassionate collections policies that

will protect uninsureds who fall behind in their payments. Lieff Cabraser served as Lead Counsel in the coordinated action.

9. **Citigroup Loan Cases**, JCCP No. 4197 (San Francisco Supr. Ct.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added unwanted and unnecessary insurance products onto mortgage loans and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

10. **Telephone Consumer Protection Act Litigation**. Lieff Cabraser has spearheaded a series of groundbreaking class actions under the Telephone Consumer Protection Act ("TCPA"), which prohibits abusive telephone practices by lenders and marketers, and places strict limits on the use of autodialers to call or send texts to cell phones. The settlements in these cases have collectively put a stop to millions of harassing calls by debt collectors and others and resulted in the recovery by consumers across America of over $380 million.

In 2012, Lieff Cabraser achieved a $24.15 million class settlement with Sallie Mae – the then-largest settlement in the history of the TCPA. See **Arthur v. Sallie Mae, Inc.**, No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012). In subsequent cases, Lieff Cabraser and co-counsel eclipsed this record, including a $32,083,905 settlement with Bank of America (**Duke v. Bank of America**, No. 5:12-cv-04009-EJD (N.D. Cal.)), a $39,975,000 settlement with HSBC (**Wilkins v. HSBC Bank Nev., N.A.**, Case No. 14-cv-190 (N.D. Ill.)), a $75,455,098.74 settlement with Capital One (**In re Capital One Telephone Consumer Protection Act Litigation**, Master Docket No. 1:12-cv-10064 (N.D. Ill.)), and six settlements with Wells Fargo totaling over $95 million (**Dunn v. Wells Fargo Bank, N.A.**, Case: 1:17-cv-00481 (N.D. Ill.)). In the **HSBC** matter, Judge James F. Holderman commented on "the excellent work" and "professionalism" of Lieff Cabraser and its co-counsel. As noted above, Lieff Cabraser's class settlements in TCPA cases have collectively resulted in the recovery by consumers to date of over $380 million.

11. **Thompson v. WFS Financial**, No. 3-02-0570 (M.D. Tenn.); **Pakeman v. American Honda Finance Corporation**, No. 3-02-0490 (M.D. Tenn.); **Herra v. Toyota Motor Credit Corporation**, No. CGC 03-419 230 (San Francisco Supr. Ct.). Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future

instances of—racial discrimination in the setting of interest rates in automobile finance contracts. The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc. sell automobile finance contracts, limiting the discrimination that can occur. In approving the settlement in *Thompson v. WFS Financial*, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class. In 2006 in *Herra v. Toyota Motor Credit Corporation*, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006. The monetary benefit to the class was estimated to be between $159 and $174 million.

12. ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.). Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay. In November 2008, the Court approved a final settlement of the *John Muir* litigation. John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients who received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million. No claims were required. Every class member received a refund or bill adjustment. Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

13. ***Providian Credit Card Cases***, JCCP No. 4085 (San Francisco Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest

settlement ever by a U.S. credit card company in a consumer protection case.

14.    ***In re Chase Bank USA, N.A. "Check Loan" Contract Litigation***, MDL No. 2032 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in Multi-District Litigation ("MDL") charging that Chase Bank violated the implied covenant of good faith and fair dealing by unilaterally modifying the terms of fixed rate loans. The MDL was established in 2009 to coordinate more than two dozen cases that were filed in the wake of the conduct at issue. The nationwide, certified class consisted of more than 1 million Chase cardholders who, in 2008 and 2009, had their monthly minimum payment requirements unilaterally increased by Chase by more than 150%. Plaintiffs alleged that Chase made this change, in part, to induce cardholders to give up their promised fixed APRs in order to avoid the unprecedented minimum payment hike. In November 2012, the Court approved a $100 million settlement of the case.

15.    ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F.3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.

16.    ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment. In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also required Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts

from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.

17.     ***In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation***, MDL No. 1999 (E.D. Wis.). Lieff Cabraser served as co-counsel for consumers who alleged manufacturers of certain gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower -- defendants' alleged misconduct caused consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

18.     ***Strugano v. Nextel Communications***, No. BC 288359 (Los Angeles Supr. Ct). In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (*i.e.*, for exceeding their allotted cellular plan minutes). The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

19.     ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

20.     ***Payment Protection Credit Card Litigation***. Lieff Cabraser represented consumers in litigation in federal court against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs. The complaints charged that the credit card companies imposed payment

protection without the consent of the consumer and/or deceptively marketed the service, and further that the credit card companies unfairly administered their payment protection programs to the detriment of consumers. In 2012 and 2013, the Courts approved monetary settlements with HSBC ($23.5 million), Bank of America ($20 million), and Discover ($10 million) that also required changes in the marketing and sale of payment protection to consumers.

21. ***California Title Insurance Industry Litigation***. Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

22. ***Vytorin/Zetia Marketing, Sales Practices & Products Liability Litigation***, MDL No. 1938 (D. N.J.). Lieff Cabraser served on the Executive Committee of the Plaintiffs' Steering Committee representing plaintiffs alleging that Merck/Schering-Plough Pharmaceuticals falsely marketed anti-cholesterol drugs Vytorin and Zetia as being more effective than other anti-cholesterol drugs. Plaintiffs further alleged that Merck/Schering-Plough Pharmaceuticals sold Vytorin and Zetia at higher prices than other anti-cholesterol medication when they were no more effective than other drugs. In 2010, the Court approved a $41.5 million settlement for consumers who bought Vytorin or Zetia between November 2002 and February 2010.

23. ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.). Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the Court agreed, declining to

approve it.  Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

24.     ***Berger v. Property I.D. Corporation***, No.  CV 05-5373-GHK (C.D. Cal.).  In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers.  Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California).  Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

25.     ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.).  In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia.  The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency.  One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million.  Trial on the class members' claims against the operators of crematory began in August 2004.  Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs.  As part of the settlement, all buildings on the Tri-State property were razed.  The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there.  Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order.  215 F.R.D. 660 (2003).

26.     ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.).  Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers."  The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize.  In September 2000, the Court granted final approval of a $33 million settlement of the class action.  In April

2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

27. ***Walsh v. Kindred Healthcare Inc.***, No. 3:11-cv-00050 (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of 54,000 current and former residents, and families of residents, of skilled nursing care facilities in a class action against Kindred Healthcare for failing to adequately staff its nursing facilities in California. Since January 1, 2000, skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing hours per patient day (NHPPD), which represented the minimum staffing required for patients at skilled nursing facilities.

The complaint alleged a pervasive and intentional failure by Kindred Healthcare to comply with California's required minimum standard for qualified nurse staffing at its facilities. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities. Studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems, including a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death. The complaint further charged that Kindred Healthcare collected millions of dollars in payments from residents and their family members, under the false pretense that it was in compliance with California staffing laws and would continue to do so.

In December 2013, the Court approved a $8.25 million settlement which included cash payments to class members and an injunction requiring Kindred Healthcare to consistently utilize staffing practices which would ensure they complied with applicable California law. The injunction, subject to a third party monitor, was valued at between $6 million and $20 million.

28. ***Cincotta v. California Emergency Physicians Medical Group***, No. 07359096 (Cal. Supr. Ct.). Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were cancelled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for

all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

29. ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***, MDL No. 1715. Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms. In August 2010, the Court approved a $22 million settlement.

30. ***ING Bank Rate Renew Cases***, Case No. 11-154-LPS (D. Del.). Lieff Cabraser represented borrowers in class action lawsuits charging that ING Direct breached its promise to allow them to refinance their mortgages for a flat fee. From October 2005 through April 2009, ING promoted a $500 or $750 flat-rate refinancing fee called "Rate Renew" as a benefit of choosing ING for mortgages over competitors. Beginning in May 2009, however, ING began charging a higher fee of a full monthly mortgage payment for refinancing using "Rate Renew," despite ING's earlier and lower advertised price. As a result, the complaint alleged that many borrowers paid more to refinance their loans using "Rate Renew" than they should have, or were denied the opportunity to refinance their loan even though the borrowers met the terms and conditions of ING's original "Rate Renew" offer. In August 2012, the Court certified a class of consumers in ten states who purchased or retained an ING mortgage from October 2005 through April 2009. A second case on behalf of California consumers was filed in December 2012. In October 2014, the Court approved a $20.35 million nationwide settlement of the litigation. The settlement provided an average payment of $175 to the nearly 100,000 class members, transmitted to their accounts automatically and without any need to file a claim form.

31. ***Yarrington v. Solvay Pharmaceuticals***, No. 09-CV-2261 (D. Minn.). In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies. Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug. The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use. Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest. In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.

32.    ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr. Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

33.    ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.). Lieff Cabraser served as Class Counsel representing a certified class of online consumers in California who purchased certain Dell computers based on the advertisement of an instant-off (or "slash-through") discount. The complaint challenged Dell's pervasive use of "slash-through" reference prices in its online marketing. Plaintiffs alleged that these "slash-through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices. In October 2011, the Court approved a settlement that provided a $50 payment to each class member who submitted a timely and valid claim. In addition, in response to the lawsuit, Dell changed its methodology for consumer online advertising, eliminating the use of "slash-through" references prices.

34.    ***Hepting v. AT&T Corp.***, Case No. C-06-0672-VRW (N.D. Cal.). Plaintiffs alleged that AT&T collaborated with the National Security Agency in a massive warrantless surveillance program that illegally tracked the domestic and foreign communications and communications records of millions of Americans in violation of the U.S. Constitution, Electronic Communications Privacy Act, and other statutes. The case was filed on January 2006. The U.S. government quickly intervened and sought dismissal of the case. By the Spring of 2006, over 50 other lawsuits were filed against various telecommunications companies, in response to a *USA Today* article confirming the surveillance of communications and communications records. The cases were combined into a multi-district litigation proceeding entitled *In re National Security Agency Telecommunications Record Litigation*, MDL No. 06-1791. In June of 2006, the District Court rejected both the government's attempt to dismiss the case on the grounds of the state secret privilege and AT&T's arguments in favor of dismissal. The government and AT&T appealed the decision and the U.S. Court of Appeals for the Ninth Circuit heard argument one year later. No decision was issued. In July 2008, Congress granted the government and AT&T "retroactive immunity" for liability for their wiretapping program under amendments to the Foreign Intelligence

Surveillance Act that were drafted in response to this litigation. Signed into law by President Bush in 2008, the amendments effectively terminated the litigation. Lieff Cabraser played a leading role in the litigation working closely with co-counsel from the Electronic Frontier Foundation.

35.    ***In Re Apple and AT&T iPad Unlimited Data Plan Litigation***, No. 5:10-cv-02553 RMW (N.D. Cal.). Lieff Cabraser served as class counsel in an action against Apple and AT&T charging that Apple and AT&T misrepresented that consumers purchasing an iPad with 3G capability could choose an unlimited data plan for a fixed monthly rate and switch in and out of the unlimited plan on a monthly basis as they wished. Less than six weeks after its introduction to the U.S. market, AT&T and Apple discontinued their unlimited data plan for any iPad 3G customers not currently enrolled and prohibited current unlimited data plan customers from switching back and forth from a less expensive, limited data plan. In March 2014, Apple agreed to compensate all class members $40 and approximately 60,000 claims were paid. In addition, sub-class members who had not yet entered into an agreement with AT&T were offered a data plan.

## V.    **Economic Injury Product Defects**

### A.    **Current Cases**

1.    ***Front-Loading Washer Products Liability Litigation***. Lieff Cabraser represents consumers in multiple states who have filed separate class action lawsuits against Whirlpool, Sears and LG Corporations. The complaints charge that certain front-loading automatic washers manufactured by these companies are defectively designed and that the design defects create foul odors from mold and mildew that permeate washing machines and customers' homes. Many class members have spent money for repairs and on other purported remedies. As the complaints allege, none of these remedies eliminates the problem.

2.    ***In Re General Motors LLC Ignition Switch Litigation***, MDL No. 2543 (S.D.N.Y.). Lieff Cabraser represents proposed nationwide classes of GM vehicle owners and lessees whose cars include defective ignition switches in litigation focusing on economic loss claims. On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the litigation, which seeks compensation on behalf of consumers who purchased or leased GM vehicles containing a defective ignition switch, over 500,000 of which have now been recalled. The consumer complaints allege that the ignition switches in these vehicles share a common, uniform, and defective design. As a result, these cars are of a lesser quality than GM represented, and class members overpaid for the cars. Further, GM's public disclosure

of the ignition switch defect has caused the value of these cars to materially diminish. The complaints seek monetary relief for the diminished value of the class members' cars.

3.  ***Honda Window Defective Window Litigation***. Case No. 2:21-cv-01142-SVW-PLA (C.D. Cal.). Lieff Cabraser represents consumers in a class action lawsuit filed against Honda Motor Company, Inc. for manufacturing and selling vehicles with allegedly defective window regulator mechanisms. Windows in these vehicles allegedly can, without warning, drop into the door frame and break or become permanently stuck in the fully-open position.

    The experience of one Honda Element owner, as set forth in the complaint, exemplifies the problem: The driver's side window in his vehicle slid down suddenly while he was driving on a smooth road. A few months later, the window on the passenger side of the vehicle also slid down into the door and would not move back up. The owner incurred more than $300 in repair costs, which Honda refused to pay for. Discovery in the action is ongoing.

4.  ***Moore, et al. v. Samsung Electronics America and Samsung Electronics Co., Ltd.***, Case No. 2:16-cv-4966 (D.N.J.). Lieff Cabraser represents consumers in federal court in New Jersey in cases focusing on complaints about Samsung top-loading washing machines that explode in the home, causing damage to walls, doors, and other equipment and presenting significant injury risks. Owners report Samsung top-load washers exploding as early as the day of installation, while others have seen their machines explode months or even more than a year after purchase. The lawsuit seeks injunctive relief as well as remedial and restitutionary actions and damages.

5.  ***In re Chinese-Manufactured Drywall Products Liability Litigation***, No. 10-30568 (E.D. La.). Lieff Cabraser with co-counsel represents a proposed class of builders who suffered economic losses as a result of the presence of Chinese-manufactured drywall in homes and other buildings they constructed. From 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China were exported to the U.S., primarily to the Gulf Coast states, and installed in newly-constructed and reconstructed properties. After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-conditioning units. Some residents of the affected homes also experienced health problems, such as skin and eye irritation, respiratory issues, and headaches.

Lieff Cabraser's client, Mitchell Company, Inc., was the first to perfect service on Chinese defendant Taishan Gypsum Co. Ltd. ("TG"), and thereafter secured a default judgment against TG. Lieff Cabraser participated in briefing that led to the District Court's denial of TG's motion to dismiss the class action complaint for lack of personal jurisdiction. On May 21, 2014, the U.S. Court of Appeals for the Fifth Court affirmed the District Court's default judgment against TG, finding jurisdiction based on ties of the company and its agent with state distributors. 753 F.3d 521 (5th Cir. 2014).

## B. Successes

1. ***In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***, Case No. 1:14-cv-10318 (N.D. Ill.). On January 3, 2020, Judge Joan B. Gottschall of the United States District Court for the Northern District of Illinois issued an Order granting final approval to the proposed $135m settlement of multidistrict litigation brought by Lieff Cabraser and co-counsel on behalf of plaintiff truck owners and lessees alleging that Navistar, Inc. and Navistar International, Inc. sold or leased 2011-2014 model year vehicles equipped with certain MaxxForce 11- or 13-liter diesel engines equipped with a defective EGR emissions system. Judge Gottschall ruled that the proposed class action settlement which had been submitted to the Court on May 28, 2019, was fair, reasonable, and adequate in addressing plaintiffs' claims. Owners and lessees of the affected trucks have until May 11, 2020 to file their settlement claims at the official website.

   The $135 million settlement provides class members with up to $2,500 per truck or up to $10,000 rebate off a new truck depending on months of ownership or lease, or the option to seek up to $15,000 per truck in out-of-pocket damages caused by the alleged defect.

2. ***Allagas v. BP Solar***, No. 3:14-cv-00560-SI (N.D. Cal.). Lieff Cabraser and co-counsel represented California consumers in a class action lawsuit against BP Solar and Home Depot charging the companies sold solar panels with defective junction boxes that caused premature failures and fire risks. In January 2017, Judge Susan Illston granted final approval to a consumer settlement valued at more than $67 million that extends relief to a nationwide class as well as eliminating the serious fire risks.

3. ***In re Mercedes-Benz Tele-Aid Contract Litigation***, MDL No. 1914 (D. N.J.). Lieff Cabraser represented owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide

analog-based networks. The Tele-Aid system offered by Mercedes-Benz relied on analog signals. Plaintiffs charged that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008.

In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment. In September 2011, the Court approved a settlement that provided class members between a $650 check or a $750 to $1,300 certificate toward the purchase or lease of new Mercedes-Benz vehicle, depending upon whether or not they paid for an upgrade of the analog Tele Aid system and whether they still owned their vehicle. In approving the settlement, U.S. District Court Judge Dickinson R. Debevoise stated, "I want to thank counsel for the . . . very effective and good work . . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."

4. ***McLennan v. LG Electronics USA***, No. 2:10-cv-03604 (D. N.J.). Lieff Cabraser represented consumers who alleged several LG refrigerator models had a faulty design that caused the interior lights to remain on even when the refrigerator doors were closed (identified as the "light issue"), resulting in overheating and food spoilage. In March 2012, the Court granted final approval to a settlement of the nationwide class action lawsuit. The settlement provides that LG reimburse class members for all out-of-pocket costs (parts and labor) to repair the light issue prior to the mailing of the class notice and extends the warranty with respect to the light issue for 10 years from the date of the original retail purchase of the refrigerator. The extended warranty covers in-home refrigerator repair performed by LG and, in some cases, the cost of a replacement refrigerator. In approving the settlement, U.S. District Court Judge William J. Martini stated, "The Settlement in this case provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue, as well as a warranty for ten years from the date of refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement."

5. ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. Wash.). In April 2008, the Court approved a nationwide settlement for current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and

equipped with polypropylene-laminated condensing heat exchangers ("CHXs"). Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names. Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials. Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely. The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed. The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement. Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

6. ***Carideo v. Dell***, No. C06-1772 JLR (W.D. Wash.). Lieff Cabraser represented consumers who owned Dell Inspiron notebook computer model numbers 1150, 5100, or 5160. The class action lawsuit complaint charged that the notebooks suffered premature failure of their cooling system, power supply system, and/or motherboards. In December 2010, the Court approved a settlement which provided class members that paid Dell for certain repairs to their Inspiron notebook computer a reimbursement of all or a portion of the cost of the repairs.

7. ***Cartwright v. Viking Industries***, No. 2:07-cv-2159 FCD (E.D. Cal.) Lieff Cabraser represented California homeowners in a class action lawsuit which alleged that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective. The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper. Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

8. ***Pelletz v. Advanced Environmental Recycling Technologies*** (W.D. Wash.). Lieff Cabraser served as Co-Lead Counsel in a case alleging that ChoiceDek decking materials, manufactured by AERT, developed persistent and untreatable mold spotting throughout their surface. In a published opinion in January 2009, the Court approved a settlement that provided affected consumers with free and discounted deck treatments, mold inhibitor applications, and product replacement and reimbursement.

9.    ***Create-A-Card v. Intuit***, No. C07-6452 WHA (N.D. Cal.).  Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks.  In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs.  Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now.  I think you've done an excellent job in the case as class counsel and the class has been well represented having you and your firm in the case."

10.    ***Weekend Warrior Trailer Cases***, JCCP No. 4455 (Cal. Supr. Ct.).  Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with frames manufactured, assembled, or supplied by Zieman Manufacturing Company.  The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles.  Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems, including bent frames, detached siding, and warped forward cargo areas, with the trailers, and concealed the defects from consumers.  In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers.  In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel were "some of the best" and "there was an overwhelming positive reaction to the settlement" among class members.

11.    ***Lundell v. Dell***, No. C05-03970 (N.D. Cal.).  Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook.  In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system.  In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

12.    ***Kan v. Toshiba American Information Systems***, No. BC327273 (Los Angeles Super. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook.  Consumers alleged a series of defects were present in the notebook.  In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100

notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

13.    ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.). In June 2004, the Court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails. Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

14.    ***Toshiba Laptop Screen Flicker Settlement***. Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. In 2004 under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

15.    ***McManus v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new. Earlier, the appellate court found that common questions predominated under purchasers' breach of implied warranty of merchantability claim. 320 F.3d 545 (5th Cir. 2003).

16.   ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.

17.   ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, Lieff Cabraser achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

18.   ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeals and Supreme Court of California.  In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing damaged siding.  The settlement had no cap, and required Weyerhaeuser to pay all timely, qualified claims over a nine year period.

19.   ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a

subsidiary of International Paper, installed on their homes. The Court certified the class in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second class-wide trial, and in 1998, the Court approved a settlement. Under a claims program established by the settlement that ran through 2008, class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 were entitled to make claims, have their homes evaluated by independent inspectors, and receive cash payments for damaged siding. Combined with settlements involving other alleged defective home building products sold by Masonite, the total cash paid to homeowners exceeded $1 billion.

20. ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961 (E.D. Pa.). Lieff Cabraser served as Court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects. The Court granted final approval of the settlement in November 1996.

21. ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Or.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

22. ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.). Lieff Cabraser served as one of two Court-appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.

23.     **Cox v. Shell**, No. 18,844 (Obion County Chancery Ct., Tenn.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines.  In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants.  The deadline for filing claims expired in 2009.

24.     **Hanlon v. Chrysler Corp.**, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the District Court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

25.     **Gross v. Mobil**, No. C 95-1237-SI (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

## VI.     **Antitrust/Trade Regulation/Intellectual Property**

### A.     **Current Cases**

1.     **In Re: Railway Industry Employee No-Poach Antitrust Litigation,** MDL No. 2850 (W.D. Pa.).  In late 2018, Lieff Cabraser was selected as interim Co-Lead Counsel for plaintiffs in the consolidated "no-poach" employee antitrust litigation against rail equipment companies Knorr-Bremse and Wabtec, the world's dominant rail equipment suppliers.  The complaint charged that the companies entered into unlawful agreements with one another not to compete for each other's employees.  Plaintiffs alleged that these agreements spanned several years, were monitored and enforced by Defendants' senior executives, and achieved their desired goal of suppressing employee compensation and mobility below competitive levels.  Plaintiffs' vigorous prosecution of the

case led to settlements with both defendants of $48.95 million, which was approved on August 26, 2020.

2.  ***In re California Bail Bond Antitrust Litig.***, 3:19-cv-00717-JST (N.D. Cal.). Lieff Cabraser serves as Interim lead Class Counsel for a proposed class of purchasers of bail bonds in California. This first-of-its-kind case alleges a conspiracy among sureties and bail agents to inflate bail bond prices.

3.  ***Schwab Short-Term Bond Market Fund, et al. v. Bank of America Corp., et al.***, No. 11 CV 6409 (S.D.N.Y.); ***Charles Schwab Bank, N.A., et al. v. Bank of America Corp., et al.***, No. 11 CV 6411 (S.D.N.Y.); ***Schwab Money Market Fund, et al. v. Bank of America Corp., et al.***, No. 11 CV 6412 (S.D.N.Y.); ***The Charles Schwab Corp., et al. v. Bank of America Corp., et al.***, No. 13 CV 7005 (S.D.N.Y.); and ***Bay Area Toll Authority v. Bank of America Corp., et al.***, No. 14 CV 3094 (S.D.N.Y.) (collectively, "LIBOR"). Lieff Cabraser serves as counsel for The Bay Area Toll Authority ("BATA"), as well as The Charles Schwab Corporation ("Charles Schwab"), its affiliates Charles Schwab Bank, N.A., and Charles Schwab & Co., Inc., which manages the investments of the Charles Schwab Bank, N.A. (collectively "Schwab"), several series of The Charles Schwab Family of Funds, Schwab Investments, and Charles Schwab Worldwide Funds plc ("Schwab Fund Series"), in individual lawsuits against Bank of America Corporation, Credit Suisse Group AG, JPMorgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR"). The complaints allege that beginning in 2007, the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low. As a result, Schwab, the Schwab Fund Series, and BATA received less than their rightful rates of return on their LIBOR-based investments. The complaints assert claims under federal antitrust laws, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the statutory and common law of California. The actions were transferred to the Southern District of New York for consolidated or coordinated proceedings with the LIBOR multidistrict litigation pending there.

4.  ***In Re: Generic Pharmaceuticals Pricing Antitrust Litigation***, MDL No. 2724 (E.D. Pa.). Beginning in February 2015, Lieff Cabraser conducted an extensive investigation into dramatic price increases of certain generic prescription drugs. Lieff Cabraser worked alongside economists and industry experts and interviewed industry participants to evaluate possible misconduct. In December of 2016, Lieff Cabraser, with co-counsel, filed the first case alleging price-fixing of Levothyroxine, the primary treatment for hypothyroidism, among the most widely prescribed drugs in the world. Lieff Cabraser also played a significant role in similar

litigation over the drug Propranolol, and the drug Clomipramine. These cases, and other similar cases, were consolidated and transferred to the Eastern District of Pennsylvania as *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724. Lieff Cabraser is a member of the End-Payer Plaintiffs' Steering Committee.

5. ***In re Lithium-Ion Batteries Antitrust Litigation***, MDL No. 2420 (N.D. Cal.). Lieff Cabraser serves as Interim Co-Lead Counsel representing indirect purchasers in a class action filed against LG, GS Yuasa, NEC, Sony, Sanyo, Panasonic, Hitachi, LG Chem, Samsung, Toshiba, and Sanyo for allegedly conspiring from 2002 to 2011 to fix and raise the prices of lithium-ion rechargeable batteries. The defendants are the world's leading manufacturers of lithium-ion rechargeable batteries, which provide power for a wide variety of consumer electronic products. As a result of the defendants' alleged anticompetitive and unlawful conduct, consumers across the U.S. paid artificially inflated prices for lithium-ion rechargeable batteries. Lieff Cabraser and co-counsel have reached settlements totaling $113.45 million with all defendants. Approval is pending.

6. ***In Re: Restasis Antitrust Litigation***, MDL No. 2819 (E.D.N.Y.). Lieff Cabraser serves as interim co-lead counsel for indirect purchasers (i.e., third-party payors and consumers) of Restasis, a blockbuster drug used to treat dry-eye disease, in multidistrict litigation alleging a broad-based and ongoing anticompetitive scheme by pharmaceutical giant Allergan, Inc. ("Allergan"). The goal of the alleged scheme was and is to maintain Allergan's monopoly.

Lieff Cabraser, together with co-counsel, filed the first two class actions on behalf of indirect purchasers. The complaints allege that Allergan (1) fraudulently procured patents it knew were invalid, (2) caused those invalid patents to be listed in the FDA's "Orange Book" as being applicable to Restasis, (3) used the improper Orange Book listings as grounds for filing baseless patent-infringement litigation, (4) abused the FDA's "citizen petition" process, and (5) used a "sham" transfer of the invalid patents to the Saint Regis Mohawk Tribe to obtain tribal sovereign immunity and protect the patents from challenge. This alleged scheme of government petitioning delayed competition from generic equivalents to Restasis that would have been just as safe and cheaper for consumers. The complaints assert claims under federal and state law, including the Sherman Act and the statutory and common law of numerous states.

In late 2018, plaintiffs successfully defeated defendant's motion to dismiss the case. In May of 2020, the Court granted plaintiffs' class certification motion and plaintiffs' motion to exclude two of the

defendant's experts. The Second Circuit Court of Appeals denied defendant's appeal, and the litigation is ongoing.

7. ***International Antitrust Cases.*** Lieff Cabraser has significant experience and expertise in antitrust litigation in Europe. Lieff Cabraser partner, Dr. Katharina Kolb, head of the firm's Munich office, has experience in all aspects of German and European competition law, particularly antitrust litigation matters following anti-competitive behavior established by European competition authorities including German Federal Cartel Office and the European Commission.

Currently, one of the firm's major international antitrust cases involves the European truck cartel, which the European Commission fined more than €3.8 billion for colluding on prices and emission technologies for more than 14 years. Lieff Cabraser is working with a range of funders to prosecute the claims of persons damaged by the European truck cartel, including many municipalities in Europe which purchased trucks for street cleaning, fire brigades, waste disposal, and other purposes.

Lieff Cabraser is also prosecuting other cartel damages cases in the EU, including the German quarto steel cartel, the German plant pesticides cartel and the French meal voucher cartel, each of which have likely caused significant damages to customers.

8. ***In re Capacitors Antitrust Litigation,*** No. 3:14-cv-03264 (N.D. Cal.). Lieff Cabraser is a member of the Plaintiffs' Steering Committee representing indirect purchasers in an electrolytic and film price-fixing class action lawsuit filed against the world's largest manufacturers of capacitors, used to store and regulate current in electronic circuits and computers, phones, appliances, and cameras worldwide. The defendants include Panasonic Corp., Elna Co. Ltd., Hitachi Chemical Co., Ltd., Nitsuko Electronics Corp., NEC Tokin Corp., SANYO Electric Co., Ltd., Matsuo Electric Co., Okaya Electric Industries Co., Nippon Chemi-con Corp., Nichicon Corp., Rubycon Corp., Taitsu Corp., and Toshin Kogyo Co., Ltd. Lieff Cabraser has played a central role in discovery efforts, and assisted in opposing Defendants' motions to dismiss and in opposing Defendants' motions for summary judgment.

Settlements with defendants NEC Tokin Corp., Nitsuko Electronics Corp., and Okaya Electric Industries Co., Ltd. have received final approval, and a settlement with Hitachi Chemical and Soshin Electric Co., Ltd. has received preliminary approval. Discovery continues with respect to the remaining defendants.

9. ***In re Disposable Contact Lens Antitrust Litigation,*** MDL No. 2626 (M.D. Fla.). Lieff Cabraser represents consumers who purchased disposable contact lenses manufactured by Alcon Laboratories, Inc.,

Johnson & Johnson Vision Care, Inc., Bausch + Lomb, and Cooper Vision, Inc.  The complaint challenges the use by contact lens manufacturers of minimum resale price maintenance agreements with independent eye care professionals (including optometrists and ophthalmologists) and wholesalers.  These agreements, the complaint alleges, operate to raise retail prices and eliminate price competition and discounts on contact lenses, including from "big box" retail stores, discount buying clubs, and online retailers.  As a result, the consumers across the United States have paid artificially inflated prices.

10. ***In re Domestic Airline Travel Antitrust Litigation***, 1:15-mc-01404 (District of Columbia). Lieff Cabraser represents consumers in a class action lawsuit against the four largest U.S. airline carriers: American Airlines, Delta Air, Southwest, and United. These airlines collectively account for over 80 percent of all domestic airline travel. The complaint alleges that for years the airlines colluded to restrain capacity, eliminate competition in the market, and increase the price of domestic airline airfares in violation of U.S. antitrust law.  The proposed class consists of all persons and entities who purchased domestic airline tickets directly from one or more defendants from July 2, 2011 to the present. In February 2016, Judge Kollar-Kotelly appointed Lieff Cabraser to the three-member Plaintiffs' Executive Committee overseeing this multidistrict airline price-fixing litigation. Defendants filed a motion to dismiss, which was denied in October 2016. Subsequently, a settlement with Southwest Airlines was granted preliminary approval. Discovery as to the remaining defendants is underway.

## B.    Successes

1. ***Nashville General v. Momenta Pharmaceuticals, et al.***, No. 3:15-cv-01100 (M.D. Tenn.). Lieff Cabraser represents AFCSME DC 37 and the Nashville General Hospital (the Hospital Authority of Metropolitan Government of Nashville) in a class-action antitrust case against defendants Momenta Pharmaceuticals and Sandoz, Inc., for their alleged monopolization of enoxaparin, the generic version of the anti-coagulant blood clotting drug Lovenox. Lovenox, developed by Sanofi-Aventis, is a highly profitable drug with annual sales of more than $1 billion. The drug entered the market in 1995 and its patent was invalidated by the federal government in 2008, making generic production possible. The complaint alleged that defendants colluded to secretly bring the official batch-release testing standard for generics within the ambit of their patent, delaying the entry of the second generic competitor—a never-before-tried theory of liability. In 2019, the court certified a class of hospitals, third-party payors, and uninsured persons in 29 states and DC, appointing Lieff Cabraser sole lead counsel. In 2019, the parties agreed to a proposed settlement totaling $120 million, the second largest indirect-purchaser

antitrust pharmaceutical settlement fund in history, after Cipro. On May 29, 2020, the Court granted final approval to the settlement.

2.   ***Seaman v. Duke University***, No. 1:15-cv-00462 (M.D. N.C.).  Lieff Cabraser represented Dr. Danielle M. Seaman and a certified class of over 5,000 academic doctors at Duke and UNC in a class action lawsuit against Duke University and Duke University Health System.  The complaint charged that Duke and UNC entered into an express, secret agreement not to compete for each other's faculty.  The lawsuit sought to recover damages and obtain injunctive relief, including treble damages, for defendants' alleged violations of federal and North Carolina antitrust law.

On February 1, 2018, U.S. District Court Judge Catherine C. Eagles issued an order certifying a faculty class.

On September 24, 2019, Judge Eagles granted final approval to the proposed settlement of the case, valued at $54.5 million.

The settlement includes an unprecedented role for the United States Department of Justice to monitor and enforce extensive injunctive relief, which will ensure that neither Duke nor UNC will enter into or enforce any unlawful no-hire agreements or similar restraints on competition. Assistant Attorney General Delrahim remarked: "Permitting the United States to become part of this settlement agreement in this private antitrust case, and thereby to obtain all of the relief and protections it likely would have sought after a lengthy investigation, demonstrates the benefits that can be obtained efficiently for the American worker when public and private enforcement work in tandem."

3.   ***In re High-Tech Employee Antitrust Litigation***, No. 11 CV 2509 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel in a consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring to suppress the pay of technical, creative, and other salaried employees. The complaint alleged that the conspiracy among defendants restricted recruiting of each other's employees. On October 24, 2013, U.S. District Court Judge Lucy H. Koh certified a class of approximately 64,000 persons who worked in Defendants' technical, creative, and/or research and development jobs from 2005-2009. On September 2, 2015, the Court approved a $415 million settlement with Apple, Google, Intel, and Adobe. Earlier, on May 15, 2014, the Court approved partial settlements totaling $20 million resolving claims against Intuit, Lucasfilm, and Pixar. The Daily Journal described the case as the "most significant antitrust employment case in recent history," adding that it "has been widely recognized as a legal and public policy breakthrough."

4.  ***Cipro Cases I and II***, JCCP Nos. 4154 and 4220 (Cal. Supr. Ct.). Lieff Cabraser represented California consumers and third party payors in a class action lawsuit filed in California state court charging that Bayer Corporation, Barr Laboratories, and other generic prescription drug manufacturers conspired to restrain competition in the sale of Bayer's blockbuster antibiotic drug Ciprofloxacin, sold as Cipro. Between 1997 and 2003, Bayer paid its would-be generic drug competitors nearly $400 million to refrain from selling more affordable versions of Cipro. As a result, consumers were forced to pay inflated prices for the drug -- frequently prescribed to treat urinary tract, prostate, abdominal, and other infections.

The trial court granted defendants' motion for summary judgment, which the California Court of Appeal affirmed in October 2011. Plaintiffs sought review before the California Supreme Court. Following briefing, the case was stayed pending the U.S. Supreme Court's decision in FTC v. Actavis. After the U.S. Supreme Court in Actavis overturned lower federal court precedent that pay-for-delay deals in the pharmaceutical industry are generally legal, plaintiffs and Bayer entered into settlement negotiations. In November 2013, the Trial Court approved a $74 million settlement with Bayer.

On May 7, 2015, the California Supreme Court reversed the grant of summary judgment to Defendants and resoundingly endorsed the rights of consumers to challenge pharmaceutical pay-for-delay settlements under California competition law. Working to the brink of trial, the plaintiffs reached additional settlements with the remaining defendants, bringing the total recovery to $399 million (exceeding plaintiffs' damages estimate by approximately $68 million), a result the trial court described as "extraordinary." The trial court granted final approval on April 21, 2017, adding that it was "not aware of any case" that "has taken roughly 17 years," where, net of fees, end-payor "claimants will get basically 100 cents on the dollar[.]"

In 2017, the American Antitrust Institute honored Lieff Cabraser's Cipro team with its Outstanding Private Practice Antitrust Achievement Award for their extraordinary work on the Cipro price-fixing and exclusionary drug-pricing agreements case. In addition, their work on the Cipro case led Lieff Cabraser partners Eric B. Fastiff, Brendan P. Glackin, and Dean M. Harvey to recognition by California Lawyer and the Daily Journal with a 2016 California Lawyer of the Year Award.

5.  ***In re Municipal Derivatives Litigation***, MDL No. 1950 (S.D.N.Y.). Lieff Cabraser represented the City of Oakland, the County of Alameda, City of Fresno, Fresno County Financing Authority, along with East Bay Delta Housing and Finance Agency, in a class action lawsuit brought on

behalf of themselves and other California entities that purchased guaranteed investment contracts, swaps, and other municipal derivatives products from Bank of America, N.A., JP Morgan Chase & Co., Piper Jaffray & Co., Societe Generale SA, UBS AG, and other banks, brokers and financial institutions. The complaint charged that defendants conspired to give cities, counties, school districts, and other governmental agencies artificially low bids for guaranteed investment contracts, swaps, and other municipal derivatives products, which are used by public entities to earn interest on bond proceeds.

The complaint further charged that defendants met secretly to discuss prices, customers, and markets for municipal derivatives sold in the U.S. and elsewhere; intentionally created the false appearance of competition by engaging in sham auctions in which the results were pre-determined or agreed not to bid on contracts; and covertly shared their unjust profits with losing bidders to maintain the conspiracy.

6.  ***Natural Gas Antitrust Cases***, JCCP Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV*. In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc. Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform, which was facilitated by a secret netting agreement between Reliant and Enron. The 2007 settlement followed a settlement reached in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

7.  ***In the Matter of the Arbitration between CopyTele and AU Optronics***, Case No. 50 117 T 009883 13 (Internat'l Centre for Dispute Resolution).  Lieff Cabraser successfully represented CopyTele, Inc. in a commercial dispute involving intellectual property.  In 2011, CopyTele entered into an agreement with AU Optronics ("AUO") under which both

companies would jointly develop two groups of products incorporating CopyTele's patented display technologies. CopyTele charged that AUO never had any intention of jointly developing the CopyTele technologies, and instead used the agreements to fraudulently obtain and transfer licenses of CopyTele's patented technologies. The case required the review of thousands of pages of documents in Chinese and in English culminating in a two week arbitration hearing. In December 2014, after the hearing, the parties resolved the matter, with CopyTele receiving $9 million.

8.    ***Wholesale Electricity Antitrust Cases I & II***, JCCP Nos. 4204 & 4205 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing, Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001. Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01. Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

9.    ***In re TFT-LCD (Flat Panel) Antitrust Litigation***, MDL No. 1827 (N.D. Cal.). Lieff Cabraser served as Court-appointed Co-Lead Counsel for direct purchasers in litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays. TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants, and other devices. Plaintiffs charged that defendants conspired to raise and fix the prices of TFT-LCD panels and certain products containing those panels for over a decade, resulting in overcharges to purchasers of those panels and products. In March 2010, the Court certified two nationwide classes of persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006, one class of panel purchasers, and one class of buyers of laptop computers, computer monitors, and televisions that contained TFT-LCDs. Over the course of the litigation, the classes reached settlements with all defendants except Toshiba. The case against Toshiba proceeded to trial. In July 2012, the jury found that Toshiba participated in the price-fixing conspiracy. The case was subsequently settled, bringing the total settlements in the litigation to over $470 million. For his outstanding work in the precedent-setting litigation, California Lawyer recognized Richard Heimann with a 2013 California Lawyer of the Year award.

10.    ***Sullivan v. DB Investments***, No. 04-02819 (D. N.J.). Lieff Cabraser
served as Class Counsel for consumers who purchased diamonds
from 1994 through March 31, 2006, in a class action lawsuit against the De
Beers group of companies. Plaintiffs charged that De Beers conspired to
monopolize the sale of rough diamonds in the U.S. In May 2008, the
District Court approved a $295 million settlement for purchasers of
diamonds and diamond jewelry, including $130 million to consumers.
The settlement also barred De Beers from continuing its illegal business
practices and required De Beers to submit to the jurisdiction of the Court
to enforce the settlement. In December 2011, the Third Circuit Court of
Appeals affirmed the District Court's order approving the settlement. 667
F.3d 273 (3rd Cir. 2011). The hard-fought litigation spanned several years
and nations. Despite the tremendous resources available to the U.S.
Department of Justice and state attorney generals, it was only through the
determination of plaintiffs' counsel that De Beers was finally brought to
justice and the rights of consumers were vindicated. Lieff Cabraser
attorneys played key roles in negotiating the settlement and defending it
on appeal. Discussing the DeBeers case, The National Law Journal noted
that Lieff Cabraser was "among the plaintiffs' firms that weren't afraid to
take on one of the business world's great white whales."

11.    ***Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.***, No.
10-cv-00318-RDB (D. Md.). Lieff Cabraser served as Co-Lead Counsel for
direct purchasers of titanium dioxide in a nationwide class action lawsuit
against Defendants E.I. Dupont De Nemours and Co., Huntsman
International LLC, Kronos Worldwide Inc., and Cristal Global (fka
Millennium Inorganic Chemicals, Inc.), alleging these corporations
participated in a global cartel to fix the price of titanium dioxide.
Titanium dioxide, a dry chemical powder, is the world's most widely used
pigment for providing whiteness and brightness in paints, paper, plastics,
and other products. Plaintiffs charged that defendants coordinated
increases in the prices for titanium dioxide despite declining demand,
decreasing raw material costs, and industry overcapacity.

Unlike some antitrust class actions, Plaintiffs proceeded without the
benefit of any government investigation or proceeding. Plaintiffs
overcame attacks on the pleadings, discovery obstacles, a rigorous class
certification process that required two full rounds of briefing and expert
analysis, and multiple summary judgment motions. In August 2012, the
Court certified the class. Plaintiffs prepared fully for trial and achieved a
settlement with the final defendant on the last business day before
trial. In December 2013, the Court approved a series of settlements with
defendants totaling $163 million.

12.    ***In re Lupron Marketing and Sales Practices Litigation***, MDL
No. 1430 (D. Mass.). In May 2005, the Court granted final approval to a

settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty. The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid. Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

13. **Marchbanks Truck Service v. Comdata Network**, No. 07-cv-01078 (E.D. Pa.). In July 2014, the Court approved a $130 million settlement of a class action brought by truck stops and other retail fueling facilities that paid percentage-based transaction fees to Comdata on proprietary card transactions using Comdata's over-the-road fleet card. The complaint challenged arrangements among Comdata, its parent company Ceridian LLC, and three national truck stop chains: defendants TravelCenters of America LLC and its wholly owned subsidiaries, Pilot Travel Centers LLC and its predecessor Pilot Corporation, and Love's Travel Stops & Country Stores, Inc. The alleged anticompetitive conduct insulated Comdata from competition, enhanced its market power, and led to independent truck stops' paying artificially inflated transaction fees. In addition to the $130 million payment, the settlement required Comdata to change certain business practices that will promote competition among payment cards used by over-the-road fleets and truckers and lead to lower merchant fees for the independent truck stops. Lieff Cabraser served as Co-Lead Class Counsel in the litigation.

14. **California Vitamins Cases**, JCCP No. 4076 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution. In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins. In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

15. **In re Buspirone Antitrust Litigation**, MDL No. 1413 (S.D.N.Y.). In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc.

entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

16. ***Meijer v. Abbott Laboratories***, Case No. C 07-5985 CW (N.D. Cal.). Lieff Cabraser served as co-counsel for the group of retailers charging that Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription drug Norvir. These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer. In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011. After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement. The Court granted final approval to the settlement in August 2011.

17. ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.). Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

18. ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.). Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery. In December 2001, the Court approved a $12.5 million settlement of the litigation.

19. ***Methionine Cases I and II***, JCCP Nos. 4090 & 4096 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels. The case settled.

20. ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.). Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon

collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

## VII. Environmental and Toxic Exposures

### A. Current Cases

1. ***In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico***, MDL No. 2179 (E.D. La.). Lieff Cabraser served on the Court-appointed Plaintiffs' Steering Committee ("PSC") and with co-counsel represented fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP, Transocean, Halliburton, and other defendants involved in the Deepwater Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010. The Master Complaints alleged that the defendants were insouciant in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures.

   In 2012, the Court approved two class action settlements to fully compensate hundreds of thousands of victims of the tragedy. The settlements resolved the majority of private economic loss, property damage, and medical injury claims stemming from the Deepwater Horizon Oil Spill, and held BP fully accountable to individuals and businesses harmed by the spill. Under the settlements, there was no dollar limit on the amount BP would have to pay. In 2014, the U.S. Supreme Court denied review of BP's challenge to its own class action settlement. The settlement received final approval, and has so far delivered $11.2 billion to compensate claimants' losses. The medical settlement also received final approval, and an additional $1 billion settlement was reached with defendant Halliburton.

2. ***Andrews, et al. v. Plains All American Pipeline, et al.***, No. 2:15-cv-04113-PSG-JEM (C.D. Cal.). Lieff Cabraser is Court-appointed Class Counsel in this action arising from an oil spill in Santa Barbara County in May 2015. A pipeline owned by Plains ruptured, and oil from the pipeline flowed into the Pacific Ocean, soiling beaches and impacting local fisheries. Lieff Cabraser represents homeowners who lost the use of the beachfront amenity for which they pay a premium, local oil platform workers who were laid off as a result of the spill and subsequent closure of the pipeline, as well as fishers whose catch was impacted by the oil spill. Plaintiffs allege that defendants did not follow basic safety protocols when they installed the pipeline, failed to properly monitor and maintain the pipeline, ignored clear signs that the pipeline was corroded and in danger of bursting, and failed to promptly respond to the oil spill when the inevitable rupture occurred.

The Federal District Court recently certified a plaintiff class composed of fishers whose catch diminished as a result of the spill and fish industry businesses that were affected as a result of the decimated fish population. Lieff Cabraser has recently filed a motion to certify additional classes of groups harmed by the spill, including private property owners and lessees near the soiled shoreline, and oil industry workers and businesses that suffered economic injuries associated with the closure of the pipeline.

3.    ***Southern California Gas Leak Cases***, JCCP No. 4861. Lieff Cabraser has been selected by the Los Angeles County Superior Court to help lead two important class action cases on behalf of homeowners and businesses that suffered economic injuries in the wake of the massive Porter Ranch gas leak, which began in October of 2015 and lasted into February of 2016. During this time, huge quantities of natural gas spewed out of an old well at Southern California Gas's Aliso Canyon Facility and into the air of Porter Ranch, a neighborhood located adjacent to the Facility and 25 miles northwest of Los Angeles.

This large-scale environmental disaster forced thousands of residents to leave their homes for months on end while the leak continued and for several months thereafter. It also caused local business to dry up during the busy holiday season, as many residents had evacuated the neighborhood and visitors avoided the area. Evidence suggests the leak was caused by at least one old and malfunctioning well used to inject and retrieve gas. Southern California Gas Company allegedly removed the safety valve on the well that could have prevented the leak. As a result, the gas leak has left a carbon footprint larger than the *Deepwater Horizon* oil spill.

Together with other firms chosen to pursue class relief for these victims, Lieff Cabraser filed two class action complaints – one on behalf of Porter Ranch homeowners, and another on behalf of Porter Ranch businesses. Southern California Gas argued in response that the injuries suffered by homeowners and businesses cannot proceed as class actions. In May 2017, the Superior Court rejected these arguments. The class action cases are proceeding with discovery into Southern California Gas Company's role in this disaster.

## B.    Successes

1.    ***In re Exxon Valdez Oil Spill Litigation***, No. 3:89-cv-0095 HRH (D. Al.). The *Exxon Valdez* ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound. Lieff Cabraser served as one of the Court-appointed Plaintiffs' Class Counsel. The class consisted of fisherman and others whose livelihoods were gravely affected by the disaster. In addition, Lieff Cabraser served on the Class Trial Team

that tried the case before a jury in federal court in 1994. The jury returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive. In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William Sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the *Exxon Valdez* through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion. Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages. With interest, the total award to the plaintiff class was $977 million.

2. ***In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation***, MDL No. 2284 (E.D. Pa.). Lieff Cabraser served as Co-Lead Counsel for homeowners, golf course companies and other property owners in a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its herbicide Imprelis caused widespread death among trees and other non-targeted vegetation across the country. DuPont marketed Imprelis as an environmentally friendly alternative to the commonly used 2,4-D herbicide. Just weeks after Imprelis' introduction to the market in late 2010, however, complaints of tree damage began to surface. Property owners reported curling needles, severe browning, and dieback in trees near turf that had been treated with Imprelis. In August 2011, the U.S. Environmental Protection Agency banned the sale of Imprelis.

The complaint charged that DuPont failed to disclose the risks Imprelis posed to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis. In response to the litigation, DuPont created a process for property owners to submit claims for damages. Approximately $400 million was paid to approximately 25,000 claimants. In October 2013, the Court approved a settlement of the class action that substantially enhanced the DuPont claims process, including by adding an extended warranty, a more limited release of claims, the right to appeal the denial of claim by DuPont to an independent arborist, and publication of DuPont's tree payment schedule.

3.     ***In re GCC Richmond Works Cases***, JCCP No. 2906 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release on July 26, 1993, of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

4.     ***In re Unocal Refinery Litigation***, No. C 94-04141 (Cal. Supr. Ct.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

5.     ***West v. G&H Seed Co., et al.***, No. 99-C-4984-A (La. State Ct.). With co-counsel, Lieff Cabraser represented a certified class of 1,500 Louisiana crawfish farmers who charged in a lawsuit that Fipronil, an insecticide sold under the trade name ICON, damaged their pond-grown crawfish crops. In Louisiana, rice and crawfish are often farmed together, either in the same pond or in close proximity to one another.

After its introduction to the market in 1999, ICON was used extensively in Louisiana to kill water weevils that attacked rice plants. The lawsuit alleged that ICON also had a devastating effect on crawfish harvests with some farmers losing their entire crawfish crop. In 2004, the Court approved a $45 million settlement with Bayer CropScience, which during the litigation purchased Aventis CropScience, the original manufacturer of ICON. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial and were on the verge of making closing arguments to the jury.

6.     ***Kingston, Tennessee TVA Coal Ash Spill Litigation***, No. 3:09-cv-09 (E.D. Tenn.). Lieff Cabraser represented hundreds of property owners and businesses harmed by the largest coal ash spill in U.S. history. On December 22, 2008, more than a billion gallons of coal ash slurry spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee. A wall of coal ash slurry traveled across the Emory River, polluting the river and nearby waterways, and covering nearly 300 acres with toxic sludge, including 12 homes and damaging hundreds of properties. In March 2010, the Court denied in large part TVA's motion to dismiss the litigation. In the Fall of 2011, the Court conducted a four week bench trial on the question of whether TVA was liable for releasing the coal ash into the river system. The issue of damages was reserved for later proceedings. In August 2012, the Court found in favor of plaintiffs

on their claims of negligence, trespass, and private nuisance. In August 2014, the case came to a conclusion with TVA's payment of $27.8 million to settle the litigation.

7.  ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 & 2620 (Cal. Supr. Ct.). On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir at a site along the rail lines known as the Cantara Loop. The metam sodium mixed thoroughly with the river water and had a devastating effect on the river and surrounding ecosystem. Within a week, every fish, 1.1 million in total, and all other aquatic life in a 45-mile stretch of the Sacramento River was killed. In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting. The spill considered the worst inland ecological disaster in California history.

    Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

8.  ***Kentucky Coal Sludge Litigation***, No. 00-CI-00245 (Cmmw. Ky.). On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 1.25 million tons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

9.  ***Toms River Childhood Cancer Incidents***, No. L-10445-01 MT (Sup. Ct. NJ). With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each who had a child with cancer, that claimed the cancers were caused by environmental contamination in the Toms River area. Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter. In December 2001, under the

supervision of a mediator, a confidential settlement favorable to the families was reached.

## VIII.  False Claims Act

### A.  Current Cases

Lieff Cabraser represents whistleblowers in a wide range of False Claims Act cases, including Medicare kickback and healthcare fraud, defense contractor fraud, and securities and financial fraud.  We have more than a dozen whistleblower cases currently under seal and investigation in federal and state jurisdictions across the U.S.  For that reason, we do not list all of our current False Claims Act and qui tam cases in our resume.

1.  ***United States ex rel. Matthew Cestra v. Cephalon***, No. 14-01842 (E.D. Pa.); ***United States ex rel. Bruce Boise et al. v. Cephalon***, No. 08-287 (E.D. Pa.)  Lieff Cabraser, with co-counsel, represents four whistleblowers bringing claims on behalf of the U.S. Government and various states under the federal and state False Claims Acts against Cephalon, Inc., a pharmaceutical company.  The complaints allege that Cephalon has engaged in unlawful off-label marketing of certain of its drugs, largely through misrepresentations, kickbacks, and other unlawful or fraudulent means, causing the submission of hundreds of thousands of false claims for reimbursement to federal and state health care programs.  The Boise case involves Provigil and its successor drug Nuvigil, limited-indication wakefulness drugs that are unsafe and/or not efficacious for the wide array of off-label psychiatric and neurological conditions for which Cephalon has marketed them, according to the allegations.  The Cestra case involves an expensive oncological drug called Treanda, which is approved only for second-line treatment of indolent non-Hodgkin's Lymphoma despite what the relators allege to be the company's off-label marketing of the drug for first-line treatment. Various motions are pending.

### B.  Successes

1.  ***United States ex rel. Mary Hendow and Julie Albertson v. University of Phoenix***, No. 2:03-cv-00457-GEB-DAD (E.D. Cal.).  Lieff Cabraser obtained a record whistleblower settlement against the University of Phoenix that charged the university had violated the incentive compensation ban of the Higher Education Act (HEA) by providing improper incentive pay to its recruiters.  The HEA prohibits colleges and universities whose students receive federal financial aid from paying their recruiters based on the number of students enrolled, which creates a risk of encouraging recruitment of unqualified students who, Congress has determined, are more likely to default on their loans.  High student loan default rates not only result in wasted federal funds, but the

students who receive these loans and default are burdened for years with tremendous debt without the benefit of a college degree.

The complaint alleged that the University of Phoenix defrauded the U.S. Department of Education by obtaining federal student loan and Pell Grant monies from the federal government based on false statements of compliance with HEA. In December 2009, the parties announced a $78.5 million settlement. The settlement constitutes the second-largest settlement ever in a False Claims Act case in which the federal government declined to intervene in the action and largest settlement ever involving the Department of Education. The University of Phoenix case led to the Obama Administration passing new regulations that took away the so-called "safe harbor" provisions that for-profit universities relied on to justify their alleged recruitment misconduct. For his outstanding work as Lead Counsel and the significance of the case, *California Lawyer* magazine recognized Lieff Cabraser attorney Robert J. Nelson with a California Lawyer of the Year (CLAY) Award.

2.    ***State of California ex rel. Sherwin v. Office Depot***, No. BC410135 (Cal. Supr. Ct.). In February 2015, the Court approved a $77.5 million settlement with Office Depot to settle a whistleblower lawsuit brought under the California False Claims Act. The whistleblower was a former Office Depot account manager. The City of Los Angeles, County of Santa Clara, Stockton Unified School District, and 16 additional California cities, counties, and school districts intervened in the action to assert their claims (including common-law fraud and breach of contract) against Office Depot directly. The governmental entities purchased office supplies from Office Depot under a nationwide supply contract known as the U.S. Communities contract. Office Depot promised in the U.S. Communities contract to sell office supplies at its best governmental pricing nationwide. The complaint alleged that Office Depot repeatedly failed to give most of its California governmental customers the lowest price it was offering other governmental customers. Other pricing misconduct was also alleged.

3.    ***State of California ex rel. Rockville Recovery Associates v. Multiplan***, No. 34-2010-00079432 (Sacramento Supr. Ct., Cal.). In a case that received widespread media coverage, Lieff Cabraser represented whistleblower Rockville Recovery Associates in a qui tam suit for civil penalties under the California Insurance Frauds Prevention Act ("IFPA"), Cal. Insurance Code § 1871.7, against Sutter Health, one of California's largest healthcare providers, and obtained the largest penalty ever imposed under the statute. The parties reached a $46 million settlement that was announced in November 2013, shortly before trial was scheduled to commence.

The complaint alleged that the 26 Sutter hospitals throughout California submitted false, fraudulent, or misleading charges for anesthesia services (separate from the anesthesiologist's fees) during operating room procedures that were already covered in the operating room bill.

After Lieff Cabraser defeated Sutter Health's demurrer and motion to compel arbitration, California Insurance Commissioner Dave Jones intervened in the litigation in May 2011. Lieff Cabraser attorneys continued to serve as lead counsel, and litigated the case for over two more years. In all, plaintiffs defeated no less than 10 dispositive motions, as well as three writ petitions to the Court of Appeals.

In addition to the monetary recovery, Sutter Health agreed to a comprehensive series of billing and transparency reforms, which California Insurance Commissioner Dave Jones called "a groundbreaking step in opening up hospital billing to public scrutiny." On the date the settlement was announced, the California Hospital Association recognized its significance by issuing a press release stating that the settlement "compels industry-wide review of anesthesia billing." Defendant Multiplan, Inc., a large leased network Preferred Provider Organization, separately paid a $925,000 civil penalty for its role in enabling Sutter's alleged false billing scheme.

4.     ***United States ex rel. Dye v. ATK Launch Systems***, No. 1:06-CV-39-TS (D. Utah). Lieff Cabraser served as co-counsel for a whistleblower who alleged that ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act. The specialized flares were used in nighttime combat, covert missions, and search and rescue operations. A key design specification set by the Defense Department was that these highly flammable and dangerous items ignite only under certain conditions. The complaint alleged that the ATK flares at issue could ignite when dropped from a height of less than 10 feet – and, according to ATK's own analysis, from as little as 11.6 inches – notwithstanding contractual specifications that they be capable of withstanding such a drop. In April 2012, the parties reached a settlement valued at $37 million.

5.     ***United States ex rel. Mauro Vosilla and Steven Rossow v. Avaya, Inc.***, No. CV04-8763 PA JTLx (C.D. Cal.). Lieff Cabraser represented a whistleblower in litigation alleging that defendants Avaya, Lucent Technologies, and AT&T violated the Federal False Claims Act and state false claims statutes. The complaint alleged that defendants charged governmental agencies for the lease, rental, and post-warranty maintenance of telephone communications systems and services that the governmental agencies no longer possessed and/or were no longer

maintained by defendants.  In November 2010, the parties entered into a $21.75 million settlement of the litigation.

6. ***State of California ex rel. Associates Against FX Insider State Street Corp.***, No. 34-2008-00008457 (Sacramento Supr. Ct., Cal.) ("***State Street I***")  Lieff Cabraser served as co-counsel for the whistleblowers in this action against State Street Corporation. The Complaint alleged that State Street violated the California False Claims Act with respect to certain foreign exchange transactions it executed with two California public pension fund custodial clients. The California Attorney General intervened in the case in October 2009.

## IX. <u>Digital Privacy and Data Security</u>

### A. Current Cases

1. ***Balderas v. Tiny Lab Productions, et al.***, Case 6:18-cv-00854 (D. New Mexico). Lieff Cabraser, with co-counsel, is working with the Attorney General of the State of New Mexico to represent parents, on behalf of their children, in a federal lawsuit seeking to protect children in the state from a foreign developer of child-directed apps and its marketing partners, including Google's ad network, Google AdMob.  The lawsuit alleges that Google, child-app developer Tiny Lab Productions, and their co-defendants surreptitiously harvested children's personal information for profiling and targeting children for commercial gain, without adequate disclosures and verified parental consent. When children played Tiny Lab's gaming apps on their mobile devices, Defendants collected and used their personal data, including geolocation, persistent identifiers, demographic characteristics, and other personal data in order to serve children with targeted advertisements or otherwise commercially exploit them.  The apps at issue, clearly and indisputably designed for children, include Fun Kid Racing, Candy Land Racing, and GummyBear and Friends Speed Racing. The action largely survived a motion to dismiss in spring 2020 and seeks redress under the federal Children's Online Privacy Protection Act and the common law.  The parties are currently in discovery.

2. ***McDonald, et al. v. Kiloo A/S, et al.***, No. 3:17-cv-04344-JD; ***Rushing, et al. v. The Walt Disney Co., et al.***, No. 3:17-cv-04419-JD; ***Rushing v. ViacomCBS, et al.***, No. 3:17-cv-04492-JD (N.D. Cal.).  In three related actions, Lieff Cabraser, with co-counsel, represents parents whose children's right to privacy was violated when their personal data was surreptitiously transmitted while playing child-directed mobile gaming apps.  Specifically, Plaintiffs allege that app developers and their mobile advertising partners (developers of so-called "software development kits" or "SDKs") collected personally identifying data (e.g., device identifiers and location data) through six apps (Subway Surfers,

Where's My Water? (Paid), Where's My Water (Free/Lite), Where's My Water? 2, Princess Palace Pets, and Llama Spit Spit), and used that data to monetize their apps through targeted behavioral advertising—without the knowledge of child users or their parents. In May 2019, U.S. District Judge James Donato issued an order largely denying the defendants' motions to dismiss. Plaintiffs then pursued their claims (i) for intrusion upon seclusion and a violation of the constitutional right to privacy under California law, (ii) under the California Unfair Competition Law, (iii) under the Massachusetts statutory right to privacy, and (iv) under New York General Business Law Section 349.

On September 24, 2020, the district court preliminarily approved sixteen class settlements with all defendants in these actions. The settlements provide stringent and wide-ranging privacy protections (in many cases exceeding federal regulations) and meaningful changes to defendants' business practices, ensuring participants in the largely unpoliced mobile advertising industry proactively protect children's privacy in thousands of apps popular with children. A final approval hearing is scheduled for December 17, 2020.

3.   ***In re Google LLC Street View Electronic Communications Litigation***, No. 3:10-md-021784-CRB (N.D. Cal.). Lieff Cabraser represents individuals whose right to privacy was violated when Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected data transmitted by those persons' Wi-Fi networks located in their nearby homes. Google collected not only basic identifying information about individuals' Wi-Fi networks, but also personal, private data being transmitted over their Wi-Fi networks such as emails, usernames, passwords, videos, and documents. Plaintiffs allege that Google's actions violated the federal Wiretap Act, as amended by the Electronic Communications Privacy Act. On September 10, 2013, the Ninth Circuit Court of Appeals held that Google's actions are not exempt from the Act.

On March 20, 2020, U.S. District Judge Charles R. Breyer granted final approval to a $13 million settlement over Google's illegal gathering of network data via its Street View vehicle fleet. Given the difficulties of assessing precise individual harms, the innovative settlement, which is intended in part to disincentivize companies like Google from future privacy violations, will distribute its monies to eight nonprofit organizations with a history of addressing online consumer privacy issues. Judge Breyer's order to distribute the settlement funds to nonprofit organizations is currently on appeal.

4.   ***In re Google LLC Location History Litigation***, No. 5:18-cv-05062-EJD (N.D. Cal.). Lieff Cabraser serves as Co-Lead Interim Class Counsel

representing individuals whose locations were tracked, and whose location information was stored and used by Google for its own purposes after the consumers disabled a feature that was supposed to prevent Google from storing a record of their locations. Plaintiffs allege that, for years, Google deliberately misled its users that their "Location History" settings would prevent Google from tracking and storing a permanent record of their movements, when in fact despite users' privacy settings, Google did so anyway. Plaintiffs allege that Google's conduct violates its users' reasonable expectations of privacy and is unlawful under the California Constitutional Right to Privacy and the common law of intrusion upon seclusion, as well as giving rise to claims for unjust enrichment and disgorgement.

5. ***In re: Marriott Int'l Customer Data Sec. Breach Litig.***, No. 19-md-2879 (D. Md.). Lieff Cabraser serves as a member of the Steering Committee in class action litigation against Marriott International Inc. and Accenture PLC for a 2018 data breach of Starwood Hotels affecting more than 300 million U.S. citizens. Plaintiffs allege that Marriott failed to fulfill its legal duty to protect its customers' sensitive personal and financial information, causing class members' personally identifying information, including credit cards and passport numbers, to be exfiltrated by cybercriminals. In February 2020, U.S. District Court Judge Paul Grimm granted in part, and denied in part, Marriott's motion to dismiss. Critically, the Court held that Plaintiffs have standing to bring their claims and that they properly alleged several tort, contract, and consumer protection claims.

6. ***In re: American Medical Collection Agency, Inc., Customer Data Sec. Breach Litig.***, No. 19-md-2904 (D. N.J.). Lieff Cabraser serves as Co-Lead Counsel on the Quest track in class action litigation against Quest Diagnostics Inc., Laboratory Corporation of America, and other blood testing and diagnostic companies that shared, or facilitated the sharing of, customers' personal identifying financial and health information with a third-party debt collector American Medical Collection Agency. Plaintiffs allege that Quest (and other blood-testing labs) failed to fulfill its legal duty to protect customers' sensitive personal, financial, and health information by sharing it with a third-party that lacked adequate data security. The complaints against each lab company allege that they were negligent, unjustly enriched, and violated numerous state consumer protection statutes.

7. ***In re Plaid Inc. Privacy Litig.***, No. 4:20-cv-03056 (N.D. Cal.). Lieff Cabraser serves as Co-Lead Interim Class Counsel in a class action lawsuit alleging that Plaid Inc., a financial technology company, invaded consumers' privacy in their financial affairs. Plaid provides third-party bank account authentication services for several well-known payment

apps, such as Venmo, Coinbase, Square's Cash App, and Stripe. Plaintiffs allege that Plaid uses login screens that misleadingly look like those of real banks to obtain consumers' banking account credentials, and subsequently uses consumers' credentials to access their bank accounts and improperly take their banking data. Plaintiffs argue that Plaid's intrusions violate established social norms, and expose consumers to additional privacy risks. The lawsuit asserts claims under state and federal consumer protection and privacy laws and seeks monetary as well as injunctive (practice change) relief to stop the conduct and purge all improperly obtained data.

**B.    Successes**

1.    ***In re Anthem, Inc. Data Breach Litig.***, No. 5:15-md-02617 (N.D. Cal.). Lieff Cabraser served on the Plaintiffs' Steering Committee representing individuals in a class action lawsuit against Anthem for its alleged failure to safeguard and secure the medical records and other personally identifiable information of its members. The second largest health insurer in the U.S., Anthem provides coverage for 37.5 million Americans. Anthem's customer database was allegedly attacked by international hackers on December 10, 2014. Anthem says it discovered the breach on January 27, 2015, and reported it about a week later on February 4, 2015. California customers were informed around March 18, 2015. The theft included names, birth dates, social security numbers, billing information, and highly confidential health information. The complaint charged that Anthem violated its duty to safeguard and protect consumers' personal information, and violated its duty to disclose the breach to consumers in a timely manner. In addition, the complaint charged that Anthem was on notice about the weaknesses in its computer security defenses for at least a year before the breach occurred.

In August 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement which required Anthem to undertake significant additional cybersecurity measures to better safeguard information going forward, and to pay $115 million into a settlement fund from which benefits to settlement class members will be paid.

2.    ***Matera v. Google Inc.***, No. 5:15-cv-04062 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel representing consumers in a digital privacy class action against Google Inc. over claims the popular Gmail service conducted unauthorized scanning of email messages to build marketing profiles and serve targeted ads. The complaint alleged that Google routinely scanned email messages that were sent by non-Gmail users to Gmail subscribers, analyzed the content of those messages, and then shared that data with third parties in order to target ads to Gmail

users, an invasion of privacy that violated the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act. In February 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement. Under the settlement, Google made business-related changes to its Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox. The proposed changes, which will not apply to scanning performed to prevent the spread of spam or malware, will run for at least three years.

3.    ***Campbell v. Facebook***, No. 4:13-cv-05996 (N.D. Cal.). Lieff Cabraser serves as Co-Lead Class Counsel in a nationwide class action lawsuit alleging that Facebook intercepts certain private data in users' personal and private messages on the social network and profits by sharing that information with third parties. When a user composes a private Facebook message and includes a link (a "URL") to a third party website, Facebook allegedly scans the content of the message, follows the URL, and searches for information to profile the message-sender's web activity. This enables Facebook to data mine aspects of user data and profit from that data by sharing it with advertisers, marketers, and other data aggregators. In December 2014, the Court in large part denied Facebook's motion to dismiss. In rejecting one of Facebook's core arguments, U.S. District Court Judge Phyllis Hamilton stated: "An electronic communications service provider cannot simply adopt any revenue-generating practice and deem it 'ordinary' by its own subjective standard." In August of 2017, Judge Hamilton granted final approval to an injunctive relief settlement of the action. As part of the settlement, Facebook has ceased the offending practices and has made changes to its operative relevant user disclosures.

4.    ***Ebarle et al. v. LifeLock Inc.***, No. 3:15-cv-00258 (N.D. Cal.). Lieff Cabraser represented consumers who subscribed to LifeLock's identity theft protection services in a nationwide class action fraud lawsuit. The complaint alleged LifeLock did not protect the personal information of its subscribers from hackers and criminals, and specifically that, contrary to its advertisements and statements, LifeLock lacked a comprehensive monitoring network, failed to provide "up-to-the-minute" alerts of suspicious activity, and did an inferior job of providing the same theft protection services that banks and credit card companies provide, often for free. On September 21, 2016, U.S. District Judge Haywood Gilliam, Jr. granted final approval to a $68 million settlement of the case.

5.    ***In re Carrier IQ Privacy Litigation***, MDL No. 2330 (N.D. Cal.). Lieff Cabraser represented a plaintiff in Multi-District Litigation against Samsung, LG, Motorola, HTC, and Carrier IQ alleging that smartphone

manufacturers violated privacy laws by installing tracking software, called IQ Agent, on millions of cell phones and other mobile devices that use the Android operating system. Without notifying users or obtaining consent, IQ Agent tracks users' keystrokes, passwords, apps, text messages, photos, videos, and other personal information and transmits this data to cellular carriers. In a 96-page order issued in January 2015, U.S. District Court Judge Edward Chen granted in part, and denied in part, defendants' motion to dismiss. Importantly, the Court permitted the core Wiretap Act claim to proceed as well as the claims for violations of the Magnuson-Moss Warranty Act and the California Unfair Competition Law and breach of the common law duty of implied warranty. In 2016, the Court granted final approval of a $9 million settlement plus injunctive relief provisions.

6. ***Perkins v. LinkedIn Corp.***, No. 13-cv-04303-LHK (N.D. Cal.). Lieff Cabraser represented individuals who joined LinkedIn's network and, without their consent or authorization, had their names and likenesses used by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn. On February 16, 2016, the Court granted final approval to a $13 million settlement, one of the largest per-class member settlements ever in a digital privacy class action. In addition to the monetary relief, LinkedIn agreed to make significant changes to Add Connections disclosures and functionality. Specifically, LinkedIn revised disclosures to real-time permission screens presented to members using Add Connections, agreed to implement new functionality allowing LinkedIn members to manage their contacts, including viewing and deleting contacts and sending invitations, and to stop reminder emails from being sent if users have sent connection invitations inadvertently.

7. ***Corona v. Sony Pictures Entertainment***, No. 2:14-cv-09660-RGK (C.D. Cal.). Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in class action litigation against Sony for failing to take reasonable measures to secure the data of its employees from hacking and other attacks. As a result, personally identifiable information of thousands of current and former Sony employees and their families was obtained and published on websites across the Internet. Among the staggering array of personally identifiable information compromised were medical records, Social Security Numbers, birth dates, personal emails, home addresses, salaries, tax information, employee evaluations, disciplinary actions, criminal background checks, severance packages, and family medical histories. The complaint charged that Sony owed a duty to take reasonable steps to secure the data of its employees from hacking. Sony allegedly breached this duty by failing to properly invest in adequate IT security, despite having already succumbed to one of the largest data breaches in history only three years ago. In October 2015, an $8 million settlement was

reached under which Sony agreed to reimburse employees for losses and harm.

8. ***In re Intuit Data Litig.***, No. 5:15-cv-01778-EJD (N.D. Cal.).  Lieff Cabraser represented identity theft victims in a nationwide class action lawsuit against Intuit for allegedly failing to protect consumers' data from foreseeable and preventable breaches, and by facilitating the filing of fraudulent tax returns through its TurboTax software program.  The complaint alleged that Intuit failed to protect data provided by consumers who purchased TurboTax, used to file an estimated 30 million tax returns for American taxpayers every year, from easy access by hackers and other cybercriminals.  The complaint further alleged that Intuit was aware of the widespread use of TurboTax exclusively for the filing of fraudulent tax returns.  Yet, Intuit failed to adopt basic cyber security policies to prevent this misuse of TurboTax.  As a result, fraudulent tax returns were filed in the names of the plaintiffs and thousands of other individuals across America, including persons who never purchased TurboTax. In May 2019, Judge Edward J. Davila of the U. S. District Court for the Northern District of California granted final approval to a settlement that provided all class members who filed a valid claim with free credit monitoring and identity restoration services, and required Intuit to commit to security changes for preventing future misuse of the TurboTax platform.

## X. International and Human Rights Litigation

### A. Successes

1. ***Holocaust Cases***.  Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  The firm served as Settlement Class Counsel in the case against the Swiss banks for which the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  The firm was also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled ***In re Holocaust Era***

*German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears. You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . . What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . . I want to thank counsel for the assistance in bringing us to where we are today. Cases don't get settled just by litigants. It can only be settled by competent, patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.). Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years. The case was brought on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries. As part of the Braceros program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero. The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009. Under the settlement, the Mexican government provided a payment to Braceros, or their surviving spouses or children, in the amount of approximately $3,500 (USD). In approving the settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one. It was enormously challenging. . . . It had all sorts of issues . . . that complicated it: foreign law, constitutional law, contract law, [and] statute of limitations. . . . Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted. I actually expected, to tell you the truth, at some point that the plaintiffs would just give up

because it was so hard, but they never did. They never did. And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

## FIRM BIOGRAPHY:

### PARTNERS

**ELIZABETH J. CABRASER**, Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; U.S. District Court, Eastern District of California, 1979; U.S. District Court, Central District of California and Southern District of California, 1992; U.S. District Court, Eastern District of Michigan, 2005; U.S. Court of Appeals, First Circuit, 2011; U.S. Court of Appeals, Second Circuit, 2009; U.S. Court of Appeals, Third Circuit, 1994; U.S. Court of Appeals, Fifth Circuit, 1992; U.S. Court of Appeals, Sixth Circuit, 1992; U.S. Court of Appeals, Seventh Circuit, 2001; U.S. Court of Appeals, Ninth Circuit, 1979; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Court of Appeals, Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986; Fourth Circuit Court of Appeals, 2013. *Education*: University of California, Berkeley, School of Law (Berkeley Law), Berkeley, California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; selected for inclusion by peers in The Best Lawyers in America in the fields of "Consumer Protection Law," "Litigation – Securities," "Mass Tort Litigation/Class Actions – Plaintiffs" and "Personal Injury Litigation – Plaintiffs, Product Liability Litigation – Plaintiffs," 2005-2022; "Top Lawyers of the Decade," Daily Journal, 2021; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017, 2019, 2021; "Lawdragon 500 Hall of Fame," *Lawdragon*, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Northern California Super Lawyer," *Super Lawyers*, 2004-2021; "Top 10 Northern California Super Lawyers," *Super Lawyers*, 2011-2021; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2005-2021; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2005-2021; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2020; "Top 20 Trial Lawyers in America," Benchmark Litigation, 2020; "Top 100 Lawyers in California," Daily Journal, 2002-2007, 2010-2016, 2019-2020; "Top California Women Lawyers," *Daily Journal*, 2007-2020; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2006-2020; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions - Plaintiffs and Product Liability Litigation - Plaintiffs for San Francisco, 2014, 2016, 2019; "Elite Women of the Plaintiffs Bar," National Law Journal, 2018; "Champion of Justice," Public Justice, 2018; "Titan of the Plaintiffs' Bar," *Law360*, 2018; "National Trial Lawyers Hall of Fame," National Trial Lawyers Association, 2018; "Lifetime Achievement Award," *National Law Journal*, 2017; "Plaintiff Lawyer of the Year," *Benchmark Litigation*, 2017; "Leader in the Field" for General Commercial Litigation (California); Product Liability – Plaintiffs (Nationwide), *Chambers USA*, 2017; "Energy and Environmental Law Trailblazer," *National Law Journal*, 2017; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "California Litigation Star," *Benchmark Litigation*, 2012-2017; "Litigator of the Week," *American Lawyer Litigation Daily*, October 28, 2016; "25 Most Influential Women in

Securities Law," *Law360*, 2016 ; "MVP for Class Action Law," *Law360*, 2016; "Judge Learned Hand Award," American Jewish Committee, 2016; "Top 10 Female Litigators," *Benchmark Litigation*, 2016-2017; "Women Trailblazers in the Law," Senior Lawyers Division, American Bar Association, 2015 "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2015; "Top Trial Lawyer," *Benchmark Litigation*, 2016; "Top 100 Attorneys in California," *Daily Journal*, 2002-2007, 2010-2016; "Outstanding Women Lawyer," *National Law Journal*, 2015; "Top 10 Northern California Super Lawyer," *Super Lawyers*, 2011-2018; "Recommended Lawyer," *The Legal 500* (U.S. edition, 2000-2014); "100 Most Influential Lawyers in America," *The National Law Journal*, 1997, 2000, 2006, & 2013; "Lifetime Achievement Award," American Association for Justice, 2012; "Outstanding Achievement Award," Chambers USA, 2012; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2010; "Edward Pollock Award," Consumer Attorneys of California, 2008; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "50 Most Influential Women Lawyers in America," *The National Law Journal*, 1998 & 2007; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Top 75 Women Litigators," *Daily Journal*, 2005-2006; "Lawdragon 500 Leading Litigators in America," *Lawdragon*, 2006; "Distinguished Leadership Award," Legal Community Against Violence, 2006; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Top 30 Securities Litigator," *Daily Journal*, 2005; "Top 50 Women Litigators," *Daily Journal*, 2004; "Citation Award," University of California, Berkeley, School of Law (Berkeley Law), 2003; "Distinguished Jurisprudence Award," Anti-Defamation League, 2002; "Top 30 Women Litigators," *California Daily Journal*, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "Matthew O. Tobriner Public Service Award," Legal Aid Society, 2000; "California Law Business Top 100 Lawyers," *California Daily Journal*, 2000; "California Lawyer of the Year (CLAY)," *California Lawyer*, 1998; "Presidential Award of Merit," Consumer Attorneys of California, 1998; "Public Justice Achievement Award," Public Justice, 1997.  **Publications & Presentations**: Editor-in-Chief, *California Class Actions Practice and Procedure*, LexisNexis (updated annually); "Punitive Damages," Proving and Defending Damage Claims, Chapter 8, Aspen Publishers (updated annually); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 Connecticut Law Review 1239 (Summer 2011); "Apportioning Due Process: Preserving The Right to Affordable Justice," 87 Denver U. L.Rev. 437 (2010); "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture" (2010); "When Worlds Collide: The Supreme Court Confronts Federal Agencies with Federalism in *Wyeth v. Levine*," 84 Tulane L. Rev. 1275 (2010); "Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services," *Roger Williams University Law Review* (Winter 2009); "California Class Action Classics," Consumer Attorneys of California (January/February Forum 2009); Executive Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2008-2010; Coordinating Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2006-2007; "The Manageable Nationwide Class: A Choice-of-Law Legacy of *Phillips Petroleum Co. v. Shutts*," *University of Missouri- Kansas City Law Review*, Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May & June 2005); Editor-in-Chief, *California Class Actions Practice and Procedures* (2003);

"A Plaintiffs' Perspective On The Effect of State Farm v. Campbell On Punitive Damages in Mass Torts" (May 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in *5 Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," *ABA 8th Annual National Institute on Class Actions*, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Mass Tort Class Actions," ATLA's Litigating Tort Cases, Vol. 1, Chapter 9 (June 2003); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Co-Author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-Author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2001-2002); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," *36 Wake Forest Law Review 979* (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," *33 Connecticut Law Review 1239* (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," *74 Tulane Law Review 2005* (June 2000); "Class Action Trends and Developments After Amchem and Ortiz," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions," (December 1999); "Life After Amchem: The Class Struggle Continues," *31 Loyola Law Review 373* (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of Amchem and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the Castano Class," *SB24 ALI-ABA 433* (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," *24 CTLA Forum 11* (January-February 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An Oracle of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," *21 The Brief 12* (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to Undeveloped Markets: When Fraud Creates the Market," *12 Class Action Reports 402* (1989); "Mandatory Certification of Settlement Classes," *10 Class Action Reports 151* (1987). *Member*: American Academy of Arts and Sciences (Fellow); American Association for Justice (Fight for Justice Campaign; Women Trial Lawyers Caucus; California State Liaison); American Bar Association (Committee on Mass Torts, Past Co-Chair; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section; Rules & Procedures Committee, Past Vice-Chair; Civil Procedure & Evidence

News Letter, Contributor; Business Law Section); American Constitution Society, Board of Advisors; American Law Institute (1993 - present; Council, 1999 - present; Adviser, the Restatement Third, Consumer Contracts project and the Restatement Third, Torts: Liability for Economic Harm; Members Consultative Group, the Restatement Third, Torts: Liability for Physical Harm; past Adviser, the Recognition & Enforcement of Foreign Judgments project and the Principles of the Law of Aggregate Litigation project); Association of Business Trial Lawyers; Bar Association of the Fifth Federal Circuit; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997 - 1998; Judiciary Committee); Bay Area Lawyers for Individual Freedom; California Constitution Revision Commission (1993 -1996); California Women Lawyers; Consumer Attorneys of California; Federal Bar Association; Federal Bar Association (Northern District of California Chapter); Federal Civil Rules Advisory Committee (Appointed by Supreme Court, 2011); Lawyers Club of San Francisco; National Center for State Courts (Board Member; Mass Tort Conference Planning Committee); National Judicial College (Board of Trustees); Ninth Circuit Judicial Conference (Lawyer Delegate, 1992 - 1995); Northern District of California Civil Justice Reform Act (Advisory Committee; Advisory Committee on Professional Conduct); Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee; Public Justice Foundation; Queen's Bench; State Bar of California.

**RICHARD M. HEIMANN**, Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, 1975; New York, 2000; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 2013; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. Court of Appeals, Eleventh Circuit, 2015; U.S. Court of Appeals, D.C. Circuit, 1973; U.S. District Court, Central District of California, 2001; U.S. District Court, Northern District of California, 1975; U.S. District Court, Southern District of California, 2005; U.S. District Court, District of Hawaii, 1985;U.S. District Court, District of Colorado, 2006. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Prior Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, 1974-75, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in The Best Lawyers in America in fields of "Bet the Company Litigation," "Litigation – Antitrust," "Litigation – Securities," and "Mass Tort Litigation/Class Actions – Plaintiffs," 2007-2022; "Top Plaintiff Lawyers," California Daily Journal, 2021; "Northern California Super Lawyer," *Super Lawyers*, 2004-2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Lawdragon 500 Hall of Fame," Lawdragon, 2020; "Litigation Trailblazer," The National Law Journal, 2018, 2020; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2019; "Lawyer of the Year," *Best Lawyers*, Litigation-Securities for San Francisco, 2016-2017; "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Trial Ace," *Law360* (one of 50 attorneys in the U.S. recognized by *Law360* in 2015 as the foremost trial lawyers in America); Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Northern California Super Lawyers," *Super Lawyers,* 2013; "Consumer Attorney of the Year

Finalist," Consumer Attorneys of California, 2011; California Lawyer of the Year (CLAY) Award, *California Lawyer*, 2011, 2013; "Lawdragon Finalist," Lawdragon, 2009-2011; "Top 100 Attorneys in California," *Daily Journal*, 2010-2011; "Top Attorneys In Securities Law," Super Lawyers Corporate Counsel Edition, 2010, 2012. *Publications & Presentations:* Securities Law Roundtable, *California Lawyer* (March 2013); Securities Law Roundtable, *California Lawyer* (September 2010); Securities Law Roundtable, *California Lawyer* (March 2009); Securities Law Roundtable, *California Lawyer* (April 2008); Securities Law Roundtable, *California Lawyer* (April 2007); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions" (December 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**DONALD C. ARBITBLIT**, Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions - Plaintiffs" and "Personal Injury Litigation – Plaintiffs," 2012-2022; Northern California Super Lawyers," *Super Lawyers*, 2004, 2006-2008, 2014-2021; Legal 500 recommended lawyer, *LegalEase*, 2013; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011. *Publications & Presentations*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," *6 Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *3 Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," *8 Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Co-Chair, California JCCP Yaz Science Committee, 2010-Present; Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine /Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; U.S. District Court for the District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions – Plaintiffs," 2006-2022; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2020-2022; "Edward Brodsky Founders Award," Anti-Defamation League, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," *Lawdragon*, 2020, 2021; "Super Lawyer for

New York Metro," *Super Lawyers*, 2006-2019; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions – Plaintiffs for New York City, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; Member, *Best Lawyers* Advisory Board, a select group of U.S. and international law firm leaders and general counsel, 2011-2012; "Lawdragon Finalist," *Lawdragon*, 2009-present; "Top Attorneys In Securities Law," *Super Lawyers Business Edition*, 2008-present; Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 Under 40," selected as one of the country's most successful litigators under the age of 40, *The National Law Journal*, 2002. *Publications & Presentations*: American Association for Justice, The Future of Class Actions: Teamwork, Savvy Defense, and Smart Offense, Panel Member, "Going on Offense: Developing a Proactive Plan" (May 11, 2017, Nashville, Tennessee); University of Haifa Faculty of Law, Dispute Resolution of Consumer Mass Disputes, Panelist, "The Role of the Lead Lawyer in Consumer Class Actions" (March 17, 2017, Haifa, Israel); Global Justice Forum, Presented by Robert L. Lieff – Moderator of Financial Fraud Litigation Panel and Participant on Financing of Litigation Panel (October 4, 2011, Columbia Law School, New York, New York); The Canadian Institute, The 12th Annual Forum on Class Actions – Panel Member, *Key U.S. and Cross-Border Trends: Northbound Impacts and Must-Have Requirements* (September 21, 2011, Toronto, Ontario, Canada); Co-Author with Michael J. Miarmi, "The *Basics* of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Representing Plaintiffs in Large-Scale Litigation (March 2, 2011, Stanford, California); Stanford University Law School — Panel Member, Symposium on the Future of the Legal Profession, (March 1, 2011, Stanford, California); Stanford University Law School, Member, Advisory Forum, Center of the Legal Profession (2011-Present); 4th Annual International Conference on the Globalization of Collective Litigation — Panel Member, Funding Issues: Public versus Private Financing (December 10, 2010, Florida International University College of Law, Miami, Florida); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *The Supreme Court's Decisions in Iqbol and Twombly Threaten Access to Federal Courts* (Winter 2010); American Constitution Society for Law and Policy, Access to Justice in Federal Courts — Panel Member, The Iqbal and Twombly Cases (January 21, 2010, New York, New York); American Bar Association, Section of Litigation, The 13th Annual National Institute on Class Actions — Panel Member, Hydrogen Peroxide Will Clear It Up Right Away: Developments in the Law of Class Certification (November 20, 2009, Washington, D.C.); Global Justice Forum, Presented by Robert L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 6, 2009, Stanford, California); Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S.

Courts/U.S. Lawyers in Foreign Courts (April 16, 2008, Stanford, California); Benjamin N. Cardozo Law School, The American Constitution Society for Law & Policy, and Public Justice, Co-Organizer of conference and Master of Ceremonies for conference, Justice and the Role of Class Actions (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, Conference on The Globalization of Class Actions, Panel Member, Resolution of Class and Mass Actions (December 13 and 14, 2007, Oxford, England); Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," New York State Trial Lawyers Association's "Bill of Particulars," (2005-present); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts (April 17, 2007, Palo Alto, California); "Bill of Particulars, A Review of Developments in New York State Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, Finding the Balance: Federal Preemption of State Law (June 16, 2006, Washington, D.C.); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Panel Member on Securities Litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Court (April 25, 2006, Stanford, California); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Speaker and Papers, The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, Practical Considerations for Investors' Counsel - Getting the Case (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, Magnet Courts: If You Build Them, Claims Will Come (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation, Selecting The Forum For a Complex Case — Strategic Choices Between Federal And State Jurisdictions, and Alternative Dispute Resolution ADR In Mass Tort Litigation, (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva,

"Debates Over Group Litigation in Comparative Perspective," Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen," Article, *The Admissibility of Scientific Evidence in Fen-Phen Litigation and Daubert Developments: Something For Plaintiffs*, Defense Counsel (June 1998, New York, New York); "Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme," New York Law Journal (November 23, 1998); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, A Plaintiffs' Counsels' Perspective: What's the Next Horizon? (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, The Expanding Litigation (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles (May 23, 1997, New York, New York); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Member*: American Association for Justice; American Bar Association; American Constitution Society (Board of Directors, 2016-present);  Anti-Defamation League, National Commission Member; Anti-Defamation League New York Region, Chair (2019); Association of the Bar of the City of New York; Bar Association of the District of Columbia; Civil Justice Foundation (Board of Trustees, 2004-present); Fight for Justice Campaign; Human Rights First; National Association of Shareholder and Consumer Attorneys (Executive Committee, 2009-present); New York State Bar Association; New York State Trial Lawyers Association (Board of Directors, 2001-2004); New York State Trial Lawyers Association's "Bill of Particulars" (Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," 2005-present); Plaintiff Toxic Tort Advisory Council (Lexis/Nexis, Mealey's Publications and Conferences Group, 2002-2005); Public Justice Foundation (President, 2011-2012; Executive Committee, July 2006-present; Board of Directors, July 2002-present); Co-Chair, Major Donors/Special Gifts Committee, July 2009-present; Class Action Preservation Project Committee, July 2005-present); State Bar of California; Supreme Court Historical Society.

**ROBERT J. NELSON**, Admitted to practice in California, 1987; California Supreme Court; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; U.S. Court of Appeals, Seventh Circuit, 2016; District of Columbia, 1998; U.S. District Court, Eastern District of California, 2006; U.S. District Court, Northern District of Ohio; U.S. District Court, Southern District of Ohio; U.S. District Court, Middle District of Tennessee. *Education*:  New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden-Kern Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First.  *Prior Employment:*  Judicial Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position).  *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Personal Injury Litigation – Plaintiffs" and "Product Liability Litigation –

Plaintiffs," 2012-2022; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2020-2022; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020, 2021; "Northern California Super Lawyer," *Super Lawyers*, 2004-2021; "Top 100 Lawyers in California," Daily Journal, 2020; "Trial Lawyer of the Year," 2019, Public Justice; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2007, 2010, 2014-2015; Legal 500 recommended lawyer, *LegalEase*, 2013-Present; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "California Lawyer Attorney of the Year (CLAY)" Award, *California Lawyer*, 2008, 2010; "San Francisco Trial Lawyer of the Year Finalist," San Francisco Trial Lawyers' Association, 2007. *Publications:* False Claims Roundtable, California Lawyer (January 2013); False Claims Roundtable, California Lawyer (April 2012); False Claims Roundtable, California Lawyer (June 2011); False Claims Roundtable, *California Lawyer* (June 2010); Product Liability Roundtable, *California Lawyer* (March 2010); Product Liability Roundtable, *California Lawyer* (July 2009); "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 Charleston Law Review 2 (Spring 2008) (with Elizabeth J. Cabraser); Product Liability Roundtable, California Lawyer (December 2007); Contributing Author, California Class Actions Practice and Procedures (Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," The Practical Litigator, Vol. II, No. 2 (March 2000) (ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 New York University Law Review 334 (1986). *Member*: American Association for Justice, Fight for Justice Campaign; American Bar Association; American Civil Liberties Union of Northern California; Bar Association of San Francisco; Bar of the District of Columbia; Consumer Attorneys of California; Human Rights Watch California Committee North; RE-volv, Board Member; San Francisco Trial Lawyers Association; State Bar of California.

**KELLY M. DERMODY**, Admitted to practice in California (1994); U.S. Supreme Court (2013); U.S. Court of Appeals for the First Circuit (2012); U.S. Court of Appeals for the Second Circuit (2010); U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court, Northern District of California (1995); U.S. District Court, Central District of California (2005); U.S. District Court, Eastern District of California (2012); U.S. District Court of Colorado (2007). *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Prior Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in The Best Lawyers in America in fields of "Employment Law – Individuals" and "Litigation – Labor and Employment," 2010-2022; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2010-2017, 2019-2022; "Northern California Super Lawyer," Super Lawyers, 2004-2021; "Top 50 Women Northern California Super Lawyers," Super Lawyers, 2007-2021; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2007, 2009-2021; "Top Labor & Employment Lawyers," Daily Journal, 2018-

2020; "Lawdragon 500 Leading Plaintiff Employment Lawyers in America," Lawdragon, 2018-2020; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2019; "Judge Learned Hand Award," 2019, American Jewish Committee; "Employment Law Trailblazer, National Law Journal, 2019; "Lawyer of the Year," *Best Lawyers*, Employment Law-Individuals for San Francisco, 2014, 2018; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2020; "Top California Women Lawyers," Daily Journal, 2007, 2010, 2012-2018; "Gender Justice Honoree," Equal Rights Advocates, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2017; Fellow, The College of Labor and Employment Lawyers, 2015; "Top 100 Attorneys in California, *Daily Journal,* 2012-2015; "Top 75 Labor and Employment Attorneys in California," *Daily Journal*, 2011-2015; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2007-2018; Distinguished Jurisprudence Award, Anti-Defamation League, 2014; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014, 2018; "Top 10 Northern California Super Lawyers, *Super Lawyers*, 2014; "Dolores Huerta Adelita Award," California Rural Assistance, 2013; "Recommended Lawyer," *The Legal 500* (U.S. edition, 2013); "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2011; "Irish Legal 100" Finalist, *The Irish Voice*, 2010; "Florence K. Murray Award," National Association of Women Judges, 2010 (for influencing women to pursue legal careers, opening doors for women attorneys, and advancing opportunities for women within the legal profession); "Lawdragon Finalist," *Lawdragon*, 2007-2009; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "Community Justice Award," Centro Legal de la Raza, 2008; "Award of Merit," Bar Association of San Francisco, 2007; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "500 Leading Plaintiffs' Lawyers in America," *Lawdragon*, Winter 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Consumer Attorney of the Year" Finalist, Consumer Attorneys of California, 2006; "California's Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Bay Area Employment Attorney*," The Recorder*, 2004. *Member*: American Law Institute, Elected Member, 2019; American Bar Association, Labor and Employment Law Section (Governing Council, 2009-present; Current Chair; Chair-Elect, 2020-2021; Co-Chair, Section Conf., 2008-2009; Vice-Chair, Section Conf., 2007-2008; Co-Chair, Comm. on Equal Opportunity in the Legal Profession, 2006-2007); American Bar Association, Section of Litigation (Attorney Client Privilege Task Force, 2017-2018); Bar Association of San Francisco (Board of Directors, 2005-2012; President, 2011-2012; President-Elect, 2010-2011; Treasurer, 2009-2010; Secretary, 2008-2009; Litigation Section; Executive Committee, 2002-2005); Bay Area Lawyers for Individual Freedom; Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005; Member, 1997-Present); Carver Healthy Environments and Response to Trauma in Schools (Steering Committee, 2007); College of Labor and Employment Lawyers (Fellow, 2015); Consumer Attorneys of California; Equal Rights Advocates (Litigation Committee, 2000-2002); National Association of Women Judges (Independence of the Judiciary Co-Chair, 2011-2014; Resource Board, Co-Chair, 2009-2011, Member, 2005-2014); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); National Employment Lawyers' Association; Northern District of California Historical Society (Board of Directors, 2015-Present); Northern District of California Lawyer Representative to the Ninth Circuit Judicial

Conference (2007-2010); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Public Justice Foundation; State Bar of California.

**JONATHAN D. SELBIN**, Admitted to practice in California, 1994; District of Columbia, 2000; New York, 2001; U.S. Supreme Court, 2012; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2009; U.S. Court of Appeals, Fifth Circuit, 2002; U.S. Court of Appeals, Sixth Circuit, 2012; U.S. Court of Appeals, Ninth Circuit, 2007; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. District Court, Northern District of California, 1997; U.S. District Court, Central District of California, 1995; U.S. District Court, Northern District of Florida, 2009; U.S. District Court Northern District of Illinois, 2010; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Eastern District of Michigan, 2007; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*:  Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Prior Employment*:  Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in field of "Product Liability Litigation – Plaintiffs," 2013-2022; "Plaintiffs' Lawyer Trailblazer," *National Law Journal*, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," *Lawdragon*, 2021; "Litigator of the Year Finalist," *The American Lawyer*, Industry Awards, 2020; "Titan of the Plaintiffs Bar," *Law360*, 2020; "Litigation Trailblazer," *New York Law Journal*, 2020; "New York Super Lawyer," *Super Lawyers*, 2006-2021; Distinguished Service Award, *American Association for Justice*, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; "Lawdragon Finalist," *Lawdragon*, 2009. *Publications & Presentations*: On Class Actions (2009); Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: American Bar Association; District of Columbia Bar Association; Equal Justice Works, Board of Directors and Chair, Development Committee; New York State Bar Association; State Bar of California.

**MICHAEL W. SOBOL**, Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. District Court, Eastern District of California, 2011; U.S. District Court, Southern District of California, 2010; U.S. Court of Appeals for the Ninth Circuit (2009); U.S. Court of Appeals for the Eleventh Circuit (2012). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Product Liability Litigation – Plaintiffs," 2013-2022; "Lawyer of the Year for Mass Tort & Class Action Litigation," Northern California, Best Lawyers, 2021; "Super Lawyer for Northern California," *Super Lawyers*, 2012 – 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2021; "Top Cyber/Artificial Intelligence Lawyer," Daily Journal, 2018-2019; "MVP for Cybersecurity and Privacy," Law360, 2017; "Cybersecurity & Data Privacy Trailblazer," The National Law Journal, 2017; California Litigation Star," *Benchmark Litigation*, 2013-2015; "Top 100 Northern

California Super Lawyers," *Super Lawyers*, 2013; "Top 100 Attorneys in California," *Daily Journal*, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices—California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consumer Advocates.

**FABRICE N. VINCENT**, Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs," "Product Liability Litigation – Plaintiffs," and "Personal Injury Litigation – Plaintiffs," 2012-2022; "Super Lawyer for Northern California," *Super Lawyers*, 2006–2021; "Titan of the Plaintiffs Bar," Law360, 2020, "Outstanding Subcommittee Chair for the Class Actions & Derivative Suits," *ABA Section of Litigation*, 2013. *Publications & Presentations*: Lead Author, *Citizen Report on Utility Terrain Vehicle (UTV) Hazards and Urgent Need to Improve Safety and Performance Standards; and Request for Urgent Efforts To Increase Yamaha Rhino Safety and Avoid Needless New Catastrophic Injuries, Amputations and Deaths*, Lieff Cabraser Heimann & Bernstein, LLP (2009); Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000); Author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Author, "AHP Loses Key California Motion In Limine," (February 2000); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader

Publications 2000); Author, "Special Master Rules Against SmithKline Beecham Privilege Log," (November 1999). *Member*: American Association for Justice; Association of Business Trial Lawyers; State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers; Society of Automotive Engineers.

**DAVID S. STELLINGS**, Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Awards & Honors*: "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2021; "Super Lawyer for New York Metro," *Super Lawyers*, 2012-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "*Lawdragon* Finalist, *Lawdragon*, 2009. *Member*: New York State Bar Association; New Jersey State Association; Bar Association of the City of New York; American Bar Association.

**ERIC B. FASTIFF,** Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third, Ninth and Federal Circuits; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. District Court, Eastern District of Wisconsin; U.S. Court of Federal Claims. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Prior Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996; International Trade Specialist, Eastern Europe Business Information Center, U.S. Department of Commerce, 1992. *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Litigation - Antitrust," 2013-2022; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2019-2022; "Lawyer of the Year for Antitrust Litigation," Northern California, Best Lawyers, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Northern California Super Lawyer," *Super Lawyers*, 2010-2021; "Top 100 Super Lawyers of Northern California," Super Lawyers, 2020, 2021; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017; "Plaintiffs' Law Trailblazer," *National Law Journal*, 2018; "Leader in the Field" for Antitrust (California), Antitrust (National), *Chambers USA*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Lawyers in California," *Daily Journal*, 2013; "Top Attorneys in Business Law," *Super Lawyers* Corporate Counsel Edition, 2012; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: General Editor, *California Class Actions Practice and Procedures*, (2003-2009); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-2008); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: American Antitrust Institute (Advisory Board, 2012-Present); Committee to Support the Antitrust Laws, President, 2017; Association of Business Trial Lawyers (Northern California) Board of Governors; Bar Association of San Francisco; Children's Day School (Board of Trustees); District of Columbia Bar Association; *Journal of Generic Medicines* (Editorial

Board Member, 2003-Present); State Bar of California; U.S. Court of Federal Claims Bar Association.

**WENDY R. FLEISHMAN**, Admitted to practice in New York, 1992; Pennsylvania, 1977; U.S. Supreme Court, 2000; U.S. Court of Appeals 2nd Circuit, 1998; U.S. Court of Appeals 3rd Circuit, 2010; U.S. Court of Appeals 8th Circuit, 2009; U.S. Court of Appeals 9th Circuit, 2010; U.S. District Court, District of Arizona, 2013; U.S. District Court, Western District of New York, 2012; U.S. District Court Eastern District of New York, 1999; U.S. District Court Northern District of New York, 1999; U.S. District Court Southern District of New York, 1995; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Eastern District of Pennsylvania, 1984; U.S. District Court, Western District of Pennsylvania, 2001; U.S. Court of Appeals 5th Circuit, March 5, 2014. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Prior Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment—and construction—related matters); Assistant District Attorney in Philadelphia, PA, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: Life Fellow, American Bar Foundation; AV Preeminent Peer Review Rated, Martindale-Hubbell; "Top 100 Trial Lawyers," The National Trial Lawyers; Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2019-2022; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2020, 2021; "New York Super Lawyers," Super Lawyers, 2006-2018; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; Legal 500 recommended lawyer, *LegalEase*, 2013; Officer of New York State Trial Lawyers Association, 2010-present; New York State Academy of Trial Lawyers, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Moderator, "Jurisdiction: Defining State Courts' Authority," Pound Civil Justice Institute Judges Forum; Boston, MA, July 2017; Speaker, "Diversity in Mass Torts," AAJ Education Programs, Boston, MA, July 2017; Speaker, "Mass Torts & Criminality," JAMS Mass Torts Judicial Forum, New York, NY, April 2017; Speaker, "Settling Strategies for MDLs," JAMS Mass Torts Judicial Forum, New York, NY, April 2016; Moderator & Chair, "Toxic, Environmental & Pharmaceutical Torts," American Association for Justice Annual Convention, Baltimore, MD, July 2014; "Where Do You Want To Be? Don't Get Left Behind, Creating a Vision for Your Practice," Minority Caucus and Women Trial Lawyers Caucus (July 22, 2013); Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide" (2007-2010); Co-Author with Donald Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," *Scientific Evidence, Chapter 6, Aspen Law Pub* (1999); Editor, *Trial Techniques Newsletter,* Tort and Insurance Practices Section, American Bar Association (1995-1996; 1993-1994); "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments:* Plaintiffs' Executive Committee, *IVC Filters Litigation*; Lead Counsel, Joint Coordinated California Litigation, *Amo Lens Solution Litigation*; Co-Liaison, *In re Zimmer Durom Cup Hip Implant Litigation*; Plaintiffs' Steering Committee, DePuy ASR Hip

Implant Litigation; Liaison, NJ Ortho Evra Patch Product Liability Litigation; Co-Liaison, NJ Reglan Mass Tort Litigation; Co-Chair, Mealey's Drug & Medical Device Litigation Conference (2007); Executive Committee, *In re ReNu MoistureLoc Product Liability Litigation*, MDL; Discovery Chair, *In re Guidant Products Liability Litigation*; Co-Chair Science Committee, *In re Baycol MDL Litigation*; Pricing Committee, *In re Vioxx MDL Litigation*. *Member*: New York State Trial Lawyers Association (Treasurer, 2010-present; Board of Directors, 2004-Present); Association of the Bar of the City of New York (Product Liability Committee, 2007-present; Judiciary Committee, 2004-Present); American Bar Association (Annual Meeting, Torts & Insurance Practices Section, NYC, Affair Chair, 1997; Trial Techniques Committee, Torts and Insurance Practices, Chair-Elect, 1996); American Association for Justice (Board of Governors); American Association for Justice (Board of Governors, Women Trial Lawyers' Caucus); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York; Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York Women's Bar Association; New York County Lawyers; Fight for Justice Campaign; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

 **RACHEL GEMAN**, Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007; U.S. Supreme Court, 2013. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Prior Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in field of "Employment Law – Individuals," 2012-2022; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2021; "Lawdragon 500 Leading Plaintiff Employment Lawyers in America," Lawdragon, 2018-2020; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for New York City, 2014-2019; "Super Lawyer for New York Metro," *Super Lawyers*, 2011, 2013-2019; Legal 500 recommended lawyer, *LegalEase*, 2013; "Rising Star for New York Metro," *Super Lawyers*, 2011; Distinguished Honor Award, United States Department of State, 2001. *Publications & Presentations*: Moderator, "Corporations Are Deponents, My Friend: Taking 30(b)(6) Depositions In Wage & Hour Cases," National Employment Lawyers Association Spring Seminar (2021); Author, "Class Actions: Class Representatives / Named Plaintiffs (Federal)," Practical Guidance Practice Note, Lexis/Nexis (2021); Moderator, "Discovery In Wage & Hour Cases," National Employment Lawyers Association Virtual Convention (2020); Faculty Member, "Classwide Damage Models in Misleading and False Advertising Consumer Class Actions," Strafford Consumer Class Actions Webinar (2020); Faculty Member, "Current Topics in Employment Discrimination Class Actions," Lawline Webinar (2019); Speaker, "Statistics in Employment and FCA Cases," Clearlaw Webinar (2018); Speaker, "The Anatomy of a False Claims Act Case & How the FCA Works in a Whistleblower World," Lawline Webinar (2017); Speaker, "Litigating Wage & Hour Cases: Challenges & Opportunities," National Employment

Lawyers Association Spring Conference (2017); Speaker, "Plaintiffs' Perspective in Investigating and Litigating Employment Class Actions," Lawline Webinar (2016); Speaker, "Pay Equity in Practice: What Works? Employee-Side Perspectives on Compensation Discrimination," ABA-LEL Conference (2016); Speaker, "Bringing Your First – or Next – FHA Case," NCLC Annual Conference (2016); Moderator, Government Plenary, ABA EEO Conference (2016); Speaker, "Latest Trends and Developments in Qui Tam Lawsuits and the Statute of Limitations," Webinar (2016); Speaker and Moderator, "Statistics for Lawyers - Even Those Who Hate Math," National Employment Lawyers Association Annual Convention (2015); Speaker, "Gender Pay Disparities: Enforcement, Litigation, and Remedies," New York City Conference on Representing Employees (2015); Speaker, "Protecting Pay: Representing Workers With Wage and Hour Claims," National Employment Lawyers Association (2015); Speaker and Author, "What Employment Lawyers Need to Know About Non-Employment Class Actions," ABA Section of Labor and Employment Law Conference (2014); Moderator, "Dodd-Frank and Sarbanes-Oxley Whistleblower Issues," National Employment Lawyers Association/New York (2014); Author, "Whistleblower Under Pressure," *Trial Magazine* (April 2013); Panelist, "Class Certification Strategies: Dukes in the Rear View Mirror," Impact Fund Class Action Conference (2013); Author & Panelist, "Who is an Employer Under the FLSA?" National Employment Lawyers Association Conference (2013); Panelist, "Fraud and Consumer Protection: Plaintiff and Defense Strategies," Current Issues in Pharmaceutical and Medical Device Litigation, ABA Section of Litigation (2012); Participant and Moderator, "Ask the EEOC:  Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); Panelist, "Drafting Class Action Complaints," New York State Bar Association (2011); Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); *The New York Employee Advocate*, Co-Editor (2005-2009), Regular Contributor (2008-present); Moderator, "Hot Topics in Wage and Hour Class and Collective Actions," American Association for Justice Tele-Seminar (2010); Author & Panelist, "Class Action Considerations: Certification, Settlement, and More," American Conference Institute Advanced Forum (2009); Panelist, "Rights Without Remedies," American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities (2008); Panelist, Fair Measure: Toward Effective Attorney Evaluations, American Bar Association Annual Meeting (2008); Panelist, "Getting to Know You: Use and Misuse of Selection Devices for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author, "'Don't I Think I Know You Already?': Excessive Subjective Decision-Making as an Improper Tool for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author & Panelist, "Ethical Issues in Representing Workers in Wage & Hour Actions," Representing Workers in Individuals & Collective Actions under the FLSA (2007); Author & Panelist, "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); Author & Panelist, "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006); Author & Panelist, "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005); Panelist, "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005); "Image-Based Discrimination and the BFOQ Defense," *EEO Today: The Newsletter of the EEO Committee of the ABA's Section of Labor and Employment Law*, Vol. 9, Issue 1 (2004); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and*

*Employment Newsletter* (2004); Chair & Panelist, "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003); Moderator, "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC Midwinter Meeting (2003). *Member*: American Bar Association [Labor and Employment Law Section, Standing Committee on Equal Employment Opportunity (Member, Past Employee Co-Chair, 2009-2011)]; Association of the Bar of the City of New York; Certified Fraud Examiners, New York Chapter, Member; National Employment Lawyers' Association - New York Chapter (Chair of Amicus Committee, 2017; Board Member, 2005-2011); National Employment Lawyers' Association – National; Public Justice Foundation; Rutter Federal Employment Guide, Contributing Editor (2017-present); Taxpayers Against Fraud Education Fund.

      **BRENDAN P. GLACKIN**, Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; U.S. District Court, Southern District of New York, 2001; U.S. Court of Appeals for the Second Circuit, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Court of Appeals for the Ninth Circuit. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995). *Prior Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Litigation - Antitrust," 2021, 2022; "Titan of the Plaintiffs Bar," Law360, 2021; "Northern California Super Lawyer," *Super Lawyers,* 2013-2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; *"Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020;* "Top Antitrust Lawyers in California," Daily Journal, 2020*;* "California Lawyer Attorney of the Year," *California Lawyer*, 2016. *Member*: ABA, Vice-Chair, Global Private Litigation Committee (2020); BASF Antitrust Section, Executive Committee; State Bar of California. *Seminars:* Ramifications of *American Needle, Inc. v. National Football League,* 2010; Antitrust Institute 2011: Developments & Hot Topics, 2011; Antitrust Trials: The View From the Trenches, 2013; Applying Settlement Offsets to Antitrust Judgments, ABA Spring Meetings, 2013; California Trial Advocacy, PLI, 2013; Building Trial Skills, NITA, 2013, California Trial Advocacy, PLI, 2013, Applying Settlements Offsets to Antiftust Judgments, ABA Spring Meetings, 2013, Antitrust Trials: The View From the Trenches, 2013, Antitrust and Silicon Valley: New Themes and Direction in Competition Law and Policy, Santa Clara University School of Law, March 2019; "The Antitrust of Dominant Hospital Systems: United States v. CMHA and UFCW v. Sutter Health," ABA Antitrust Law Section, 2020; Moderator, "Collective Actions in Europe: An Update," ABA Antitrust Law Section, 2021.

      **MARK P. CHALOS**, Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. Court of Appeals, Seventh Circuit, 2012; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007; U.S. Supreme Court, 2012. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: AV Peer Review Rated,

Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Consumer Protection Law," "Mass Tort Litigation/Class Actions – Plaintiffs," "Personal Injury Litigation – Plaintiffs," and "Product Liability Litigation – Plaintiffs" 2012-2022; "Lawyer of the Year for Product Liability Litigation," Southeast, Best Lawyers, 2021; American Bar Foundation Fellow, 2016; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020; "Tennessee Litigation Star," *Benchmark Litigation,* 2013-2015; "Best of the Bar," Nashville Business Journal, 2008-2010, 2015-2016; "Super Lawyer for Mid-South," *Super Lawyers*, 2011 - 2018; "Tennessee Top 100," *Super Lawyers*, 2015; "Rising Star for Mid-South," *Super Lawyers*, 2008 - 2010; "Top 40 Under 40," The Tennessean, 2004. *Publications & Presentations*: "Supreme Court Limits The Reach Of Alien Tort Statute In *Kiobel*," Legal Solutions Blog, April 2013; "The Rise of Bellwether Trials," Legal Solutions Blog, March 2013; "*Amgen*: The Supreme Court Refuses to Erect New Class Action Bar," Legal Solutions Blog, March 2013; "Are International Wrongdoers Above the Law?," *The Trial Lawyer Magazine*, January 2013; "*Kiobel v. Royal Dutch Petroleum*: Supreme Court to Decide Role of US Courts Abroad," *ABA Journal*, January 2013. "Legislation Protects the Guilty [in Deadly Meningitis Outbreak]," *The Tennessean*, December 2012; Litigating International Torts in United States Courts, 2012 ed., Thomson Reuters/West (2012); "Successfully Suing Foreign Manufacturers," *TRIAL Magazine*, November 2008; "Washington Regulators Versus American Juries: The United States Supreme Court Shifts the Balance in *Riegel v. Medtronic*," *Nashville Bar Journal*, 2008; "Washington Bureaucrats Taking Over American Justice System," *The Tennessean* (December 2007); "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," *Nashville Bar Journal*, April 2005. *Member*: American Bar Foundation (Fellow, 2016); American Association for Justice (Chair, Public Education Committee, 2015); American Bar Association (Past-Chair, YLD Criminal & Juvenile Justice Committee; Tort Trial and Insurance Practice Section Professionalism Committee); First Center for the Visual Arts (Founding Member, Young Professionals Program); Harry Phillips American Inn of Court; Kappa Chapter of Kappa Sigma Fraternity Alumni Association (President); Metropolitan Nashville Arts Commission (Grant Review Panelist); Nashville Bar Association (YLD Board of Directors; Nashville Bar Association YLD Continuing Legal Education and Professional Development Director); Nashville Bar Journal (Editorial Board); Tennessee Association for Justice (Board of Directors, 2008-2011; Legislative Committee); Tennessee Bar Association (Continuing Legal Education Committee); Tennessee Trial Lawyers Association (Board of Directors; President-Elect, 2021-2022; Vice-President, 2018-2021; Treasurer & Secretary, 2017-2018); Historic Belcourt Theatre (Past Board Chair; Board of Directors); Nashville Cares (Board of Directors).

**PAULINA do AMARAL**, Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Publications & Presentations:* Panelist, "Litigating Class Actions Conference," Law Seminars International, 2020; Faculty Member, "Mass Tort MDL Certificate

Program," Duke Law School Bolch Judicial Institute, 2020; Speaker, "Career Advice Panel Part I: The Traditional Path," UC Hastings College of the Law, 2020; Co-Chair, HarrisMartin Opioid Litigation Conference, San Francisco, 2018; "Rapid Response: Opioid Litigation," American Association for Justice Seminar, September 2017; Co-Author, "Class Action Fairness Act of 2005," California Litigation, Vol. 18, No. 3, 2005. *Awards & Honors:* Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2017-2022*; Legal 500 recommended lawyer, *LegalEase*, 2013. *Member*: American Association for Justice; UC Hastings College of the Law, Board of Trustees; Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**KENNETH S. BYRD**, Admitted to practice in Tennessee, 2004; U.S. District Court of Appeals, 6th Circuit, 2009; U.S. District Court, Western District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Middle District of Tennessee, 2005. *Education:* Boston College Law School (J.D., *cum laude*, 2004), Law Student Association (President, 2003-2004), National Moot Court Team (Regional Champion, 2003-2004), American Constitution Society (Secretary, 2002-2003), Judicial Process Clinic (2003), Criminal Justice Clinic (2003-2004); Samford University (B.S., *cum laude*, in Mathematics with Honors, minor in Journalism, 1995). *Prior Employment:* Harwell Howard Hyne Gabbert & Manner, P.C., 2004-2010; Summer Associate, Harwell Howard Hyne Gabbert & Manner, P.C., 2003; Summer Associate, Edward, Angell, Palmer, Dodger, LLP, 2003. *Awards:* Selected for inclusion by peers in The Best Lawyers in America in fields of "Consumer Protection Law", "Mass Tort Litigation/Class Actions – Plaintiffs", "Personal Injury Litigation-Plaintiffs", and "Product Liability Litigation-Plaintiffs", 2018-2022; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020; "Paladin Award," Tennessee Association for Justice, 2015; "Rising Star for Mid-South," Super Lawyers, 2014. *Member:* American Bar Association; American Constitution Society, Nashville Chapter (Member & Chair of 2008 Supreme Court Preview Event); Tennessee Trial Lawyers Association (Board of Governors, 2018-2020); Camp Ridgecrest Alumni & Friends (Board Member); Harry Phillips American Inn of Court, Nashville Chapter (Associate Member, 2008-2010; Barrister, 2010-2014); Historic Edgefield, Inc. (President, 2009-2011); Nashville Bar Association; Tennessee Bar Association.

**LIN Y. CHAN**, Admitted to practice in California, 2008; U.S. District Court, Northern District of California, 2008; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Fifth Circuit, 2011; U.S. Court of Appeals for the Ninth Circuit, 2011; U.S. Court of Appeals for the Tenth Circuit, 2011. *Education:* Wellesley College (B.A. summa cum laude 2001); Stanford Law School (J.D. 2007); Editor-in-Chief, *Stanford Journal of Civil Rights and Civil Liberties*; Fundraising Chair, Shaking the Foundations Progressive Lawyering Conference. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Litigation - Antitrust," 2021, 2022; Inaugural "Hollis Salzman Memorial Leadership Award," American Antitrust Institute & Committee to Support the Antitrust Laws (COSAL), 2021; "Top Antitrust Lawyers in California," *Daily Journal*, 2021*;* "Lawdragon 500 Leading Plaintiff Employment Lawyers in America," Lawdragon, 2018-2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," *Lawdragon*, 2019-2021; "Super Lawyer for Northern California," Super Lawyers, 2019-2021; "Rising Star for Northern California," Super

Lawyers, 2015-2018; "40 and Under Hot List," Benchmark Litigation, 2018"; "Outstanding Antitrust Litigation Achievement by a Young Lawyer," American Antitrust Institute, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; Rising Star for Competition Law, 2017, *Law360. Presentations & Publications:* Panelist, "Antitrust and Diversity, Equity, and Inclusion in the Plaintiffs' Antitrust Bar," 15th Annual Private Antitrust Enforcement Conference (November 2021); Panelist, "The State of Private Enforcement: What 10-Year Trends Say About The Success of Antitrust Class Actions," 14th Annual Private Antitrust Enforcement Conference (November 2020); Moderator, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San Francisco (January 2018); Moderator, "Challenging Non-Price Restraints," American Antitrust Institute 11th Annual Private Antitrust Enforcement Conference (November 2017); Panelist, "Settlement Ethics: Negotiating Class Action Settlements the Right Way," Impact Fund Annual Class Action Conference (February 2016); Author, "Do Federal Associated General Contractors Standing Requirements Apply to State Illinois Brick Repealer Statutes?," *Business Torts & Rico News*, Winter 2015; Panelist, "Federal and State Whistleblower Laws: What You Need to Know," Asian American Bar Association (November 2014); Author, "California Supreme Court Clarifies State Class Certification Standards in Brinker," American Bar Association Labor & Employment Law Newsletter (April 2013); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 11th Annual Employment Discrimination Class Action Conference (February 2013); Chapter Author, The Class Action Fairness Act: Law and Strategies; Co-Author, "Clash of the Titans: Iqbal and Wage and Hour Class/Collective Actions," BNA, Daily Labor Report, 80 DLR L-1 (April 2010); Chapter Co-Chair, Lindemann & Grossman, Employment Discrimination Law Treatise, Fifth Edition; Chapter Monitor, Lindemann & Grossman, Employment Discrimination Law Treatise 2010 Cumulative Supplement. *Prior Employment:* Associate, Goldstein, Borgen, Dardarian & Ho (formerly Goldstein, Demchak Baller Borgen & Dardarian), 2008-2013; Law Clerk to Judge Damon J. Keith, Sixth Circuit Court of Appeals, 2007-2008; Clinic Student, Stanford Immigrants' Rights Clinic, 2006-2007; Union Organizer, SEIU and SEIU Local 250, 2002-2004; Wellesley-Yenching Teaching Fellow, Chinese University of Hong Kong, 2001-2002. *Member:* Committee to Support the Antitrust Laws (COSAL), President; American Antitrust Institute, Advisory Board, 2018; Asian Americans Advancing Justice - Asian Law Caucus, Board Member and Board Secretary, 2013 – 2018; Asian American Bar Association, Board of Directors and Board Secretary, 2017 – Present; American Bar Association, Fair and Impartial Courts Committee Co-Chair, 2017 – 2019; Bar Association of San Francisco Antitrust and Business Regulation Section, Chair, 2018-2019; Committee to Support the Antitrust Laws, Treasurer, 2019; *Law360* Editorial Advisory Board, Competition, 2021; Public Justice; State Bar of California.

**DANIEL P. CHIPLOCK**, Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit, 2009; U.S. Court of Appeals for the Third Circuit, 2016; U.S. Court of Appeals for the Sixth Circuit, 2011; U.S. Supreme Court, 2011. *Education:* Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020, 2021; "Super Lawyer for New York Metro," *Super Lawyers*, 2016-2017; "Keck Award for Public

Service," Stanford Law School, 2000. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Shareholder and Consumer Attorneys (Executive Committee/Secretary); American Constitution Society for Law and Policy (Advocate's Circle). *Classes/Seminars:* "Fraud on the Market," Federal Bar Council, Feb. 25, 2014 (CLE panel participant).

**DOUGLAS CUTHBERTSON**, Admitted to practice in New York, 2008; U.S. Court of Appeals for the Eleventh Circuit, 2017; U.S. Court of Appeals for the Second Circuit, 2016; U.S. Court of Appeals for the Seventh Circuit, 2015; U.S. District Court, District of Connecticut, 2017; U.S. District Court, Northern District of New York, 2018; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Southern District of New York, 2008; U.S. District Court, District of Colorado, 2013; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Western District of Wisconsin, 2014; U.S. District Court, Northern District of Illinois, 2014. *Education*: Fordham University School of Law (J.D. *cum laude* 2007); President, Fordham Law School Chapter of Just Democracy; Senior Articles Editor, Fordham Urban Law Journal; Fordham University School of Law Legal Writing Award, 2004-2005; Legal Writing Teaching Assistant, 2005-2006; Dean's List, 2004-2007; Alpha Sigma Nu Jesuit Honor Society. Bowdoin College (B.A. *summa cum laude*, 1999), Sarah and James Bowdoin Scholar for Academic Excellence (1995-1999). *Prior Employment*: Associate, Debevoise & Plimpton, LLP, 2009-2012; Law Clerk to Honorable Magistrate Judge Andrew J. Peck, U.S. District Court, Southern District of New York, 2007-2009. *Awards & Honors*: "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Member*: Federal Bar Council; New York Civil Liberties Union, Board of Directors; New York State Bar Association.

**NIMISH R. DESAI**, Admitted to practice in Texas, 2017; California, 2006; U.S. Court of Appeals, Ninth Circuit, 2009; U.S. District Court, Northern District of California, 2007; Texas, 2017; U.S. District Court, Central District of California, 2008; U.S. District Court, Northern District of Florida, 2009; U.S. District Court, Eastern District of Texas, 2017; U.S. District Court, Southern District of Texas, 2019. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Prior Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Awards & Honors:* Selected for inclusion by peers in The Best Lawyers in America in field of "Qui Tam Law," 2016 – 2022; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2021, "Super Lawyer for Northern California," Super Lawyers, 2013 – 2021; "40 and Under Hot List," Benchmark Litigation, 2018 – 2020; "Top 40 Under 40 Lawyer," Daily Journal, 2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Rising Star for Northern California," Super Lawyers, 2012. *Publications & Presentations*: "BP, Exxon Valdez, and Class-Wide Punitive Damages," 21 Class Action and Derivative Suit Committee Newsletter (Fall 2010); "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques," *Environmental Science Technology*, (2003; 37(17)

pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; East Bay Community Law Center (Board Member, 2010-present); South Asian Bar Association (Board Member, 2010-present); Taxpayers Against Fraud Education Fund (Conference and Member Education Committee, 2021-). *Languages*: Gujarati (conversational).

**NICHOLAS DIAMAND**, Admitted to practice in England & Wales, 1999; New York, 2003; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; U.S. Court of Appeals, Seventh Circuit, 2006; U.S. District Court, Western District of New York, 2006; U.S. District Court for the District of Colorado, 2007; U.S. Supreme Court, 2013; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. Court of Appeals, Second Circuit, 2016. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020, 2021; "Super Lawyer for New York Metro," *Super Lawyers*, 2013-2019; "Super Lawyers Business Edition" (Securities Edition), Super Lawyers, 2016; "Rising Star for New York Metro," *Super Lawyers*, 2012. *Prior Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications & Presentations*: Panelist, Federal Bar Council: Webinar on Amendment to Fed R. Civ. P. 23: Impact on Securities, Antitrust, Consumer & Date Breach Class Action Practice, December 2018; "Spokeo Still Standing: No Sign of a Circuit Split" (with Andrew Kaufman), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Andrew Kaufman), *Law360*, 2016; "U.S. Securities Litigation & Enforcement Action," *Corporate Disputes* magazine, April-June 2015; Speaker, Strafford CLE webinar "Ethical Risks in Class Litigation," 2015; Speaker, International Corporate Governance Network Conference, 2014; "Fraud on the Market in a Post-*Amgen* World" (with M. Miarmi), *Trial Magazine,* November 2013; Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, Federal Bar Council: Webinar on Amendment to Fed R. Civ. P. 23: Impact on Securities, Antitrust, Consumer & Date Breach Class Action Practice, December 2018; Speaker, Strafford CLE webinar "Ethical Risks in Class Litigation," 2015 Speaker, International Corporate Governance Network Conference, 2014; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006. *Member*: American Association for Justice (Chair, Consumer Privacy/Data Breach Litigation Group, 2016-2018); New York City Bar Association; New York State Bar Association; Public Justice Foundation; Public Citizen; International Corporate Governance Network; Peer Articles Reviewer; *Trial* magazine.

**DEAN M. HARVEY**, Admitted to practice in California, 2007; U.S. District Court, Northern District of California, 2007; U.S. District Court, Central District of California, 2007; U.S. District Court, Eastern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2008; U.S. District Court, Eastern

District of Wisconsin, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Supreme Court, 2018; U.S Court of Appeals for the Sixth Circuit, 2019; U.S. Court of Appeals for the Eleventh Circuit, 2020. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002). *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2013-Present); Associate, Lieff Cabraser Heimann & Bernstein, LLP (2009-2013); Associate, Boies, Schiller & Flexner LLP (2007-2008); Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer Associate, Boies, Schiller & Flexner LLP (2005). *Awards & Honors*: "Top Antitrust Lawyers in California," Daily Journal, 2020, 2021; "Super Lawyer for Northern California," *Super Lawyers*, 2013-2021; "Lawdragon 500 Leading Plaintiff Employment & Civil Rights Lawyers in America," Lawdragon, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020; "California Trailblazer," *The Recorder*, 2020; "On the Rise – Top 40 Young Lawyers," American Bar Association, 2017; "Top 40 Under 40" Lawyer in California, *Daily Journal*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2016; "Lawyers on the Fast Track," *The Recorder*, 2013; "Rising Star for Northern California," *Super Lawyers*, 2010-2012; "William E. Swope Antitrust Writing Prize," 2006. *Publications & Presentations*: Panelist, "Is Labor the Next Frontier of Antitrust?" BJIL 2022 Riesenfeld Symposium, Big Money, Big Enforcement: New Frontiers in Global Antitrust Regulation, February 2022; Panelist, "How Does Labor Law Intersect with Antitrust Law?" American Bar Association 14th Annual Labor and Employment Law Conference, November 2020; Co-Author, with Yaman Salahi, Comments of the Antitrust Law Section of the ABA in Connection with the FTC Workshop on "Non-Competes in the Workplace: Examining Antitrust and Consumer Protection Issues," April 2020; Panelist, "No-Poach: Assessing Risk in Uncertain Seas," ABA Antitrust Law Section Virtual Spring Meeting, (April 2020); Panelist, "Competition in Labor Markets," U.S. Justice Department Antitrust Division Public Workshop, (November 2019); Commentator, "When Rules Don't Apply," Spotlights Successful Antitrust Challenges to Illegal High-Tech Labor Practices, (April 2019); Speaker, "Current and Future Antitrust and Labor Issues," National Association of Attorneys General, (April 2019); Panelist, "Competition Tort Claims Around the Globe," ABA Antitrust Section Spring Meeting, (March 2019); Speaker, "Antitrust and Silicon Valley: New Themes and Direction in Competition Law and Policy," Santa Clara University School of Law, March 2019Speaker, "Antitrust Analysis in Two-Sided Markets," California Lawyers Association, (February 2019); Speaker, "Latest Developments in No-Poach Agreements," California Lawyers Association (January 2019); Panelist, "Antitrust and Workers — Agreements, Mergers, and Monopsony," American Antitrust Institute Conference (June 2018); Speaker, "Anticompetitive Practices in the Labor Market," Unrigging the Market Program, Harvard Law School (June 2018); Speaker, "Tech-Savvy and Talented: Competition in Employment Practices," American Bar Association (May 2018); Speaker, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San Francisco (January 2018); Moderator, "Competition Torts in the Trenches: Lessons From Recent High-Profile Cases," American Bar Association (November 2016); Speaker, "Are Computers About to Eat Your Lunch (Or At Least Change the

Way You Practice)?", Association of Business Trial Lawyers Panel (August 2016); Moderator, "The Law and Economics of Employee Non-Compete Agreements," American Bar Association Panel (June 2016); Speaker, "Lessons from the Headlines: In re: High-Tech Employee Antitrust Litigation," The Recorder and Corporate Counsel's 13th Annual General Counsel Conference West Coast (November 2015); Speaker, "The Future of Private Antitrust Enforcement," American Antitrust Institute Panel (November 2015); Moderator, "From High-Tech Labor to Sandwich Artists: The Law and Economics of Employee Solicitation and Hiring," American Bar Association Panel (March 2015); Panelist, "Tech Sector 'No Poaching' Case Update - What Antitrust Counselors and HR Departments Need to Know," American Bar Association (2015); Speaker, "Cases at the Intersection of Class Actions and Employee Protection Regulations," Law Seminars International (2015); Speaker, Town Hall Meeting, American Bar Association Section of Antitrust Law Business Torts & Civil RICO Committee (December 2014); Panelist, "If You Don't Steal My Employees, I Won't Steal Yours: The Antitrust Treatment of Non-Poaching and Non-Solicitation Agreements," American Bar Association (2013); Panelist, "In the Wake of AT&T Mobility v. Concepcion: Perspectives on the Future of Class Litigation," American Bar Association (2011);Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015); Contributing Author, *The Class Action Fairness Act: Law and Strategy*, American Bar Association, 2013; Contributing Author, *Concurrent Antitrust Criminal and Civil Proceedings: Identifying Problems and Planning for Success*, American Bar Association (2013); Co-Editor, *California Class Actions Practice and Procedures* (2010-2013); Articles Editor, *Competition* (the Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California) (2012); Contributing Author, *ABA Annual Review of Antitrust Law Developments* (2011); *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc., 5 ABA Sherman Act Section 1 Newsl. 35* (2008); *Anticompetitive Social Norms as Antitrust Violations,* 94 Calif. L. Rev. 769 (2006). *Member*: American Antitrust Institute, Advisory Board; American Bar Association (Antitrust Section); Bar Association of San Francisco; San Francisco Trial Lawyers Association.

**LEXI J. HAZAM**, Admitted to practice in California, 2003; U.S. Court of Appeals for the Second Circuit, 2008; U.S. Court of Appeals for the Seventh Circuit, 2006; U.S. Court of Appeals for the Eighth Circuit, 2008; U.S. District Court, Northern District of California, 2003; U.S. District Court, Southern District of CA, 2013; U.S. District Court, Western District of Michigan, 2017. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa. University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2001); *California Law Review* and *La Raza Law Journal* (Articles Editor); Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic; Hopi Appellate Clinic). *Prior Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Qui Tam Law," 2015-2022; "Elite Women of the Plaintiffs' Bar," National Law Journal, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Northern California Super Lawyer," *Super Lawyers*, 2015-2021; "Top Women Lawyers in California," Daily Journal, 2020; "Lawyer of the Year," *The Best Lawyers in America*, Mass Tort Litigation/Class Actions-Plaintiffs for San Francisco, 2017; "California Litigation Star," *Benchmark Litigation*, 2016; "California Future Star," *Benchmark Litigation*, 2015; "Consumer Attorney of the Year Finalist," Consumer

Attorneys of California, 2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Northern California Rising Stars," *Super Lawyers*, 2009-2011, 2013. *Publications & Presentations:* "Supreme Court Review of Escobar," Qui Tam Litigation Group and "Opioid Litigation: the Next Tobacco?" Litigation at Sunrise, American Association for Justice Annual Convention, Boston, 2017; "Discovery Following the 2015 Federal Rules Amendments: What Does Proportionality Mean in the Class Action and Mass Tort Contexts?" ABA 4th Annual Western Regional CLE on Class Actions & Mass Torts, San Francisco, 2017; "Increasing the Number of Women & Minority Lawyers Appointed to Leadership Positions in Class Actions & MDLs," Duke Law Center for Judicial Studies Conference, Atlanta, 2017; "2015 Rules Amendments," "Search Methodology and Technology," "New Forms of Communications and Data Protection," Innovation in eDiscovery Conference, San Francisco, 2016; "Technology-Assisted Review: Advice for Requesting Parties," Practical Law, October/November 2016; "Technology-Assisted Review," Sedona Conference Working Group 1 Drafting Team, 2015; "The Benicar Litigation," Mass Torts Made Perfect, Las Vegas, 2015; "The Benicar Litigation," HarrisMartin's MDL Conference, San Diego, 2015; "Now You See Them, Now You Don't: The Skill of Finding, Retaining, and Preparing Expert Witnesses For Trial," Women En Mass, Aspen; 2014. *Member*: American Association for Justice (Chair, Section on Toxic, Environmental, and Pharmaceutical Torts, 2017); American Association for Justice (Co-Secretary, Section on Qui Tam Litigation, 2016); Consumer Attorneys of California; Board of Governors, Consumer Attorneys of California (2015); Bar Association of San Francisco; San Francisco Trial Lawyers Association; State Bar of California.

**ROGER N. HELLER**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern District of California, 2017; U.S. District Court, District of Colorado, 2015; U.S. Court of Appeals for the Second Circuit, 2017; U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor. Emory University (B.A., 1997). *Prior Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of New York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: "Northern California Super Lawyer," *Super Lawyers*, 2013-2021; "Partners Council Rising Star," National Consumer Law Center, 2015; "Rising Star," *Law 360*, 2014-2015; "Finalist for Consumer Attorney of the Year," Consumer Attorneys of California, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Northern California Rising Star," *Super Lawyers*, 2011-2012; Harlan Fiske Stone Scholar, 1998-2001. *Publications & Presentations*: Co-author, <u>Fighting For Troops on the Homefront</u>, Trial Magazine (September 2006). *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California; Advisory Committee Member, Santa Venetia Community Plan.

**DANIEL M. HUTCHINSON**, Admitted to practice in California, 2005; U.S. District Court, Central District of California, 2012; U.S. District Court, Southern District of California, 2012; U.S. Court of Appeals for the Eleventh Circuit, 2018; U.S. Court of Appeals for the First Circuit, 2012; U.S. Court of Appeals for the Ninth Circuit, 2006; U.S. District Court, Northern District of California, 2006; U.S. Court of Appeals for the Fourth Circuit, 2008; U.S. District Court Eastern District of Wisconsin, 2013; U.S. District, Northern District of Illinois, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley, School of Law (Berkeley Law)

Teaching & Curriculum Committee (2003-2004); University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Mays Fellowship (1997-1999). *Prior Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Employment Law—Individuals," 2020-2022; "Northern California Super Lawyer," *Super Lawyers*, 2013-2021; "Lawdragon 500 Leading Plaintiff Employment Lawyers in America," Lawdragon, 2018-2020; "Rising Star," *Law360*, 2014; Legal 500 recommended lawyer, *LegalEase*, 2013; "50 Lawyers on the Fast Track," *The Recorder*, 2012; "Northern California Rising Stars," *Super Lawyers*, 2009-2012. *Publications & Presentations*: Panelist, "Ascertainability isn't a thing. Or is it?" Impact Fund Class Action Conference, February 2019; Panelist, "Employment Discrimination Class Actions Post-*Dukes*," Consumer Attorneys of California 50th Annual Convention (2011); "Ten Points from *Dukes v. Wal-Mart Stores, Inc.*," 20(3) *CADS Report 1* (Spring 2010); Panelist, "Rethinking Pro Bono: Private Lawyers and Public Service in the 21st Century," UCLA School of Law (2008); Author and Panelist, "Pleading an Employment Discrimination Class Action" and "EEO Litigation: From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second Annual CLE Conference (2008); Co-Presenter, "Rule 23 Basics in Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008). *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program, 2009 - 2010); Association of Business Trial Lawyers (Leadership Development Committee, 2008 - 2010); Bar Association of San Francisco (Vice Chair, Cybersecurity and Privacy Law Section); Consumer Attorneys of California; Law360 Editorial Advisory Board, Employment, 2021; Lawyer's Committee for Civil Rights of the San Francisco Bay Area (Board Chair, 2015; Chair-Elect, 2014; Board Secretary, 2011 - 2013; Board of Directors, 2009 - Present); National Bar Association; National Employment Lawyers Association; State Bar of California.

**SHARON M. LEE**, Admitted to practice in New York, 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005; U.S. District Court, Western District of Washington, 2015. *Education*: St. John's University School of Law (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University (M.A. 1998); St. John's University (B.A. 1997). *Awards and Honors*: "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021. *Prior Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Publications & Presentations*: Author, *The Development of China's Securities Regulatory Framework and the Insider Trading Provisions of the New Securities Law*, 14 N.Y. Int'l L.Rev. 1 (2001); Co-author, *Post-Tellabs Treatment of Confidential Witnesses in Federal Securities Litigation*, 2 J. Sec. Law, Reg. and Compliance 205 (3d ed. 2009). *Member*: American Bar Association; Asian Bar Association of Washington; Washington State Bar Association; Washington State Joint Asian Judicial Evaluation Committee.

**BRUCE W. LEPPLA**, Admitted to practice in California, 1976; New York, 1978; Colorado, 2006; U.S. Court of Appeals Ninth Circuit, 1976; U.S. District Court Central District of California, 1976; U.S. District Court Eastern District of California, 1976; U.S. District Court Northern District of California, 1976; U.S. District Court Southern District of New York, 2015.

*Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., M.G. Reade Scholarship Award); University of California at Berkeley (M.S., Law and Economics, Quantitative Economics); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: California-licensed Real Estate Broker (2009-present); FINRA and California-licensed Registered Investment Adviser (2008-present); Chairman, Leppla Capital Management LLC (2008-present); Chairman, Susquehanna Corporation (2006-present); Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison (1980); Davis Polk & Wardwell (1976-80). *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part I*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 2*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, "*Securities Powers for Community Banks,*" California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance (1993-96); Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics (1993-96). *Panel Presentations*: Union Internationale des Avocats, Spring Meeting 2010, Frankfurt, Germany, "*Recent Developments in Cross-Border Litigation;*" Union Internationale des Avocats, Winter Meeting 2010, Park City, Utah, "*Legal and Economic Aspects of Securities Class and Opt-out Litigation;*" EPI European Pension Fund Summit, Montreux, Switzerland, "*Legal and Global Economic Implications of the U.S. Subprime Lending Crisis*," May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries*," May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation*," January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over— In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission*," September 30, 2004. *Awards:* Selected for inclusion by peers in The Best Lawyers in America in the field of "Litigation – Securities," 2022; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2021; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020. *Member*: American Association for Justice; Bar Association of San Francisco, Barrister's Club, California Bankers Association, Director, 1993 – 1999, California State Small Business Development Board, 1989 – 1997, Community Reinvestment Institute, Founding Director, 1989 – 1990, National Association of Public Pension Attorneys, New York State Bar Association, San Francisco Chamber of Commerce, Leadership Council, 1990 – 1992, State Bar of California, Union Internationale des Avocats, Winter Corporate Governance Seminar, Seminar Chairman, 2012; University of California at Berkeley, University of California, Berkeley, School of Law (Berkeley Law) Alumni, Board of Directors, 1993 – 1996,

*Wall Street Lawyer*, Member, Editorial Board, Yale University Alumni Board of Directors, Director, 2001 - 2005.

**JASON L. LICHTMAN**, Admitted to practice in Illinois, 2006; New Jersey, 2011; New York, 2011; U.S. Supreme Court, 2012; District of Columbia, 2007; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2012; U.S. Court of Appeals, Fifth Circuit, 2016; U.S. Court of Appeals, Sixth Circuit, 2010; U.S. Court of Appeals, Seventh Circuit, 2011; U.S. Court of Appeals, Ninth Circuit, 2012; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. Court of Appeals, Eleventh Circuit, 2013; U.S. District Court, Northern District of Illinois, 2006; U.S. District Court, New Jersey, 2011; U.S. District Court, Northern District of Ohio, 2010; U.S. District Court, Eastern District of New York, 2012, U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals Federal Circuit, 2015; U.S. District Court, Eastern District of Wisconsin, 2014; U.S. District Court, Eastern District of Texas, 2016. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006), Campbell Moot Court Executive Board; Clarence T. Darrow Scholar; Northwestern University (B.A. in Economics, 2000). *Prior Employment*: Judicial Law Clerk to Honorable Kathleen M. O'Malley, United States District Court, Northern District of Ohio, 2008-2010; Litigation Associate, Howrey LLP, 2006-2008; Summer Associate, Howrey LLP, 2005; Summer Associate, Reed Smith LLP, 2004. *Awards & Honors*: "Rising Star," Consumer Protection, *Law360*, 2017; "Super Lawyer for New York Metro," *Super Lawyers*, 2017-2018; "Rising Star for New York Metro," *Super Lawyers*, 2013-2016. *Member*: American Association for Justice; Public Justice; Chair, Class Action Committee, Public Justice; Sedona Conference. *Publications and Presentations:* Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012).

**SARAH R. LONDON**, Admitted to practice in California, 2009; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Eleventh Circuit, 2012. *Education:* National Institute for Trial Advocacy, Building Trial Skills: Boston (Winter 2013); University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2009), Order of the Coif, National Runner-Up Constance Baker Motley Moot Court Competition; Northwestern University (B.A., *cum laude*, 2002). *Prior Employment:* Public Policy Manager, Planned Parenthood of Kansas and Mid-Missouri (2004-2006). *Publications & Presentations:* Panelist, "Diversity in MDL Leadership Appointments," Western Alliance Bank Class Action Law Forum (December 2021); Speaker, "Mass Tort Or Class Action: Choosing Your Adventure," 60th Annual Consumer Attorneys of California Convention (November 2021); Moderator, "How the Courts Can Promote Equity in the Legal Profession," National Association of Women Judges Midyear Meeting (April 2021); Speaker, "Testing The Test Case: Developments in JUUL and TDF Cases," Consumer Attorneys of California Sonoma Virtual Seminar (March 2021); Speaker, "Mass Tort and Products Update – Big Cases and Big Developments," ABA Environmental & Energy, Mass Torts and Products Liability Litigation Committee's Joint Virtual Regional CLE Program (January 2021); Speaker, "Trial Lawyer Power Hour: Courtroom Fundamentals on How to Run, Block, Pass and Tackle," 59th Annual Consumer Attorneys of California Virtual Convention (November 2020); Speaker, "Trial Skills Quick Hits," Consumer Attorneys of California Sonoma Travel Seminar (March 2020); Speaker, "Breakout Session: Juul Injury litigation," and "Pay Equity for Female Lawyers," Mass Torts Made Perfect Conference,"

(October 2019); Speaker, "Harmful Effects Of JUUL: An Overview of Nicotine Addiction Science and Cardiovascular/Pulmonary Effects," HarrisMartin's JUUL, E-Cigarettes & Vaping Conference: Emerging Litigation and Liability Theories Agenda (September 2019); Speaker, "Everything You Want to Know About Mass Torts (But Are too Afraid to Ask)," American Association for Justice Annual Mass Torts Seminar (June 2019); Speaker, "Notable Recent & Pending Cases in the 9th Circuit and SCOTUS," Bridgeport Class Action Litigation and Management Conference (May 2019); Speaker, "Preparing Fact Witnesses for Trial," Bridgeport Consumer Class Action Litigation Conference (November 2018); Speaker, "Preparing for Trial," Consumer Attorneys of California Convention (November 2018); Moderator and Speaker, "1st Day of Trial," San Francisco Trial Lawyers Association (February 2017); Speaker, "Trial Focused Discovery, or Best Practices in Preparing Your Client for Deposition," Consumer Attorneys of California Trial Arts Seminar (December 2016); Moderator, "Real Talk About Trial Experiences," Consumer Attorneys of California Convention (November 2016); Speaker, "Trial Skills, Trial-Focused Discovery: What You Need and How to Use It," ABA Women in Products Liability (November 2016); Speaker, "Why Aren't More Female Lawyers Making it to Trial?" San Francisco Trial Lawyers Association Women's Caucus (January 2016); "Building the Case for Closing Argument: Mass Torts," Presentation at Consumer Attorneys of California Annual Conference (Fall 2014); "Reproductive Justice: Developing a Lawyering Model," *Berkeley Journal of African-American Law & Policy* (Volume 13, Numbers 1 & 2, 2011). *Awards & Honors:* Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions - Plaintiffs," 2017-2022; "Northern California Super Lawyer," Super Lawyers, 2019-2021; "California Trailblazer," The Recorder, 2020; "40 and Under Hot List," Benchmark Litigation, 2018, 2020; "Rising Star for Northern California," Super Lawyers, 2012-2018; "Street Fighter of the Year Award Finalist," Consumer Attorneys of California," 2015; Coro Fellow in Public Affairs (St. Louis, 2002-2003). *Member:* American Association for Justice (Executive Committee Member, Section on Toxic, Environmental, and Pharmaceutical Torts, 2016); The Bar Association of San Francisco; Consumer Attorneys of California (Executive Committee of the Board of Governors, 2020-, Board of Governors 2012-2013); Resource Board of the National Association of Women Judges (Co-Chair, 2019-); San Francisco Trial Lawyers Association; State Bar of California; Bar Association San Francisco; American Association for Justice.

**ANNIKA K. MARTIN**, Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005; U.S. District Court Eastern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: Faculty Member, "Understanding Nuances of Civil Sexual Assault Lawsuits, Pursuing Criminal Charges and Lessons Learned," Practising Law Institute Webcast, June 23, 2021; Speaker, "Prevention Education Programs: Is Behavior Actually Changing," Berkeley Law Sexual Harassment in Education Virtual Conference, January 30, 2021; Panelist, "Plaintiffs' Side Litigation," University of California Public Service Law Conference, Irvine, CA, January, 2020; Speaker, "How to Get the Most Out of Your Most Valuable Assets," AAJ Class Action Seminar, New York, NY, December, 2019; Speaker, "Information Exchange and Effective Use of Rule 34," AAJ Overcoming Obstructionist Discovery, Washington, DC, November, 2019; Co-Founder & Producer, Complex Litigation E-Discovery Forum; also Speaker on "2019 Discovery Case Law Update," Minneapolis, MN, September, 2019; Faculty Member, "Mass Tort MDL Certificate Program," Duke Law School Bolch Judicial Institute, March 2019; Speaker, "Certifying a Class

on Women's Issues – Pay Equity, Sexual Assault, and More," Women's Issues in Litigation Conference, Santa Monica, CA, October 25, 2018; Co-founder and Producer, "Complex Litigation E-Discovery Forum; Speaker, "Proportionality: What's Happened since the Amendments," Minneapolis, MN, September 28, 2018; Producer & Speaker, "Getting the Most Out of Your Team," AAJ Class Action Litigation Group CLE, Denver, CO, July 18, 2018; Speaker, "Careful What You Wish For: Protecting Data Security in Discovery," ABA 12th Annual National Institute on E-Discovery, Chicago, IL, May 18, 2018; Speaker, "Class Certification," HB Class Action Mastery Conference, New York, NY, May 9, 2018; Producer & Faculty Member, AAJ Effective Legal Writing Workshop, New York, NY, April 12-13, 2018; Co-Editor-in-Chief, "The Sedona Conference Federal Rule of Civil Procedure 34 Primer," 19 Sedona Conf. J. 447, March 2018; Speaker, "Lawyers as Managers," Emory Law's Institute for Complex Litigation & Mass Claims Leadership Conference - Atlanta, GA, January 19, 2018; Speaker, "From Terabytes to Binders: Fusing Discovery and Advocacy Strategies," Georgetown Law's 14th Annual Advanced eDiscovery Institute - Washington DC, November 17, 2017; Co-Editor-in-Chief & Steering Committee Liaison, "The Sedona Conference Federal Rule of Civil Procedure 34 Primer," The Sedona Conference Working Group Series, September 2017; Drafting Team Member, "The Sedona Conference Commentary on Proportionality in Electronic Discovery," The Sedona Conference Journal, Volume 18, May 2017; Producer & Moderator, "The Future of Class Actions," AAJ Class Action Litigation Group seminar – Nashville, TN, May 11, 2017; Producer & Speaker, "Examining Amended Rule 34," The Sedona Conference Working Group 1 Mid-Year Meeting – Minneapolis, MN, May 4-5, 2017; Speaker, "The Economic Influence and Role of the Class Representative – Ethical and Policy Issues," Class Action Money & Ethics Conference – New York, NY, May 1, 2017; Producer & Speaker, "Diversity in Law: The Challenges and How to Overcome Them," AAJ Education webinar, March 27, 2017; Co-chair, "Staying Ahead of the eDiscovery Curve: Retooling Your Practice Under the New Federal Rules," 10th Annual Sedona Conference Institute Program on eDiscovery, March 2-3, 2017; Faculty Member, "The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies," Miami, FL, February 8-9, 2017; Speaker, "Proportionality: What's Happened since the Amendments," Western Trial Lawyers Association CLE, Steamboat Springs, CO, February 2017; "Quality In, Quality Out," Trial Magazine, January 2017; Testified before the Federal Rules Advisory Committee concerning proposed amendments to Federal Rule 23, Phoenix, AZ, January 4, 2017; Profiled in "Women of Legal Tech: From Journalism to Law", LegalTech News – December 8, 2016; Speaker, "Closure Mechanisms," Federal Judicial Center / Judicial Panel on Multidistrict Litigation Conference, Atlanta, GA, December 15, 2016; Speaker, "Getting Selected for Leadership – What Decisionmakers Look For and How to Overcome Common Barriers," Emory Law Institute for Complex Litigation & Mass Claims, Atlanta, GA, December 14, 2016; Producer & Speaker, "Mitigating Explicit and Implicit Bias in Associate Recruitment and Retention," AAJ Hot Topics: Diversity in the Law, Charlotte, NC, November 30, 2016; Speaker, "The New Rules x 1 Year: Sanctions," Georgetown Law Advanced E-Discovery Institute, Washington DC, November 10-11, 2016; Faculty Member, AAJ Effective Legal Writing Workshop, Washington DC, November 3-4, 2016; Speaker, "Proportionality under the Amended FRCP 26", Complex Litigation E-Discovery Forum, Minneapolis, MN, September 25, 2016; Speaker, "Proportionality: What's Happened since the Amendments," Complex Litigation E-Discovery Forum, Minneapolis, MN, September 23, 2016; Moderator, "Who Will Write Your Rules—Your State Court or the Federal Judiciary?," Pound Civil Justice Institute Forum for State Appellate Court Judges, Los Angeles, CA, July 23, 2016; Producer, Moderator & Speaker, "Dissecting the U.S. Supreme Court Decision in Spokeo, Inc. v. Robins," American Association for Justice webinar, May 26, 2016; Moderator & Speaker, "Consumer Class Actions," HB Litigation Conference, San Juan, PR, May 4, 2016; Faculty Member, The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies, Washington, DC, March 1-2, 2016; Producer & Speaker, "The 2015 Amendments to the Federal Rules of Civil Procedure," New

York, NY, February 9, 2016; "How to Stop Worrying and Love Predictive Coding," Trial Magazine, January 2016; Speaker, "How Will New Rule 26(b)(1) on Proportionality Impact Search and the Use of Search Technology?," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "New Forms of Communication," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "2015 Amendments to Federal Civil Rules," Tennessee Bar Association CLE, Nashville, TN, December 2, 2015; "Discovery Proportionality Guidelines and Practices," 99 Judicature, no. 3, Winter 2015, at 47–60 (Complex Litigation Drafting Team Leader); Speaker, "Check Your Sources: Understanding the Technical Aspects of Data Collection", Georgetown Advanced E-Discovery Institute, Washington, DC, November 19, 2015; Speaker, "The Contentious Battle over Search Protocols in e-Discovery", Association of Certified E-Discovery Specialists webinar, October 8, 2015; Speaker, "Proportionality in Preservation and Discovery," The Sedona Conference Working Group 1 Mid-Year Meeting, Dallas, TX, April 30, 2015; Speaker, "Ethical Challenges in eDiscovery: Representing Clients Responsibly," The Sedona Conference Institute, Nashville, TN, March 20, 2015; Speaker, "Issue Classes under Rule 23," Western Trial Lawyers Association CLE, Squaw Valley, NV, February 2015; Speaker, "Issue Classes under Rule 23," American Association for Justice Winter Convention, Palm Desert, CA, February 24, 2015; "An Introduction to Issue Classes under Rule 23(c)(4)," American Association for Justice Winter Convention published materials, February 2015; Speaker, "Shifting and Sharing the Costs of Preservation and Discovery: How, When, and Why," Bloomberg BNA webinar, November 18, 2014; Speaker, "Application of Proportionality in Preservation and Discovery," The Sedona Conference All Voices Meeting, New Orleans, LA, November 5, 2014; Speaker, "A Tour of TAR (Technology-Assisted Review)," The Sedona Conference All Voices Meeting, New Orleans, LA, November 7, 2014; Speaker, "Data Privacy and Security Are Front and Center in Litigation News – Substantive Claims and eDiscovery Issues Abound," Georgetown Advanced E-Discovery Institute, Tysons Corner, VA, November 21, 2014; Interviewed re class action litigation regarding defective products on China Central Television for China's national "Consumer Protection Week" feature programming – CCTV, March 15, 2014; Organizer & Speaker, "Introduction to TAR," Lieff Cabraser Heimann & Bernstein CLE, New York, NY, August 18, 2014; Speaker, "Motions to Strike Class Allegations Using 'Predominance'," Strafford webinar, August 6, 2014; "Wit and Wisdom," Trial Magazine, Volume 49, No. 12, December 2013;Speaker, "Status of Subsistence Claims in BP Oil Spill Settlement," American Association for Justice Annual Convention, San Francisco, CA, July 2013; "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," Texas Journal of Women & the Law, Volume 14 Issue 2, Spring 2005; "The Gift of Legal Vision," USC Law, Spring 2003; "Welcome to Law School," monthly column on www.vault.com, 2001 - 2004. *Awards and Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Personal Injury Litigation – Plaintiffs" 2021, 2022; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2020-2022; "Elite Women of the Plaintiffs' Bar," National Law Journal, 2021; "40 and Under Hot List," Benchmark Litigation, 2018-2020; "Litigation Trailblazer," The National Law Journal, 2020; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019; "Super Lawyer for New York Metro," Super Lawyers, 2018-2019; "Rising Star for Class Action Law, Law360, 2018; Certificate of Recognition, American Association for Justice, 2018; "Leaders in the Field - Litigation: E-Discovery," *Chambers USA*, 2017; "Rising Star for New York Metro," *Super Lawyers*, 2013-2015; Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor, 2005. *Member*: American Association for Justice (Co-Chair, Class Action Litigation Group, 2016); American Association for Justice (Steering Committee of the Public Education Committee); Barrister of the New York American Inn of Court; Emory University Law School Institute for Complex Litigation & Mass Claims (Next Generation Advisory Board Member); Georgetown Law Advanced E-Discovery Institute (Advisory Board and Planning Committee);

New York City Bar Association; New York County Lawyer's Association; New York State Bar Association; Swedish American Bar Association; The Sedona Conference Working Group 1 (Steering Committee Member). *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, Admitted to practice New York, 2006; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals for the Second Circuit, 2011; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Sixth Circuit; U.S. Court of Appeals for the Eighth Circuit, 2007; U.S. Supreme Court, 2011. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Prior Employment*: Milberg Weiss LLP, Associate, 2005-2007. *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020, 2021; "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Publications & Presentations*: Co-Author with Steven E. Fineman, "The *Basics* of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011). *Member:* State Bar of New York; New York State Trial Lawyers Association; Public Justice Foundation; American Bar Association; New York State Bar Association.

**DAVID RUDOLPH**, Admitted to practice in California, 2004; U.S. District Court, Northern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. Court of Appeals for the Federal Circuit, 2012. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2004); Moot Court Board; Appellate Advocacy Student Advisor; Berkeley Technology Law Journal; Berkeley Journal of International Law; Rutgers University (Ph.D. Program, 1999-2001); University of California, Berkeley (B.A. 1998). *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Associate, Quinn Emanuel Urquhart & Sullivan, LLP, 2008-2012; Law Clerk to the Honorable Saundra Brown Armstrong, U.S. District Court for the Northern District of California, 2007-2008.

**DANIEL E. SELTZ**, Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York, 2005; U.S. District Court, Eastern District of New York, 2011; U.S. Court of Appeals for the First Circuit, 2011; U.S. Court of Appeals for the Fourth Circuit, 2013; U.S. Court of Appeals for the Ninth Circuit, 2011. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2019-2021; Super Lawyers, 2016-2018. *Prior Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Co-Author with Jordan Elias, "The Limited Scope of the Ascertainability Requirement," American Bar Association, Section of Litigation, March 2013; Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004),

originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

  ***ANNE B. SHAVER***, Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Second Circuit, 2012; U.S. Supreme Court, 2013; U.S. Court of Appeals of the Ninth Circuit, 2009. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Employment Law—Individuals," 2021, 2022; "40 & Under Hot List," Benchmark Litigation, 2018-2021; "Rising Star for Northern California," *Super Lawyers,* 2013-2021; "Top Labor & Employment Lawyers," Daily Journal, 2018-2020; "Lawdragon 500 Leading Plaintiff Employment Lawyers in America," Lawdragon, 2018-2020; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2019. *Prior Employment:* Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, Workers' Rights Clinic, 2005-2006; Human Rights Watch, Legal Intern, 2005. *Publications & Presentations*: Author, "Ninth Circuit Finds That Discrimination Is A Concrete Injury For Purposes Of Article III Standing," Impact Fund Blog, February 2022; Panelist, "Disparate Impact and Validation," 15th Annual ABA Section of Labor and Employment Law Conference, November 2021; Employee Vice-Chair, Speaker, American Bar Association 2021 National Conference on Equal Employment Opportunity Law Midwinter Meeting, April 2021; Speaker, "Will The Glass Ceiling Ever Break? Emerging Trends in Pay Equity," 51st Annual Pacific Coast Labor & Employment Law Conference, April 2018; Panelist, "#TimesUp for 'Brotopia': Striving for Gender Equity in Tech," American Bar Association National Symposium on Technology in Labor and Employment Law, April 2018; Panelist, "Telecommuting as a Reasonable Accommodation," 35th Annual National CLE Labor and Employment Conference, December 2017; Speaker, "Challenges to Class Waivers in Arbitration Clauses in Employment Agreements Under Section 7 of NLRB," SFTLA 11th Annual Class Action Seminar, February 2017; Panelist, "The Status of Anti-discrimination Law and Litigation in the United States," UC Hastings Law Journal Spring Symposium, February 2016; Associate Editor, "Employment Discrimination Law," Fifth Edition Cumulative Supplement, 2015; Speaker, "Latest Developments in Employment and Wage and Hour Law," Consumer Attorneys of California, February 2014; Panelist, "Winning Your Class Certification Motion Post-Brinker," Consumer Attorneys of California, November 2013; Moderator, "Counseling HR on National Origin & Language Issues in the Workplace," ABA Labor & Employment Section, November 2012; Moderator, "Transgender Workplace Issues After the EEOC's Landmark Macy Ruling," Bar Association of San Francisco, September 2012; Moderator, "A Place At the Table? Recent Developments in LBGT Rights," ABA Labor & Employment Section Conference, April 2012; Speaker, "Rule 23 Basics," Impact Fund Class Action Training Institute, May 2011; "U.S. v. Fort and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 172, 12293, Fall

2007. *Member*: Bar Association of San Francisco; Consumer Attorneys of California; National Employment Lawyers Association; American Bar Association Equal Employment Opportunity Committee (Co-Chair); Programs Committee.

**KATHERINE LUBIN BENSON,** Admitted to practice in California, 2008; Ninth Circuit Court of Appeals; U.S. District Court, Northern District of California; U.S. District Court, Southern District of California; U.S. District Court, Central District of California. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2008); University of California, Berkeley, School of Law (Berkeley Law) Mock Trial Team, 2006-2008; *First Place*, San Francisco Lawyer's Mock Trial Competition. University of California Los Angeles (B.A., Political Science, minor in Spanish, *cum laude*); Phi Beta Kappa; UCLA Honors Program; Political Science Departmental Honors; Universidad de Sevilla (2003). *Awards & Honors:* "40 and Under Hot List," Benchmark Litigation, 2018-2021; "Rising Star for Securities Law," Law360, 2021; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020, 2021; "Rising Star for Northern California," Super Lawyers, 2016-2021; "Outstanding Antitrust Achievement by a Young Lawyer," American Antitrust Institute, 2020; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020; "Top 40 Under 40 Lawyer," Daily Journal, 2020. *Prior Employment:* Associate, Orrick, Herrington & Sutcliff, LLP, 2008-2013; Summer Associate, Orrick, Herrington & Sutcliff, LLP, 2007; Judicial Extern to Honorable Dean D. Pregerson, 2006. *Member*: Lawyer Representative to the Ninth Circuit Judicial Council; American Bar Association; Board of Directors, Bar Association of San Francisco; State Bar of California; Board of Directors, Northern District Court Practice Program; Board of Directors, East Bay Community Law Center.

**KEVIN R. BUDNER,** Admitted to practice in California; U.S. Court of Appeals, Seventh Circuit, 2016; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Northern District of California, 2014; U.S. District Court, Central District of California, 2014; U.S. District Court of Colorado, February 25, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); American Jurisprudence Award in Advanced Legal Research (first in class); Prosser Prize in Negotiation (second in class); Edwin A. Heafey, Jr. Trial Fellowship Recipient; Board of Advocates Trial Team Member; American Association of Justice Trial Competition, 2012 National Semi-finalist, 2011 Regional Finalist; *Berkeley Journal of International Law,* Senior Editor. University of California Hastings College of the Law (2009-2010); CALI and Witkins Awards (first in class); Wesleyan University (B.A., Political Science, 2005). *Honors & Awards:* "Ones to Watch," Best Lawyers, 2021, 2022; "Top 40 Under 40 Lawyer," Daily Journal, 2021; "Rising Star for Class Action Law," Law360, 2021; "Rising Star of the Plaintiffs' Bar," National Law Journal, 2021; "Rising Star for Northern California," Super Lawyers, 2019-2021; "Trial Lawyer of the Year," Public Justice, 2019; "Trial Lawyer Excellence Award," Law Bulletin, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017. *Prior Employment:* Judicial Clerk to U.S. District Judge Barbara M.G. Lynn, 2012-2013; Certified Student Counsel, East Bay Community Law Center, 2011-2012; Research Assistant, Duckworth Peters Lebowitz Olivier, LLP, 2011-2012; Summer Associate, Lieff Cabraser Heimann & Bernstein, LLP , 2011-2012; Judicial Extern to U.S. District Judge Phyllis J. Hamilton, 2010; Homeless Policy Assistant, Office of Mayor Gavin Newsom, 2009; Project Manager, Augustyn & Co. 2007-2009; Visiting Professor, University of Liberal Arts Bangladesh, 2006-2007;

Researcher, Rockridge Institute, 2005, 2006. *Languages:* Spanish (proficient), Portuguese (proficient), Bengali (basic). *Publications:* Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member:* American Association for Justice, Bar Association of San Francisco, Consumer Attorneys of California, State Bar of California, San Francisco Trial Lawyers Association.

**PHONG-CHAU G. NGUYEN**, Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Central District of California, 2013; U.S. Court of Appeals for the Ninth Circuit, 2013. *Education:* University of San Francisco School of Law (J.D. 2012); Development Director, USF Moot Court Board; Merit Scholar; Zief Scholarship Recipient; University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008). *Honors & Awards:* "40 and Under Hot List," Benchmark Litigation, 2018-2021; "Rising Star for Northern California," Super Lawyers, 2018-2021; "California Lawyer of the Year," California Daily Journal, 2018; "Outstanding Volunteer for Pro Bono Work," Justice & Diversity Center of the Bar Association of San Francisco, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017. *Prior Employment:* Attorney, Minami Tamaki, 2013; Post-Bar Law Clerk, Velton Zegelman PC, 2012; Law Clerk, Minami Tamaki, 2011-2012; Housing and Economic Rights Advocates, 2011; Greenlining Institute, 2008-2009, 2012. *Member:* State Bar of California; Asian American Bar Association for the Greater Bay Area; Barristers Club of the San Francisco Bar Association, Board of Directors; San Francisco Trial Lawyers Association.

**MELISSA GARDNER**, Admitted to practice in California, 2013; New York, 2013; U.S. District Court, Northern District of California, 2013; Central District of California, 2019. *Education:* Harvard Law School (J.D. 2011); Student Attorney, Harvard Prison Legal Assistance Project and South Brooklyn Legal Services; Semi-Finalist, Harvard Ames Moot Court Competition; *Harvard International Law Journal.* Western Washington University (B.A. *magna cum laude,* 2005). *Awards & Honors:* "Ones to Watch," Best Lawyers, 2021, 2022; "Rising Star for Northern California," *Super Lawyers,* 2017-2021. *Prior Employment:* Associate, Emery Celli Brinckherhoff & Abady (2012); Law Clerk, South Brooklyn Legal Services (2011-2012); Peace Corps Volunteer, China (2005-2008). *Publications & Presentations:* Speaker, "How the CCPA Relates to Other Existing Laws," Bar Association of San Francisco Cybersecurity and Privacy Law Conference, (November 2020); Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member:* American Association for Justice; American Bar Association; Bar Association of San Francisco; California Women Lawyers; Consumer Attorneys of California; Ms. JD; State Bar of New York; State Bar of California.

**ANDREW KAUFMAN**, Admitted to practice in New York, 2013; Tennessee, 2015; U.S. District Court, Middle District of Tennessee, 2015. *Education:* Harvard Law School (J.D. *cum laude,* 2012); Executive Editor, *Harvard Law and Policy Review;* Dean's Scholar Prizes in Federal Courts, Civil Procedure, and Legislation & Regulation. Carleton College (B.A. *magna cum laude,* Political Science, 2007). *Professional Associations & Memberships:* Law360 Editorial Advisory Board, Product Liability, 2021; Member, Nashville Bar Foundation Leadership Forum, 2017 – 2018. *Publications:* "Spokeo Still Standing: No Sign of a Circuit

Split" (with Nicholas Diamand), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Nicholas Diamand), *Law360*, 2016; "Lochner for the Executive Branch: The Torture Memo as Anticanon," 7 *Harv. L. & Pol'y Rev*. 199 (2013); "American Foreign Policy Opinion in 2004: Exploring Underlying Beliefs," *27 Am. Rev. of Pol.* 295 (2007). *Awards*: "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020. *Prior Employment:* Law clerk to the Honorable Martha Craig Daughtrey, U.S. Court of Appeals, Sixth Circuit (2014-15); Law Clerk to the Honorable Stephen Glickman, D.C. Court of Appeals (2013-14); Fellow, Public Citizen Litigation Group (2012-13).

**KELLY MCNABB,** Admitted to practice in Minnesota, 2012; New York, 2015; U.S. District Court, District of Minnesota, 2012. *Education:* University of Minnesota Law School (J.D. *cum laude* 2012); Managing/Research Editor, *Minnesota Law Review*, 2010-2012; University of Minnesota Twin Cities College of Liberal Arts (B.A. 2008). *Honors & Awards:* Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2021, 2022; "Rising Star for NY Metro," Super Lawyers, 2016-2017; Attorney of the Year – Pritzker Trial Team, *Minnesota Lawyer*, 2014. *Publications*: "The Relevant Scope of General Causation: Internal Company Documents and Communications," *American Association for Justice Newsletter*, 2018; "What 'Being a Watchdog' Really Means: Removing the Attorney General from the Supervision of Charitable Trusts," *Minnesota Law Review*, 2012. *Prior Employment*: Pritzker Olsen, P.A., Attorney, 2012-2014. *Professional Associations:* The Sedona Working Conference Group I, Steering Committee, 2022; *Member:* American Association for Justice, Minnesota Association for Justice, Minnesota Women Lawyers.

**JOHN T. NICOLAOU**, Admitted to practice in New York, 2013. *Education*: Columbia Law School (J.D., 2012), James Kent Scholar (2011, 2012), Harlan Fiske Stone Scholar (2010); Northwestern University (M.A., 2009); Vanderbilt University (B.A. summa cum laude, 2008). *Publications*: Note, Whistle While You Work: How the False Claims Act Amendments Protect Internal Whistleblowers, 2011 Colum. Bus. L. Rev. 531 (2011). *Prior Employment*: Boies Schiller Flexner, LLP. *Member*: State Bar of New York.

**TISEME ZEGEYE**, Admitted to practice in California, 2018; New York, 2013; U.S. Court of Appeals for the 2nd Circuit, 2014; U.S. Court of Appeals for the Ninth Circuit, 2014; U.S. Supreme Court, 2016. *Education:* New York University School of Law (J.D. 2011), BLAPA Kim Barry '98 Memorial Graduation Prize for Academic Excellence and Commitment to International and Human Rights Work; Dean's Scholarship. The College of William and Mary (B.A. *cum laude*, 2008). *Honors & Awards:* "Ones to Watch," Best Lawyers, 2021, 2022. Publications & Presentations: Speaker, "Gender Pay Equity Here and Abroad," American Association for Justice Winter Convention, February 2021; Panelist, "Virtual Reality, Artificial Intelligence and Machine Learning in the Workplace," American Bar Association 14th Annual Labor and Employment Law Conference, November 2020. *Prior Employment:* Staff Attorney, Center for Reproductive Rights, New York; Legal Fellow, American Civil Liberties Union Women's Rights Project. *Member:* American Bar Association, Labor & Employment Law Section (Employee-side Chair of the Member Services Committee); American Constitution Society Bay Area Lawyer Chapter (Board Member); The Lawyering Project (Advisory Board Member).

**DR. KATHARINA KOLB**, Admitted to practice in Germany, 2010. *Education:* Second German State Exam, Munich, Germany, 2010; Ludwig-Maximilians-University, Munich, Germany, Dissertation, 2008; First German State Exam, Munich, Germany, 2007. *Publications and Presentations:* Speaker, "Collective Actions in Europe: An Update," ABA Antitrust Law Section, 2021.

**MICHAEL LEVIN-GESUNDHEIT,** Admitted to practice in California, 2013; U.S. District Court, District of New Mexico, 2017; U.S. District Court, Northern District of California, 2015; U.S. Court of Appeals for the Second Circuit, 2019; U.S. Court of Appeals for the Ninth Circuit, 2018. *Education:* Stanford Law School (J.D., 2013), Managing Editor, *Stanford Law & Policy Review*; Gerald Gunther Prize for Outstanding Performance in Intellectual Property. Harvard University (A.B. *magna cum laude,* 2008). Honors & Awards: "Rising Star for Northern California," Super Lawyers, 2020, 2021.   *Professional Associations:* American Bar Association, Equal Employment Opportunity Committee; Bar Association of San Francisco; Consumer Attorneys of California. *Prior Employment:* Law Clerk to the Honorable Jacqueline Nguyen, Ninth Circuit Court of Appeals (2014-2015); Law Clerk to the Honorable Garland Burrell, Jr., U.S. District Court, Sacramento, California (2013-2014).

**MIKE SHEEN,** Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Southern District of California, 2013; U.S. Court of Appeals, Ninth Circuit, 2018; U.S. Court of Appeals, Federal Circuit, 2015. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2012); Articles Editor (2010-2012), Executive Editor (2011-2012), *Berkeley Technology Law Journal*; Senior Articles Editor, *Asian American Law Journal*; Student Member, Berkeley Law Admissions Committee; Funding Officer, U.C. Berkeley Graduate Assembly. University of California, Berkeley (B.A., 2004).  Honors & Awards: "Rising Star for Northern California," Super Lawyers, 2021.  *Prior Employment*: Judicial Clerk to Judge Dale A. Drozd of the U.S. District Court for the Eastern District of California; Milbank, Tweed, Hadley & McCloy LLP. *Member*: State Bar of California.

**WILSON M. DUNLAVEY**, Admitted to practice in California, 2015; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Central District of California, 2016; U.S. District Court, Northern District of California, 2016; U.S. District Court, Middle District of North Carolina, 2016. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2015); Berkeley Technology Law Journal, Associate Editor; University of California, Berkeley, School of Law (Berkeley Law) Queer Caucus, Co-Chair; Board of Advocates Moot Court Team. Humboldt University in Berlin (Ph.D., *cum laude*, Modern History, 2015; Dual M.A., *Magister Artium*, History and Philosophy, 2015); Friedrich-Naumann Foundation; Master's and Ph.D. Fellow; Queer Initiative, Director; Student Government, Executive Counsel. St. John's College (B.A., History of Math and Science, Philosophy, 2003); Faculty Toast Prize; Delegate Council. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019-2021; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Summer Associate, McDermott Will & Emery (2014); Law Clerk, Transgender Law Center (2014); Legal Research and Writing Teaching Assistant, First Year Skills Program, UC Berkeley School of Law (2013-2014); Judicial Extern to the Honorable William A. Alsup, U.S. District Court for the

Northern District of California (2013); Legal Counselor, Berkeley Workers' Rights Clinic (2012-2013). *Member:* State Bar of California.

**MICHELLE LAMY**, Admitted to practice in California, 2015; U.S. Court of Appeals for the Ninth Circuit, 2017; U.S. District Court, Northern District of California, 2017; U.S. District Court, Western District of Wisconsin, 2016. *Education:* Stanford Law School (J.D., 2015); Gerald Gunther Prize for Outstanding Performance in Research and Legal Writing; Gerald Gunther Prize for Outstanding Performance in Statutory Interpretation; Executive Board, Stanford Journal of Civil Rights & Civil Liberties. College of Arts & Sciences, Boston College (B.A. *summa cum laude*, 2009); Phi Beta Kappa; Dean's List First Honors, Dean's Scholar - Economics; Rev. Robert Cheney Economics Scholar. *Prior Employment:* Law Clerk to the Honorable Thelton E. Henderson, U.S. District Court for the Northern District of California. *Member:* American Bar Association; Bar Association of San Francisco, Litigation Section Executive Committee; State Bar of California. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019-2021; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2020.

### OF COUNSEL

**ROBERT L. LIEFF**, Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. Chair of Tort Practice Group, Lieff Cabraser Heimann & Bernstein, LLP (1985-2007). *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University (B.A., 1956). Member, Columbia Law School Dean's Council (2006-present); Member, Columbia Law School Board of Visitors (1992-2006); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Principal Cases*: *Multi-State Tobacco Litigation* (1998), wherein Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers, part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general; in California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025; *In re Exxon Valdez Oil Spill Litigation*, No. 3:89-cv-0095 HRH (D. Al.), where Lieff Cabraser served as Plaintiffs' Co-Class Counsel and on the Class Trial Team that tried the case before a jury in federal court in 1994 that led to a jury award of $5 billion in punitive damages reduced in subsequent appellate review; in 2006, the Ninth Circuit Court of Appeals set the punitive damages award at $2.5 billion, and subsequently the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages, such that with interest, the total award to the plaintiff class was $977 million; successful recoveries for victim families in numerous *Aviation Disaster and Crash Cases*, including the Gol Airlines Flight 1907 Amazon crash (2006); the Lexington, Kentucky Comair CRJ-100 Commuter Flight Crash (2006); the Helios Airways Flight 522 Athens, Greece crash (2005); the Manhattan Tourist Helicopter Crash (2005); the U.S. Army Blackhawk Helicopter Tower Collision (2004); the Air Algerie Boeing 737 Crash (2003);

the Aeroflot-Russian International Airlines Airbus Disaster (1994); the United Airlines Boeing 747 Hawaii Disaster (1989); Lockheed F-104 Fighter Crashes (1974); *Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.*, No. 01-0892-CRB (N.D. Cal.), where Robert Lieff's passion for viticulture and personal experiences working alongside day laborers in numerous vineyards led the firm into correcting a 60-year injustice on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II, but from whom 10% of wages were withheld in forced savings accounts which were never paid out to the Braceros; despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in an historic and meaningful restitution settlement in 2009; *Holocaust Cases*, wherein Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era; the firm served as Settlement Class Counsel in the case against the Swiss banks for which the Court approved a U.S. $1.25 billion settlement in July 2000 (notably, Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School); the firm was also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks, in connection with which Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution; and most recently, *Monsanto Roundup Injury Litigation*, representing victims alleging their cancer injuries were caused by use of Monsanto's unsafe Roundup pesticide ($10 billion settlement pending as of summer 2020). *Academic & Other Philanthropy*: Through a gift of all the attorneys' fees from the firm's Holocaust litigation, Robert Lieff endowed the Lieff Cabraser Heimann & Bernstein Clinical Professorship of Human Rights Law at his alma mater, Columbia Law School. Robert subsequently endowed a second chair at Columbia Law School as The Robert L. Lieff Professorship of Law: Director of the Center for Chinese Legal Studies. Robert is also a member of the Board of Directors of the Bellosguardo Foundation in Santa Barbara, California. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in The Best Lawyers in America in fields of "Mass Tort Litigation/Class Actions – Plaintiffs," Best Lawyers (2015-2021); "Elite Trial Lawyers Hall of Fame," National Law Journal (2015); "Super Lawyer for Northern California," Super Lawyers (2005-2009); "Lawdragon Finalist," Lawdragon (2005). *Conferences & Seminars*: Conceived, initiated, structured, developed, implemented, managed and presented the Global Justice Forum (2005-2014), a series of international gatherings across the world created to bring together plaintiff lawyers world-wide to discuss, review, and develop international and cross border litigation for plaintiffs; "Representing International Plaintiffs in American Courts," London, 2005; "Litigation Plaintiffs' Claims Internationally," Paris, 2006; "Litigation Plaintiffs' Claims Internationally," Rome, 2007; "Current Developments in Cross-Border Litigation," New York (Columbia Law School), 2007; "Global Litigation in a Post-Economic Crisis World," New York (Columbia Law School), 2009; "Meeting of Best Friends," Vienna, 2009; "Selected Topics in Cross-Border Litigation—The GJN Organization and Structure," New York (Columbia Law School), 2011; "International Litigation Issues," Zurich,

2012; "The Global Justice Forum," presented by Robert L. Lieff and the Richard Paul Richman Center for Business, Law, and Public Policy, New York (Columbia Law School), 2013; "The Global Justice Forum – Income Inequality," presented by Robert L. Lieff and the Richard Paul Richman Center for Business, Law, and Public Policy, New York (Columbia Law School), 2014; conceived, initiated, structured, developed, implemented, managed and presented the Global Justice Network (2013-2015) to further connect and share knowledge and experience between plaintiff lawyers worldwide; "Global Justice Network Spring Conference," Dublin, 2013; "Global Justice Network Spring Conference," Amsterdam, 2015; "Global Justice Network Spring Conference," San Francisco, 2015. *Prior Employment*: Associate attorney, Chadbourne, Parke, Whiteside & Wolff (1962-1964); Associate attorney, Belli, Ashe & Gerry (1965 – 1968); Partner, Belli, Ashe, Ellison, Choulos & Lieff (1968-1972); Founding partner, Lieff Alexander Wilcox (1972-1975); Founding partner, Law Offices of Robert L. Lieff (1975-1983); Founding partner, Lieff & Cabraser (1983-1985); Founding partner, Lieff Cabraser Heimann (1985-1995); Founding partner, Lieff Cabraser Heimann & Bernstein, LLP (1995-2007), Managing Partner (1995-2002); Founding partner, Lieff Global (2007-2009); Of counsel, Lieff Cabraser Heimann & Bernstein, LLP (2007-present). *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**WILLIAM BERNSTEIN**, Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law, 2006-present; Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; "California Litigation Star," *Benchmark Plaintiff* (ranked as one of California's leading litigators in antitrust law); Selected for inclusion by peers in *The Best Lawyers in America* in field of "Litigation - Antitrust," 2013-2022; "Northern California Super Lawyer," *Super Lawyers*, 2004-2021; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "Top Attorneys In Antitrust Law," *Super Lawyers Corporate Counsel Edition*, 2010, 2012; Princeton Premier Registry, Business Leaders and Professionals, 2008-2009; "Top 100 Trial Lawyers in California," American Trial Lawyers Association, 2008; *Who's Who Legal*, 2007; Unsung Hero Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform," American Bar Association Antitrust Law Section, Annual Spring Meeting (2005); Co-Author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *Hastings West-Northwest Journal of Environmental and Toxic Torts Law and Policy*, No. 3 (Spring 1996). *Member*: Board of Governors, Association of Business Trial

Lawyers; Bar Association of San Francisco; Marin County Bar Association (Admin. of Justice Committee, 1988); State Bar of California.

**LYDIA LEE**, Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, law firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Vol. 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Ruth Bader Ginsberg Inn of Court (2015-present), Outstanding Master of the Bench (2016-2017); Edmond Neighborhood Alliance Board of Directors (2005-Present), President (2012-2013, 2006-2007); Oklahoma Bar Association, Member (1983-present); OBA Women in Law Committee (2007-2013); Bench and Bar Committee (2013-present); National Association of Public Pension Attorneys (1988-Present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member (2004); Edmond Planning Commission (2008-2010); Central Edmond Urban Development Board (2006-2008); Midwest City Regional Hospital, Board of Governors, Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee (1992-1996); City of Midwest City, Planning Commission (1984-1998), Chairman (1990-1995), Vice-Chairman (1987-1990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on Midwest City Legislative Reapportionment Committee (1991).

**DAN DRACHLER**, Admitted to practice in New Jersey; New York; Washington; U.S. Court of Appeals for the Second Circuit; U.S. Court of Appeals for the Ninth Circuit; U.S. Court of Appeals for the Federal Circuit; U.S. District Court, Eastern District of Washington; U.S. District Court, Western District of Washington; U.S. District Court, Eastern District of New York; U.S. District Court, Southern District of New York; U.S. District Court, District of New Jersey; U.S. Court of Federal Claims. *Education:* New York Law School (J.D., *cum laude*); Law Review; John Ben Snow Merit Scholar; University of South Carolina (B.A., *cum laude*). *Publications & Presentations:* 2020 Litigating Class Actions; 2015 Antitrust Pay-for-Delay Litigation Conference; 2014 County Attorneys' Association of the State of New York Mid-Winter Meeting; 1997 Pace University Conference on Tobacco and Public Health. *Member:* American Antitrust Institute, Advisory Board; Committee to Support the Antitrust Laws, Chair, State Attorney General Outreach; King County Bar Association; Washington State Bar Association.

## ASSOCIATES

**PATRICK I. ANDREWS**, Admitted to practice in New Jersey, 2020; New York, 2017; U.S. District Court, Eastern District of Michigan, 2021; U.S. District Court, Northern District of New York, 2019; U.S. District Court, Western District of New York, 2019; U.S. District Court, Southern District of New York, 2018. *Education:* University of California, Hastings College of

the Law (J.D., Magna cum laude, 2016); West-Northwest Journal of Environmental Law and Policy, Managing Editor; Inaugural Sack Teaching Fellow; Andrew G. Pavlovsky Memorial Scholarship; CALI Award; Witkin Award; University of California, Berkeley (B.A. 2011). *Prior Employment:* Associate attorney, Levy Konigsberg, LLP; judicial intern for U.S. District Judge Edgardo Ramos of the Southern District of New York. *Member:* New York State Bar Association.

**EVAN J. BALLAN**, Admitted to practice in California, 2017; U.S. Court of Appeals, Fourth Circuit, 2018; U.S. District Court, Northern District of California, 2018. *Education:* University of Michigan Law School (J.D. Magna cum laude, Order of the Coif, 2017); Articles Editor, Michigan Law Review; McGill University (B.A., 2010). *Publications:* Protecting Whistleblowing (and Not Just Whistleblowers), Note, 116 Mich. L. Rev. 475 (2017). *Prior Employment:* Clerk to the Honorable Albert Diaz of the U.S. Court of Appeals for the Fourth Circuit. *Member:* State Bar of California.

**IAN BENSBERG**, Admitted to practice in Indiana, 2018; U.S. District Court, Southern District of Indiana, 2018. *Education:* Indiana University Maurer School of Law, Bloomington (JD, magna cum laude and Order of the Coif, May 2016); Executive Articles Editor, *Indiana Journal of Global Legal Studies*, Volume 23 (2015–2016); Harriett C. Beasley Scholarship, 2014–2016 (merit award for long-time Indiana residents); Oexmann Fellowship, 2015–2016 (awarded to moot court champions); Scrivener, Indiana State Bar Association 2015 Legal Education Conclave. University of Chicago, Illinois (MA, 2011); Thesis: "Reading and Writing Cretan Laws." University of North Carolina, Chapel Hill (B.A., 2008); Eben Alexander Prize in Ancient Greek, 2008 (for best translation at sight of Greek not previously read); Eunice and Luther Nims Scholarship, 2008 (awarded to fund student research). *Prior Employment:* Clerk to the Hon. David F. Hamilton, U.S. Court of Appeals for the Seventh Circuit (Aug. 2019-July 2020); Clerk to the Hon. Sarah Evans Barker, Senior Judge, U.S. District Court for the Southern District of Indiana (Aug. 2017-July 2019); Clerk to the Hon. Paul D. Mathias, Court of Appeals of Indiana. *Member:* State Bar of Indiana.

**CHRISTOPHER COLEMAN,** Admitted to practice in Tennessee, 2005. *Education:* Northwestern University School of Law, Chicago, IL (J.D. cum laude, 2003); Associate Editor, *Northwestern University Law Review*, 2003; Order of the Coif; Justice John Paul Stevens Public Interest Fellowship, 2002; Joan Marie Corboy Scholarship, 2002-2003; Leonard S. Rubinowitz Fellowship, 2001. Tilburg University, Tilburg, The Netherlands; Catholic University of Leuven, Leuven, Belgium; Summer course in International Human Rights, 2002; Northwestern University Graduate School, Evanston, IL (Master of Arts in History, 2000); University of Virginia Graduate School, Charlottesville, VA (Master of Arts in English, 1995); Vanderbilt University, Nashville, TN (B.A. Magna Cum Laude, 1993); Honors from the College of Arts and Sciences; Honors from the Department of English. *Prior Employment:* Staff attorney, Tennessee Justice Center, Nashville, Tennessee; Associate, Lieff Cabraser Heimann & Bernstein, LLP; Clerk to the Hon. Joan Humphrey Lefkow of the U.S. District Court for the Northern District of Illinois; Adjunct Professor, Vanderbilt University Law School, 2014-present. *Member:* State Bar of Tennessee.

**JALLÉ DAFA**, Admitted to practice in California, 2013. *Education*: University of California, Berkeley School of Law (J.D., 2011); Co-Founder, Women of Color Collective; New

clinic formation, Community Economic Justice Clinic; Housing & Eviction Defense Clinic, East Bay Community Law Center; Social Justice Chair, Law Students of African Descent; Baker & McKenzie Diversity Scholar, 2009. Brown University (B.A., 2007); Co-President, The Organization of United African Peoples; Peer Counselor, Third World Center; Co-Founder, Coalition for Police Accountability and Institutional Transparency. *Prior Employment*: Law Clerk to the Hon. Jacqueline S. Corley, U.S. District Court for the Northern District of California; Law Clerk to the Hon. Mary M. Schroeder, Ninth Circuit Court of Appeals; Associate Attorney, Siegel, Yee, Brunner, & Mehta. *Member*: State Bar of California.

**JON FOUGNER,** Admitted to practice in New York, 2015; California, 2017; U.S. District Court, Central District of California, 2018; U.S. District Court, Eastern District of California, 2020; U.S. District Court, Northern District of California, 2017; U.S. District Court, Southern District of California, 2018; U.S. Court of Appeals for the Ninth Circuit, 2019. *Education:* Yale Law School, New Haven, CT (J.D., 2014); University of Oslo, Oslo, Norway (Fulbright Scholar, 2006); Yale University, New Haven, CT (B.A., *summa cum laude;* Phi Beta Kappa, with Distinction in Economics, 2005). *Member:* State Bar of New York.

**RHEA GHOSH**, Admitted to practice in New York, 2017. *Education:* University of Pennsylvania Law School (J.D., 2016), Moot Court Board, Bench Memorandum Committee Chair; *University of Pennsylvania Journal of Constitutional Law*, Senior Editor; Extraordinary Service Award; Dean's Merit Scholarship; Wharton Certificate in Management; South Asian Law Student Association, Executive Board; Prisoner's Education and Advocacy Project, Co-Director; University of Pennsylvania Student Animal Legal Defense Fund, Co-Director; Federal Appellate Litigation Extern; Amherst College (B.A., 2010), Five-College International Relations Certificate; Horizons for Homeless Children, Campus Director. *Prior Employment:* Judicial Clerk to the Hon. Charles S. Haight, Jr., of the Southern District of New York; Associate Attorney, Kirkland & Ellis LLP. *Member:* State Bar of New York.

**NICHOLAS HARTMANN,** Admitted to practice in New York, 2018; California, 2014. *Education:* University of California, Irvine School of Law, Irvine, CA (J.D., magna cum laude, 2014); Pro Bono Graduation High Honors (200+ hours); Dean's Merit Award (full tuition scholarship); Best Brief award and Oral Argument Semifinalist, UC Irvine School of Law Moot Court Competition; Moot Court Board Member; Bench Brief Author. California State University, Fullerton, Fullerton, CA (B.A. summa cum laude, 2011). *Prior employment:* judicial clerk to the Honorable Andrew J. Peck of the U.S. District Court for the Southern District of New York; judicial clerk to the Honorable Eric L. Clay of the U.S. Court of Appeals for the Sixth Circuit; associate at Patterson Belknap Webb & Tyler LLP, New York City. *Member:* State Bar of New York.

**AVERY S. HALFON**, Admitted to practice in New York (2016); the District of Columbia (2017); the U.S. Courts of Appeals for the Second Circuit (2017), Fifth Circuit (2020), Sixth Circuit (2017), and Tenth Circuit (2020); and the U.S. District Courts for the Southern District of New York (2019), Eastern District of New York (2018), and Eastern District of Michigan (2021). *Education:* Harvard Law School (J.D. *cum laude*, 2015), Editor-in-Chief, *Harvard Law & Policy Review*; Stanford University (B.A., 2010). *Prior employment includes:* Law Clerk to the Honorable Jane B. Stranch of the U.S. Court of Appeals for the Sixth Circuit

(2016-2017); Fellow, Cohen Milstein Sellers & Toll, PLLC (2015-2016). *Member:* American Association of Justice; Law360 Editorial Advisory Board, Consumer Protection, 2021; Associate Board Member, New York State Academy of Trial Lawyers.

**CATHERINE HUMPHREVILLE,** Admitted to practice in New York, 2017. *Education:* Harvard Law School, Cambridge, MA (J.D. cum laude, 2016); *Harvard Journal of Law & Gender*, Article Editor and Article Selection Committee; Project No One Leaves, Canvassing Director (foreclosure/tenant organizing student group); Harvard Immigration Project (filed green card applications for asylees); Lambda (LGBTQ law student group); Fordham University School of Law, New York, NY, Completed first year of studies, 2013–2014 (transferred to Harvard Law School); Harvard College, Cambridge, MA, (A.B., *cum laude*, 2010). *Prior employment:* Law Clerk to the Honorable Deborah A. Batts, U.S. District Court for the Southern District of New York, New York, NY. *Member:* State Bar of New York.

**DANIEL R. LEATHERS**, Admitted to practice in New Jersey, 2010; New York, 2010; Pennsylvania, 2009; U.S. Court of Appeals, 3rd Circuit, 2012; U.S. District Court, District of New Jersey, 2010; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. District Court, Eastern District of Wisconsin, 2013. *Education:* Case Western Reserve University Law School, Cleveland, Ohio (J.D., *cum laude*, 2009), Case Western Reserve Journal of International Law, Executive Articles Editor; Pennsylvania State University (B.A., History & Journalism, 2005). *Professional Associations:* American Association of Justice; American Bar Association; New Jersey Association of Justice. *Honors & Awards:* "Rising Star for New York Metro Area in Class Action/Mass Torts," Super Lawyers, 2013, 2014, 2015, 2016, 2017; "Rising Star for New Jersey in Class Action/Mass Torts," Super Lawyers, 2019; Federal Bar Association Award for Excellence in Constitutional Law, 2009; International Academy of Trial Lawyers Award for Overall Trial Advocacy Excellence, 2009; CALI Excellence for the Future Awards: Trial Tactics, 2009; Constitutional Law II, 2007. *Prior Employment:* Clerk to the Honorable Carol Higbee, New Jersey Superior Court Civil Division Presiding Judge (deceased). *Member:* New Jersey State Bar Association; New York State Bar Association; Pennsylvania State Bar Association.

**JOHN MAHER,** Admitted to practice in California, 2017; U.S. District Court, Central District of California, 2019; U.S. District Court, Eastern District of California, 2019; U.S. District Court, Northern District of California, 2021; U.S. Court of Appeals, 9th Circuit, 2019. *Education:* University of California, Berkeley School of Law – Berkeley, CA (J.D., 2016, Order of the Coif),  American Constitution Society, Co-Chair; *Ecology Law Quarterly*, Editor-In-Chief; Research Assistant to Professors Amanda Tyler and Eric Biber; Yale University – New Haven, CT (M.A., 2013); Oxford University – Oxfordshire, UK (B.A., 2009, First Class Honors summa cum laude). *Prior employment:* Associate, Munger, Tolles & Olson, San Francisco, CA; Law Clerk, Judge Lucy Koh, U.S. District Court for the NDCA, San Jose; Law Clerk, Chief Judge Diane Wood, Seventh Circuit Court of Appeals, Chicago, IL. *Member:* State Bar of California.

**MIRIAM E. MARKS,** Admitted to practice in California, 2020. *Education:* New York University School of Law (J.D., May 2019); Dean's Award Scholar; *New York University Law Review*, Editor-in-Chief (Vol. 93–94); OUTLaw Diversity Chair; Rose Sheinberg Program Committee Member; South Asian Law Students Association, Treasurer; Stanford University

(M.A. and B.A. with Departmental Honors, Public Policy, June 2012, Minor in Economics; minor in Middle Eastern Languages, Literatures, and Cultures). *Prior employment:* Judicial law clerk to The Honorable Pamela K. Chen, Eastern District of New York; Legal intern at the United States Attorney's Office, Southern District of New York, Civil Division. *Member:* State Bar of California.

**KATHERINE MCBRIDE**, Admitted to practice in New York, 2016. *Education:* Stanford Law School (J.D., pro bono distinction, 2015) (Levin Center Public Interest Fellow; Stanford Law Association; Stanford Journal of International Law; Iraqi Legal Education Initiative Rule of Law Project; Policy Director, Iraqi Refugee Assistance Project; Student Leader, DACA Pro Bono Project). Boston College (B.A., *summa cum laude*, 2011) (Phi Beta Kappa, Alpha Sigma Nu). *Prior employment:* Judicial Clerk to Judge I. Leo Glasser of the U.S. District Court for the Eastern District of New York; Ford Foundation Public Interest Fellow, Human Rights First. *Member:* State Bar of New York.

**JESSICA MOLDOVAN,** Admitted to practice in New York, 2018. *Education:* New York University School of Law, New York, NY (J.D. cum laude, 2017); Trinity College Dublin, Dublin, Ireland (M. Phil. in Gender and Women's Studies, 1st with distinction, 2014); Yale University, New Haven, CT (B.A. magna cum laude, 2011). *Prior employment:* Judicial clerk to The Honorable Cheryl Anne Krause, U.S. Court of Appeals for the Third Circuit, Philadelphia, PA; Judicial clerk to The Honorable Allyne Ross, U.S. District Court for the Eastern District of New York, Brooklyn, NY. *Publications: Authenticity at Work: Harmonizing Title VII With Free Speech Jurisprudence to Protect Employee Authenticity in the Work Place,* 42 N.Y.U. REV. L. & SOC. CHANGE 699 (2019). *Member:* State Bar of New York.

**GABRIEL PANEK,** Admitted to practice in New York, 2018; U.S. District Court, Eastern District of New York, 2019; U.S. District Court, Southern District of New York, 2019; U.S. Court of Appeals, Eleventh Circuit, 2020. *Education:* New York University School of Law, New York, NY (J.D. cum laude, 2017); *Annual Survey of American Law*, Articles Editor; American Constitution Society (NYU Law Chapter), Membership Director; Supreme Court Reading Group, President; Marden Moot Court Competition, Finalist (2015-2016); Best Overall Advocate Award, Marden Moot Court Fall Round (2016-2017); Albert Podell Oral Advocacy Award, Marden Moot Court Fall Round (2016-2017); Robert McKay Scholar; University of Chicago, ChicagoIL (A.B., with honors, 2013). *Prior employment:* Judicial Clerk to the Hon. Beverly B. Martin of the U.S. Court of Appeals for the Eleventh Circuit; Judicial Clerk to the Hon. Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York; Associate at Debevoise & Plimpton. *Publications:* "Furthering Society's Interests: The Importance of Using (and Mitigating) Classwide Punitive Damages," in The Class Action Effect: From The Legislator's Imagination to Today's Uses and Practices (Catherine Piché ed. 2018). *Member:* New York City Bar Association, Government Ethics & State Affairs Committee.

**SEAN A. PETTERSON**, Admitted to practice in New York, 2016; U.S. District Court, Eastern District of New York, 2017; U.S. District Court, Southern District of New York, 2017. *Education:* New York University School of Law (J.D., 2015); Senior Quorum Editor, Journal of Legislation and Public Policy; Robert McKay Scholar; Brandeis University (B.A., Summa Cum Laude 2011). *Honors & Awards:* "Ones to Watch," Best Lawyers, 2021, 2022. *Prior*

*Employment:* Civil Litigation Extern, U.S. District Court for the Southern District of New York; Boies Schiller Flexner, LLP. *Member:* State Bar of New York.

**JACOB POLIN,** Admitted to practice in California, 2016. *Education:* Northwestern University School of Law, Chicago, Illinois (J.D. cum laude, 2016); University of California at Berkeley, Berkeley, California (B.A. 2011). *Prior employment*: Law Clerk at the Illinois Attorney General's Office; Associate at Quinn Emanuel Urquhart and Sullivan, LLP in San Francisco. *Member:* State Bar of California.

**VERA SCHEDEL**, Admitted to practice in Germany, 2019. *Education:* Second German State Exam, Berlin, Germany, 2019; First German State Exam, University of Berlin, Germany, 2015; Novosibirsk State Teacher Training University, Novosibirsk, Russia, M.A., French & English Teacher, 2008.

**NIGAR SHAIKH,** Admitted to practice in New York, 2014; U.S. District Court, Eastern District of New York, 2018; U.S. District Court, Southern District of New York, 2018; U.S. Court of Appeals, Second Circuit, 2018. *Education:* University of California, Berkeley, School of Law (J.D., May 2013); John B. Hall Public Interest Scholarship; National Asian Pacific American Bar Association Law Foundation Scholarship; William K. Coblentz Civil Rights Research Fellow; Boalt Hall Student Association, President; *Journal of Middle Eastern and Islamic Law*, Articles Editor, Associate Editor; *Berkeley Journal of International Law*, Associate Editor; Writing and Oral Advocacy Program, Teaching Assistant; Women of Color Collective, Mentorship Coordinator; California Asylum Representation Clinic, Mentorship Coordinator; Juvenile Hall Outreach Clinic; Admissions Committee; Stanford University, Stanford, CA (B.A., Political Science; B.A., Human Biology, June 2007); International Security Studies Honors Certificate; American Federation of Muslims of Indian Origin Student of the Year; Rotaract Scholarship; Patrick W. Halloran Scholarship; Eileen Blain Rudolph Scholar; Undergraduate Research Grant Recipient. *Prior employment*: Senior Associate at Weil, Gotshal & Manges LLP, New York, N.Y. *Member:* State Bar of New York.

**REILLY STOLER,** Admitted to practice in California, 2015. *Education:* University of California, Hastings College of the Law, San Francisco, California (J.D. cum laude, 2014); *Hastings Constitutional Law Quarterly*, Senior Articles Editor; Hastings Pro Bono Society Award for Outstanding Pro Bono Achievement; Award for Outstanding Oral Argument; Awards for Excellence in Two Moot Court Competitions; Hastings Appellate Project; Brandeis University, Waltham, Massachusetts (B.A., *cum laude*, 2008). *Prior employment:* Law Clerk to the Honorable Edward M. Chen of the U.S. District Court for the Northern District of California; Associate at Baker Botts LLP and Fenwick & West LLP in San Francisco. *Member:* State Bar of California.

**DR. MARTHA SZABÓ-ANNIGHÖFER**, Admitted to practice in Germany, 2020. *Education:* Second German State Exam, Göttingen, Germany, 2020; Georg-August-University, Göttingen, Germany, Dissertation, 2019; First German State Exam, Göttingen, Germany, 2014.

**FRANK WHITE,** Admitted to practice in Virginia, 2016; U.S. District Court, Eastern District of Virginia, 2018. *Education:* University of Pennsylvania Law School, Philadelphia, PA

(J.D., 2016);  The Thomas O'Neil Prize – awarded by the faculty to the graduating student for outstanding involvement, competence, and commitment to the provision of legal services to disadvantaged clients;  Pro Bono Distinction Award for Exceptional Service – 200 Hours or More of Pro Bono Service; Dean's Scholarship; Wharton School of Business University of Pennsylvania, Philadelphia, PA (Certificate in Management, 2016); University of Chicago, Chicago, IL (B.A. in Philosophy with General Honors, 2010). *Prior employment:* Strategic Community Advocacy Attorney at Legal Aid Society of Eastern Virginia, Hampton, VA. *Member:* State Bar of Virginia.

**SARAH D. ZANDI**, Admitted to practice in California, 2021. *Education:* Stanford Law School, Palo Alto, CA (J.D., June 2021); Youth Education and Law Project – Clinic; Women of Stanford Law, Co-President; Stanford Law Students Against Gendered Violence, Vice President; Moot Court (2019-20); Judicial Workplace Environment Working Group Member; Domestic Violence Pro Bono Project; Stanford Pre-Law Society Mentor; University of Pennsylvania, Philadelphia, PA (B.A., Summa Cum Laude, 2017); Phi Beta Kappa; Distinction in English; Sigma Tau Delta; Dean's List. *Prior employment:* Stanford University Youth Education and Law Project; Domestic Violence Pro Bono Project; Election Law Project. *Member:* State Bar of California.

Notice on the Firm's AV Rating:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories—legal ability and general ethical standards.

# ELIZABETH A. KAVENY

KAVENY + KROLL, LLC                                      720 KEYSTONE AVENUE
130 E. RANDOLPH ST., SUITE 2800                  RIVER FOREST, ILLINOIS 60305
CHICAGO, ILLINOIS  60601
312.761.5585
312.586.8011
ELIZABETH@KAVENYKROLL.COM

## EDUCATIONAL BACKGROUND

> LEHIGH UNIVERSITY, BETHLEHEM, PENNSYLVANIA
> > B.S. ECONOMICS, 1988
>
> CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW, CLEVELAND, OHIO
> > J.D. CUM LAUDE 1992
> > NATIONAL MOCK TRIAL TEAM, 1991-1992

## PROFESSIONAL BACKGROUND

> ADMITTED TO PRACTICE: STATE OF ILLINOIS, UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS AND SEVENTH CIRCUIT COURT OF APPEALS, 1992
>
> EPSTEIN, ZAIDEMAN & ESRIG P.C., CHICAGO, ILLINOIS
> > ASSOCIATE
> > 1992-1997
>
> PROPES & GARIPPO, P.C., CHICAGO, ILLINOIS
> > ASSOCIATE
> > 1997-1998
>
> CAHILL CHRISTIAN & KUNKLE, LTD., CHICAGO, ILLINOIS
> > ASSOCIATE
> > 1998- 2000
>
> PROPES & KAVENY LLC, CHICAGO, ILLINOIS
> > FOUNDING PARTNER
> > 2000-2010
>
> BURKE WISE MORRISSEY KAVENY, LLC, CHICAGO, ILLINOIS
> > PARTNER
> > 2011-2019
>
> KAVENY + KROLL, LLC, CHICAGO, ILLINOIS
> > FOUNDING/MANAGING PARTNER
> > 2019-PRESENT

ELIZABETH A. KAVENY
PAGE 2 OF 6

## HONORS AND AWARDS

- BEST LAWYERS, LAWYER OF THE YEAR FOR MEDICAL MALPRACTICE LAW- PLAINTIFFS IN CHICAGO, 2021
- AV PREEMINENT HIGHEST POSSIBLE RATING IN BOTH LEGAL ABILITY & ETHICAL STANDARDS, 2021
- BEST LAWYERS, PERSONAL INJURY, MEDICAL MALPRACTICE, 2015-PRESENT
- LEADING LAWYERS TOP 10 WOMEN LITIGATORS, 2010-PRESENT
- LEADING LAWYERS TOP 10 WOMEN PERSONAL INJURY LAWYERS, 2010-PRESENT
- LEADING LAWYERS TOP 10 WOMEN CONSUMER LAWYERS IN PERSONAL INJURY AND PROFESSIONAL MALPRACTICE LAW, 2010-PRESENT
- ILLINOIS SUPER LAWYERS TOP 50 ILLINOIS WOMEN LAWYERS, 2010-PRESENT
- SUPER LAWYER, 2006-PRESENT
- LEADING LAWYERS, LAW BULLETIN PUBLISHING COMPANY, 2004-PRESENT
- WOMEN'S BAR ASSOCIATION OF ILLINOIS' TOP WOMEN LAWYERS IN LEADERSHIP AWARD, 2014
- CRAIN'S CHICAGO BUSINESS, TOP FIVE ATTORNEYS, PERSONAL INJURY INDUSTRY, 2013
- "FORTY UNDER FORTY" AWARD, LAW BULLETIN PUBLISHING COMPANY, 2001

## PUBLICATIONS, TEACHING AND LECTURING

AUTHOR, WILEX PUBLISHING, *MEDICAL ADVOCACY AND ERRORS FOR DUMMIES*, (PENDING) 2021.

SPEAKER, FLORIDA STATE BAR ASSOCIATION, *OBTAINING ADMISSIONS FROM THE EVASIVE EXPERT*, FEBRUARY 2021.

SPEAKER, CHICAGO BAR ASSOCIATION, *MASTERING DIRECT EXAMINATION OF EXPERTS*, MAY 2014.

AUTHOR, WOMEN LAWYER MAGAZINE, *NETWORK WHERE YOU WANT TO BE,* APRIL 2013.

SPEAKER, ILLINOIS STATE BAR, *TRIAL GRAPHICS*, MARCH 2013.

SPEAKER, CHICAGO BAR ASSOCIATION, *THE DO'S AND DON'TS OF CLOSING ARGUMENTS*, APRIL 2012.

SPEAKER, AMERICAN ASSOCIATION OF JUSTICE, *DOUBLING TIME IN FAILURE TO DIAGNOSE CANCER CASES,* HOUSTON, TEXAS, FEBRUARY 2012.

SPEAKER, ITLA SEMINAR, *DEMONSTRATIVE MEDICAL EVIDENCE*, SEPTEMBER 2011.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION, *DEALING WITH DEFENDANTS IN MEDICAL NEGLIGENCE ACTIONS*, SEPTEMBER 2010.

INSTRUCTOR IN TRIAL ADVOCACY, LOYOLA UNIVERSITY OF CHICAGO LAW SCHOOL, 1995 – 2010.

INSTRUCTOR, NATIONAL INSTITUTE OF TRIAL ADVOCACY, 1995 – 2010.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION, *POLICE MISCONDUCT*, 2009, 2010.

SPEAKER, ILLINOIS STATE BAR, *THE READY DECISION*, SEPTEMBER 2009.

SPEAKER, ILLINOIS STATE BAR, *DEMONSTRATIVE EVIDENCE*, MAY 2009.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION, *BLACK BOX*, FEBRUARY 2009.

PANELIST, CHICAGO DAILY LAW, *ETHICAL CONSIDERATIONS*, 2008.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *PRODUCT LIABILITY – MASS TORTS IN THE VIOXX AGE,* FEBRUARY 2007.

SPEAKER, ILLINOIS STATE BAR ASSOCIATION, *TORT LAW – CLOSING ARGUMENTS*, NEW ORLEANS, LA – MAY 2007.

PANELIST, "ILLINOIS LAW" CABLE TELEVISION PROGRAM, *THE JURY EXPERIENCE,* OCTOBER 2006.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *UPDATE AND REVIEW – DAMAGES,* OCTOBER 2006.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *UPDATE AND REVIEW – EVIDENCE,* OCTOBER 2005.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *SETTLEMENT ON SETTLEMENTS – PROTECTING YOUR POLICY DEMANDS – BAD FAITH*, JANUARY 2004.

DEMONSTRATOR, LOYOLA UNIVERSITY SCHOOL OF LAW, *CLOSING ARGUMENTS*, 2004, 2001.

CHAIRMAN, ILLINOIS TRIAL LAWYERS ASSOCIATION, *ADVOCACY SHOWCASE,* 2005, 2003.

SPEAKER, ILLINOIS STATE BAR ASSOCIATION, *LEGISLATIVE UPDATE – TORT LAW,* ORLANDO, FLORIDA, NOVEMBER 2003.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *UPDATE AND REVIEW -- RULE 213 – ONE YEAR LATER*, SEPTEMBER 2003.

DEMONSTRATOR, NORTHWESTERN UNIVERSITY SCHOOL OF LAW, *DIRECT EXAMINATION*, SEPTEMBER 2003, 2002 AND 2000.

SPEAKER, THE CHICAGO BAR ASSOCIATION, *ANATOMY OF A CIVIL TRIAL – WINNING YOUR TRIAL IN OPENING STATEMENT*, OCTOBER 2001.

SPEAKER, ILLINOIS TRIAL LAWYERS ASSOCIATION SEMINAR, *EVIDENCE – DEMONSTRATIVE EVIDENCE ON LIABILITY*, MAY 2001.

SPEAKER, ILLINOIS INSTITUTE FOR CONTINUING LEGAL EDUCATION, *THE ART OF MAXIMIZING DAMAGES IN A PERSONAL INJURY ACTION – OBTAINING AND USING MEDICAL RECORDS*, NOVEMBER 2000.

ADJUNCT PROFESSOR OF TRIAL ADVOCACY, NORTHWESTERN UNIVERSITY OF CHICAGO LAW SCHOOL, 1995 – 2000.

PANELIST, WOMEN'S BAR ASSOCIATION OF ILLINOIS, *JUGGLING THE PRACTICE OF LIFE AND THE LAW*, 1997-1998.

SPEAKER, THE CHICAGO BAR ASSOCIATION: *THEORY AND PRACTICE OF CROSS-EXAMINATION—WINNING THE BATTLE OF THE EXPERTS AT TRIAL*, NOVEMBER 1997.

DEMONSTRATOR, AMERICAN BAR ASSOCIATION ANNUAL MEETING, *ADVOCACY IN A HIGH-TECH WORLD*, SAN FRANCISCO, CALIFORNIA 1997.

SPEAKER, AMERICAN ASSOCIATION OF GYNECOLOGIC LAPAROSCOPISTS ANNUAL MEETING, *INFORMED CONSENT*, SEPTEMBER 1996.

## MEMBERSHIPS AND OFFICES HELD

- **ILLINOIS STATE BAR ASSOCIATION**
  - 2021-2022, TORT LAW SECTION COUNCIL
- **THOMSON REUTERS LAW FIRM COUNCIL**
  - 2021, MEMBER
- **AMERICAN COLLEGE OF TRIAL LAWYERS**
  - 2016-PRESENT, FELLOW
- **AMERICAN BOARD OF TRIAL ADVOCATES**
  - 2016-PRESENT, MEMBER
- **SOCIETY OF TRIAL LAWYERS**

ELIZABETH A. KAVENY
PAGE 5 OF 6

- o 2017-2019, BOARD OF DIRECTORS
- o 2010-PRESENT, MEMBER
- **ILLINOIS BAR FOUNDATION**
  - o 2016-2017, PRESIDENT
  - o 2015, FIRST VICE PRESIDENT
  - o 2014, SECOND VICE PRESIDENT & NOMINATING COMMITTEE
  - o 2013, THIRD VICE PRESIDENT
  - o 2012-PRESENT, BOARD MEMBER
- **ST. IGNATIUS COLLEGE PREP**
  - o 2015-PRESENT, BOARD OF REGENTS
- **INTERNATIONAL SOCIETY OF BARRISTERS**
  - o 2013-PRESENT, FELLOW
- **AMERICAN ASSOCIATION FOR JUSTICE**
  - o 2013-PRESENT
- **NATIONAL EXPERT EXCHANGE GROUP**
  - o 2012-PRESENT, MEMBER
- **ILLINOIS SUPREME COURT CIVIL JURY INSTRUCTION COMMITTEE**
  - o 2010-2021
- **ILLINOIS TRIAL LAWYERS ASSOCIATION**
  - o RE-OPENING OF COURTS COMMISSION, 2021
  - o 2015-2016, TREASURER
  - o 2014-2015, PARLIAMENTARIAN & BOARD OF MANAGERS
  - o 2011, EXECUTIVE COMMITTEE
  - o 2008, PARLIAMENTARIAN
  - o 2006-2007, TREASURER
  - o 2002-PRESENT, BOARD OF MANAGERS
  - o 2001, BOARD OF ADVOCATES
- **AMERICAN INN OF COURT, CHICAGO CHAPTER**
  - o 2014-2015, PRESIDENT
  - o 2006-PRESENT, MEMBER
- **ILLINOIS SUPREME COURT CHARACTER AND FITNESS COMMITTEE**
  - o 2012-2014
- **MERCY HOME FOR BOYS & GIRLS**
  - o 2010-PRESENT, LEADER COUNCIL
- **WOMEN'S BAR ASSOCIATION OF ILLINOIS**
  - o 2004-2007, 2009 NOMINATING COMMITTEE
  - o 1999-2000, BOARD OF DIRECTORS
  - o 1992-PRESENT, MEMBER
- **CHICAGO BAR ASSOCIATION**
- **ILLINOIS STATE BAR ASSOCIATION**

## SPECIAL APPOINTMENTS

PATIENT SAFETY MOVEMENT FOUNDATION
- AMBASSADOR, 2020 - PRESENT

ELIZABETH A. KAVENY
PAGE 6 OF 6

SENATOR JOHN J. CULLERTON
- MOVE OVER TASK FORCE, S.D., J.C. – 2019-PRESENT

ILLINOIS SUPREME COURT
- COMMITTEE ON JURY INSTRUCTIONS
- CHARACTER AND FITNESS COMMITTEE
- JUSTICE THEIS, JUDICIAL APPOINTMENT COMMITTEE