UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, et al., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to Case Nos.<br>22 C 192<br>22 C 197<br>22 C 203<br>22 C 204 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) MDL No. 3026<br><br>Master Docket No. 22 C 71<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Before this court are remand motions from four cases in the multidistrict litigation ("MDL") consolidated in this court. These four cases were originally filed in Illinois state court. Defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott") then removed the cases to this district on the basis of diversity jurisdiction. Because Abbott is an Illinois citizen, such a removal would normally be precluded by the forum-defendant rule, which provides that a diversity action is not removable if any "properly joined and served" defendant is a citizen of the forum state. 28 U.S.C. § 1441(b)(2). But Abbott argues for a loophole commonly referred to as "snap removal": Because removal occurred before Plaintiffs had a chance to effectuate service, the Abbott entities contend that they are not "properly . . . served" forum-state defendants and the cases belong in federal court.

For the reasons discussed below, the court disagrees. The following motions to remand are granted: [12] in 22 C 192, [12] in 22 C 197, [12] in 22 C 203, and [11] in 22 C 204.

## FACTUAL BACKGROUND

This opinion concerns the following four cases in this MDL: *Rinehart v. Abbott Laboratories* (22 C 192), *Gshwend v. Abbott Laboratories* (22 C 197), *Taylor v. Abbott*

*Laboratories* (22 C 203), and *Stuper v. Abbott Laboratories* (22 C 204).[1] In each case, Plaintiffs have alleged that baby formula manufactured by Abbott has caused preterm infants to develop and die from necrotizing enterocolitis ("NEC"). (Pls.' Mem. at 2.) Plaintiffs all filed their lawsuits against the Abbott entities in the Circuit Court of Cook County, Illinois, bringing only state law claims. (*Id.* at 2–3.) Plaintiffs did not name any other defendant.

Generally, Illinois law requires that an initial attempt at service of process be made by a county sheriff. *See* 735 ILCS 5/2-202.[2] Two days after Plaintiffs filed suit, and before such service could be completed by the Cook County Sheriff, Abbott removed the cases to this district. (Pls.' Mem. at 4.) The basis for removal was diversity jurisdiction: Both Abbott entities have their

---

[1] Plaintiffs' memoranda in support of remand are substantively identical, and so the court refers to them collectively as "Pls.' Mem." (*See* [13] in 22 C 192; [13] in 22 C 197; [13] in 22 C 203; and [12] in 22 C 204.) Abbott filed responses in *Rinehart*, *Gshwend*, and *Taylor*; because these responses are also identical, the court collectively refers to them as "Def.'s Resp." ([23] in 22 C 192; [24] in 22 C 197; and [24] in 22 C 203.) Before Abbott could file a response in *Stuper*, proceedings were stayed pending a consolidation ruling by the Joint Panel on Multidistrict Litigation. ([28] in 22 C 204.) Due to this stay, and a similar stay in *Taylor*, Plaintiffs did not file reply briefs in those cases. Given the identical briefing and issues across these cases, as well as the parties' apparent agreement that the remand motions are ripe for adjudication, the court considers all snap-removed cases in this opinion.

[2] Section 2-202 of Illinois's Code of Civil Procedure provides that process "shall be served by a sheriff." 735 ILCS 5/2-202(a). It further states that "[i]n counties with a population of less than 2,000,000, process may be served, without special appointment, by a person who is licensed or registered as a private detective." *Id.* If the defendant is served in Cook County (the only Illinois county with a population greater than two million), a private detective may serve process only if specially appointed by the court. *Mun. Tr. & Sav. Bank v. Moriarty*, 2021 IL 126290, ¶ 21, 183 N.E.3d 146, 150. To serve process on a corporation, a copy of the process may be left "with its registered agent or any officer or agent of the corporation found anywhere in the state." *MB Fin. Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 29, 990 N.E.2d 764, 774. To rely on the latter method of service, "the agent must have had actual authority to accept service on behalf of the corporation," which means a defendant's "challenge to or denial of agency within the corporate service context can call the ultimate issue of the propriety of this service . . . into question." *Id.* ¶ 29, 990 N.E.2d at 775.
  The Abbott entities' registered agents are located in Cook County, and their principal places of business are in Lake County. (Pls.' Mem at 2.) To serve Abbott's registered agents, therefore, Plaintiffs needed the assistance of a sheriff or a special court appointment. To serve Abbott's officers or agents, Plaintiffs would need to determine which officers or agents were authorized to accept service, find their location, request service by the sheriff or, only if those agents could be served outside of Cook County, use a private detective process server without court appointment.

principal place of business in Illinois and are incorporated in either Illinois or Delaware; Plaintiffs are citizens of states other than Illinois or Delaware; and the amount in controversy exceeds $75,000. (Pls.' Mem. at 2–3 & n.1.) After the cases were removed, Plaintiffs in every case besides *Taylor* filed proof of service on Abbott. Plaintiffs used a special process server to serve the Abbott entities' registered agents, located in Cook County. ([24] in 22 C 192, [25] in 22 C 197, and [22] in 22 C 204; *see* Pls.' Mem. at 2.)

Additionally, all Plaintiffs moved for an order remanding their cases to the Circuit Court of Cook County. In each case, the then-presiding district court judge stayed proceedings pending a ruling by the Joint Panel on Multidistrict Ligation ("JPML") on whether to consolidate the action. The JPML has now consolidated the four cases into the MDL assigned to this court, which consolidates, for pretrial proceedings, dozens of similar cases alleging that Abbott's preterm infant formula caused NEC. The issue of whether these snap-removed cases must be remanded to state court is now ripe for the court's consideration.

## DISCUSSION

### I.     The Forum-Defendant Rule and Snap Removal

The jurisdictional rules governing this case are familiar. While state courts are courts of general jurisdiction, federal courts are courts of limited jurisdiction, possessing subject-matter jurisdiction only where authorized by the Constitution and Congress. *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021). One such basis for jurisdiction is diversity of citizenship. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction permits federal courts to hear state law claims where the parties are completely diverse and the amount in controversy exceeds $75,000. *Id.* In this case, the parties agree that these requirements are met and that there is no other basis for subject-matter jurisdiction.

Where both state and federal courts have jurisdiction over a case, the plaintiff is allowed her choice of forum. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). One exception to this principle is the statutory right of removal. *See* 28 U.S.C. § 1441 *et seq.* The removal statute

3

permits a defendant to remove a case filed in state court, so long as the action could have originally been brought in federal court. *Id.* § 1441(a). For removals based on diversity jurisdiction, the statute contains an additional limitation: the forum-defendant rule. This rule provides, in full, that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2).

This limitation stems from diversity jurisdiction's animating justification: ameliorating concerns that local courts will have a bias in favor of in-state litigants. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553–54 (2005) (diversity jurisdiction "provide[s] a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants"). But where a *home-state* defendant seeks removal, there is no basis for this concern. The forum-defendant rule therefore precludes removal and "preserve[s] the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000); *see Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) ("[T]he forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the forum state.").

The forum-defendant limitation on removal has existed as long as the federal judiciary itself. *See* Judiciary Act of 1789, ch. 20, § 12; *see also* Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541, 546–49 (2018) (tracing the history of the forum-defendant rule). In 1948, Congress changed the forum-defendant rule to add the "joined and served" language; the amended removal statute stated that a diversity action "shall be removable only if none of the parties in interest *properly joined and served* as defendants" is a citizen of the forum state. 28 U.S.C. § 1441(b) (1948) (emphasis added). In 2011, Congress again amended the removal statute, changing the words "shall be removable only if [not]" to "may not be removed

4

if," but keeping the rule's substance unaltered. *Id.* § 1441(b)(2) (2011). This is the version of the statute currently in place.

Numerous courts and scholars have examined the history of these amendments. Although the 1948 legislative history does not clearly reveal Congress's purpose, the historical context makes clear that the "joined and served" language was intended to prevent gamesmanship by plaintiffs, who would name (but never plan on joining or serving) a strawman in-state defendant to defeat complete diversity. *See, e.g.*, *Spreitzer Properties, LLC v. Travelers Corp*, No. 21-CV-106-CJW-MAR, 2022 WL 1137091, at *5, ___ F. Supp. 3d ___ (N.D. Iowa Apr. 18, 2022) (collecting cases); *see also* Howard M. Wasserman, *The Forum-Defendant Rule, the Mischief Rule, and Snap Removal*, 62 Wm. & Mary L. Rev. Online 51, 58–59 (2021); Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. at 548; Arthur Hellman et. al., *Neutralizing the Stratagem of "Snap Removal": A Proposed Amendment to the Judicial Code*, 9 Fed. Cts. L. Rev. 103, 108 (2016). The 2011 legislative history reflects no substantive discussion of this issue or of snap removal. *See* Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. at 549; Jeffrey W. Stempel, Thomas O. Main, David McClure, *Snap Removal: Concept; Cause; Cacophony; and Cure*, 72 Baylor L. Rev. 423, 440 (2020).

Though the "joined and served" language was intended to prevent plaintiff-side gamesmanship, it has at times instead resulted in defense-side gamesmanship. Specifically, defendants have relied on this language as authority for the practice of "snap removal." Snap removal works like this: Before plaintiffs can serve a home-state defendant (whose presence would normally trigger the forum-defendant rule), defendants file removal papers, "snapping" the case into federal court. Because the home-state defendant was not "properly . . . served," 28 U.S.C. § 1441(b)(2), the case is removable—or so snap-removing defendants argue. Prior to the 2000s, this tactic was rare, but it began gaining steam with the advent of electronic docket monitoring. Stempel, Main, & McClure, *Snap Removal*, 72 Baylor L. Rev. at 451. The state courts' electronic dockets enable defendants—particularly corporate defendants with substantial

resources—to easily monitor local court filings, especially in large-scale products liability cases like this one, where Abbott is on notice that numerous cases will be filed in state courts. *See* Adam B. Sopko, *Swift Removal*, 13 Fed. Cts. L. Rev. 1, 39–40 (2021) (an empirical study of snap-removed cases from 2018–2019 shows it was used almost exclusively by corporate defendants and primarily in products liability cases). Snap removals have increased even further in recent years. *See id.* at 33 (noting that snap removals have "at least doubled" since Nannery's empirical study of cases from 2012–2014 in *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541).

## II. Interpretations of § 1441(b)

Judicial response to snap removal has been mixed. Because remand orders are usually unappealable, *see* 28 U.S.C. § 1447(d), the issue was initially left to district courts, which largely split over the tactic's permissibility. Since a trio of appellate decisions issued from 2018 to 2020, however, it appears that district courts have been more willing to allow snap removal (and deny remand motions) based on their understanding of the "plain meaning" of § 1441(b)(2). The Seventh Circuit has not yet addressed this issue. As the court will describe in more detail below, even with guidance from three Court of Appeals, district courts across the country and within this district have continued to interpret § 1441(b)(2) in different ways.[3]

### A. "Plain" Meaning

Courts permitting snap removal have all rested their conclusion on the purported plain meaning of the statutory text, which provides that a diversity action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of" the forum state. 28 U.S.C. § 1441(b)(2).

---

[3] The parties spill significant ink on whether each side has properly characterized which interpretation of § 1441(b)(2) is the majority rule, both within and outside this district. As it appears the Seventh Circuit has not spoken on this issue, this court is less concerned about the numbers of courts that have lined up on both sides, and has independently detailed the primary interpretations of this statute.

The courts who have adopted this "plain meaning" conclusion include the Second, Third, and Fifth Circuits, the only three appellate courts to squarely consider the issue.[4] These appellate courts concluded that § 1441(b)(2) is "unambiguous," and that its "plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018); *accord Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486–87 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019). In the view of these courts, allowing for snap removal does not yield an unfavored "absurd" result. *See Encompass Ins. Co.*, 902 F.3d at 153 (allowing a home-state defendant to snap remove was not absurd, in part because the statute addresses fraudulent joinder with what the court deemed "a bright-line rule"); *accord Gibbons*, 919 F.3d at 706. *But see Texas Brine Co.*, 955 F.3d at 486–87 (snap removal was "rational" as applied in this case; it was "[o]f some importance [that] the removing party is not a forum defendant," because "[d]iversity jurisdiction and removal exist to protect out-of-state defendants from in-state prejudices").

Numerous district courts (including several in this district) have agreed with this "plain meaning" reasoning. *See Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1013 n.4 (D. Nev. 2021) (collecting cases across all districts); *Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 621 (N.D. Ill. 2021) (collecting cases in this district, on both sides of the snap removal split). But many others have taken a different approach.

---

[4] Two other circuits have weighed in on, but not decided, the issue. The Sixth Circuit indicated its approval for snap removal in a footnote, noting that "the inclusion of an *unserved* resident defendant in the action does not defeat removal." *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001). This statement "has repeatedly been characterized as dicta." *Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215, 1219 (M.D. Tenn. 2017). The Eleventh Circuit, on the other hand, affirmed the decision by a district court to dismiss without prejudice a snap-removed case, so that the plaintiff "could refile the case in state court in such a manner as to irrefutably trigger the forum-defendant rule." *Goodwin v. Reynolds*, 757 F.3d 1216, 1218 (11th Cir. 2014). The Eleventh Circuit assumed arguendo that the case was removable; it then concluded that because "the likely purpose of [the properly joined and served] language is to prevent gamesmanship by plaintiffs," § 1441(b)(2) did not constrain the district court's discretion to "undo *Defendants'* gamesmanship" by dismissing without prejudice. *Id.* at 1221–22.

7

### B. Disallowing Snap Removal

Courts disallowing snap removal have followed three primary paths in interpreting § 1441(b)(2).

First, the most common reason courts have disallowed snap removal: the absurdity doctrine. These courts reason that even if the statute is unambiguous, it produces absurd results. It is well-established that statutes must "be interpreted to avoid absurd results." *Senne v. Vill. of Palatine*, 784 F.3d 444, 447 (7th Cir. 2015); *see also Jefferson v. United States*, 546 F.3d 477, 483 (7th Cir. 2008) (Courts must "give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent."). The application of this doctrine to snap removal is straight-forward. As Judge Andrea Wood of this district recently explained:

> [C]onsidering the intent of the forum-defendant rule—which goes to the genuine interests and citizenship of the parties, not how quickly they are served with process—the Court concludes that the loophole for which Defendants advocate would lead to an absurd result, inconsistent with the statutory purpose. . . . [T]he snap-removal loophole essentially writes the forum-defendant rule out of existence for any defendants with the resources and wherewithal to monitor exhaustively local court filings.

*Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 770 (N.D. Ill. 2021); *see also Deutsche Bank*, 532 F. Supp. 3d at 1016 (D. Nev. 2021) ("[P]ermitting snap removal runs counter to the expressly limited nature of diversity jurisdiction, courts' presumption against removal, public policy considerations surrounding plaintiff's choice of forum, and Congress' rejection of gamesmanship when originally enacting § 1441(b)(2)."); *id.* at 1015 n.9 (collecting cases concluding that snap removal leads to absurd results).

Second, several courts have interpreted § 1441(b)(2) to allow snap removal only if at least one defendant has been served. *See Deutsche Bank*, 532 F. Supp. 3d at 1012 n.5 (collecting cases following this interpretation). This interpretation focuses on the word "any" in § 1441(b)(2): Because "any" means "one or more," "the statute assumes at least one party has been served; ignoring that assumption would render . . . the statute's use of 'any' superfluous." *Gentile v.*

8

*Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 318 (D. Mass. 2013). According to these courts, this conclusion is bolstered by the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). There, the Court held that the removal statute's 30-day deadline for removal begins only after receipt of the complaint *and* service of summons. *Id.* at 347–48. Based on this, some district courts have concluded that pre-service removal is inappropriate and therefore cannot circumvent the forum-defendant rule:

> Although *Murphy Brothers* did not directly address whether service was required before a defendant could remove an action, the Court indicated that the time to remove was "triggered" in all instances *after* the receipt of service of process. It thus seems safe to assume that service on at least one defendant is required prior to removal.

*Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1370 (N.D. Ga. 2011); *accord Coburn v. Hixson Weight Loss Ctr. & Shot Spot, M.D., Inc.*, No. 1:21-CV-244-TAV-SKL, 2022 WL 164541, at *3 (E.D. Tenn. Jan. 18, 2022).

Third and finally, a few courts have held that § 1441(b)(2) is ambiguous on the propriety of snap removal, but its history and purpose counsel disallowance of the tactic. In *Deutsche Bank*, 532 F. Supp. 3d at 1011–13, a Nevada district court concluded that the statute's two primary interpretations (permitting snap removal versus requiring service on at least one defendant) meant the statute was ambiguous. Considering the context and history described above, the court interpreted § 1441(b)(2) to "provide[] a narrow carve-out to the forum defendant rule to protect defendants against gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal." *Id.* at 1014. In the *Norwegian Air* decision, Judge Wood of this district recently came to a similar conclusion, albeit taking a slightly different path:

> There are two plausible readings of the forum-defendant rule. The first, allowing snap removal, narrowly prevents removal only when a state forum citizen defendant has been served. The second, rejecting snap removal, broadly prevents removal in cases with state forum citizen defendants except when the plaintiff chooses not to "properly join and serve" those parties by improperly joining parties with no connection to the case or improperly delaying service. The second reading better achieves the goals of the forum-defendant rule and is consistent with the statutory scheme.

9

*Norwegian Air*, 530 F. Supp. 3d at 769. As mentioned above, Judge Wood then went on to hold, as an alternative basis for remand, that even if the statute is deemed unambiguous, the doctrine of absurdity precluded snap removal. *Id.* at 769–70. The Nevada court similarly pointed to the absurdity doctrine as an alternative holding. *See Deutsche Bank*, 532 F. Supp. 3d at 1015–18.

### III. Section 1441(b)(2) Does Not Permit Snap Removal

With this background in mind, the court must reach its own conclusion about the language of § 1441(b)(2). Abbott primarily argues that the relevant language—which prohibits removal "if any of the parties in interest properly joined and served as defendants is a citizen" of the forum state—unambiguously permits removal before any home-state defendant is served, and that the court's analysis must begin and end there. Plaintiffs, on the other hand, argue that the removal statute's plain text prohibits snap removals. The court concludes that § 1441(b)(2) does not permit snap removal, either on its own statutory terms or under the doctrine of absurdity.

#### A. Section 1441(b)(2) Is Ambiguous

"[C]ourts must give effect to the clear meaning of statutes as written." *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992); *see Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("[W]hen the meaning of the statute's terms is plain, our job is at an end."). But statutory terms cannot be construed "in a vacuum." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Rather, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)). Further, the Seventh Circuit has directed that provisions of the removal statute should be interpreted "narrowly," with the presumption that "the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

This court concludes that § 1441(b)(2) does not plainly permit snap removal. Instead, the statute merely provides that once a forum-defendant is "properly joined and served," the case

"may not be removed"—but this does not specify when the service must occur to render the case nonremovable. *See Norwegian Air*, 530 F. Supp. 3d at 768 ("[T]he rule is silent as to when a forum defendant must be properly joined and served to defeat removal."). Nor does the statute affirmatively sanction pre-service removal by a home-state defendant. *See Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215, 1221 (M.D. Tenn. 2017) (explaining that § 1441(b)(2) permits snap removal only "by applying a negative hypothesis. . . . [T]he statute speaks of when an action cannot be removed, not when it can be removed"). The various interpretations described above—including permitting snap removal or requiring at least one defendant be served before permitting snap removal—are both plausible readings of the text. Also plausible is Judge Woods's reading of the statute as preventing removal in cases with forum defendants "except when the plaintiff chooses not to 'properly join and serve' those parties by improperly joining parties with no connection to the case or improperly delaying service." *Norwegian Air*, 530 F. Supp. 3d at 769.

The court concludes that this last reading—that the forum-defendant rule bars removal by Abbott unless Plaintiffs improperly delayed service—is the most persuasive interpretation of § 1441(b)(2). Significantly, this interpretation is supported by the broader statutory scheme. *See Gundy*, 139 S. Ct. at 2126. Note that the removal statute expressly contemplates post-removal service on unserved defendants. Section 1448 states: For cases removed to federal court "in which any one or more of the defendants has not been served with process . . . such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448; *see also* Fed. R. Civ. P. 81(c)(1) (Federal Rules "apply to a civil action after it is removed from a state court"). Federal Rule of Civil Procedure 4, in turn, governs service for cases filed in or removed to federal courts. Specifically, among other requirements, Rule 4 imposes a time limit for service, which begins to run 90 days after the case

is filed in federal court or removed from state court.[5] FED. R. CIV. P. 4(m); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011). Read in this statutory context, § 1441(b)(2) permits service to "properly" occur after the case has been removed from state court, so long as the plaintiff effectuates service as prescribed by the Federal Rules. If service occurs within this timeline, the plaintiff did not fraudulently or improperly delay service, and the forum-defendant rule applies. The plaintiff may then move for remand within 30 days of the filing of the notice of removal, as specified by the removal statute. *See* 28 U.S.C. § 1447(c).

Plaintiffs point out that that § 1441(b)(2) is silent as to when service must occur (*see* Pls.' Mem. at 7),[6] and Abbott has not substantively responded to this issue. Instead, Abbott simply assumes that because service had not occurred *at the time this case was removed*, the forum-defendant rule "does not apply." (Def.'s Resp. at 4.) Though Abbott provides no support for this assumption, the court acknowledges "the general principle that jurisdiction once properly invoked is not lost by developments after a suit is filed." *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). For cases removed to federal court, "jurisdiction is determined as of the instant of removal." *Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). But "removal is not a kind of jurisdiction . . . . [I]t is a *means* of bringing cases within federal courts' original

---

[5] If the plaintiff misses the 90-day deadline, the court must determine whether the plaintiff had "good cause" for not perfecting service (in which case the deadline must be extended), or whether, in the court's sound discretion, an extension is appropriate (in which case the court must "order that service be made within a specified time"). FED. R. CIV. P. 4(m); *see Cardenas*, 646 F.3d at 1004–05. Otherwise, the court must dismiss the action on motion or its own notice to plaintiff. FED. R. CIV. P. 4(m).

[6] Plaintiffs' discussion of this issue is not the model of clarity. Plaintiffs note that § 1441(b)(2) "is silent on *when* service must be completed to trigger the forum defendant rule," and claim that "[s]ome courts have construed the language to require only that service be completed at some point prior to the remand motion being presented or decided." (Pls.' Mem. at 7.) In support, however, Plaintiffs cite only *Holmstrom v. Harad*, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005), which followed the interpretation that at least one defendant must be served in order for snap removal to defeat the forum-defendant rule.

jurisdiction into those courts."[7] *Rodas v. Seidlin*, 656 F.3d 610, 623 (7th Cir. 2011) (quoting 14C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3721 (Rev. 4th ed.)). The jurisdictional inquiry at the time of removal goes to the original basis for subject-matter jurisdiction, not whether the statutory requirements of removal are satisfied. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) (in removal cases, "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction"); *see also Matter of Shell Oil Co.*, 970 F.2d at 356 (post-removal amendment or stipulation limiting the amount-in-controversy does not defeat diversity jurisdiction); *see Hammond v. Terminal Railroad Ass'n,* 848 F.2d 95, 97 (7th Cir.1988) (post-removal elimination of federal claims does not defeat federal question jurisdiction). This timing rule is grounded in "forum-manipulation concerns"—that the plaintiff will fraudulently or improperly amend her claims post-removal to alter jurisdiction. *Rockwell*, 549 U.S. at 474 n.6.

In this case, the court's subject-matter jurisdiction is secure; it is undisputed that Abbott and Plaintiffs are completely diverse in citizenship, and post-removal service on Abbott (the home-state defendant) has no impact on this issue. What it does affect is whether the forum-defendant rule applies. Determining whether post-removal service of process requires remand calls for interpretation of the removal statute. As discussed above, the court reads § 1441(b)(2) to mean that post-removal service, within the time permitted by the removal statute and Federal Rules, triggers application of the forum-defendant rule, in that if the plaintiff moves for remand within 30 days of removal, such a motion should be granted.[8] The court concludes, further, that while

---

[7] Defendants have also attempted to snap remove before plaintiffs effectuated service on defendants whose joinder would destroy complete diversity. *See, e.g.*, *Spreitzer Properties*, 2022 WL 1137091, at *7. Because complete diversity is a jurisdictional requirement (unlike the forum-defendant rule), this fact pattern raises different concerns, which the court declines to address at this time.

[8] The parties have not provided any caselaw on when post-removal service on a forum-defendant requires remand. The court notes that the Ninth Circuit considered this issue in *Spencer v. U.S. Dist. Ct. for N. Dist. of Ca.*, 393 F.3d 867 (9th Cir. 2004). There, after a period of discovery, the plaintiff joined a forum-defendant whose presence in the case did not destroy

13

removability is ordinarily determined from the record before the court at the time of removal, *see* Wright & Miller*, Federal Practice and Procedure* § 3723, the statutory text overcomes this background principle. This reading of the removal statute also protects against forum-manipulation, the primary justification for the rule that removability should be determined at the time of removal. *Cf. Rockwell*, 549 U.S. at 474 n.6.

Moreover, this interpretation, which permits snap removal in some but not all cases, comports with the "history [and] purpose" of § 1441(b)(2)—unlike the interpretation permitting snap removal in all cases. *Gundy*, 139 S. Ct. at 2126 (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)). Prior to the 1948 amendment, a home-state plaintiff suing an out-of-state defendant could fraudulently name a home-state defendant to defeat complete diversity, even if she never intended to join or serve that defendant. *See supra*. As even the appellate courts permitting snap removal have explained, "Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem—fraudulent joinder by a plaintiff—with a bright-line rule." *Encompass Ins. Co.*, 902 F.3d 147, 153 (3d Cir. 2018); *see also Texas Brine Co.*, 955 F.3d at 486 ("Congress may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service . . . ." (quoting *Gibbons*, 919 F.3d at 706)). But significantly, this amendment was passed alongside the long-standing forum-defendant rule and justification for diversity jurisdiction—that a home-state defendant removing a diversity action has no need for protection against local court bias. Interpreting the "properly joined and served" language to require joinder and service at any point within the statutorily prescribed time limit provides a standard that precludes the specific plaintiff-

---

complete diversity after discovery and argued that § 1441(b)(2) required remand. *Id.* at 868–69. The Ninth Circuit disagreed, concluding that the forum-defendant rule is not jurisdictional, and "[w]hen removal is proper at [the time of removal], subsequent events, at least those that do not destroy original subject-matter jurisdiction, do not require remand." *Id.* at 871. That case is factually distinguishable: It dealt with the joinder of a previously unnamed entity, well into the proceedings of the case—and presumably after the 30-day deadline to move for remand, a deadline that is extended only if the court lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c).

14

side gamesmanship that prompted the language *and* prevents the defendant-side gamesmanship that would defeat the purpose of the forum-defendant rule.

Though Abbott primarily contends that the text of § 1441(b)(2) is unambiguous, Abbott also argues that snap removal is consistent with Congressional intent, because Congress reenacted the removal statute in 2011 with the same "properly joined and served" language. But Abbott offers no reason why "Congress's inaction on the question should be read as an endorsement." *Norwegian Air*, 530 F. Supp. 3d at 770; *see also In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 960 (N.D. Ill. 2014). Abbott simply notes that Congress must have been "aware of computers, electronic dockets, and pre-service removals" since the 1990s (that is, before the 2011 amendment). (Def.'s Resp. at 7.) But the significant increase in snap removals is a more recent phenomenon, and the 2011 legislative history defeats the assumption that Congress substantively considered this issue. Abbott also points to a proposed bill (H.R. 5801), which requires remand if a plaintiff serves the home-state defendant within 30 days of removal or the time specified by state law, whichever is shorter. *See* https://www.congress.gov/bill/116th-congress/house-bill/5801/text (last visited June 22, 2022). Abbott makes no argument in connection with this proposed bill. But whatever Abbott's possible argument, the non-enactment of a proposed bill does not reveal anything about the Congressional intent behind § 1441(b)(2).

The court acknowledges that its interpretation § 1441(b)(2) differs in some degree from the primary interpretations that have percolated among the lower courts. Three appellate courts and numerous district courts have concluded that § 1441(b)(2)'s plain meaning permits snap removal. But it does not appear that these decisions grappled with the possibility that post-removal service on a forum defendant satisfies the "properly joined and served" language. Instead, these opinions construed the text "in a vacuum," *Gundy*, 139 S. Ct. at 2126, rather than in concert with the rest of the removal statute and Federal Rules of Civil Procedure.

15

Nor is the court persuaded that § 1441(b)(2) permits snap removal only if at least one defendant has been served, though this competing interpretation at least suggests that the statute is ambiguous. *See Deutsche Bank*, 532 F. Supp. 3d at 1011–13. District courts reaching this conclusion rest their analysis on the word "any," concluding that it assumes multiple defendants. But "'[a]ny' can be either singular or plural; it therefore does not necessarily imply that multiple defendants must be present for the 'properly served' language to apply." *W. Bend Mut. Ins. Co. v. MSPPR, LLC*, No. 20-CV-03308, 2021 WL 463259, at *4 (N.D. Ill. Feb. 9, 2021). The district courts' additional reasoning—that the Supreme Court's decision in *Murphy Brothers*, 526 U.S. at 347–48, implicitly rejected pre-service removal—is also undermined by the removal statute, which (as discussed) expressly anticipates pre-service removal. Numerous federal courts have also concluded that service is not a prerequisite to removal. *Bank of New York Mellon v. Mazza*, 743 F. App'x 504, 506 (3d Cir. 2018) (collecting cases).

In sum, the court concludes that, when read in context with the rest of the removal statute and its history and purpose, the "properly . . . served" language does not sanction removal in every snap removed case. Instead, it permits removal only where the plaintiff has fraudulently joined and improperly delayed service on a home-state defendant. So long as the plaintiff moves for remand and properly serves the home-state defendant within the time allowed by the removal statute and Federal Rules, the forum-defendant rule, as codified in § 1441(b)(2), supports remand to state court. This interpretation aligns with the statute's history and purpose, as it prevents fraudulent joinder with a bright-line rule while also furthering the justifications of diversity jurisdiction.

### B. Snap Removal Produces Absurd Results

Because the court's conclusion rests on statutory interpretation, it need not reach the doctrine of absurdity. The court nonetheless concludes, as other district courts have, that this provides an alternative and additional reason to prohibit snap removal. *See Norwegian Air*, 530 F. Supp. 3d at 769–70; *Deutsche Bank*, 532 F. Supp. 3d at 1015–18. Under this long-established

16

doctrine, the court must interpret § 1441(b)(2) to avoid absurd results. *See, e.g.*, *Jefferson*, 546 F.3d at 483. A statute is absurd "when the result would be so bizarre that Congress could not have intended it." *United States v. Head*, 552 F.3d 640, 643 (7th Cir. 2009) (quoting *Robbins v. Chronister,* 435 F.3d 1238, 1241 (10th Cir.2006) (en banc)).

On the facts of these cases, allowing snap removal would produce absurd results: Abbott, the home-state defendant, exploited a delay created by state law to remove these cases to federal court. To effectuate service on Abbott's registered agents, Plaintiffs were required to use a county sheriff or a private server specially appointed by the court.[9] 735 ILCS 5/2-202(a). This court assumes that Plaintiffs, who had just filed the cases in state court, could not instantly seek or receive court appointment of a private server. That leaves only the county sheriff as an option for service. As other courts in this district have noted, this facet of Illinois law makes snap removal particularly problematic in Cook County:

> As a practical matter, [service by the county sheriff] does not and cannot happen immediately, or anything close to it. If a plaintiff who filed a lawsuit in the Circuit Court of Cook County were to go from the clerk's office to the sheriff's office and request instantaneous service of summons on the defendant, the request would be dismissed out of hand. Even for the most diligent plaintiff, there will be a gap before process can be served, and this enables a vigilant defendant to beat the process server to the punch and remove the case to federal court.

*Norwegian Air*, 530 F. Supp. 3d at 767 (quoting *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d at 961).

Abbott's interpretation of § 1441(b)(2) would create a race between the Cook County Sheriff and forum-state defendants, totally divorced from Plaintiffs' intent to properly serve and join those defendants. Other cases in this MDL demonstrate the absurdity of this interpretation. This opinion concerns four cases where Abbott in fact filed its notice of removal before the Cook County Sheriff could successfully complete service. But in two more recent cases, Abbott filed

---

[9] As this court previously described, Plaintiffs' other option was identifying, locating, and serving an officer or agent of the Abbott entities outside of Cook County—and hoping that Abbott would not challenge the individual as not being authorized to accept service on its behalf. *See supra* at note 2.

17

notices of removal on June 15, 2022, based on its belief that it had not yet been served. Plaintiffs in those cases then sent affidavits from the sheriff, which showed that Abbott was served "at an earlier time on June 15, 2022, than was reported by Abbott's registered agent." To its credit, Abbott promptly sought remand of those cases on its own motion. ([6] in 22 C 3136; [6] in 22 C 3141.) In other words, Abbott acquiesced to remand because the sheriff in those cases was slightly faster than the sheriff in these cases. It is not rational for federal jurisdiction to turn on the promptness of action by a third party. A few hours or even a few minutes' difference in timing of service—a matter wholly outside Plaintiffs' control—cannot be a basis for federal court action.

This is especially true here, where the Abbott entities, both Illinois citizens, were the only named defendants; there was no possibility that Plaintiffs fraudulently joined Abbott solely to defeat federal jurisdiction. Indeed, in *Texas Brine Co.*, the Fifth Circuit concluded that snap removal in that case was not absurd, but emphasized that "the removing party is not a forum defendant," so the justifications of diversity jurisdiction and the forum-defendant rule were not implicated. 955 F.3d at 487. Though the Second and Third Circuits permitted snap removal even where, as here, the forum-defendant removed the case, this court respectfully disagrees with their reasoning. Both appellate courts emphasized that a pre-removal service requirement creates a rational, "bright-line" rule to address fraudulent joinder of a forum defendant. *See Gibbons*, 919 F.3d at 706; *Encompass Ins. Co.*, 902 F.3d at 153. But this bright-line rule appears unrelated to the statute's purpose, at least where all named defendants are citizens of the forum state, state law limits the plaintiff's ability to serve those defendants, and the forum defendant removed the case to federal court. In this court's view, Congress could not have intended removal to be permitted such a case.

The court is not persuaded by Abbott's arguments to the contrary. Abbott notes that federal courts "routinely" hear diversity cases against home-state defendants when plaintiffs originally file in federal court, suggesting that it is not absurd for this court to hear such a case. (Def.'s Resp. at 9.) But as this argument concedes, those cases rely on the usual rule in civil

18

litigation—that the plaintiff, not the defendant, chooses the forum. Abbott is correct that a plaintiff's choice of forum is not "sacrosanct" (*id.* at 10), but the plaintiff's ordinary right to choose her forum is a principle weighing against Abbott's interpretation of the forum-defendant rule. *See Deutsche Bank*, 532 F. Supp. 3d at 1017–18 (describing how "snap removal threatens to severely limit the plaintiff's right to choose their forum"). Finally, Abbott claims that diversity jurisdiction is not "shaped solely around avoiding a state court's local prejudice against out-of-state defendants," as a plaintiff can file a diversity case in federal court in the defendant's home state. (*Id.* at 9.) Once again, Abbott ignores the importance that the law and the forum-defendant rule place on protecting the plaintiff's choice as between state and federal court. Abbott's advocated interpretation of § 1441(b)(2) deeply undermines that protection, and leads to results that Congress could not have intended.

## CONCLUSION

For the reasons discussed above, the court grants Plaintiffs' motions to remand: [12] in 22 C 192, [12] in 22 C 197, [12] in 22 C 203, and [11] in 22 C 204.[10] This opinion does not concern any other pending motions to remand. Nor does it concern motions to remand concerning any issue other than snap removal. Going forward in this MDL, if a plaintiff seeks remand on the basis f snap removal, any party opposing remand must file a motion explaining why, or to what extent, this opinion does not govern the new case.

ENTER:

Date: June 22, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

---

[10] Though Plaintiffs Rinehart, Gshwend, and Stuper have all filed proof of service on Abbott with the court, it does not appear that Plaintiff Taylor has filed proof of service. Because this court has alternatively ruled that the doctrine of absurdity precludes snap removal on the facts of these cases, Plaintiff Taylor's case is remanded to state court, even without proof of post-removal service.