UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, et al., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | )<br>)  MDL No. 3026<br>)<br>)  Master Docket No. 22 C 71<br>)<br>)  Judge Rebecca R. Pallmeyer<br>) |

**CASE MANAGEMENT ORDER NO. 3:**
**Disputes Regarding Privilege Order, Protective Order, and Master Complaint**

This order concerns several disputes between Plaintiffs' Leadership Committee ("PLC" or "Plaintiffs") and Abbott Laboratories, Abbott Laboratories, Inc., Mead Johnson, LLC, and Mead Johnson Nutrition Company ("Defendants"), concerning the Proposed Privileged Materials Order [127-1], the Proposed Protective Order [127-2], and the appropriateness of a Master Complaint.

The court first addresses Defendants' argument about a related state court case, *Jupiter v. Abbott Laboratories*, No. 2021-L-000560 (Madison Cty., Ill.). Defendants contend that their proposed language for the Protective and Privileged Materials Orders is modeled after the orders entered in that state case. (*See* Ex. 1 to Defs.' Privileged Materials Order Mem., Madison County Privileged Materials Order [130-1]; Ex. 1 to Defs.' Protective Order Mem., Madison County Protective Order [131-1].) The court recognizes the importance of coordinating this MDL with ongoing state court litigation, as this "promotes . . . conducting and completing discovery, facilitates efficient distribution of and access to discovery work product, avoids inconsistent federal and state rulings on discovery and privilege issues, if possible, and fosters communication and cooperation among litigants and courts that may facilitate just and inexpensive determination." Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, Guideline 13.[1] At the same time, Plaintiffs were not party to and did not negotiate those

---

[1] https://scholarship.law.duke.edu/bolch/5/ (last visited August 9, 2022).

orders, as Plaintiffs' counsel noted at the June 30, 2022 status hearing. If writing on a clean slate, this court might well not adopt all of the challenged provisions. Nevertheless, so long as the state court rulings do not prejudice Plaintiffs (and, as discussed below, the court does not believe they do), this does not outweigh the benefits of promoting effective federal and state court coordination and avoiding inconsistent rulings. Wherever possible, therefore, the court will resolve the parties' disputes to ensure this coordination.

With this in mind, the court turns to the parties' specific disputes regarding the Proposed Privileged Materials Order.

I. **Proposed Privileged Materials Order**

1. **Submission of Clawed-Back Documents When Challenging Privilege**

The parties dispute Paragraph 7 of the proposed Privileged Materials Order, which addresses the procedure for challenging a Clawback Notice. Under Plaintiffs' proposed language, a party challenging the clawback of an allegedly privileged document may describe and submit that document to the court for a determination of privilege. Defendants oppose this, instead proposing a two-step process whereby the party must (1) provide the court with a factual basis supporting a good-faith belief that the document is not privileged and (2) obtain a court order authorizing submission of the allegedly privileged document. The Madison County Privileged Materials Order does not specifically address this issue and does not militate in favor of either side's proposed protocol. . (*See* Madison County Privileged Materials Order ¶ 8.)

On the merits, however, the court disagrees with Defendants' contention that their proposed two-step process is a necessary safeguard against the bad faith disclosure of privileged materials. The proposed order already requires the parties to meet and confer before submitting a clawback dispute to the court, which reasonably protects against bad faith challenges. (*See* Proposed Privileged Materials Order ¶ 6.) Defendants' proposed additional steps are both unnecessary and burdensome to the parties and court. If it becomes clear that either party is abusing the *in camera* process, the court will revisit its decision.

The court therefore adopts Plaintiffs' proposed Paragraph 7, with the following addition, modified from Defendants' proposal: "The challenge to the Clawback Notice must be filed under seal, and the receiving party must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. If any information is found to be privileged or protected in accordance with the procedures described herein, all copies of the information shall be returned or destroyed."

### 2. Relief for an Improper Instruction Not to Answer

The parties also dispute Paragraph 10 of the Proposed Privileged Materials Order. This paragraph is proposed by Plaintiffs, and directs that if counsel improperly instructs a witness not to answer a deposition question based on a privilege, counsel must make the witness available for a deposition regarding that document and its contents. Defendants object to proposed Paragraph 10 in its entirety, and suggest that a request for relief should be made at the same time as the challenge to the document's privilege. Defendants further contend that Plaintiffs refused to incorporate language addressing the proportionality of the resumed deposition.

The court is not inclined to enter anticipatory rulings, but generally agrees with Plaintiffs. The presumed remedy for an improperly-invoked privilege should be a resumed deposition on that line of inquiry. The Madison County Privileged Materials Order does not include any provision regarding improper invocation of privilege during a deposition, and this court's adoption of a presumptive remedy for purposes of this federal MDL does not create a risk of inconsistent rulings or hamper the expedient transfer of discovery. The court agrees with Defendants, however, that the language proposed by Plaintiffs is unnecessarily broad; not every improper assertion of privilege will require reopening of the deposition. The court amends Paragraph 10 as follows:

> If the producing party instructs the witness not to answer or provide testimony in accordance with 9(b) or (c), which is later determined not to be privileged, the producing party will remedy the lost opportunity to obtain discovery, by way of reopened deposition or such other means to which the parties may agree, following meet-and-confer efforts. At the meet and confer, the parties must discuss whether another deposition is genuinely necessary and (if so) what the proper scope, length, and subject matter of the resumed deposition is. Any resumed deposition

must be proportional to the improperly invoked privilege. If the parties cannot come to an agreement, they will submit that dispute to the court.

## II. Proposed Protective Order

District courts have "the power to issue a protective order only upon a showing of 'good cause.'" *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (quoting FED. R. CIV. P. 26(c).) The party seeking the protective order bears the burden of establishing good cause for its issuance; if the parties have agreed to a stipulated order, the court must independently determine whether good cause exists. *See id.*; *ED&F Cap. Mkts. Ltd. v. JVMC Holdings Corp.*, 335 F.R.D. 174, 177 (N.D. Ill. 2020). Where the protective order relates to the production of confidential information, courts ask "whether there is an unacceptable risk of or opportunity for inadvertent disclosure of confidential information." *Kraft Foods Glob., Inc. v. Dairilean, Inc.*, No. 10 C 8006, 2011 WL 1557881, at *1 (N.D. Ill. Apr. 25, 2011) (quoting *Pfizer Inc. v. Apotex Inc.,* 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010)).

The parties disagree on the confidentiality designations in the Proposed Protective Order. Defendants propose three designations: "Confidential," "Highly Confidential," and "Highly Confidential-Outside Counsel Only." Plaintiffs argue that a Highly Confidential tier is unnecessary, and disagree with Defendants on who may access Confidential or (if the court adopts this designation) Highly Confidential Materials. The parties also disagree on the security required when electronically transmitting these materials.

### 1. Use of Confidential Material

Regarding which individuals are authorized to access Confidential Materials, Plaintiffs seek to include the following bolded language in Paragraph 11(i):

> Any person (i) who created, authored, received or reviewed such Covered Information; (ii) is or was a custodian of the Covered Information; (iii) is identified on such Covered Information; (iv) is or was an employee of the Producing Party and is reasonably believed to have knowledge of the matters in the Covered Information; **(v) has general knowledge of the subject matter discussed in the Confidential Material; and (vi) to any person noticed for deposition or designated as a trial witness.**

4

(Proposed Protective Order ¶ 11(i).)

Recognizing that both sides' positions have merit, the court adopts Defendants' proposed language, and omits Plaintiffs' proposed bolded language. Significantly, Defendants' proposal is identical to the language adopted by the state court in the Madison County litigation. (*See* Madison County Protective Order ¶ 11(i).) Expanding the scope of individuals who may access Confidential Materials would impose inconsistent rulings and has the potential to undermine the state and federal coordination that will benefit all parties and both court systems. The court notes, further, that permitting different individuals to access the same Confidential Materials—depending on whether they are subject to this court's Protective Order, the Madison County Protective Order, or both Orders—could sow confusion and increase the risk of inadvertent disclosure of confidential information to prohibited people.

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs claim that Subpart (vi) is necessary because the Federal Rules of Evidence govern what evidence is admissible at depositions and trial, and Defendants' proposed language restricts which documents may be shown to witnesses. (Pls.' Protective Order Mem. [123] at 2.) But the Protective Order already permits disclosure of Confidential Materials to "witnesses at depositions or who are noticed for depositions to whom disclosure is in good faith reasonably necessary to conduct the Action." (Proposed Protective Order ¶ 11(k).) Though the Proposed Protective Order does not contain a similar provision for trial witnesses, the court expects there will be at least significant (and likely complete) overlap between witnesses noticed for depositions and designated for trial. For any trial witnesses not noticed for a deposition, the court will permit disclosure by order at a later date. (*See* Proposed Protective Order ¶ 11(n) (permitting disclosure to "any other person as may be designated by written agreement by the Producing Party or by order of this Court").) Plaintiffs also argue that Defendants' proposed language "effectively eliminates utilizing documents during trial as a basis to impeach a witness to show their lack of knowledge regarding the document's substance refutes the deponent's testimony." (Pls.' Protective Order Mem. at 2.) To the extent

5

impeachment in this manner is ultimately relevant and meaningful, the court is prepared to deal with it by individual order or by way of a blanket order permitting the disclosure of documents for this specific impeachment purpose.

Nor is the court moved by Plaintiffs' assertion that their proposed language is required by the standard for admission of all evidence that tends "to make a fact more or less probable." FED. R. EVID. 401(a). As Plaintiffs see things, this must mean that a witness who has "general knowledge" of the subject matter of a document must be permitted to review the document; Plaintiffs contend that Defendants' proposed language "alters the relevancy standard to evidence a witness has *direct* knowledge of." (Pls.' Protective Order Mem. at 2.) Again, however, Plaintiffs' concerns about restricting witnesses' access to Confidential Materials can be effectively addressed by Paragraph 11(k) and individual court order. Other concerns about the admissibility of materials at trial will be addressed by motions in limine.

### 2. "Highly Confidential" Designation

Next, Plaintiffs take issue with the Defendants' proposed three-tiered designation structure of "Confidential," "Highly Confidential," and "Highly Confidential-Outside Counsel Only." Plaintiffs do not dispute the "Confidential" designation (besides the disclosure issue discussed above), and so the court focuses on the other two designations.

Defendants' proposed language defines "Highly Confidential" as materials whose disclosure would create a substantial risk of competitive or business injury; Plaintiffs seek to omit this designation entirely. (Proposed Protective Order ¶ 3(c).) If the court adopts this designation, Plaintiffs seek to expand the group of persons who may access Highly Confidential Materials, outlined in Defendants' proposed Paragraph 12. (*Id.* ¶ 12.) Defendants' proposed "Highly Confidential-Outside Counsel Only" designation would apply to trade secrets or other strategic information that, if shared with Defendants' competitors (including each other), would result in competitive harm. (*Id.* ¶ 3(c)(ii).) These materials are subject to the same restrictions as Highly Confidential Materials, and, additionally, may not be shared with Defendants' in-house counsel or

6

employees. (*Id.* ¶ 12(d).) Plaintiffs agree that some type of "Outside Counsel Only" designation is appropriate, but (though they are not entirely clear) apparently believe that the other restrictions in Paragraph 12 should not apply to these materials. (*See* Pls.' Protective Order Mem. at 3 n.1.)

Ordinarily, in the court's view, a two-tiered designation system ("Confidential" and "Outside Counsel Only") is sufficient in litigation involving business competitors, as it protects commercially sensitive information from general disclosure and particularly sensitive information from disclosure to competitors. *See Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005) ("Such two-tiered protective orders are relatively common, but they contemplate that the more restrictive category will only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures.").[2]

The court concludes, however, that a "Highly Confidential" designation, as defined in Paragraph 3 of Defendants' proposed language, is appropriate in this case. As Defendants emphasize, the state court in Madison County permitted a "Highly Confidential" designation, and "[s]ignificant productions have already been made in the state cases" under this designation structure. (Madison County Protective Order ¶ 3(b); Defs.' Protective Order Mem. [131] at 2.) Requiring Defendants to redesignate and reproduce a large number of documents—and to rely on a different designation structure throughout these parallel proceedings—would increase the risks of mistake and inadvertent disclosure of confidential materials. And, as noted above, this risk would be exacerbated by the confusion created by any inconsistent rulings concerning the individuals who may access certain documents.

---

[2] Defendants' other cited cases also concerned a two-tiered structure, *see In re Zimmer NexGen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2013 WL 6490343, at *3 (N.D. Ill. Dec. 10, 2013), or a three-tiered structure with designations for confidential, attorneys' eyes only, and attorneys' eyes only with a patent prosecution bar (this forbids the use of disclosed information in prosecuting patents). *See Carlson Pet Prods., Inc. v. North States Indus., Inc.*, No. 017CV02529PJSKMM, 2019 WL 2991220, at *1 (D. Minn. July 9, 2019); *Voice Domain Techs., LLC v. Apple, Inc.*, No. CIV.A. 13-40138-TSH, 2014 WL 5106413, at *2, *6 (D. Mass. Oct. 8, 2014).

For similar reasons, the court concludes that language concerning the individuals who may access Highly Confidential Materials should mirror the Madison County Protective Order. The court therefore adopts Defendants' proposed language in Paragraph 12's main text (persons identified in Paragraphs 11(a)–(d) and (g)–(i)),[3] Paragraph 12(a) (in-house counsel and two staff), and Paragraph 12(c) ("Other persons only upon the consent of the Producing Party or upon order of the Court and on such conditions as are agreed to or ordered"). The court rejects Plaintiffs' proposed addition of individuals identified in Paragraphs 11(k)–(l) and (n) (witnesses at depositions or noticed for depositions; professional jury or trial consultants, mock jurors, or professional vendors; and any other person designated by written agreement or court order), as these issues can be addressed by future court order pursuant to Paragraph 12(c).[4]

Defendants have also proposed additional language in Paragraph 12(b), set forth in bold print, to which Plaintiffs object:

> Any person who (a) created, authored, received or reviewed such Highly Confidential Information **when it was created**, (b) is or was a custodian of the Highly Confidential Information, (c) is identified on **the face of** such Highly Confidential Information.

(Proposed Protective Order ¶ 12(b).) This bolded language was not included in the Madison County Protective Order. (*See* Madison County Protective Order ¶ 12(b).) Defendants offer no explanation for why this more restrictive language is necessary (they do not even address this dispute in their briefing), and the court sees no such reason. *See Jepson*, 30 F.3d at 858 (a party

---

[3] These subparagraphs permit disclosure to the court and court staff, mediators, individuals recording testimony, outside counsel and staff, experts, and individuals with knowledge of the document (this last subparagraph refers to Paragraph 11(i), disputed by the parties and discussed above).

[4] Indeed, footnote 1 of the Proposed Protective Order provides that "[t]he Court will enter an order at a later date relating to the process by which Highly Confidential documents potentially may be shown to and utilized with witnesses contemplated by Paragraph 11(k)." (Proposed Protective Order at 13 n.1.) This provision was also included in the Madison County litigation. (*See* Madison County Protective Order at 13 n.1.)

must show good cause for issuing a protective order). The court therefore adopts Plaintiffs' proposed Paragraph 12(b).

One last note on Defendants' proposed three-tiered structure, specifically the "Highly Confidential-Outside Counsel Only" designation. The Madison County Protective Order contains no such designation, and instead only states:

> It is possible that Defendants may view certain Highly Confidential Information as requiring additional protections beyond those afforded Highly Confidential Material, in which event the Parties shall meet and confer in good faith about potential additional protections, and, if unsuccessful, Defendants shall move the Court for appropriate relief before producing the information.

(Madison County Protective Order ¶ 3(b).) According to Defendants, the Highly Confidential-Outside Counsel Only designation "was left in the Madison County [Protective Order] to be further defined at a later date, and has been treated in a provisional fashion in that case to date." (Defs.' Protective Order Mem. at 1 n.1.) The court concludes that there is good cause for this designation here. Because Defendants are competitors, there is "a genuine threat of competitive or other injury" if they disclose certain materials to each other. *Team Play*, 2005 WL 256476, at *1. Plaintiffs do not dispute that such a designation is appropriate in this case. And because (at least according to Defendants) this designation will be included in the state court proceedings at a later date, including it here will not create potential for confusion or increased risk of inadvertent disclosure.

### 3. Encryption of Covered Materials

The parties also disagree on the level of security for materials covered by the Protective Order, as described in Paragraph 21(f). Under Defendants' proposed language, a party must encrypt data if transmitting materials in electronic format and outside their organization; if sending hard copy materials, the party must use secure packaging tape and retain a tracking number. These security measures were also included in the Madison County litigation. (*See* Madison County Protective Order ¶ 21(f).) Plaintiffs nonetheless object, contending that it is sufficient to

promptly notify the producing party and take "all reasonable measures" to retrieve the materials, in the event disclosure occurs.

There are a variety of methods for ensuring protection of data, including encryption. Again, mindful of the desirability of coordination of this court's case management orders with those already in place in state courts, the court will adopt the requirements of encryption for electronic materials and secure mailing for hard copy materials. Although Plaintiffs are reportedly unaware of any other court's imposition of an encryption requirement, Defendants submit that it is standard operating procedure for exchange of information among businesses and legal professionals. They note, further, that inadvertent disclosure of electronic transmissions is easy, while clawing back those transmissions is difficult. Plaintiffs' proposed protection only mitigates the effect of inadvertent disclosure; it does nothing to prevent such disclosure. The court is sensitive to Plaintiffs' concerns regarding the cost and difficulty that encryption of documents may generate, and encourages the parties to discuss more straightforward or cost-effective ways to address the risk of disclosure. For now, however, the court adopts Defendants' proposed language in Paragraph 21(f). If the parties have any disagreement on the definition of "encryption" or the contours of this duty to encrypt, they must meet and confer to resolve the dispute.

**III.    Master Complaint**

Finally, the parties dispute the appropriateness of a Master Complaint. After again reviewing the briefing and hearing the parties' arguments at the June 30th status hearing, the court believes more advocacy will be required for an informed decision on this issue. Specifically, the parties must explain: (1) What claims the Plaintiffs can and cannot plead collectively in a Master Complaint; (2) What affirmative defenses the Defendants can and cannot plead collectively in a Master Answer; (3) Why the court's decision regarding direct filing influences the propriety of a Master Complaint; and (4) If the court orders a Master Complaint and/or submission of fact sheets, what specific types of information should be included in these documents or a short form complaint.

The court orders the parties to submit this briefing by August 17, 2022. The parties are also ordered to revise and file their Joint Privileged Materials Order and Proposed Protective Order, modified in light of this order, by August 14, 2022. The court will promptly enter those orders, so that the parties may begin exchanging documents and other discovery.

ENTER:

Date: August 10, 2022

REBECCA R. PALLMEYER
United States District Judge