**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL. PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL No. 3026 |
| | Master Docket No. 22 C 71 |
| This Document Relates to: | |
| ALEXIS INMAN, *as Administratrix of the Estate of* D.W*., a deceased minor*, | |
| Plaintiff, | |
| v. | No. 22 C 3737 |
| MEAD JOHNSON & COMPANY, LLC, ET AL., | Judge Rebecca R. Pallmeyer |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In dozens of cases, parents of premature infants have alleged that infant formula manufactured by Defendant Manufacturers—Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott") and Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, "Mead Johnson")—caused premature infants to develop necrotizing enterocolitis ("NEC"). The Judicial Panel on Multidistrict Litigation has consolidated a number of these cases for pretrial proceedings before this court. In this opinion, the court addresses Mead Johnson's motion to dismiss Plaintiff Alexis Inman's request for pecuniary damages under North Carolina law and to strike immaterial allegations under Rule 12(f). For the reasons discussed below, Defendants' motion [21] is granted in part and denied in part. Defendants' earlier motion to dismiss [16, 17] is terminated as moot.

**BACKGROUND**

Plaintiff Alexis Inman is one of many parents of premature infants who allege that that their babies developed NEC as a result of consuming infant formula and fortifier products manufactured by Mead Johnson. Plaintiff brings this action as the Administratrix of the Estate of

Daniel Windley, her deceased son. (Am. Compl. [29] ¶ 2.) According to Plaintiff's Amended Complaint, on May 12, 2020, Daniel was born very prematurely, at 29 weeks gestational age and weighing just 1 pound and 7.6 ounces. (*Id.* ¶ 32.) Daniel was born at Vidant Medical Center in Greenville, North Carolina, where he was fed his mother's own breast milk, donor breast milk, and several of Mead Johnson's Enfamil products. (*Id.* ¶¶ 32, 34–36.) On June 22, 2020, Daniel was diagnosed with NEC (*id.* ¶ 38), and he underwent surgery the next day (*id.* ¶ 39). The surgery was unsuccessful, and, on June 23, 2020, Daniel died. (*Id.* ¶ 40.)

On June 22, 2022, Daniel's parents filed this suit against Mead Johnson in the United States District Court for the Southern District of Indiana, the district where Mead Johnson maintains its principal place of business, invoking diversity jurisdiction.[1] (Compl. [1] ¶¶ 2–4.) On January 31, 2023, Mead Johnson moved to dismiss the original complaint [16, 17] for lack of standing and failure to state a claim; in that complaint, Daniel's parents had not alleged that either of them was Daniel's personal representative as required to establish standing in a wrongful death suit under North Carolina law. On February 28, 2023, Plaintiff, now qualifying as Daniel's personal representative, filed an Amended Complaint [20], which mooted Mead Johnson's original motion to dismiss. In her Amended Complaint, Plaintiff invokes diversity jurisdiction and alleges that jurisdiction and venue properly lie in the United States District Court for the Eastern District of North Carolina. (Am. Compl. ¶ 6.) Plaintiff brings two product liability claims: (i) a claim asserting inadequate design or formulation pursuant to N.C. Gen. Stat. § 99B-6 (*id.* ¶¶ 42–53); and (ii) a claim asserting inadequate warning or instruction pursuant to N.C. Gen. Stat. § 99B-5 (*id.* ¶¶ 54–65). The Amended Complaint also includes a "Count" for punitive damages (*id.* ¶¶ 66–68), but North Carolina's punitive damages statute does not provide an independent cause of action. *See Stricklin v. Stefani*, 358 F. Supp. 3d 516, 530 (W.D.N.C. 2018) ("To be awarded punitive damages,

---

[1] Plaintiff is a citizen of and domiciled in the State of North Carolina. (Am. Compl. ¶ 2.) Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company are Delaware corporations with their principal places of business and headquarters in Evansville, Indiana. (*Id.* ¶ 3.)

Plaintiff must first show that she is entitled to compensatory damages . . . ."). For each claim, Plaintiff seeks "all applicable wrongful death damages." (Am. Compl. ¶¶ 53, 65, 68.) Those damages, set forth in Plaintiff's Prayer for Relief, include: (i) "past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses"; (ii) "past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, loss of services, and costs related to medical or mental health treatment"; and (iii) loss of consortium "and pain, suffering, and emotional distress to the parents of Daniel Windley." (*Id.* at p. 21).

Mead Johnson moves to dismiss portions of Plaintiff's Amended Complaint [21] under Federal Rules of Civil Procedure 12(b)(6) and 12(f). Mead Johnson first argues that, under North Carolina law, Plaintiff may not recover future economic benefits or pain and suffering damages. Mead Johnson also argues that certain jurisdictional allegations should be stricken as immaterial because they concern the wrong jurisdiction.

## DISCUSSION

### I. Rule 12(b)(6) Motion to Dismiss

Mead Johnson first argues that the court should dismiss Plaintiff's claims for lost economic benefits, including lost income and loss of consortium. Mead Johnson seeks dismissal of these claims under Federal Rule of Civil Procedure 12(b)(6), which permits a court to grant a motion to dismiss with respect to a particular class of damages if the pleadings show that those damages are not legally cognizable. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) (holding that non-viable damages claims are subject to a Rule 12(b)(6) motion to dismiss).[2] Defendants argue that Plaintiff may not recover such damages because under North

---

[2] It would also be appropriate for Defendants to raise their damages arguments in a Rule 12(c) motion for judgment on the pleadings. *See Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *11 (N.D. Ill. Feb. 26, 2021) (citing *Whittlestone*, 618 F.3d at 974–75). However, because Plaintiff does not challenge Defendants' invocation of Rule 12(b)(6), and because standards under the two rules are nearly identical, the court resolves the parties' arguments on this motion to dismiss.

3

Carolina law, such damages are inherently speculative and non-recoverable in actions involving an infant's wrongful death.[3] For the reasons discussed below, the court agrees.

North Carolina substantive law applies to this case. Federal courts sitting in diversity apply the choice-of-law rules of the state in which they sit, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and an MDL court applies the choice-of-law rules of the state where a case was filed. *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). Plaintiff filed this case in the United States District Court for the Southern District of Indiana, so that state's choice-of-law rules apply. For most tort cases, Indiana choice-of-law rules require courts to apply the substantive law of the state in which the injury occurred. *Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 376 (Ind. Ct. App. 2006) (quoting *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004)). The parties agree that the alleged injury occurred in North Carolina, where Daniel was born, ingested Mead Johnson formula, received a diagnosis and treatment for NEC, and ultimately died. (Am. Compl. ¶¶ 1–2, 32–40.)

North Carolina's wrongful death statute enumerates the types of damages a plaintiff in a wrongful death action may recover. *See* N.C. Gen. Stat. § 28A-18-12(b). The damages available in a wrongful death case are those set forth in § 28A-18-2(b)(4):

> The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;
>
> > a. Net income of the decedent,
> >
> > b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

---

[3] Defendants also argue that Plaintiff improperly claims damages for parents' pain, suffering and emotional distress, which are not cognizable under N.C. Gen. Stat. § 28A-18-2(b)(2). (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") at 10–11.) Plaintiff has clarified that she is not pursuing compensation for Daniel's parents' pain and suffering under § 28A-18-2(b)(2). (Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss [23] at 2 n.1.) The court thus dismisses Plaintiff's claims for non-economic damages other than Daniel's own pain and suffering. N.C. Gen. Stat. § 28A-18-12(b) (permitting "[c]ompensation for pain and suffering of the decedent").

> c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered[.]

North Carolina caselaw guides this court's interpretation of these statutory provisions, as a federal court sitting in diversity jurisdiction is "bound by the decisions of the state's highest court." *In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017). The Supreme Court of North Carolina has addressed the issue of whether a plaintiff alleging the wrongful death of a very young child may recover lost income damages, and this court is bound by those rulings.

In 1966, the Supreme Court of North Carolina held that a plaintiff may not recover for the wrongful death of an unborn child because the then-current wrongful statute restricted recovery to pecuniary losses, and calculating pecuniary losses resulting from the wrongful death of a prenatal child would amount to "sheer speculation." *Gay v. Thompson*, 266 N.C. 394, 400, 146 S.E.2d 425, 429 (1966). The court reasoned that, in such cases, there would be no evidence of the decedent's mental and physical capabilities, personality traits, and vocational training, and it would therefore be impossible to know whether the child would have been capable of giving a pecuniary benefit to anyone in the future. *Id.*, 146 S.E.2d at 428. The court ruled that the judge below erred in overruling defendant's demurrer—the antiquated equivalent of a motion to dismiss—and should have instead "dismissed the action" due to the speculative nature of the damages claimed. *Id.* at 402, 146 S.E.2d at 431.

Two years later, the Supreme Court of North Carolina held in *Stetson v. Easterling*, 274 N.C. 152, 156–57, 161 S.E.2d 531, 534 (1968) that the wrongful death statute, as it was then worded, also barred an estate administrator from recovering pecuniary damages resulting from the wrongful death of an infant who lived only a few months. The court cited *Gay* for the proposition that pecuniary recovery in such a case would be assessed on "sheer speculation, devoid of factual substantiation," *id.* at 156–57, 161 S.E.2d at 534, and affirmed the lower court's dismissal of the case. *Id.* at 158, 161 S.E.2d at 535.

5

The following year, in 1969, the North Carolina legislature amended the wrongful death statute to allow plaintiffs to recover categories of damages in addition to pecuniary losses, including damages for the pain and suffering of the decedent. *See* N.C. Gen. Stat. § 28A-18-2(b)(4). The change was significant: prior to the amendments, plaintiffs in wrongful death suits were limited to an "income-focused measure of damages," which "severely limited recovery in many cases and eliminated it altogether in others." *DiDonato v. Wortman*, 320 N.C. 423, 429, 358 S.E.2d 489, 492 (1987). The newly-enumerated categories of damages provided plaintiffs with a mechanism for recovery of their losses without requiring them to undertake the often impossible task of calculating pecuniary damages in a non-speculative manner. *See id.*, 358 S.E.2d at 492 (noting that, prior to the amendments, "[w]rongful death actions brought on behalf of stillborn infants were denied because the pecuniary injuries stemming from the prenatal death of a viable child were 'sheer speculation'" (quoting *Gay*, 255 N.C. at 402, 146 S.E.2d at 429)).

Plaintiff argues that these legislative amendments abrogated the holdings of *Gay* and *Stetson*. Plaintiff emphasizes the North Carolina Supreme Court's statement in *DiDonato v. Wortman* that "[t]he legislature's 1969 expansion of the recovery in wrongful death actions substantially undercut the rationale for this Court's earlier decision in *Gay*." *Id.*, 358 S.E.2d at 492. Read in context, however, that statement does not support the argument that lost-income damages are available for the death of an infant: The *DiDonato* court went on to explain that, at the time of *Gay*, a plaintiff's recovery was limited to loss of income, but the *DiDonato* plaintiff sought damages in addition to and other than lost income—meaning, damages not falling within § 28A-18-2(b)(4)—thus "*Gay* should not control the outcome of this case." *Id.*, 358 S.E.2d at 492. Indeed, just a few paragraphs later, the *DiDonato* court explicitly affirmed the holding of *Gay*: "This Court has said that the 'pecuniary injury' suffered by a stillborn child—that is, its loss of income—could be determined only through sheer speculation." *Id.* at 431, 358 S.E.2d at 493. The court then emphasized "*the lesson of that case concerning the income-related losses of stillborn children remains valid.*" *Id.*, 358 S.E.2d at 493 (emphasis in original). As this court reads

6

*DiDonato*, it does not cast doubt on North Carolina Court's earlier holdings concerning the speculative nature of lost-income damages calculations for stillborn children in *Gay,* and for very young infants in *Stetson*.

Plaintiff argues that in the decades since *DiDonato*, no North Carolina court has held that parents cannot recover lost-income damages for children just a few months old. Indeed, in *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 272, 542 S.E.2d 346, 351 (2001), the Court of Appeals of North Carolina "acknowledge[d] that with young children proof of future damages involves a significant degree of speculation" but "decline[d] to hold that young children can not recover for loss of earning capacity because they are injured so early in life, where there is sufficient evidence offered so that such damages are not unreasonably speculative." *Id.* at 272, 542 S.E.2d at 351. In *Fox-Kirk*, which was not a wrongful death case, the child was two years and eleven months old at the time she was injured in a vehicle accident, and the plaintiffs presented evidence including testimony and medical records regarding her mental and physical condition prior to the injury, providing support for the jury's award. *Id.* at 272–73, 542 S.E.2d at 351. *Fox-Kirk* suggests that lost-income damages for toddlers may be proven with a sufficient degree of certainty; but the appellate court's ruling in that case does not call *Stetson*'s holding into question. Plaintiff cites other cases, as well, for her argument that "some speculation," while inevitable, does not require dismissal on the pleadings, but those cases similarly do not negate *Stetson*'s applicability here. *See Stutts v. Adair*, 94 N.C. App. 227, 238, 380 S.E.2d 411, 418 (1989) (affirming trial court's admission of expert testimony concerning 34-year-old daughter's lost income stream); *Bahl v. Talford*, 138 N.C. App. 119, 126, 530 S.E.2d 347, 352 (2000) (vacating and remanding lost income damages award for eleven- and sixteen-year-old decedents because there was no evidence that plaintiffs could reasonably have expected aid from the children).[4]

---

[4] Plaintiff is correct that in these cases, the court disallowed income damages not as a matter of law, but because the plaintiffs had failed to prove their case at trial. Even so, in each case, the decedents were old enough for the plaintiff to present non-speculative evidence

7

The court thus agrees with Defendants on this issue. North Carolina has drawn a line between cases where awarding damages under N.C. Gen. Stat. § 28A-18-2(b)(4) "would necessarily be based on speculation rather than reason," on the one hand and, on the other, cases where damages can potentially "be proved to a reasonable level of certainty." *DiDonato*, 320 N.C. at 431, 358 S.E.2d at 494. The court agrees, further, that such a lines lies somewhere between cases where a newborn lives "only a few months," *Stetson*, 274 N.C. at 154, 161 S.E.2d at 533, and cases where a child is nearly three years old, *Fox-Kirk*, 143 N.C. App. at 272, 542 S.E.2d at 351. The line may not be a bright one; but the court concludes that this case, involving an infant who lived for no more than six weeks and never left the hospital, falls on the side of *Stetson*. Consequently, the damages Plaintiff seeks under § 28A-18-2(b)(4) are too speculative to be calculated as a matter of North Carolina law and must be dismissed.

II.     **Rule 12(f) Motion to Strike**

Mead Johnson also asks this court to strike certain jurisdictional allegations under Federal Rule of Civil Procedure 12(f), under which a district court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Specifically, Mead Johnson argues that Plaintiff's allegations concerning jurisdiction in the Eastern District of North Carolina should be stricken as immaterial because Plaintiff filed this case in the Southern District of Indiana; whether jurisdiction and venue might theoretically be proper in North Carolina, Mead Johnson contends, is "entirely irrelevant to the jurisdictional inquiry." (Defs.' Br. at 11 (citing *Scottsdale Ins. Co. v. Sheppard*, No. 18-CV-01406, 2019 WL 5455006, at *2 (C.D. Ill. Apr. 4, 2019) (striking allegation that subject matter jurisdiction existed under the Declaratory Judgment Act)).) Mead Johnson further notes that Plaintiff could not, at some point in the future, seek transfer to a North Carolina court unilaterally. (Defs.' Br. at 12

---

of lost income. Those cases do not cast doubt on the rule that, as matter of North Carolina law, evidence of lost income is inherently speculative for still born infants and infants living for only a few months.

8

(citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998); *Sundstrand Corp. v. Am. Brake Shoe Co.*, 315 F.2d 273, 276 (7th Cir. 1963).)

Courts generally disfavor and infrequently grant motions to strike. *See, e.g.*, *Meridian Sec. Ins. Co. v. Roberts*, No. 19-CV-00884-NJR, 2020 WL 1065465, at *1 (S.D. Ill. Mar. 5, 2020) ("As a general rule, motions to strike are disfavored and rarely granted because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic."). The court will only grant a motion to strike "if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). At this point in time, the court is not persuaded that Plaintiff's jurisdictional allegations prejudice Mead Johnson or confuse the issues. Mead Johnson's motion to strike is denied without prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss [21] is granted in part and denied in part. Defendants' motion to dismiss Plaintiff's request for future economic benefits or pain and suffering damages is granted. Defendants' motion to strike the jurisdictional allegations in the Amended Complaint is denied without prejudice. Defendants' prior motion to dismiss [16, 17] is terminated as moot.

ENTER:

Dated: July 17, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

9