**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL. | ) | |
| PRETERM INFANT NUTRITION PRODUCTS | ) | **MDL No. 3026** |
| LIABILITY LITIGATION | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | **Master Docket No. 22 C 71** |
| | ) | |
| **This Document Relates to:** | ) | |
| | ) | |
| **NICOLE CRESAP and** | ) | |
| **MICHAEL HAYES,** *individually and as* | ) | |
| *Estate administrators for their deceased* | ) | |
| *minor child* **KENNEDY HAYES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 22 C 1951** |
| | ) | |
| **ABBOTT LABORATORIES, ET AL.,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In dozens of cases, parents of premature infants have alleged that infant formula manufactured by Defendant Manufacturers—Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott") and Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, "Mead Johnson")—caused premature infants to develop necrotizing enterocolitis ("NEC"). The Judicial Panel on Multidistrict Litigation has consolidated a number of these cases for pretrial proceedings before this court, including this case, filed by New Jersey Plaintiffs. Defendants have motion to dismiss Plaintiffs' claims arising under Illinois law, because, Defendants argue, New Jersey law applies. For the reasons discussed below, Defendants' motion to dismiss Counts 1 through 6 of Plaintiffs' Amended Complaint [13] is granted. Defendants' earlier motion to dismiss [10] is terminated as moot.

<u>**BACKGROUND**</u>

Plaintiffs Nicole Cresap and Michael Hayes are among many parents of premature infants who allege that their baby developed NEC from infant formula manufactured by Abbott. Plaintiffs

Cresap and Hayes are the parents of Kennedy Jade Elizabeth Hayes, who was born at Morristown Medical Center in Morristown, New Jersey on December 30, 2021. (First Amended Compl. ("Am. Compl.") [12] ¶ 3.) Kennedy was born extremely prematurely, at 24 weeks and 6 days' gestation, and she weighed just 1 pound and 9 ounces at birth. (*Id.* ¶ 165.) After her birth, Kennedy was placed in Morristown's neonatal intensive care unit, where she was fed breast milk and specialized preterm nutrition products. (*Id.* ¶¶ 170, 171.) After a few weeks of being fed Abbott's products, on March 14, 2022, Kennedy was diagnosed with NEC. (*Id.* ¶ 172.) Surgery to save her was unsuccessful, and Kennedy died on March 14, 2022. (*Id.*)

On April 15, 2022, Plaintiffs, who are residents of New Jersey, filed a six-count complaint against Abbott, whose principal place of business is in Illinois,[1] in the United States District Court for the Northern District of Illinois, invoking diversity jurisdiction. (*Id.* ¶¶ 1–7.) On January 31, 2023, Abbott moved to dismiss Plaintiffs' claims for unfair trade practices and negligent infliction of emotional distress (Counts 3 and 6 of the complaint) [10], arguing that, under New Jersey law, all claims for injury caused by a product must be asserted under the New Jersey Product Liability Act (NJPLA), N.J.S.A. § 2A:58C–1 *et seq*. On February 28, 2023, Plaintiffs filed an Amended Complaint [12], omitting the challenged claims and adding six claims under Illinois law: Strict Products Liability – Defective Design (Count 1); Negligent Products Liability – Defective Design (Count 2); Strict Products Liability – Failure to Warn (Count 3); Products Liability – Negligent Failure to Warn (Count 4); Wrongful Death (Count 5); and Survival (Count 6). (Am. Compl. ¶¶ 194–269.) Plaintiffs additionally bring three unchallenged New Jersey claims: Products Liability – Defective Design (Count 7); Products Liability – Failure to Warn (Count 8); Wrongful Death under the New Jersey Wrongful Death Act (Count 9); and Survival under the New Jersey Survival Act (Count 10). (*Id.* ¶¶ 262–322.) Abbott now moves to dismiss Counts 1 through 6 [13],

---

[1] Abbott Laboratories is a corporation organized under the laws of Illinois and has its principal place of business in this jurisdiction. (Am. Compl. ¶ 6.) It is the parent company of a wholly owned subsidiary, Abbott Laboratories, Inc., which is organized under the laws of Delaware and has its principal place of business in Illinois. (*Id.* ¶ 7.)

arguing that New Jersey law alone applies to Plaintiffs' substantive claims, so the claims arising under Illinois common law that conflict with New Jersey's unified, statutorily defined theory of recover under the NJPLA must be dismissed.

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). Abbott argues that Plaintiff's First Amended Complaint fails to state a claim to the extent it relies on Illinois law because New Jersey law applies and Illinois and New Jersey law conflict in a manner that would affect the outcome of this case. (Defs.' Mot. [13] at 2 (citing *Doe v. Am. Stores Co.*, 74 F. Supp. 2d 855, 857 (E.D. Wis. 1999) (dismissing a complaint for failure to state a claim where the complaint relied on inapplicable law)).)

Because Plaintiffs filed this diversity suit in Illinois, Illinois choice-of-law rules apply. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021). In accordance with Illinois law, to resolve Abbott's motion, the court undertakes a three-part analysis, assessing (1) whether a conflict between Illinois and New Jersey law would affect issue-specific outcomes; (2) whether Illinois choice-of-law rules instruct that a presumptive choice applies in this suit; and (3) whether, under Sections 6 and 145 the Restatement (Second) of Conflict of Laws—which the Illinois choice-of-law rules adopt—the presumptive choice should not apply because a different state has a more significant relationship to this case. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155, 879 N.E.2d 893, 898 (2007).

## I.     Issue-Specific Conflicts of Law

To decide whether Plaintiff's invocation of Illinois law is fatal to her claim, the court must discern first whether "there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *Board of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *West Side Salvage,*

*Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017)).  As "the party seeking a choice of law determination," Abbott has the burden of establishing "the existence of an outcome-determinative conflict."  *Id.*

Abbott identifies several points of tension between Illinois and New Jersey law, and Plaintiffs agree that outcome-determinative conflicts exist.  First, the NJPLA creates "'one unified, statutorily defined theory of recovery for harm caused by a product.'"  *In re Lead Paint Litig.*, 191 N.J. 405, 436, 924 A.2d 484, 503 (N.J. 2007) (quoting William A. Dreier et al., New Jersey Products Liability & Toxic Torts Law § 1:2–1 (2007)).  Federal and state courts in New Jersey thus "consistently dismiss[] product liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product.'"  *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818–19 (D.N.J. 2019).  Illinois has no analogous statute.  New Jersey's legislative choice thus creates a "real conflict" with Illinois products liability law.  *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 614 (E.D. Pa. 2008) (concluding that NJPLA conflicts with Pennsylvania common-law claims).  Plaintiffs agree with Abbott that, as a result of New Jersey's abrogation of common-law tort remedies for products claims, there is an outcome-determinative conflict between New Jersey and Illinois law with respect to liability.

Second, the two jurisdictions' joint-and-several liability doctrines differ.  *Compare* 735 ILCS 5/2-1117 (for non-medical-expense damages, defendant less than 25% at fault severally liable, and defendant 25% or more at fault jointly and severally liable) *with* N.J.S.A. § 2A:15–5.3 (defendant 60% or more at fault jointly and severally liable for damages, defendant less than 60% at fault liable for percentage of damages attributed to fault).  And their wrongful death damages regime differs as well.  *Compare* 740 ILCS 180/2 (imposing limits on certain types of recovery for certain parties) *with* N.J.S.A. § 2A:31–5 (imposing no similar limits).

Third and finally, Illinois and New Jersey apply different standards to punitive damages awards.  Illinois permits punitive damages upon a showing of gross negligence, and it does not impose a statutory limit.  *Townsend*, 227 Ill. 2d at 156, 879 N.E.2d at 899.  On the other hand,

New Jersey law permits awards of punitive damages only for conduct more egregious than gross negligence, requires proof by clear and convincing evidence, and caps awards at the greater of five times the compensatory damages award or $350,000.  N.J. Rev. Stat. § 2A:15-5.14(b); N.J. Rev. Stat. § 2A:15-5-12.  Additionally, New Jersey law, unlike that of Illinois, prohibits recovery for survivors' mental suffering caused by a wrongful death.  *Compare* 740 Ill. Comp. Stat. 180/2 *with Dutton v. Rando*, 458 N.J. Super. 213, 227 n.3, 204 A.3d 284, 292 n.3 (N.J. App. Ct. 2019). The parties agree that these differences are outcome-determinative with respect to damages.

## II.  Presumptive Choice of Where the Injury Occurred

Because Illinois and New Jersey law conflict with respect to liability and damages, the court undertakes a choice-of-law analysis.  Illinois' choice-of-law rules adopt the principle of "dépeçage"—meaning, "cutting into pieces"—according to which the court divides the case into individual issues and applies a separate choice-of-law analysis to each.  *Townsend*, 227 Ill. 2d at 161, 879 N.E.2d at 901; *Gunn*, 968 F.3d at 809 n.4.  Because Defendants move to dismiss Plaintiffs' Illinois-based claims only, if the court determines that Illinois law does not apply to the issue of liability, it will not matter which law applies to damages that stem only from those claims.[2]

Turning, then, to the issue of liability: Under Illinois' choice-of-law rules, when a conflict of law exists "'[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship.'"  *Townsend*, 227 Ill. 2d at 165, 879 N.E.2d at 904 (quoting Restatement (Second) of Conflict of Laws § 146, at 430 (1971)).  Significantly, "a *strong* presumption exists that the law of the place of injury . . . governs the substantive issues" of a personal injury claim.  *Id.* at 166, 879 N.E.2d at 905 (emphasis in original).  Here, because Kennedy was fed Abbott's products in New Jersey and died there, that state's law presumptively applies.  To overcome this presumption, Plaintiffs must demonstrate that New Jersey "bears little

---

[2]     The court expresses no opinion on the choice of law that governs the award of damages for claims that arise under New Jersey law.

relation to the occurrence and the parties, or put another way, that Illinois has a more significant relationship to the occurrence and the parties with respect to a particular issue." *Id.*, 879 N.E.2d at 905.

### III.    Sections 6 and 145 of the Restatement (Second) of Conflict of Laws

Sections 6 and 145 of the Restatement (Second) of Conflict of Laws guides the court's analysis of whether Illinois has a more significant relationship to Kennedy's injury than New Jersey does. *Id.* at 175, 879 N.E.2d at 909. Section 6 outlines policy principles and § 145 enumerates contacts that the court considers in making this determination. The four contacts listed in § 145 are (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Id.* at 160, 879 N.E.2d at 901. Of the seven policy principles outlined in § 6, the three most important factors in a personal injury suit are "the relevant policies of the form," "the relevant policies of other interested states and the relevant interest of those states in the determination of the particular issue," and "the basic policies underlying the particular field of law." *Id.* at 170, 879 N.E.2d at 907. "The presumptive choice controls unless overridden by the section 145 analysis." *Id.*, 879 N.E.2d at 909.

The first § 145 factor favors New Jersey; that is where the injury occurred. As discussed above, this fact raises a strong presumption in favor of New Jersey law to the issue of liability. Plaintiffs contend that the court should nevertheless decline to give presumptive weight to the place of injury in this case because "the national reach of Abbott's products dilutes the significance of place of injury." (Pls.' Br. in Opp. to Mot. for Summ. J. ("Pls.' Resp.") [14] at 7.) For support, Plaintiffs cite *In re Bendectin Litig.*, 857 F.2d 290, 305 (6th Cir. 1988), a Sixth Circuit case decided under Ohio choice-of-law rules. *Bendectin* differs from this case in two meaningful regards. For one, it was not clear where the injury resulting from ingesting Bendectin occurred, *id.* at 304, whereas there is no question that Kennedy was fed Abbott's formula and developed NEC in New

6

Jersey.  Additionally, Ohio's choice-of-law rules do not employ the "strong presumption" in favor of the state of injury that the Illinois Supreme Court has stressed.  *See id.* at 304–05.  Plaintiffs further argue that the presumptive rule should not apply because Abbott's products "are marketed and available nationwide and could have—and, in fact did—cause injury in any state."  (Pls.' Resp. at 7 (citing Am. Compl. ¶¶ 65, 68, 76.)  Plaintiffs have not alleged, however, that Abbott caused injuries to Kennedy other than what happened in New Jersey.  (*See* Am. Compl. ¶¶ 65, 68, 76.)  Rather, this case resembles *Townsend* itself, in which the court found that Michigan had a strong relationship to the occurrence and to the parties because Michigan is where one of the plaintiffs purchased the injurious lawn tractor, where he used the lawn tractor, and where he and the other plaintiffs—his wife and son—resided.  *Townsend*, 227 Ill. 2d. at 168, 879 N.E.2d at 906.  Similarly, in this case, New Jersey is where Kennedy was born, where she was fed Abbott's products, and where her parents, Nicole and Michael, reside.

The second factor considers the location of the wrongful conduct.  Under Illinois law, this factor encompasses "all conduct from any source contributing to the injury," including intervening conduct.  *Id.* at 169, 879 N.E.2d at 906.  Plaintiffs allege that at least some conduct contributing to Kennedy's injury took place in Illinois, because, as Abbott's principal place of business, that is where Abbott likely designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, or sold the products at issue.  (Am. Compl. ¶¶ 2, 6–7.)  The court agrees (and common sense suggests) that at least some of Abbott's allegedly harmful conduct occurred in Illinois.  (*See* Pls.' Resp. at 9 (citing *Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *4 (N.D. Ill. Jan. 12, 2023)).)  But at least some other contributing actions occurred elsewhere.  Notably, the decision to administer Abbott's products to Kennedy occurred in New Jersey.  Furthermore, as Defendants point out, common sense also suggests that Plaintiffs and their healthcare providers would have been exposed in New Jersey to the advertising that allegedly influenced their decision to administer Abbott's products.  (*See* Am Compl. ¶¶ 175, 229, 251, 304.)  This factor does not strongly favor the application of Illinois law here.

The third factor—the domicile, residence, place of incorporation, and place of business of the parties—is also a wash: Plaintiffs reside in New Jersey, and Abbott is headquartered in Illinois. *See Townsend*, 227 Ill. 2d at 169, 879 N.E.2d at 906 (finding the third factor "a wash" when plaintiffs resided in Michigan and the defendant was headquartered in Illinois); *see also Paulsen v. Abbott Labs.*, No. 15-CV-4144, 2018 WL 1508532, at *12 (N.D. Ill. Mar. 27, 2018) (finding domicile neutral where the plaintiffs resided in Georgia and defendant resided in Illinois).

The fourth § 145 factor is "the place where the relationship, if any, between the parties is centered"; in this case, that is New Jersey, where Kennedy was fed Abbott's products. *Id.* at 169, 879 N.E.2d at 906 (finding relationship was centered in the state where the product was used). Plaintiffs argue that this factor supports applying Illinois law because Illinois is where they believe the allegedly injurious products were designed. Notably, the district court decisions Plaintiffs cite for support do not apply Illinois law. *See White v. Ethicon, Inc.*, No. C20-952 BHS, 2022 WL 326787, at *2 (W.D. Wash. Feb. 3, 2022) (concluding under Washington law that, with respect to which jurisdiction's punitive damages law applies, the parties' relationship was centered where the unsafe design occurred); *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 595–96 (W.D. Tex. 2006) (denying certification of a worldwide class of persons harmed in a variety of states by defendants' product, noting choice-of-law concerns, and observing, with respect to the fourth § 145 factor, that "the place where the relationship between the parties is centered should probably be considered" to be one of the "numerous states" "where the [defendant's products] were designed and manufactured"). This factor may favor application of Illinois law, but it does not overcome the "strong presumption" noted earlier in favor of application of New Jersey law to Plaintiffs' claims.

Turning, then, to the principles laid out in § 6 of the Second Restatement: the most relevant considerations are the relevant policies and interests of the states at issue. *Townsend*, 227 Ill. 2d. at 170, 879 N.E.2d at 907. Naturally, Illinois has an interest in regulating the conduct of its corporate citizens, and New Jersey has an interest in the remedies afforded to its residents who

suffer tort injuries.  In an effort to overcome what appears to be equilibrium on this score, Plaintiffs contend that Illinois' interest in regulating the conduct of its corporate citizens through punitive and wrongful death damages is sufficiently strong to necessitate application of Illinois law here. (Pls.' Resp. at 10–12.)  As noted earlier, however, the court undertakes its choice-of-law analysis for liability issues separately from the issue of damages; yet Plaintiffs' citations regarding the § 6 factors concern damages, and none address the issue of liability.  *See Kleronomos v. Aim Transfer & Storage Inc.*, No. 19-CV-01844, 2021 WL 1546428, at *7 (N.D. Ill. Apr. 20, 2021) (ruling that Wisconsin law applies to assess punitive damages against a Wisconsin defendant); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 1836435, at *22 (N.D. Ill. May 8, 2017) (ruling that Illinois law applies to assess punitive damages against an Illinois defendant); *Meyer v. Crain Commc'ns, Inc.*, No. 88 C 10373, 1992 WL 77655, at *4 (N.D. Ill. Apr. 6, 1992) (same); *see also Haskins v. Midwest Air Traffic Control Serv., Inc.*, No. 12 CV 4584, 2016 WL 3653531, at *5 (N.D. Ill. July 8, 2016) (concluding that the law of the decedents' respective domiciles applies for determining damages).  Plaintiffs have not cited a case, and the court's own research has not revealed one, in which a court has held that a state's interest in a damages issue must also determine which state's law applies to the issue of liability.  Consequently, Plaintiffs have not overcome the "strong presumption . . . that the law of the place of injury, [New Jersey] governs the substantive issues in this case."  *Townsend*, 227 Ill. 2d. at 166, 879 N.E.2d at 905.  Because Counts 1 through 6 of Plaintiffs' amended complaint raise claims under Illinois substantive law, those Counts are insufficient to state a claim upon which relief may be granted and therefore must be dismissed.

## **CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss Counts 1 through 6 [13] is granted.  Defendants' prior motion to dismiss [10] is terminated as moot.

ENTER:

Dated:  June 29, 2023

_____
REBECCA R. PALLMEYER
United States District Judge