IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL NO. 3026<br>Master Docket No: 1:22-cv-00071<br><br>Judge Rebecca R. Pallmeyer |

**PLAINTIFFS' REQUEST TO EXTEND THE BELLWETHER SELECTION
DATE AND TO ESTABLISH A FORMAL CLOSE OF FACT DISCOVERY**

At the last CMC, the Parties advanced their respective positions regarding the proposed discovery schedule. The PLC argued, and the Court agreed, to set certain production benchmarks related to Defendants' custodial and non-custodial productions. In doing so, the Court decided not to enter a final definitive schedule, opting instead to take a wait-and-see approach to afford the Court (and the Parties) a better vantage point to assess the schedule vis-à-vis the timeliness and scope of Defendants' productions.

Based on recent developments in this case, including the production of over five million pages since the June 21 status hearing, coupled with Defendants' recent revelation they do not intend to conduct treating-physician depositions before Bellwether Trial selections, the PLC requests that the Court enter an Order adopting a formal schedule for selection of Bellwether Trial picks and close of fact discovery

that: 1) extends the Bellwether Trial selection date to December 1, 2023;[1] and 2) set the close of fact discovery for March 29, 2024.[2]

To date, neither Defendant—despite representing to this Court that they intended to do so—*has taken a single* deposition of a Plaintiff's treating physician. Nor has Mead taken the *Plaintiff's* deposition of *any* Bellwether candidates.[3] Nonetheless, both Defendants insist that the Parties are ready to make Bellwether Trial selections in less than two weeks. Notwithstanding Defendants' "trial by ambush" approach, MDLs are simply not conducted in this manner, particularly where the Parties agreed, and defense counsel represented to this Court, that treating physician depositions would occur *before* trial selections.

---

[1] As noted below, the PLC asks for this extension, in part, based on the difficulty to schedule medical provider depositions. As this Court knows, scheduling provider depositions is difficult under even the best of circumstances. Had Defendants informed the PLC in a timely manner—which they did not—they had no intention to take treating physician depositions, the PLC could have started scheduling those depositions long ago. Unfortunately, neither Defendant informed Plaintiffs that they were not attempting to schedule physician depositions despite the procedure set forth in the Stipulated Discovery Protocol Regarding "Bellwether/Core" Discovery and "Trial Selections" Discovery [ECF No. 349], and Defense counsel's representations in open court on June 21, 2023. As such, assuming the PLC starts attempting to schedule provider depositions *today* it will take *at least* sixty days to complete those depositions, but likely much longer.

[2] The PLC's position is that entry of all remaining dates is premature. As noted below, the March 29, 2023, fact discovery deadline is aggressive and requires Defendants achieve certain production benchmarks. Given Defendants' production to date failed to achieve these benchmarks, it is not certain March 29, 2023, is an achievable date. As such, setting dates for expert disclosure, *Daubert* briefing, and trial are premature at this point. That said, if the Court intends to enter a full schedule, the PLC requests the Court order the Parties meet and confer to set the remaining dates upon entering a fact discovery cut-off date.

[3] Mead has four Bellwether cases. Two of the cases are set for deposition on September 15 and 19, 2023. A third was scheduled for deposition prior to September 14, 2023, but on September 1, 2023, Mead informed Plaintiff's counsel they intended to reschedule the deposition to sometime later in September or October. Finally, given the Court's ruling in *Donaldson*, the Plaintiff's deposition in that case has not been scheduled pending the resolution of Mead's Motion for Reconsideration. In sum, Mead will not take a single Plaintiff's deposition prior to September 14, 2023.

Nor is the current fact-discovery schedule workable. The PLC has long maintained the proposed discovery cut-off date was aspirational at best. The facts now establish that assertion was correct. Nonetheless, Defendants—largely, if not exclusively, to advance a federal-trial-first strategy—continue to rely on the illusory position that a December 31, 2023 close of fact discovery is reasonable. They make this assertion notwithstanding: 1) the Court's admonition that discovery will not close around the holidays (6/21/23 Tr. at 29:3-19); 2) since the last status hearing, Abbott produced 391,392 documents comprising 2,216,216 pages and Mead produced 421,423 documents comprising 3,049,074 pages; 3) Mead has not remotely achieved the production benchmarks it told this Court it would achieve; and 4) there are literally dozens of depositions that need to occur, many of which were delayed given Defendants' difficulty supplying meaningful and timely deposition dates. In light of the above, the PLC asks the Court to set the selection date for trial picks to December 1, 2023 and the close of fact discovery for March 29, 2024.

1. **"Bellwether/Core" fact discovery is not close to completion.**

After an extensive negotiation, on April 18, 2023, the Parties entered a Stipulated Discovery Protocol Regarding "Bellwether/Core" Discovery and "Trial Selections" Discovery [ECF No. 349] ("Stipulation"). Specifically, the Parties agreed that the "Bellwether/Core" discovery was necessary to facilitate trial selections, stating:

> As an initial matter, the proposed limitations to "bellwether/core" discovery are for the purpose of balancing the need for the Parties to ascertain sufficient information to make trial selections, without taking on the burden of full discovery at this stage of each bellwether case. The

> Parties agree that once any case is selected for trial, additional fact discovery will be necessary.[4]

The Parties stipulated that Defendants were permitted to take up to three fact/medical depositions in each case during the "bellwether/core" discovery period and specified that such depositions included the "Plaintiffs, parents, and treating healthcare provider(s)" and that "Plaintiffs may take an additional medical deposition if needed for purposes of making trial selections." *Id.*

During the June 21 status hearing (two months after entry of the Stipulation), Abbott's lead counsel represented that Defendants intended to depose *all* of the Bellwether Plaintiffs *and* their treating healthcare providers before making trial selections. Specifically, Abbott's lead counsel made the following representation to this Court:

> So, as your Honor knows, we have 12 bellwethers that are being worked up. Eight of those are Abbott only and four are Mead only. So there are no cases with both Abbott and Mead as defendants.
>
> Four out of those 12 will be trial picks, and those are due on September 14th. The parties will submit the four trial picks.
>
> *So between now and September 14th, like what's going on in state court, we will be deposing the plaintiffs and the treaters in those cases so that by September 14th we can identify our trial picks.*[5]

As of today, only eight of the 12 Bellwether Plaintiffs have been deposed.[6] To date, no Defendant has noticed, let alone taken, *a single medical provider's* deposition. Worse,

---

[4] Bellwether/Core" Discovery and "Trial Selections" Discovery [ECF No. 349] at ¶ 1.a.

[5] June 21, 2023 Status Hearing Transcript, 13:19–14:4 (emphasis supplied).

[6] Two of the remaining Bellwether Plaintiffs' depositions are scheduled to occur *after* September 14, 2023.

neither Defendant formally alerted the PLC, until recently, that they did not intend to take provider depositions before the September 14 selection deadline.

Nor could the PLC have anticipated Defendants intended to jettison provider depositions. That is true for two reasons. First, Abbott's counsel expressly represented to this Court (less than two months ago) that they intended to take doctor depositions before the selection deadline (June 21, 2023 Tr. 13:19–14:4). Second, the Stipulation expressly provided that Plaintiffs' depositions of any medical providers occur *after* the Defendants' depositions stating: "Plaintiffs may take an additional medical deposition if needed for purposes of making trial selections."[7] In short, Defendants' failure to take any medical depositions, coupled with their failure to notify the PLC they no longer intended to take such depositions, effectively prevented the PLC from taking any "additional" medical depositions as contemplated by the Stipulation.

Worse, the Plaintiffs' depositions themselves *are not complete* in *any* of Mead's Bellwether cases and *will not even begin* until *after September 14.* Specifically, two Plaintiffs' depositions are scheduled to occur on September 14 and 19, and a third is being rescheduled (at defense counsel's request) for a date later in September or October. Similarly, there is no testimony from *any* healthcare provider in *any* of the Bellwether Discovery cases. As this Court knows, depositions occur so that a party may evaluate the relative strength, weakness, and representative nature of the case. Even if the PLC were able to make such an assessment absent deposition practice of

---

[7] Bellwether/Core" Discovery and "Trial Selections" Discovery [ECF No. 349] at ¶ 1.b.

the Plaintiffs' picks (a contention that is speculative at best), there is nothing to suggest such an assessment may be made of the *doctor's testimony* without the actual testimony. In short, absent such testimony there is no reasonable basis to conclude the PLC can "ascertain sufficient information to make trial selections" as the Stipulation mandates.

Compounding this issue, Defendants' late disclosure that they do not intend to depose healthcare providers now requires the PLC to notice and take those depositions to assess the relative strength, weakness, and representative nature of the case in general, and doctor's testimony in particular. Completing this work will take time given the difficulty to schedule provider depositions—time Defendants deprived the PLC of given the belated revelation they do not intend to do this work.

This Court's own experience in MDL practice establishes that Defendants' approach is unreasonable. For example, in *In re Zimmer*, Defendants never suggested trial picks occur absent completing the plaintiffs' and providers' depositions. In fact, the PLC has been unable to identify *any* MDL that *ever* contemplated Bellwether trial selections occur absent provider depositions. Nonetheless, that is exactly what Defendants seek here. Why would Defendants make this first-of-its-kind in MDL history request? The answer is because reverting to a realistic schedule, in an MDL of this magnitude, hinders *their* federal-trial-first strategy—period, full stop. Defendants' position is yet another attempt to force the PLC to conduct a Bellwether trial prior to any state-court trial. But this Court has repeatedly rejected this

argument *and* noted the pace of litigation outside of this MDL will not dictate the scheduling of MDL Bellwether trials.[8]

MDL work is serious business involving complex cases resulting in serious injuries. By its very nature, the selection of trial picks is a critical part of the process given that their representative nature provides guidance to the array of *all* plaintiffs in all cases. Short circuiting that processes simply to achieve one side's (repeatedly) stated goal of pushing a federal case to trial before a state-court case is not a basis to artificially advance the selection process here. Nor is the minute-before-midnight argument that provider depositions are not required justifiable; particularly given the only reason those depositions will not occur as agreed is because Defendants unilaterally deviated from the Stipulation. As such, the Court should once again refuse Defendants' efforts to short-cut discovery, and should afford the Parties the time necessary to complete the very process they agreed to just four months ago.

> **2. The proposed March 29, 2024 close of fact discovery is necessary because Defendants continue to miss agreed-to document-production deadlines and the scope of Defendants' recent productions makes completing the work by December 31, 2023 impossible.**

As the Court is aware, in addition to flagging for the Court deadlines in dispute, the Parties stipulated to meet specific discovery deadlines in the Proposed Revised Schedule. ECF No. 365. Those agreed-upon deadlines started on June 23, 2023, and continue until October 30, 2023. Unfortunately, Mead failed to meet

---

[8] See June 21, 2023, Hearing transcript at 5:4–10 and 25:5–26:9.

several of the stipulated deadlines, causing the very delays in discovery Plaintiffs were concerned about. For example:

1) Mead promised to certify 18 of the original 23 custodians by June 30, 2023. It certified 17.

2) Mead promised to certify the remaining 23 custodians by July 14, 2023. To date, Mead has only certified 21 of the 23 original custodians.

3) Mead promised to certify seven additional custodians by July 30, 2023. It certified six.

4) Mead promised to certify seven additional custodians by August 15, 2023. It did not meet this deadline.[9]

In short, as the PLC predicted, Mead failed to achieve its production obligations.

Equally important, the scope of additional data produced since the last CMC is massive. Since June 23, 2023, Defendants produced the following:

| **Abbott** | **Mead** |
|---|---|
| *Custodial Production* | *Custodial Production* |
| Total number of documents: **225,453**  Total number of pages: **1,104,240** | Total number of documents: **400,035**  Total number of pages: **2,789,339** |
| *Noncustodial Production* | *Noncustodial Production* |
| Total number of documents: **165,939**  Total number of pages: **1,111,976** | Total number of documents: **21,388**  Total number of pages: **259,735** |
| *Total Production* | *Total Production* |
| Total number of documents: **391,392**  Total number of pages: **2,216,216** | Total number of documents: **421,423**  Total number of pages: **3,049,074**[10] |

---

[9] On August 30, 2023, knowing the PLC intended to file the current submission, Mead notified Plaintiffs that it was producing an unknown volume of documents and certified additional custodians in conjunction therewith. It is unclear whether those witnesses included those required to be disclosed by August 15, 2023. But even if the timing of the disclosure is not in-and-of-itself suspect, the simple fact is that the disclosure is more than two weeks late.

[10] On August 30, 2023, Mead certified an additional ten custodians. These totals *do not*

*See* Declaration of Mark Abramowitz (*Abramowitz Decl.*) at ¶ 4 attached hereto as Exhibit A. Collectively, Defendants have produced ***812,815*** documents and ***5,838,413*** pages *since the last status hearing*.[11] *Id.* at 7.

By way of review, in August 2022, Defendants produced the Jupiter State Court production (i.e., the documents Defendants previously produced to the state court litigants). Abbott's lead counsel represented to this Court on November 21, 2022, that the production was "virtually complete." Tr. of Nov. 21, 2022, Status Hearing, ECF No. 280 at PageID#: 3708:15–18. That combined production totaled 366,887 documents, made up of 2,68,185 pages. From August 23, 2022, through June 15, 2023, Defendants collectively produced approximately 850,000 documents, totaling 6,000,000 pages. *Abramowitz Decl.* at ¶ 5. Since June 21, 2023—the date of the last status hearing and entry of the benchmark production schedule—Defendants collectively produced 812,815 documents, comprising 5,838,413 pages. *Id.* at ¶ 7. The following represents a visual of the growth in the production over time. As is evident from the demographic below, the production's growth was exponential since June 2023:

---

include the number of documents and pages contained within Mead's August 30, 2023, production. That said, on September 1, 2023, Mead wrote the PLC regarding this most recent production indicating it included over 89,000 documents, made-up of 1,100,000 pages. *Abramowitz Decl.* at ¶ 7. As a result, the total production to date likely exceed 14 million pages.

[11] To put this in perspective, the production from June 23, 2023, to today (a two-and-a-half-month period) virtually doubled the number of documents and pages Defendants produced from August 2022 through June 22, 2023 (a ten-and-a-half-month period). And, of course, these numbers *do not* reflect the belated production Mead made on August 30, 2023.



*See Abramowitz Decl.* at ¶ 8. In other words, since declaring the production "virtually complete" Defendants produced over **1,500,000** documents, encompassing roughly **11,500,000** pages—a 300% increase in the number of documents and pages from the original Jupiter production. And of course, document production is not complete and will continue to occur.

The PLC is currently in the process of loading and reviewing the ongoing influx of documents to depose the necessary defense witnesses, which is a time-consuming process even when documents are produced on schedule. Without timely and complete productions—especially of items Defendants stipulated to produce by certain dates—Plaintiffs continue to be hamstrung in their efforts to conduct fulsome discovery as to either Abbott or Mead. Document production, particularly as it relates to Mead, is not moving at the pace Defendants promised, and when it did occur resulted in the dump of a massive number of additional documents and pages. In

short, the PLC's repeated prediction that Defendants' proposed schedule is wholly artificial is now an undeniable fact.

This is not to suggest the PLC is slowing the pace of discovery. On the contrary, the PLC has actively pursued deposition practice since the last CMC. Specifically, during the past two months, the PLC did the following:

*For Abbott:*

1) Deposed nine Abbott custodians;

2) Scheduled an additional 12 depositions that are slated to occur between now and the end of November; and

3) Has requested and is awaiting deposition dates for an additional seven Abbott custodians. Given the pace of scheduling, it is likely these depositions will occur in November and December.

In short, the PLC has taken, scheduled, or requested deposition dates for 28 Abbott employees. But the Parties stipulated to the production of custodial files for 45 Abbott employees. While the PLC does not anticipate taking every custodian's deposition, it is not yet in a position to determine which of the unproduced custodians' depositions will be needed. At this point, the PLC estimates that it will likely take an additional 10–15 Abbott employee depositions beyond those already noticed.

Put another way, beyond the 12 depositions scheduled between now and late November, it is likely an additional 20-plus depositions will occur for this Defendant. Given that Abbott routinely takes weeks to respond to requests for deposition dates (and then with a limited number of workable days requiring ongoing negotiations and delay to secure a date), there is no reasonable expectation that the remaining depositions can occur between October and December—particularly given many of

those custodians' files will not be produced until late September (hopefully). Ultimately, the PLC has scheduled and/or is planning to take an additional 30-plus depositions of Abbott custodians. There is simply no realistic argument that the PLC can review the avalanche of newly produced documents, analyze them in detail, prepare for, and take that volume of depositions between now and December 31, 2023.

Discovery as it relates to Mead has faced significant obstacles. As noted above, Mead has repeatedly missed production benchmarks, and there is nothing to suggest it will course correct in the future.[12] Delayed certification of custodians results in delayed depositions. As such, the Mead case is not nearly as deep into discovery as that involving Abbott. Notwithstanding the delayed production, to date, the PLC took three Mead depositions. Six more Mead witnesses—some of which are not scheduled *until December*—are set for deposition, and the PLC is awaiting depositions dates for two additional witnesses. But, as with Abbott, the Court allowed the PLC additional custodians (totaling 55 additional custodial files for Mead). Given the delayed production, the PLC is endeavoring to identify additional custodians as quickly as possible. Between the original 23 Jupiter custodians and 26 custodians the PLC requested, Mead owes the PLC 49 custodial files. To date, Mead has only certified 31

---

[12] On May 22, 2023, more than three months ago, the PLC identified 26 additional custodians of the additional 55 custodial limit ordered by the Court. Mead is currently obligated to produce 49 custodians (23 from the original Jupiter production and 26 from the May 2023 request). To date, Mead has only certified completeness for 31 custodial files. Some of those custodians may result in "zero document" productions. Accounting for those custodians, Mead has not produced approximately 18 additional custodial files. Additionally, the PLC understands that the state court litigants requested 15 additional Mead custodians. The PLC is not aware whether Mead produced those files in the state court case; they were not produced in this case. The PLC intends to make additional custodian requests after completing its review of Mead's recent production.

of those custodians. As with Abbott, the PLC anticipates taking more than three dozen Mead depositions. There is simply no plausible scenario in which those depositions can be completed between now and December 31, 2023.

Discovery in this case commenced roughly a year ago. The PLC's proposed discovery cut-off of March 29, 2024, represents an 18-month discovery period. Defendants' contention that an 18-month discovery period is unreasonable in an MDL is simply not credible. That statement is particularly true when the case involves two defendants, who, to date, have collectively produced approximately ***2,000,000*** documents comprising ***14,000,000*** pages (with more to come), necessitating roughly 80 depositions. This Court has long maintained it will afford the Parties the time they need to conduct discovery in an efficient and reasonable manner. Given the PLC will likely need to take an additional five dozen depositions, a request to complete that work over the course of the next six months is not only reasonable—it is aggressive. As such, the PLC asks the Court to set the close of discovery as March 29, 2024. If Defendants meet their production deadlines and expedite their pace in scheduling depositions, that deadline is workable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court extend the Bellwether selection date to December 1, 2023, and the close of fact discovery to March 29, 2024. The PLC further requests the Court Order the Parties to negotiate in good faith to propose deadlines for the remainder of the schedule with dates that might actually be achieved.

Dated: September 1, 2023　　　　　　　　　Respectfully submitted,

/s/ *Timothy J. Becker*
Timothy J. Becker
JOHNSON // BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
tbecker@johnsonbecker.com
CO-LEAD COUNSEL

/s/ *C. Andrew Childers*
C. Andrew Childers
LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.
316 S. Baylen Street, Sixth Floor
Pensacola, FL 32502
(850) 435-7000
achilders@levinlaw.com
CO-LEAD COUNSEL

/s/ *Wendy R. Fleishman*
Wendy R. Fleishman
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500
wfleishman@lchb.com
CO-LEAD COUNSEL

/s/ *Diandra S. Debrosse Zimmermann*
Diandra S. Debrosse Zimmermann
DICELLO LEVITT, LLC
420 20th Street N, Suite 2525
Birmingham, AL 35203
(205) 453-6415
fu@dicellolevitt.com
CO-LEAD COUNSEL

/s/ *José M. Rojas*
José M. Rojas
LEVIN, ROJAS, CAMASSAR & RECK, LLC
40 Russ Street
Hartford, CT 06106
(860) 232-3476
rojas@ctlawyer.net
CO-LEAD COUNSEL

/s/ *Elizabeth A. Kaveny*
Elizabeth A. Kaveny
KAVENY + KROLL, LLC
130 E. Randolph Street, Suite 2800
Chicago, IL 60601
(312) 761-5585
elizabeth@kavenykroll.com
PLAINTIFFS' LIAISON COUNSEL