IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL 3026 |
| | Hon. Rebecca R. Pallmeyer |
| This Document Relates to: ACTIONS IDENTIFIED IN EXHIBIT A | |

**DEFENDANTS MEAD JOHNSON & COMPANY, LLC, AND MEAD JOHNSON NUTRITION COMPANY'S MOTION FOR AN ORDER TO SHOW CAUSE**

On May 6, 2024, this Court entered a stipulated Case Management Order (CMO 12) providing that Mead Johnson[1] "should only be named in cases in which the subject Infant ingested products that Mead Johnson itself manufactured and/or distributed." CMO 12, May 6, 2024, ECF No. 507 at 1. This Order implements one of the most basic requirements that exists in litigation: prior to suing, a plaintiff must conduct the diligence necessary to know they have a basis to sue a defendant and that they are suing the right defendant. *See id*. at ¶ III.B.2. In place of simply dismissing outright complaints that do not plainly allege product identification, CMO 12 affords Plaintiffs a process that fairly allows them to show product identification.[2] Only if Plaintiffs fail to follow this process, or to prove product identification through it, are their cases against Mead Johnson dismissed. *Id.* at 5.

---

[1] Plaintiffs in these cases have sued Mead Johnson & Company LLC and Mead Johnson Nutrition Company. For ease, these are collectively referred to as "Mead Johnson."

[2] Mead Johnson had previously moved to dismiss many of these of complaints under Rule 12(b)(6), because they were facially deficient in alleging use of a Mead Johnson product. *See* Mot. to Dismiss Oct. 16, 2023, ECF No. 410.

Plaintiffs in the nine cases cited in Exhibit A have failed to positively identify that a Mead Johnson product was ever fed to the Infant in question or to take any steps whatsoever to follow CMO 12. These are not recent failures—in some instances, these cases have languished on the Court's docket for *years* without ever identifying or even alleging that Mead Johnson had any role in the case. Pursuant to CMO 12, the Court should enter an order requiring these Plaintiffs to show cause, within 10 days, why their cases should not be dismissed.

## BACKGROUND

Mead Johnson's efforts to obtain product identification from Plaintiffs date back to October 2022, with the Court repeatedly addressing this issue at hearings and orders from that time forward. *See, e.g.*, Hr'g Tr. Oct. 11, 2022 at 15:4–12, ECF No. 24; Mot. to Dismiss Oct. 16, 2023, ECF No. 410; *see also* Ord. Feb. 9, 2024 at 1, ECF No. 461 (noting that it is "troubling" that there are still pending cases without positive product identification). By the time the Court again addressed this issue in February of this year, Mead Johnson had identified 91 cases in which allegations of product identification were missing from the Complaint and curative medical records were not included with the plaintiff's PPF. Mead Johnson sent letters in April 2024 to counsel in each of those older cases reminding them of the Court's order and requesting information about their compliance, with little response. *See* Product Identification Update, ECF No. 494, at 4–6 (Apr. 16, 2024).

This ongoing failure by these Plaintiffs to meet the most basic requirement of bringing a lawsuit led to the Court adopting CMO 12. That order, which was negotiated with and agreed to in its entirety by the Plaintiffs' Leadership Committee, required that for cases pending as of May 6, 2024 where Plaintiffs lack definitive product identification, Plaintiffs needed to serve a "targeted subpoena on medical providers seeking identification of the preterm nutrition product(s)

2

administered to the infant." CMO 12 at III.B.3. This subpoena was to be served "within thirty days following entry of this Order or within thirty days of service of Plaintiff's PPF, whichever is later." *Id.* For the cases listed in Exhibit A, that deadline was June 5, 2024. This deadline matters because, according to a provision that Plaintiffs themselves added, it "may only be extended by agreement of the parties or by Order of the Court." *Id.* at III.B.5.

Although not required to do so under CMO 12, on June 3, 2024, Mead Johnson sent a courtesy letter to Plaintiffs' counsel, including counsel for the cases cited in Exhibit A, informing them that (1) they had cases subject to CMO 12 and (2) the deadline by which they must serve a targeted subpoena upon the medical providers was June 5, 2024. Pursuant to Section III.B.5 of the CMO and the Federal Rules, Mead Johnson requested copies of the subpoenas sent to the relevant medical providers. In the event that Plaintiffs had already served subpoenas, Mead Johnson requested an update on the status of those records and, if available, citations to the portion or portions of the records that contained positive identification of a Mead Johnson product.[3] Mead Johnson indicated that it would exercise its rights to seek dismissal should Plaintiffs fail to comply with any portion of CMO 12, including its requirement to serve a targeted product identification subpoena. *See* Exs. B–H.

Mead Johnson received responses from many Plaintiffs. Eleven Plaintiffs voluntarily dismissed their claims against Mead Johnson, confirming the need for CMO 12. Many others provided copies of compliant subpoenas. Some others served subpoenas that do not appear to

---

[3] Some Plaintiffs' attorneys have claimed positive product ID but have not provided Mead Johnson with a copy of the subpoena or a copy of the records or responses to the subpoena, as the CMO requires. *See* CMO 12 ¶ 5, May 6, 2024, ECF No. 507.

3

comply with CMO 12, which Mead Johnson is still reviewing. Some others requested extensions after making some efforts at compliance, which Mead Johnson is also considering.[4]

But for the cases listed in Exhibit A[5]—the vast majority of which had *already* received correspondence from Mead Johnson regarding the deficiencies in their product identification back in April, and *all of which* were on notice of this deadline from the Court's May 6, 2024 Order—Mead Johnson heard nothing. Accordingly, pursuant to Paragraph 6 ("Order to Show Cause") of CMO 12, Mead Johnson now files this motion for an order to show cause why these cases should not be dismissed.

## ARGUMENT

Identification of the alleged tortfeasor is the most basic requirement for filing a lawsuit. *See, e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) ("Ordinarily a tort victim who does not know who the tortfeasor is cannot sue."). And these Plaintiffs' failure to comply with this requirement is not a recent development in this MDL. To the contrary, Mead Johnson has repeatedly raised this issue with the Court and with Plaintiffs in both hearings and filings. And, as described above, Mead Johnson raised it just days ago in a direct letter to Plaintiffs' counsel. For the cases identified in Exhibit A, Mead Johnson has received no product identification, no subpoena (compliant or otherwise), and no request for an extension. These Plaintiffs have ignored the Court's May 6, 2024 order, which was itself entered only because they

---

[4] CMO 12 is unambiguous: "The deadlines . . . may only be extended by agreement of the parties or by Order of the Court." CMO 12 at III.B.7. Notably, this stipulated language was actually proposed by the PLC, not Mead Johnson, during negotiations. Moreover, CMO 12 has already afforded Plaintiffs a very generous extension. As CMO 12 recognizes, "Plaintiffs' counsel are required to conduct ***pre-suit*** due diligence, including by requesting all of the infant's hospital medical and feeding records from birth through discharge and examining those records." CMO 12 at III.B.2 (emphasis added).

[5] These cases are concentrated among a few law firms.

4

had already failed to comply for months or years with prior Orders and basic pre-filing requirements.

While compliance with any court order is essential to the orderly progress of a litigation, there is particularly no excuse for not complying with CMO 12, which was negotiated and agreed to by the parties. Specifically, on April 17, 2024, this Court issued an Order stating that "the parties agree that Mead Johnson can be liable, if at all, only in cases where Mead Johnson was the source of infant formula challenged in these cases; yet in a number of cases in this MDL, that determination has not yet been made." ECF No. 496. It accordingly "directed that . . . the parties submit a proposed Case Management Order establishing a further protocol for resolving this dispute." *Id.* As result, the parties agreed on the process provided in CMO 12 and submitted it by stipulation. The Court then promptly entered the stipulation. As the Court recently ruled on another issue in this MDL, "the dispute is resolved pretty clearly by the language of the stipulation that was entered." Hr'g Tr. May 9, 2024 at 15:16–18.

The Exhibit A Plaintiffs should not be permitted to sidestep their own stipulations and this Court's Case Management Orders in a multi-district litigation like this. *In re Phenylpropanolamine (PPA)*, 460 F.3d 1217, 1232 (9th Cir. 2006) (affirming dismissal for failure to comply with MDL case management order streamlining discovery and stating that "[c]ase management orders are the engine that drives disposition on the merits"). Indeed, "the parties' compliance with case management orders is essential in a complex litigation such as this." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 247 (3d Cir. 2013). The process set forth in CMO 12 enables the Court to "weed out non-meritorious cases early, efficiently, and justly." *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 2016 WL 4705827, at *2 (M.D. Ga. Sept. 7, 2016). Absent enforcement of CMO 12, the Court risks having meritless claims clog

5

its docket for years, undermining the Court's ability to administer this MDL on fundamental questions like bellwether selection, when those claims never should have been filed in the first instance. *See id.* ("MDL consolidation for products liability actions does have the unintended consequence of producing more new case filings of marginal merit in federal court, many of which would not have been filed otherwise."). For example, *Gonzalez v. Abbott Labys., Inc., et al.*, No. 1:22-cv-06909 (N.D. Ill. Dec. 8, 2022) was filed in 2022 and contains no identification of Mead Johnson's product. Similarly, *Lockman v. Abbott Labys. Inc., et al.*, No. 1:22-cv-07123 (N.D. Ill. Dec. 29, 2022), also filed in 2022, does not identify Mead Johnson's product. To Mead Johnson's knowledge, neither of the Plaintiffs' attorneys in these cases have issued subpoenas to find out whether a Mead Johnson product is at issue, nor did they respond to outreach by Mead Johnson counsel.[6]

Failing to identify even the product or Defendant at issue is the kind of missing "basic information" for which cases are regularly dismissed in mass tort litigation. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d at 1234 (dismissal upheld for plaintiffs who did not submit a plaintiff fact sheet following unreasonable delay and who failed to "provide any information that only they possessed regarding the critical elements of their claims"); *In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863 (8th Cir. 2007) (upholding dismissal for plaintiff who "submitted incomplete answers to questions on the district court's mandated fact sheet."); Order, *In re: Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734 (N.D. Fla. Mar. 4, 2020), ECF No. 1263 (noting 134 cases were dismissed with prejudice

---

[6] *See, e.g.*, Proposed Federal Rule 16.1, which highlights the increasing importance of effective pretrial scheduling and case management. The Federal Rules Committee recently approved the rule, and it is pending approval by the United States Supreme Court. *See* Reuters, *US judicial panel approves rule governing federal mass torts*, June 4, 2024 (https://www.reuters.com/legal/litigation/us-judicial-panel-approves-rule-governing-federal-mass-torts-2024-06-04/).

for failure to comply with the Court's orders to submit plaintiff profile forms with "basic information" about plaintiffs' claims); *In re: General Motors LLC Ignition Switch Litig.*, 2017 WL 9772106, at *1 (S.D.N.Y. June 16, 2017) (dismissing plaintiffs who failed to submit a plaintiff fact sheet per the Court's order); *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Prac. and Prods. Liab. Litig.*, 2015 WL 12844447, at *2 (D.S.C. June 19, 2015) (dismissing plaintiffs who had not submitted timely plaintiff fact sheets and noting the failure to provide the "basic facts" in fact sheets "prejudices [defendant] in this litigation").  The same result should occur here.

Mead Johnson is mindful that some of these cases allege very serious injuries.  But as in the cases cited above, these Plaintiffs are in this position because they have flagrantly disregarded the Court's orders on this critical issue by failing to take any steps to establish that they can even properly allege any relevant use of a Mead Johnson product.  Even without the stipulated CMO, an Order to Show Cause would be warranted.  *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 2018 WL 6003391, at *1 (N.D. Ill. Nov. 15, 2018) (noting order to show cause issued for noncompliance with court order regarding discovery obligations).

At the same time, Mead Johnson sought to correct these deficiencies at notable expense. To date, Mead Johnson has dedicated hundreds of hours of attorney time to this issue, including by being forced to address individual plaintiff deficiencies that would not exist if they followed the most basic standards for bringing claims.  These meaningful efforts would have been unnecessary had these Plaintiffs met their most fundamental obligations prior to suing.

The Court has also sought to correct these deficiencies.  As described above, *some* Plaintiffs' counsel sought to, and did, correct these pleading deficiencies.  The cases in Exhibit A are outliers, and the Court should, pursuant to CMO 12, enter an order to show cause within 10

days as to why they should not be dismissed, and then implement CMO 12 by dismissing those cases if they do not show cause.

Dated: June 10, 2024

Paul W. Schmidt
Phyllis A. Jones
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-6000
pajones@cov.com
pschmidt@cov.com

By: /s/ *Rachel M. Cannon*

Anthony J. Anscombe
Rachel M. Cannon
STEPTOE LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
312.577.1270
aanscombe@steptoe.com
rcannon@steptoe.com

Elyse D. Echtman
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
212.506.3900
eechtman@steptoe.com

*Attorneys for Defendants Mead Johnson & Co., LLC and Mead Johnson Nutrition Company*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 10th day of June, 2024, a true and correct copy of the foregoing Motion was served on all counsel of record via the Court's CM/ECF System.

*Rachel M. Cannon*
Rachel M. Cannon
