UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION, **This Document Relates to All Cases** | MDL No. 3026<br>Master Docket No. 1:22-cv-00071<br>Hon. Rebecca R. Pallmeyer |

**THE PLC'S REQUEST FOR RELIEF FROM THE STIPULATION AND PROPOSED REVISED SCHEDULE ECF NO. 463**

The Plaintiffs' Leadership Committee respectfully moves the Court to set aside or modify the parties' Stipulation and Proposed Revised Schedule entered February 15, 2024. ECF No. 463. The reasons for this motion are set forth below.

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

The discovery process has reached an impasse due to a series of misunderstandings between the parties during negotiations leading to the parties' Stipulation and Proposed Revised Schedule entered February 15, 2024. ECF No. 463. Since the Stipulation's entry, a dispute arose regarding the Stipulation's effect on Plaintiffs' ability to complete general fact discovery. Among counsel for the Plaintiffs, Abbott Laboratories, and Mead Johnson, there are three alternative views: (1) the deadline for the close of fact discovery meant what it said—that Plaintiffs had until June 28, 2024 to serve discovery (the PLC's view); (2) the stipulated extension applied only to discovery that Plaintiffs had already served or notified Defendants they intended to pursue before April 15, 2024 (Abbott's view); and (3) the Stipulation

precludes Plaintiffs from serving any additional discovery as of the date of the Stipulation's entry (Mead's view). Based on Mead's interpretation it refuses to answer limited sets of Document Requests, Interrogatories or present any additional witnesses for depositions.[1]

This disparity in interpretations highlights the lack of a "meeting of minds" indispensable for an enforceable agreement. While miscommunications and oversights are an unfortunate reality, a stipulation entered without mutual understanding between parties is no stipulation at all. More importantly, the widespread disagreement between parties raises concerns about procedural fairness for the various parties reliant on the PLC for conducting pre-trial endeavors such as discovery. If not addressed, this misunderstanding could significantly constrain the Plaintiffs' capacity to obtain necessary evidence and adequately prepare for trial. Accordingly, the Court should set aside the Stipulation and resolve the disagreement in a manner that is equitable to all parties.

## BACKGROUND

**I. Defendants' late document production and failure to timely provide deposition dates prompted the PLC to seek additional time to complete fact discovery.**

In February of 2024 the presumptive close of fact discovery was fast approaching. Following the February CMC, the PLC informed Abbott's counsel that it intended to seek an extension to the close of fact discovery to accommodate *both*

---

[1] Conversely, Abbott has continued to allow depositions to go forward and is currently negotiating the scope of the additional discovery the PLC served notwithstanding the fact the PLC sought the discovery after April 15, 2024.

outstanding and new discovery requests. *See, Becker Dec.* ¶ 4. On February 8, 2024, Abbott wrote the PLC indicating that it was open to a negotiated outcome stating "[w]e would be open to considering adjustments to the schedule that do not change the February 24, 2025 date for the pretrial conference." *See Email String* attached to *Declaration of Tim Becker* as Ex. 1. On February 9, 2024, the PLC wrote Abbott's counsel seeking the following: 1) a 90-day "across the board" extension; and 2) that Defendants supply the PLC with two deposition dates for *"any future [deposition] requests." Id.* (emphasis supplied). That same day, Abbott responded to the PLC's offer indicating its willingness to extend the then-pending deadline from April 15 to June 3. *Nothing* in that email discussed any limitations on future discovery.

Following Abbott's counteroffer, Abbott and the PLC engaged in a series of calls regarding the extension in an effort to bridge the gap. *Becker Dec.* at ¶ 7. Ultimately, the calls were successful, with Abbott proposing a close of fact discovery for June 28, 2024. Nothing in either the verbal discussions with the PLC between February 10-12, 2024, nor the emails *before* February 12, 2024, contemplated, let alone expressly stated, a date by which future discovery must be served. *Becker Dec.* at ¶ 8. However, on February 12, 2024, Abbott's counsel wrote the PLC (including Mead's counsel for the first time) noting: "Defendants cannot agree to any extension that would allow plaintiff to serve new general liability requests beyond what is permissible under the current deadlines," but in doing so stated the PLC could seek

further extensions for *good cause*.² *See* Ex. 1 attached to *Becker Dec.* On February 12, 2024, the PLC responded that the new dates were acceptable provided Defendants agreed to supply timely deposition dates for *future depositions.*

At the same time, Mead was preparing for trial in Illinois. In December 2023, the PLC wrote Mead's counsel seeking an update on outstanding discovery requests. *See Email string between the PLC and Mead's counsel* attached to *Becker Dec.* as Ex. 2. In response, and more than six weeks later, Mead's counsel finally responded to the PLC's request stating, "Andy, understood and apologies for the delay. As you know, we are coming up on trial in the Watson case, so scheduling has been very difficult." *Id.* Mead's delay, in no small part, caused the PLC to seek the extension embodied in ECF No. 466. Weeks more followed without deposition dates until Mead finally took the position that it would not produce certain witnesses given they were "Apex" employees. Following continued discovery and case work-up, the PLC identified 10 additional witnesses for depositions. *See Email string between the PLC and Mead's counsel* attached to *Becker Dec.* as Ex. 3. In response Mead argued that *any* requests propounded or noticed after February 15, 2024, were untimely. In response, the PLC offered to reduce the number of depositions from 10 to 6 and further limit its written discovery. Mead refused thereby necessitating the current motion.

**ARGUMENT**

**I.     The Court has inherent authority to amend or set aside the parties'**

---

² Nearly identical language ultimately appeared in the parties' stipulation which the Court later entered as ECF. No. 464. In fact, the PLC expressly asked for, and received this language in the final stipulation. *See Redline Stipulation* attached to *Becker Dec.* at Ex. 2.

**Stipulation as required for the administration of justice.**

Stipulations entered into by the parties "in the course of legal proceedings 'are not as irrevocable as other contracts,'" and the "[t]rial court[ ] may, in the exercise of sound judicial discretion and in furtherance of justice, relieve parties from stipulations into which they have entered. Relief should be granted if the balance of equities favors the moving party." *United States v. Kanu*, 695 F.3d 74, 78 (D.C. Cir. 2012). District courts have broad discretion to relieve a party from a stipulation where strict adherence to it would result in manifest injustice. *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989); *Laughlin v. Berens*, 118 F.2d 193, 196 (D.C.Cir.1940) ("wherever justice requires a court may set aside a stipulation.... '[I]t has inherent power, in the control of its own action, to relieve against them when made improvidently or when for any cause their enforcement would work injustice.'"). "The district court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion." *Graefenhain*, 870 F.2d at 1206 (citing *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709–10 (11th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1025, 98 L.Ed.2d 990 (1988) and *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 690–91 (7th Cir.1985)).

    **a.    Relief from the Stipulation is required to prevent manifest injustice given there was no mutual assent between the parties.**

An agreement formed during litigation requires a meeting of the minds as to the terms of the agreement. *Caporale v. Mar Les, Inc.*, 656 F.2d 242, 244 (7th Cir. 1981). When parties hold different meanings to terms of an agreement, the agreement should not be enforced based on any one party's interpretation as it lacks mutual

assent. *See, Joyner v. Adams*, 87 N.C. App. 570, 575, 361 S.E.2d 902, 904–05 (1987).

Here, a review of the email exchange that occurred between members of the PLC and defense counsel from February 8 to February 15, 2024, demonstrates the lack of assent between the involved parties. Though the email exchange appears straightforward at first glance, it culminated in a Stipulation the effect of which none of the parties can agree. The PLC does not merely disagree with defense counsel. Defense counsel—who worked in conjunction on this Stipulation—do not even hold the same interpretation among themselves. Nor is there any situation in which the PLC would have agreed to compress the time to conduct new discovery when the entire basis for the extension was to allow time to complete additional work—including new discovery. This is particularly true given Mead delayed deposition practice because of its ongoing trial obligations. In other words, the PLC contemplated—and told defense counsel—it required additional discovery (some of which was unknown given the delay in deposition practice by Mead). Because no one involved shares a remotely similar interpretation, no agreement was formed, and the Stipulation should be set aside.

    **b.    Defendants' interpretations of the Stipulation do not comport with the Plaintiffs' obvious purpose for seeking the extension.**

Stipulations must be interpreted in light of the circumstances under which the agreement was made. *United States ex rel. Hoehn v. Shaughnessy*, 175 F.2d 116 (2d Cir.), cert. denied, 338 U.S. 872, 70 S.Ct. 142, 94 L.Ed. 535 (1949) ("the stipulation should be construed in light of its evident purpose," discerned from the circumstances). The PLC sought a stipulated extension to the entire case schedule

and initiated negotiations with defense counsel with the explicit purpose of obtaining more time to request additional general discovery and deposition dates. To prevent further delay in acquiring dates the PLC also requested that defense counsel timely provide two deposition dates for all outstanding *and future* deposition requests. *See, Becker Decl.* Ex. 1. Accordingly, alongside the extension of deadlines, the Stipulation provides that "any party receiving a request for the deposition of a witness under the party's control…will use best efforts to provide within seven business days two dates for the deposition to occur…" ECF No. 463 at ¶ 6. In line with its principal objective, the PLC agreed to the Stipulation believing that it granted Plaintiffs until June 28, 2024, to serve discovery related to new witnesses and issues.

Defense counsel for Mead Johnson, however, now takes the position that the stipulation restricts Plaintiffs from serving additional written discovery or requesting deposition dates for new witnesses as of the day of the Stipulation's execution. *See Becker Decl.* Ex. 3. This position is irrational for several reasons.

First, there is nothing in the emails or the Stipulation to support Mead's interpretation; a February 14 cutoff date is not discussed once, nor does it appear on any prior schedules. Neither the PLC nor Abbott could have reasonably understood the Stipulation to cut off Plaintiffs' ability to conduct additional discovery on February 14, 2024. Secondly, it suggests Plaintiffs, in the context of negotiating for an across-the-board *extension*, completely changed course, and instead agreed to prematurely cut themselves off from requesting additional discovery notwithstanding the fact that *nothing* in the actual Order the Court entered provides any reference to

the date by which discovery must be served. Lastly, Mead's position ignores that the Stipulation contemplates Plaintiffs' intent to serve additional discovery requests post-February 14, 2024. It strains credulity that Plaintiffs would have agreed to stop discovery as of the entry of the Stipulation, while in the same breath imposing conditions on Defense counsels' responses to future deposition requests.

Disagreement over the effect of the Stipulation does not end with Mead Johnson. Abbott Laboratories posits the cutoff to be April 15, 2024, but it has not voiced objections to discovery requests submitted past this date. Plaintiffs accept that the emails and the language of the Stipulation, removed from all context, could be read to support Abbott's position. Plaintiffs raise one key point in response: an extension that applies only to discovery that Plaintiffs had already served and to which Defendants already had an obligation to respond serves only to permit *Defendants* additional time to respond. In short, the extension the PLC bargained for is meaningless to the Plaintiffs if it does not allow for additional discovery requests. Had this been clear, the PLC would have simply filed their Rule 16 motion seeking an across-the-board extension.

### c. All plaintiffs to this litigation are bound by this Court's decision; justice requires complete general fact discovery.

The purpose of multidistrict litigation is to promote the "just and efficient conduct" of cases involving common questions of fact through "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Transferee courts charged with the responsibility of "just and efficient conduct" of the multiplicity of actions in an MDL proceeding enjoy "broad discretion to structure a procedural framework for

moving the cases as a whole as well as individually." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230–31 (9th Cir.2006). Judges must do so with an eye toward remanding cases in a condition to be tried expeditiously and to the benefit of all parties to the litigation.

In the context of an MDL, the effect of the stipulation not only impacts those plaintiffs who are represented by the PLC but extends to parties who rely on the PLC to conduct necessary discovery that is common to all of the transferred cases. Orders of the transferee court are binding on all cases pending before it and remain binding when cases are remanded to the courts in which they originated. *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 169 F.R.D. 632 (N.D. Ill. 1996). Foreclosing the PLC from completing general fact discovery will have devasting implications for all plaintiffs in this litigation—most of whom were not parties to the PLC's negotiations with defense counsel and should not be subject to harsh unintended consequences of the parties' misunderstanding.

This is particularly true given the best case for Mead is that the chief negotiator for the PLC made an error during the last day of negotiations. As noted in the attached Declaration, the PLC's lead negotiator did not appreciate Mead's position because the PLC's primary focus was to secure additional time for *new discovery*—a point reinforced by the language requiring deposition dates for depositions requested *after* entry of the Stipulation. *None* of the written communication or multiple phone conferences (which did not include Mead's counsel) contemplated such a limitation because the PLC was seeking an across-the-board

extension. Perhaps the discovery limitation language—which appeared for the first time the day before negotiations were completed—should have been caught. The simple fact is it wasn't. That error should not artificially limit *all* Plaintiffs' ability to complete general discovery based on a last-minute oversight. Given it is within this Court's discretion to fashion an order that prevents such a result and ensures that all relevant facts and evidence can be considered before reaching a decision in this case, it ought to allow the additional discovery.

### d. Defendants will not be prejudiced if the Court sets aside or amends the Stipulation.

Amending the Stipulation to permit additional fact discovery will not harm the opposing parties. Abbott has not objected to additional deposition requests made after its purported cutoff date, so any amendment permitted by this Court would not affect its obligation to produce discovery responses.[3]

The PLC's need for an extension arose largely from delays caused by the Mead Johnson Defendant's state court trial obligations. Where a party has contributed to a plaintiff's confusion or has caused delays in discovery, it cannot complain about continued discovery. Courts should not reward those who cause discovery delays. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005) (internal citations omitted).

The PLC requested deposition dates for a set of thirteen witnesses on November 21, 2023, and did not receive a substantive response until January 24,

---

[3] Abbott did object to the PLC's written discovery. However, several informal meet and confers suggest the parties will reach a compromise as to the outstanding written discovery.

2024. *See Becker Decl.* Ex. 2.Even then, Mead's counsel still did not provide dates for those witnesses. *Id.* Plaintiffs' counsel made numerous follow-ups attempting to obtain deposition dates and document production from counsel. And even when Mead provided some deposition dates, it still refused to produce three witnesses—that it produced in state court—after its belated "Apex" designation. Plaintiffs were not unreasonable in wanting to obtain responses and dates to its initial set of discovery before proceeding with additional requests. In fact, prudent counsel will use what they learn during depositions to create targeted request for future depositions. Simply put, the PLC's limited request for ten depositions, which it reduced to six, are neither overly burdensome nor prejudicial to Mead. As such, the Court should allow them to go forward.

II. **Should the Court choose to enforce the stipulation consistent with Defendant's interpretations, good cause exists to modify the Revised Schedule.**

Requests to modify or extend a deadline within a court's scheduling order are governed by Fed. R. Civ. P. 16(b). Courts are afforded broad discretion in determining whether "good cause" has been established, primarily considering whether the moving party has acted diligently. *Hussain v. Nicholson*, 435 F.3d 359, 367 (D.C. Cir. 2006). Upon showing that a previously stipulated deadline cannot be met despite the diligence of the moving party, the court may modify a schedule based on good cause.

The PLC has steadfastly attempted to advance this litigation through the discovery process, diligently maintaining a consistent line of communication and subsequent follow-ups with Defendant in an effort to timely obtain discovery and deposition dates. Any purported delay by PLC in sending additional discovery

requests to Defendants was, in part, the result of Defendants' failure to respond to prior requests.

To the extent that the Court views Plaintiffs' most recent discovery requests untimely under the terms of the Stipulation, this was not due to lack of diligence on Plaintiffs' part, but the result of a good-faith misinterpretation of the Stipulation and Revised Schedule. In such circumstances, the Seventh Circuit has found good cause under Rule 16. *See, e.g., Shank v. Carleton Coll.*, 329 F.R.D. 610, 614-15 (D. Minn. 2019) (finding good cause under Rule 16 where the late motion resulted from an "incorrect but good-faith interpretation of the scheduling order" rather than 'neglect,' or a 'litany of lame excuses'").

Courts may also consider the importance of a requested extension or modification in evaluating a party's establishment of good cause. The discovery phase is generally acknowledged to be one of, if not the most crucial phase of pretrial litigation. The importance of adherence to a specified deadline for the completion of discovery rests upon the significance of the process itself—a primary means of learning about the evidence to establish the crucial facts upon which cases are so often decided. That is particularly true where, as here, the discovery impacts not just the PLC's cases, but scores of other cases subsumed within this MDL.

Dated: June 14, 2024          Respectfully submitted,

/s/ *Timothy J. Becker*
Timothy J. Becker
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
tbecker@johnsonbecker.com
CO-LEAD COUNSEL

/s/ *C. Andrew Childers*
C. Andrew Childers
LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.
316 S. Baylen Street, Sixth Floor
Pensacola, FL 32502
(850) 435-7000
achilders@levinlaw.com
CO-LEAD COUNSEL

/s/ *Wendy R. Fleishman*
Wendy R. Fleishman
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500
wfleishman@lchb.com
CO-LEAD COUNSEL

*/s/ Diandra S. Debrosse Zimmermann*
Diandra S. Debrosse Zimmermann
DICELLO LEVITT GUTZLER, LLC
420 20th Street N, Suite 2525
Birmingham, AL 35203
(205) 453-6415
fu@dicellolevitt.com
CO-LEAD COUNSEL

/s/ *José M. Rojas*
José M. Rojas
LEVIN, ROJAS, CAMASSAR & RECK, LLC
40 Russ Street
Hartford, CT 06106
(860) 232-3476
rojas@ctlawyer.net
CO-LEAD COUNSEL

/s/ *Elizabeth A. Kaveny*
Elizabeth A. Kaveny
KAVENY + KROLL, LLC
130 E. Randolph Street, Suite 2800
Chicago, IL 60601
(312) 761-5585
elizabeth@kavenykroll.com
PLAINTIFFS' LIAISON COUNSEL

/s/*Ashlie Case Sletvold*
Ashlie Case Sletvold
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
6370 SOM Center Road, Suite 108
Cleveland, Ohio 44139
Phone: (216) 589-9280
asletvold@peifferwolf.com

**CERTIFICATE OF SERVICE**

I certify that on June 14, 2024, a copy of the foregoing document was filed electronically using the CM/ECF System, which will send notification to all counsel of record.

*/s/ Timothy J. Becker*
Counsel for Plaintiffs