UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | **MDL No 3026** **Master Docket No. 1:22-cv-00071** |
| This Document Relates to: *Hall v. Abbott Laboratories* et al., Case No. 1:22-cv-00071 | **Hon. Rebecca R. Pallmeyer** |

**The PLC's Response to the Court's November 7, 2025 Minute Order (ECF No. 726)**

On November 7, 2025, this Court directed the PLC and case counsel in *Inman* to: "[c]onfirm . . . their intention to call expert witnesses at the *Inman* trial; identify those witnesses; and state their views concerning the presentation of live testimony at a pre-trial *Daubert* hearing." ECF No. 726.

The PLC is unable to report on *Inman* case counsel's trial strategy, including which witnesses Mr. Rojas intends to call at trial. Mr. Rojas will address the Court's inquiries regarding the identify of, and his intent to call, expert witnesses.

The PLC can, however report that based on Mead's motion to exclude Dr. Spector in *Inman*, further testimony by Dr. Spector will not provide any additional information necessary to resolve the motion. As such, the Court should not conduct a live testimony Rule 702 hearing.

**A.  There should be no live testimony of Dr. Spector at the *Inman* Rule 56/702 motion hearing.**

Live testimony from Dr. Spector is unnecessary for the Court to adjudicate the Rule 702 motions in *Inman* for four reasons: 1) there is no factual dispute related to the Rule 702 challenge in *Inman* requiring additional evidence to assess the expert's opinion; 2) the Court previously considered this exact issue in ECF No. 646 and rejected it; 3) to the extent live testimony is ever required, it should occur in connection with the new or supplemental expert reports contemplated under CMO

No. 15; and 4) the "unique" facts associated with *Inman* are not representative of the vast majority of infants in this MDL rendering any additional testimony largely irrelevant.

### 1. There is no evidentiary dispute that is material to Mead's Rule 702 motion requiring a need for live testimony.

Live testimony is not a prerequisite to adjudicate a Rule 702 motion. *See United States v. Xue*, 597 F. Supp. 3d 759, 770–71 (E.D. Pa. 2022). While the district court has discretion to hear live testimony, "[a] hearing is especially not necessary where a court 'already ha[s] before it the depositions and affidavits of the [proposed] experts." *Id.* (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000)); *see also State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.,* No. 3:08-CV-436, 2013 WL 3013531, at *4, (N.D. Ind. June 17, 2013) (rejecting live testimony because the parties were unable to articulate "what missing information a hearing would supply ...") *Id.* at 9, fn. 3; *In re Depakote*, No. 14-CV-847-NJR-SCW, 2014 WL 4775868, at * 3 (S.D. Il. Feb. 13, 2015). Courts in this District have reached the same conclusion. *See Quirin v. Lorillard Tobacco Co.*, No. 12 C 2633, 2014 WL 904072 at * 2 (N.D. Ill. Mar. 7, 2014). The same is true here; live testimony will elicit no new evidence because the Court has a full record.

Here, the Court has two depositions from Dr. Spector, both of his reports, and has ruled or commented upon the admissibility of his testimony in three separate opinions. The Court has all it needs to adjudicate the admissibility of Dr. Spector's opinion in *Inman*. That is particularly true given there is no dispute regarding the factual record. The gist of Mead's argument is that for Dr. Spector's opinion to "fit" in any particular case, an individual plaintiff must identically mirror some study the expert relies upon. No. 1:22-cv-03737, ECF No. 53 (Def's Brief), at 1. Setting aside that is not the law nor how epidemiology works (*see* ECF No. 705), live testimony will not aid the Court in resolving Mead's argument. No amount of questioning will change the fact that there is no dispute that there is no study protocol that contemplated the following experiment: human milk—followed by non-preterm cow's milk-based formula—followed by human milk—followed by preterm cow's milk-based

formula (*i.e.,* the child's feeding regime). During his deposition, Dr. Spector was cross-examined on the fact that his report did not segregate between either product type (Abbott's Similac versus Mead's Enfamil), or composition of the formula consumed (fortifier versus formula). Instead, he opined that given the components of infant formula are structurally similar, all could be considered in one meta-analysis.

While there is disagreement over the interpretation of several individual studies (*i.e.*, whether other studies evidenced infants who were exposed to other supplements (such as probiotics, nutrients or additional fats)), none of those disagreements require testimony from a witness given the studies speak for themselves (and were repeatedly testified about during Dr. Spector's deposition). And even if that were not the case, it does not change the fact that Mead's argument is *wholly* a question of law— *i.e.*, does Rule 702 require that an individual infant's feeding regime be identical to that of a particular study so as to "fit" within Dr. Spector's opinion? Irrespective of the outcome (and the clear answer is that it does not), no amount of live testimony will change an outcome that requires a purely *legal* analysis. Additional testimony from Dr. Spector (or any expert) does nothing to illuminate the answer to that (legal) question.

> **2. The Court previously considered this exact issue and resolved it in ECF No. 646; Mead's request for live testimony is an effort to undercut the Court's ruling that Dr. Spector's general-causation testimony is admissible.**

In the three previous Bellwether trial cases, the Court granted Abbott's summary-judgment motions, concluding the plaintiffs were unable to establish: 1) causation-in-fact, 2) warnings causation, and/or 3) design defect. While Abbott did not endeavor to re-adjudicate the Court's Rule 702 General Causation Order (ECF No. 646), it did advance arguments that Dr. Spector's opinion did not "fit" within the unique idiosyncrasies of the individual cases. In response, the Court excluded Dr. Spector's opinion in *Diggs* (concluding the report failed to extrapolate to the gestational age and weight of that

infant (born after 34 weeks gestation)) and expressed concerns regarding the fit of his opinion in *Brown* (predicated on the total percentage of formula the infant received over his life).

Abbott's challenges differ from Mead's in two fundamental respects. First, unlike Abbott's challenges, Mead's does not require additional analysis by Dr. Spector. No extrapolation from a study design is necessary given the *Inman* child's gestational age and weight (29 weeks and 670 g). Nor is the total percentage of formula an issue here—Mead never raised the issue because the *Inman* child's feeds consisted of >50% cow's-milk-based products from the time of his birth to his development of NEC. In short, there is no additional testimony Dr. Spector can provide (beyond his prior testimony and report) that will further clarify the issue.

Second, Mead's motion is ultimately an attempt to fundamentally challenge this Court's Order denying Defendants' Motion to Exclude Dr. Spector. ECF No. 646. Specifically, Mead's twist on the "fit" refrain is that unless the feeding regime in an individual case mirrors that of some specific study (even if the purported distinction is exposure to a different types of cow's-milk product), that particular infant does not "fit" into Dr. Spector's opinion.

The Court, however, flatly rejected this type of "mixed-feeding" argument in ECF No. 646. Specifically, describing Defendants' argument, the Court noted:

> Because the vast majority of cases in the MDL involve some amount of mixed feeding or transition from mother's milk to formula (i.e. less that 100% CMBF diet), Defendants argue that Dr. Spector's conclusion do not fit the facts of these cases.

*Id.* at PageID# 29130. Put another way, Defendants (both Mead and Abbott) argued that because the studies involved different amounts of CMBF (on a percentage basis), types (formula versus fortifier), or manufacturers (*i.e.*, Similac, Enfamil, or other manufacturers), Dr. Spector's opinion could not "fit" into any case because he did not isolate CMBF products by manufacturer or type. The Court flatly rejected this argument holding: "That does not make his causation opinion 'wholly inapplicable' to cases involving mixed feedings of CMBF and human-milk. On the contrary, Dr. Spector's broad

analysis of studies exploring a range of different feeding mixtures (*see supra* n. 8) applies across the diverse feeding methods in the MDL cases." *Id.* at PageID# 29130–31. That is relevant here because it is undisputed that the diverse feeding method of the *Inman* child included *only* human milk and cow's-milk-based products. No amount of live testimony will further expound on this issue because Dr. Spector's opinion is predicated on the notion that the greater the exposure to cow's-milk-based products, the greater the risk of developing NEC. In short, the Court may rely on the well-established record to rule on this issue—just as it did in ECF No. 646.

### 3. To the extent the Court is inclined to hear live testimony, it should do so in connection with the impending Rule 702 challenge contemplated in CMO No. 15.

On October 28, 2025, the Court entered the Second Wave Bellwether Protocol. CMO No. 15, ECF No. 724. CMO No. 15 allows the parties to supplement previous expert reports and/or submit new expert reports altogether, including general-causation reports. *Id.* at PageID# 31495–97. Litigation is an iterative process. As litigation matures, the parties learn more about both the case and the science. Armed with that knowledge, and under the agreed-to parameters of CMO No. 15, the PLC is preparing both supplemental and new expert reports to address issues identified in the Court's previous Rule 702 and summary-judgment opinions (as well as others from new and emerging science). A more appropriate time for live testimony, if at all, would be in connection with any future Rule 702 challenges where most, if not all, issues will be resolved in one setting.

Given CMO No. 15's requirement that the Second Wave Bellwether case counsel "certify to the Court that they will comply with CMO No. 13, including by allowing Co-Lead Counsel or their designees to conduct the case-specific pretrial workup and briefing in the bellwether cases, including identifying the witnesses to be noticed for deposition, determining the lead examiner(s) for each noticed deposition, completing all bellwether-related briefing and arguments, and selecting the trial

team for bellwether cases" (ECF No. 724, PageID# 31493), the Second Wave Bellwethers are better suited for any testimony or hearings that could impact the MDL as a whole.

> ### 4. Mead's assertion that the *Inman* case is unique weighs against the presentation of live testimony in conjunction with the *Inman* Rule 56/702 hearing

MDLs are intended to "promote the just and efficient conduct" of consolidated proceedings. 28 U.S.C.A. § 1407 (West). The goal of a bellwether trial is to "garner information useful for the parties to evaluate the strengths and weaknesses of their arguments and evidence as well as to assess the risks and costs of litigation." *In re Hair Relaxer Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-0818, 2025 WL 354410, at *1 (N.D. Ill. Jan. 31, 2025). To garner that information, "the results of the bellwether trials must be reasonably representative of all the cases in the MDL." *Id.* A plaintiff whose specific facts are so out of the ordinary that they are "not compatible with a study protocol" is non-representative and does not advance the goals of multi-district litigation.

Here, Mead itself acknowledges that the facts of this case are unique. No. 1:22-cv-03737, ECF No. 53 (Def's Brief), at 1, 6. Even assuming that Mead is correct, it begs the question why Mead selected *Inman* as its sole Bellwether pick. CMO No. 7, ECF No. 210 ("the parties shall select cases that they have a good faith believed are representative of the body of then-filed cases as a whole"). In any event, such uniqueness weighs in favor of deciding the *Inman* motions on the written record. Arguably, the purpose of live testimony is to secure results that are generally applicable to large segments of the MDL. But if Mead is correct, *Inman* may be singularly unique, meaning the parties (and the Court) will spend countless hours and resources preparing for a hearing to shed light on a case that impacts an insignificant proportion of the MDL's make-up. Such a hearing does not advance the overarching goal of this MDL, especially when considered against the backdrop of CMO No. 15. As such, this Court should decline to hear live testimony with regard to the pending 702 motions in *Inman.*

## II.    Conclusion

Live testimony in connection with a *Daubert* challenge is designed to further expand on the underlying record. Where the record is complete, as it is here, live testimony is not required. Because the record is clear, and additional testimony will not provide additional insight as to the narrow issue Mead's motion rests on, there is no need to expend the time and resources to conduct such a hearing. That is particularly true given *Inman* may (literally) be an audience of one. Accordingly, the Court ought to decline to hear live testimony as it relates to Dr. Spector.

Dated: November 14, 2025                    Respectfully submitted,

*/s/ Timothy J. Becker*
Timothy J. Becker
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
(612) 436-1800
tbecker@johnsonbecker.com
CO-LEAD COUNSEL

*/s/ C. Andrew Childers*
C. Andrew Childers
LEVIN, PAPANTONIO, PROCTOR, BUCHANAN,
O'BRIEN, BARR & MOUGEY, P.A.
316 S. Baylen Street, Sixth Floor
Pensacola, Florida 32502
(850) 435-7000
achilders@levinlaw.com
CO-LEAD COUNSEL

*/s/ Diandra S. Debrosse Zimmermann*
Diandra S. Debrosse Zimmerman
DICELLO LEVITT LLP
505 20th Street N. Suite 1500
Birmingham, Alabama 35203
(205) 453-6415
fu@dicellolevitt.com
CO-LEAD COUNSEL

*/s/ Wendy R. Fleishman*
Wendy R. Fleishman
CLANCY FLEISHMAN, LLP
40 Wall Street, Suite 2506
New York, New York 10005
(917) 992-4550
WRF@TheCFlaw.com
CO-LEAD COUNSEL