1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
                                    )  MDL No. 3026
IN RE:  ABBOTT LABORATORIES,        )
ET AL., PRETERM INFANT              )  Master Docket No. 22 C 71
NUTRITION PRODUCTS LIABILITY        )
LITIGATION                          )  Case No. 22 C 3737
------------------------------      )  Case No. 22 C 1991
This Document Relates To:           )
                                    )
INMAN v. MEAD JOHNSON &             )
COMPANY, LLC, et al.                )
                                    )  Chicago, Illinois
KELTON v. ABBOTT LABORATORIES,      )  April 28, 2026
INC.                                )  5:30 p.m.
```

TRANSCRIPT OF PROCEEDINGS - VIDEO STATUS HEARING
BEFORE THE HONORABLE REBECCA R. PALLMEYER

APPEARANCES:

```
For PLC and          JOHNSON BECKER PLLC
Kelton Plaintiffs:   BY:  MR. TIMOTHY J. BECKER
                     444 Cedar Street, Suite 1800
                     St. Paul, Minnesota 55101

                     CHILDERS, SCHLUETER & SMITH, LLC
                     BY:  MR. C. ANDREW CHILDERS
                     1932 N. Druid Hills Road, Suite 100
                     Atlanta, Georgia 30319

For Inman Plaintiffs: LEVIN, ROJAS, CAMASSAR, & RECK LLC
                     BY:  MR. JOSE M. ROJAS
                     40 Russ Street
                     Hartford, Connecticut 06106


For Defendant        COVINGTON & BURLING LLP
Mead Johnson:        BY:  MS. PHYLLIS A. JONES
                     One CityCenter, 850 Tenth Street, NW
                     Washington, DC 20001

                     STEPTOE LLP
                     BY:  MS. RACHEL M. CANNON
                     227 W. Monroe Street, Suite 4700
                     Chicago, Illinois 60606
```

APPEARANCES CONT'D:

For Defendant            KIRKLAND & ELLIS LLP
Abbott Laboratories:     BY:  MS. REBECCA C. FITZPATRICK
                         333 W. Wolf Point Plaza
                         Chicago, Illinois 60654

Court Reporter:          HANNAH WILLIAMS, RMR, CRR, FCRR
                         Official Court Reporter
                         219 S. Dearborn Street, Room 2504
                         Chicago, Illinois 60604

                            *   *   *   *   *
                 PROCEEDINGS REPORTED BY STENOTYPE;
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard by video:)

THE CLERK: 22-cv-3737, *Inman, et al., v. Mead Johnson*, and also for the *Kelton* case, 22-cv-1991, for status.

THE COURT: Okay. Your appearances? Beginning with counsel for the PLC.

MR. BECKER: Good evening, Your Honor. Tim Becker on behalf of the PLC and the Keltons.

MR. CHILDERS: Good morning, Your Honor. Andy Childers on behalf of the PLC and also the Kelton plaintiffs.

THE COURT: Okay. And for the defendants?

MS. JONES: On behalf of Mead Johnson, Phyllis Jones and Rachel Cannon are on.

THE COURT: Okay.

MS. FITZPATRICK: And Rebecca Fitzpatrick on behalf of Abbott.

THE COURT: Great. Good afternoon.

I have received Mr. Becker's letter. I assume everyone else has seen that as well. What's the -- what's our current status?

MR. BECKER: Your Honor, Tim Becker for the record. I'll let the defendants speak for themselves. We've had a number of meet and confers, tried to make as much progress as I think we could make. I still think that the folks at Kirkland are of the opinion that the *Kelton* case should remain in August. The PLC's view is somewhat agnostic, but only minorly

so in that, you know, our biggest concern is and remains that *Inman* is ready to go and will be ruled on eminently.

And given the number of experts that emerged out of CMO 15, which is roughly 11 on the defense side and six on our side, I think the amount of briefing is going to be substantial. We're in the process of negotiating and have made some good progress with the folks at Kirkland on behalf of Abbott to come to an agreement on page limitations, but it's hard to envision a scenario where there are not a hundred or so pages of briefing and a thousand pages of exhibits connected to the Rule 56 and Rule 702 motions in the *Kelton* case.

We just don't -- no matter how hard we know you'll work, we just don't think you're going to have enough time to get through it all and rule in the manner you'd like to rule to maintain and keep the August trial setting.

MS. FITZPATRICK: Your Honor, if I may.

THE COURT: Sure.

MS. FITZPATRICK: We offered the PLC September and August trial dates just last month when we were negotiating changes to the summary judgment schedule, and they told us then that only August worked, and so we negotiated a new summary judgment schedule premised around the fact that they wanted August. September would have avoided this summary judgment trial tightness that we're now hearing so much about.

In addition, in those negotiations, Abbott pushed the

plaintiffs to have summary judgment briefed earlier in June, and they insisted on pushing it back. That too would have avoided the tightness that we're now hearing about.

So we understand that the summary judgment order cannot be as fulsome as you do otherwise. We absolutely hear you on that and we understand that. We accepted that already, and we say that the PLC did too.

And then acting in reliance on the several times that an August trial date has been confirmed and reconfirmed, we scheduled ourselves accordingly, so the trial team and the expert witnesses blocked August and not September and October. And so we did as directed. We went and looked at our availability in September and October, and we have a number of big problems.

First, two of our key experts -- so even putting aside, you know, other experts, but our key experts are conflicted out in the weeks of September 22nd and 28. And then Mr. Hurst has a trial in the middle of September. That makes it just sort of physically impossible for him to turn around and do a NEC trial starting September 22nd and 28, or 28.

And then third, and this part isn't public yet because there's existing counsel, but another client has come to Kirkland and Mr. Hurst with a three-week trial in October and at this stage, we expect that to happen. It's just not officially confirmed yet because it isn't public yet.

So we just don't think that Abbott can do a trial in September or October, and instead, we had all scheduled around an August trial, which we think is doable, and which both sides have accepted.

MR. BECKER:  So, Your Honor, a couple of things in response to that, and I appreciate where Ms. Fitzpatrick's coming from, but the reality of it is, is that there were mistakes on both sides that were made in the CMO 15 schedule.

For example, Abbott allowed itself one week to respond to our expert reports.  Now I don't know why they only gave themselves a week, but about a week and a half to two weeks before we served our reports, we had conversations where I alerted Abbott to the fact that we were intending to file a series of new experts, including some general causation experts, and that those reports would be fulsome.  And indeed they are.  They are hundreds and hundreds of pages of reports.

And I said to them, look, if you want to keep the deadlines that we have, we're happy to live with the one-week turnaround, but that doesn't seem particularly fair to you. They reached the same exact conclusion and we extended that schedule by a month to accommodate them on a schedule that they had originally insisted on.  And even in that context, Judge, they asked for additional time on three following experts.

Now I'm not throwing anybody under the bus.  I mean, everybody on this call are good lawyers and have worked in good

faith to accomplish what we need to accomplish. But part and parcel of why we are here is because Abbott chose to only give themselves a week to respond to expert reports, which was never a realistic deadline and was never going to be held. As a result of that, we have the schedule we have now.

I've also had conversations with Mr. Hurst about his impending conflicts and I sympathize with those. Our letter was simply to say we're available in September, but we also noted that the Court has the *Cresap* trial setting and *Cresap* is not going forward in November, we could try the case in November.

The point is, is that nobody got here through bad faith. Everybody is working as well as they can and best as they can. *Inman* preceded us and is ready to go.

Our preference is, as I'm sure is the Court's, and frankly I'm sure it's Abbott's as well, that, you know, given the stakes in this case and the likelihood of an appeal by one side or the other, because of the fact that this is an MDL and there are thousands of people that are relying on us on our side and Abbott's client is relying on them, that it does not serve any of our purposes to have anything other than the work you would typically put into issuing an order of summary judgment/Rule 702 of this magnitude.

So, again, this is not an issue where the PLC is not ready, it's not an issue where *Kelton*'s not ready. In fact,

we're taking depositions today. We will be ready. We will meet the briefing deadlines. We're simply trying to find a time that works for everyone.

And given the sequencing of how this has rolled out, *Inman* is first. If you decide to make *Kelton* first, we will be ready to go. But what seems fair to us and what seems prudent in light of where we are today is that we slide -- if Mr. Hurst is not available in September and October, we slide the *Kelton* case into the *Cresap* setting in November.

MS. FITZPATRICK: May I respond briefly, Your Honor?

THE COURT: Of course. Yeah.

MS. FITZPATRICK: When we took the PLC up on their offer of more time for our responsive expert reports, that is when we said, we could actually -- at that point, we could do a trial in September and we made that offer and the PLC told us that their experts could not do September. So we stuck with August. That's also when we said we think we should -- we should make the summary judgment briefing occur more in June and on a tighter schedule in June so that we are building in more time before the August trial date, and the PLC said no to that too.

So to turn around now and say that these things, which are things we agreed to and honestly problems of the PLC's making, necessitate moving the August trial date to us feels unfair.

MR. BECKER: Judge, if I could, the reason I put this chart together for you is so you could see in color what -- when our experts were available. And in fact, the statement we told counsel was correct, Dr. Sucre, who you know is the leading general causation expert in the case, out the entire first week of September. Dr. Savitz, who is a new general causation epidemiologist, is also out that entire week.

Mr. Childers and I went back, after it became apparent that Mr. Rojas and the folks from Mead were going to be unable to hold the trial date in July, moved a bunch of stuff around on our calendar, not knowing that Mr. Hurst had a preexisting conflict and cleared the second half of September. That's why we're here. There's no gamesmanship happening. We're simply trying to problem-solve for something that came out of the blue of nobody's making.

And the -- look, we've been all been doing this a long time. These things happen. Right? The only distinction between trying a case, the *Kelton* case in August versus November, is 75 days. Given the fact this case has gone on for three and a half years, we've been through three bellwether cases with Abbott, that is hardly prejudicial.

So our view again remains, we will be prepared to do whatever it is you want us to do. If that is show up in your courtroom and try *Kelton* in August, we'll do it. Our view is, sequence wise and for the benefit of the MDL, we need to get

some adjudication on the Mead side as well as on the Abbott side, and Mead is in queue for you to decide.

THE COURT: Okay. Couple of questions I have. One: I find a list of experts kind of daunting. Is anyone anticipating Daubert motions?

MR. BECKER: Judge, I can speak for the PLC and I alerted defense counsel to this in our meet and confer. We intend to file an offensive motion for summary judgment on a number of elements based on the record we obtained in *Kelton* that was deficient or lacking in some of the prior cases. And we also anticipate moving on a number of their experts based on what we've seen in the depositions to date.

It's not a guarantee, but I would anticipate that, you know, four or five experts will probably be facing 702 scrutiny. I don't mean to speak for the folks at Kirkland, but, you know, if past is prologue, I suspect we'll see a motion on all six of our experts, or four of them at least. And I know they intend to file a motion for summary judgment.

MS. FITZPATRICK: We do intend to file a motion for summary judgment. We have not deposed any of the PLC's experts yet, so hard to say on the Dauberts.

THE COURT: I'm sorry, you have -- you haven't deposed those then? Is that -- did you say you hadn't opposed them or deposed them?

MS. FITZPATRICK: Deposed. Deposed. Deposed.

THE COURT: Have not yet deposed plaintiff's experts in the *Kelton* case?

MS. FITZPATRICK: Correct. It's happening before May 15th. It's ongoing, but we haven't done one yet.

(Cross-talking.)

MR. BECKER: I'm sorry, Rebecca. Expert depositions started last week, Your Honor, and will continue in earnest through the 15th, and then there's one straggler that we're going to depose on the 27th of May.

THE COURT: Okay. Ms. Fitzpatrick, I know that this is not what you want to hear, but I can't -- I can't in good conscience proceed to the *Kelton* trial in August.

MS. FITZPATRICK: I understand, Your Honor.

THE COURT: I just can't do that. So we need to find another date. The November date is okay with me. October is great for me, but I know it sounds -- it's not great for Mr. Hurst. And I understand you can't give me the details on that, but I take you at your word that in good faith, Mr. Hurst has -- is going to have to what sounds like an unavoidable conflict in October.

I think we should reset *Inman* to start in -- on the August date that we had set aside for *Kelton*. I will assure you again that we are making good progress on the motion for summary judgment in that case and I do expect a prompt ruling in *Inman*. You'll get it -- you'll certainly get it in -- by

12

the middle of May, probably earlier.

I recognize you're going to have to file some additional motions. I'll be interested in seeing what plaintiffs have to -- have to file on that, but I recognize that there is likely to be some motion practice on experts.

And what I have is Mr. Becker's identification of days on which his experts are not available. I don't have the corresponding dates for Ms. Fitzpatrick's expert, and it sounds as though -- that is something that was discussed with respect to September.

So I think probably what I need to do is ask for those dates, the unavailability dates for the plaintiff -- defendant's experts, assuming they all are able to testify or alternatively simply set *Kelton* right now for November.

MS. FITZPATRICK: I --

THE COURT: On the *Cresap* dates.

MS. FITZPATRICK: Okay. That makes sense. Thank you, Your Honor. I would ask for some more time for us to figure out Mr. Hurst's conflict in particular, so if we can get back to you about the month of October.

THE COURT: Of course.

MS. FITZPATRICK: And we can --

THE COURT: That's fine.

MS. FITZPATRICK: And we can do the experts' availability as well.

THE COURT: In the meantime, I want to make sure that this is -- it's clear: Mr. Rojas, I know you -- I have you with us, and I have Ms. Cannon or somebody's representing Mead Johnson. Correct?

MS. JONES: Yes, both myself and Ms. Cannon, Your Honor.

THE COURT: Okay. Ms. Jones, right. Okay. And you're on board to start the *Inman* trial in August?

MS. JONES: I think -- I think conceptually, that's fine, Your Honor. We did go about the process of checking with our experts --

THE COURT: Thank you.

MS. JONES: -- in terms of their availability, and as I shared with Mr. Rojas and Mr. Becker and Mr. Childers earlier today, we would have a hard time presenting any of those experts before August the 24th because of professional and personal commitments that they all have, but I think if we could probably work out a way such that Mr. Rojas's case will be situated such that that won't be a problem, we're -- I'm just very sensitive to not being in a situation where Mr. Rojas's case in chief is completed and we're not -- we don't have someone right at the ready.

But at least our two principal neonatologist experts could not testify until the week of the 24th, and we just need to be sensitive to that in terms of the overall schedule. But

broadly, if the Court's inclination is to move *Kelton* out of August, then we can work with August for the *Inman* trial. And I think Mr. Rojas and I have an understanding on that.

THE COURT: Okay. And with respect to the timing, I would be willing to, you know, start -- say, start it a week later if that's better, to accommodate the date of the 17th.

The other possibility is, and, you know, jurors are -- often find it welcome to take one day off each week, so we can talk about that.

So Mr. Becker had proposed, it sounds like this is agreeable, I'm not sure, to 35 hours per side. I want you to talk about that as well, because I think it will be important, pretty important to set a pretty clear schedule about whose -- what days we're using and how many hours we're using per side. I'm not ruling on the 35-hour-per-side proposal right now but I hope you'll talk about that as well and come up with either agreement or counterproposal so that I can be pretty clear about, when we do pick a jury, telling them how many days they're going to be there.

MR. BECKER: Your Honor, one last housekeeping measure. We had, in I think it was the most recent iteration of the schedule, proposed July 13th, 14th, or 15th for the day for oral argument. When we made that, I don't think anybody really had any visibility on whether or not the Court would want live testimony and if so, from whom or whether you would

like us to meet and confer on that.  But in any event, I guess the first question is, is that a hearing that you think you'd want live testimony in as it relates to the 702 issues?  And if not, does it make sense to set a hearing date today, just so that it's, you know, locked in stone?

THE COURT:  You're talking now about a hearing on -- potentially on summary judgment in *Kelton* and as well on Daubert motions in *Kelton*; is that right?

MR. BECKER:  Yeah, I apologize, Your Honor, I switched gears back to *Kelton*.

THE COURT:  Yeah.

MR. BECKER:  In the schedule that we proposed for you, we had a combined Rule 702/56 hearing date set.  The dates we proposed were the 13th, 14th, and 15th, which I think coincide with your calendar.

What I don't have total clarity on right now is whether or not, you know -- if you wanted live testimony from certain witnesses, whether or not, for example, Dr. Savitz or Dr. Sucre would be available, I can certainly find that out next 24 to 48 hours.

THE COURT:  Yeah, I -- yeah, right now, I don't expect that we would need -- right now, I don't expect that I would need to hear from the experts at that hearing.  What I'm going to suggest we do on that, though, is let's indeed set a firm date.  Your suggestion was the 13th, 14th, or 15th.

I would actually -- I would actually slightly prefer -- remind me when the last briefs are coming in. May 15th?  When are the last -- July 15th; right?  When are the last briefs --

MR. CHILDERS:  I believe it's July 10th, Your Honor. It's during that week.

THE COURT:  Which is a Friday.  Yeah, then you know what, I would want a little bit more time to digest the briefs before I have you in for oral argument.  Otherwise it will just be a matter of my listening and not asking questions.

So let's look, for that purpose -- I'm just looking at the calendar.  Hold on.

MR. BECKER:  I'm just throwing this out there, Your Honor.

THE COURT:  Here it is.

MR. BECKER:  If *Inman* is contemplating starting, you know, the second or third week of August, you know, perhaps we could find some dates that, you know, the first week --

THE COURT:  Yeah, I was going to say -- I was going to suggest exactly that.  Maybe August 5th or August 6th.

MS. FITZPATRICK:  Given the volume of -- with summary judgment arguments from both sides now, plus we heard planned Dauberts by the plaintiffs, and one has to assume from Abbott, should we have multiple days, Your Honor?

THE COURT:  Yes.  How about both those days, the 5th

and the 6th?

MR. BECKER: Point of personal privilege here, Your Honor, if possible, I can move things around, would it be okay to do it on the 4th and the 5th as opposed to the 5th and the 6th?

THE COURT: Sure. 4th and the 5th are fine, yeah.

MS. FITZPATRICK: Given that that was right on top of the previous trial date, I imagine that's fine for Abbott.

THE COURT: Great. All right. Great. We've got -- at least we've made some progress this afternoon. What other issues do we need to address?

MS. JONES: Your Honor, we have started discussing with Mr. Rojas a more granular pretrial schedule that now that we have a better sense of when the trial start date will actually be. With Your Honor's permission, we'll likely to try to just map something out more concretely and submit it for the Court's input if that's acceptable to Your Honor.

THE COURT: Yes, that would be great, Ms. Jones. Thanks.

MS. JONES: Okay.

THE COURT: All right. Well, thank you. Thank you for your time. As always, you know, the good news to hear is I've got very good lawyers in this tough case.

And, again, you can expect to hear from me relatively quickly on the *Inman* summary judgment motions and then we'll

talk about more specific trial scheduling for that trial.

Ms. Fitzpatrick's going to get back to us again, and we'll get

some firm dates then for *Kelton* as well.  Thank you.

(Concluded at 5:52 p.m.)

*   *   *   *   *

I certify that the foregoing is a correct transcript, to the extent possible, of the record of proceedings in the above-entitled matter, given the limitations of conducting proceedings remotely.

/s/ *Hannah Williams*_____          May 5, 2026____
Hannah Williams, RMR, CRR, FCRR
Official Court Reporter