# KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza
Chicago, IL 60654
United States

James F. Hurst, P.C.
To Call Writer Directly:
+1 312 862 5230
james.hurst@kirkland.com

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

May 8, 2026

**VIA ECF**

Re: *In re Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litig.,* Case No. 1:22-CV-00071

Dear Judge Pallmeyer:

We write regarding the PLC's May 4, 2026 response (Dkt. 786) to Defendants' proposal for addressing the fortifier-only cases. As this Court appreciates, the parties in MDLs routinely deal with more than one issue at a time. That is especially true in this MDL and litigation generally. Here, the PLC continues not to meaningfully engage with Defendants' proposal or propose a workable approach of their own for resolving the fortifier-only cases.

On Defendants' proposal, the PLC's response boils down to a complaint about timing. But where they infer some nefarious motivation, there was none. The parties first started discussing how to resolve case categories like the fortifier-only cases **last summer**. *See*, *e.g.*, Ex. 1, 2025-06-11 Hr'g Tr. at 10-16. Fortifier-only cases specifically were raised with the Court in October 2025. *See* Ex. 2, 2025-10-16 Hr'g Tr. at 17-20; Ex. 3, 2025-07-16 S. Truax Email to PLC. Then, again, at the February 13, 2026 status hearing, the parties actively discussed submitting a proposal for a new CMO to address fortifier cases, and the Court requested such a proposal be submitted on April 16, 2026. Dkt. 785-1; Dkt. 748. After hearing nothing from Plaintiffs, Defendants sent the proposal at issue to the PLC on April 16. Dkt. 785-2.

Bringing the issue to the Court now—after repeatedly trying and failing to get the PLC to engage on our own—is in no way some kind of "strategic gambit" to take advantage of a busy schedule for the PLC. There will always be other issues ongoing in this MDL—that is the very nature of multi-district litigation. The original Wave 2 schedule, for example, contemplated **three trials occurring within 12 months**, each with overlapping discovery, expert, and trial deadlines. Dkt. 724. In comparison, the expert discovery and briefing required under Defendants' proposal would be far less burdensome. Moreover, Defendants are in active litigation in multiple jurisdictions outside of this MDL, with their own deadlines over the next weeks and months and multiple trials scheduled over the next year. A busy schedule cannot be a roadblock to moving forward at all on issues that both sides concede are important for this MDL.

By contrast, the PLC do not dispute the central facts underlying Defendants' submission, nor can they. It remains true that (1) consistent with the scientific and medical consensus,

## KIRKLAND & ELLIS LLP

May 8, 2026
Page 2

Plaintiffs' own experts have disclaimed fortifier causation; and (2) the question of fortifier causation is important and "should [not] remain unresolved."

The PLC's suggestions for moving forward on the fortifier issue—either by "off the record" discussion or claiming that Defendants should select fortifier bellwethers—are not workable. As Defendants' outlined in our original submission, courts regularly engage in "piecemeal" adjudication of issues to streamline MDLs. Plaintiffs do not engage with that authority and cannot point to any reason why such an approach would be inappropriate here. Cross-cutting issues like general causation are far better suited to resolution through expert discovery and briefing than through "off the record" discussion.

Moreover, the Parties' experience from Waves 1 and 2 of this MDL make clear that the bellwether process will not lead to a resolution on fortifiers. The bellwethers that have proceeded thus far have included cases involving mixed feeding of both fortifier and formula, but Plaintiffs have specifically declined to pursue claims regarding fortifier.

Nor is the selection of a single fortifier-only bellwether case an adequate solution here. A bellwether case, by its nature, could be resolved on any number of alternative case-specific grounds—as this Court has seen in the Wave 1 cases. Not only would a bellwether significantly increase the burden on all parties and subject busy healthcare providers to unnecessary depositions and written discovery, it would risk leaving the remaining fortifier cases in continued limbo, with no binding resolution of the common issue that defines them as a group. The Court and the parties deserve a more efficient path forward.

Defendants respectfully request that the Court set a schedule for expert discovery, briefing, and resolution of the fortifier causation issue, consistent with the proposal outlined in our prior submission.

Very truly yours,

*/s/ James F. Hurst*
James F. Hurst

2