**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL 3026** |
| | **Hon. Rebecca R. Pallmeyer** |
| **This Document Relates to:** | |
| **ALL ACTIONS** | |

**THE MEAD JOHNSON DEFENDANTS' MOTION
TO AMEND CASE MANAGEMENT ORDER NO. 12**

Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (together, "Mead Johnson") respectfully request that this Court amend Case Management Order No. 12 ("CMO 12") in order to ensure that plaintiffs filing suit against Mead Johnson conduct proper pre-suit diligence and post-filing investigation, and that Mead Johnson is only sued in cases where its products have been used <u>before</u> a diagnosis of necrotizing enterocolitis ("NEC").

CMO 12 is crystal clear in its purpose:

> All parties agree that **Defendants Mead Johnson & Company, LLC and/or Mead Johnson Nutrition Company ("Mead Johnson") should only be named in cases in which the subject Infant ingested products that Mead Johnson itself manufactured and/or distributed**. ECF No. 461 at 1. This Order sets forth a protocol for targeted product identification discovery to third parties and, in limited circumstances, to Mead Johnson, that may be conducted in non-bellwether cases, and allows Mead Johnson to move by Order to Show Cause pursuant to this Order to dismiss cases where there is no evidence that an infant received Mead Johnson product.

CMO 12, ECF No. 507 at ¶ I (emphasis added).  In doing so, CMO 12 implements one of the most basic threshold requirements of litigation: that plaintiffs conduct the diligence necessary to identify the proper defendant and formulate a good-faith basis for a claim before filing their complaint.

*See* Fed. R. Civ. P. 11(b)(2). Unfortunately, in the two years since CMO 12 has been entered, it has become clear that amendment is necessary for CMO 12 to effectuate its purpose.

First, too many plaintiffs (more than half!) have shirked their CMO 12 responsibilities, forcing Mead Johnson to expend considerable time and expense to ensure compliance. This pattern of behavior turns the intent and purpose of CMO 12 on its head. CMO 12 requires plaintiffs − not Mead Johnson − to conduct the requisite due diligence to establish product identification or dismiss their claims and gives them more than sufficient time to do so. *Id.* at ¶¶ III.A.3, III.6.a. But plaintiffs often wait until Mead Johnson sends a notice of a CMO 12 deficiency or files a Motion for an Order to Show Cause before producing medical records of product identification, beginning to look for such records, or dismissing Mead Johnson.

Second, certain plaintiffs in this MDL have taken absurd positions with regard to what it means to "identify the specific pre-term product that allegedly caused the injury at issue," i.e., NEC. *Id.* at III.B.1. A number of plaintiffs claim to have product identification when the medical records clearly show that an infant received Mead Johnson product only *after* the NEC diagnosis, or in cases where they lack evidence of any NEC diagnosis at all.

For these reasons, Mead Johnson requests that CMO 12 be amended, as proposed in Exhibit A, to put an end to these tactics by (i) shifting costs to plaintiffs who fail to comply with CMO 12; and (ii) requiring plaintiffs to identify the preterm product administered to the infant <u>prior</u> to the infant's NEC diagnosis.

## I.     BACKGROUND

Mead Johnson's efforts to address deficient product identification in this MDL span years. Mead Johnson first raised the issue with the Court in October 2022. Hr'g Tr. Oct. 11, 2022 at 15:4–12, ECF No. 24. The following year, Mead Johnson filed a motion to dismiss for lack of

sufficient product identification. Mot. to Dismiss Oct. 16, 2023, ECF No. 410. The Court found it "troubling" that there continued to be pending cases without positive product identification. Ord. Feb. 9, 2024 at 1, ECF No. 461 (noting that it is "troubling" that there are still pending cases without positive product identification). The Court directed the parties to negotiate a process by which the product identification issue could finally be resolved. ECF No. 496 (ordering "the parties [to] submit a proposed Case Management Order establishing a further protocol for resolving this dispute.").

On May 6, 2024, this Court entered CMO 12, which was designed to ensure that Mead Johnson is named only in those cases "in which the subject Infant ingested products that Mead Johnson itself manufactured and/or distributed." ECF No. 507 at ¶ I. Specifically, CMO 12 "sets forth a protocol" by which plaintiffs must conduct their product identification due diligence. *See id.* at ¶¶ I, III.A.2. "***Before commencing an action***, Plaintiffs' counsel are required to conduct pre-suit due diligence, including by requesting all of the infant's hospital medical and feeding records from birth through discharge and examining those records." CMO 12 at ¶ III.A.2 (emphasis added). Upon filing a complaint, each plaintiff is required to provide a Plaintiff Profile Form, medical record authorizations, and all medical records collected as part of their pre-suit investigation. *Id.* at ¶ III.A.3. In cases where the medical records "do not identify the specific pre-term infant product that allegedly caused the injury at issue" and pre-filing diligence efforts were not successful, CMO 12 allow plaintiffs to "serve a targeted subpoena on medical providers seeking only identification of the preterm nutrition product(s) administered to the infant[.]" *Id.* at ¶ III.B.1; *see also* III.B.3. CMO 12 states explicitly that "it is the obligation of the Plaintiff who served the subpoena to take appropriate steps to enforce [the subpoenas] in order to meet the deadlines set forth in th[e] Order." *Id.* at ¶ III.B.6. Plaintiffs must also provide Mead Johnson

with "any and all documents and information produced in response to the subpoenas within thirty days of receipt." *Id.* at ¶ III.B.5.

After exhausting these required efforts, if a plaintiff cannot positively identify a Mead Johnson product or show that Mead Johnson supplied the relevant healthcare facility with the type of premature infant nutrition product administered to the infant, they must either "(a) dismiss or (b) amend the operative Complaint to dismiss Mead Johnson . . . in no event longer than 120 days after filing of the operative Complaint or the entry of this Order, whichever is later." *Id.* at ¶ III.6.a. Failure to comply subjects a plaintiff's claims against Mead Johnson to dismissal upon motion. *Id.* at ¶ III.6.b.

Despite CMO 12's clear directive to plaintiffs to conduct the requisite product identification due diligence, including "requesting all of the infant's hospital medical and feeding records from birth through discharge and examining those records" before filing suit, way too many plaintiffs never fulfill their obligations. *Id.* at ¶ III.A.2. And although CMO 12 has led to the dismissal of many cases, it has come nowhere near to eliminating product identification deficiencies or compelling all plaintiffs to investigate their claims. Instead, Mead Johnson has had to expend significant time and resources chasing dilatory plaintiffs to do what their counsel stipulated two years ago was required. In essence, Mead Johnson is being forced to subsidize plaintiffs by having to review their hospital and feeding records to determine product identification, evaluate whether there is in fact evidence that the infant suffered the injury for which this MDL was created, monitor their compliance with CMO 12, and purse delinquent plaintiffs. **To date, Mead Johnson has had to send correspondence to plaintiffs in more than 300 cases — more than 50% of the cases filed against Mead Johnson — notifying them of CMO 12 deficiencies.**

The responses from plaintiffs have varied, and while some have properly dismissed, many others have responded with dilatory tactics, including:

- Issuing out-of-time subpoenas, only after Mead Johnson sent notification of non-compliance, to attempt post hoc CMO 12 compliance. *See, e.g.,* Pl.'s Resp. to Order to Show Cause, Ex. C, *Anaya Williams v. Mead Johnson & Company, LLC, et al*, No. 1:25-cv-06832 (N.D. Ill May 28, 2026), ECF No. 12;

- Belated enforcement of subpoenas served on the hospitals. *See, e.g.,* Pl.'s Resp. to Order to Show Cause at 2, *Destiny Soto v. Abbott Laboratories, et al*, No. 1:25-cv-04218 (N.D. Ill July 2, 2026), ECF No. 13;

- Producing voluminous medical records with no indication as to where, if anywhere, those medical records identify a Mead Johnson product administered to the infant before a NEC diagnosis. *See, e.g.,* Ex. B.

- Requiring Mead Johnson to review hundreds of pages of plaintiffs' medical records only to find that those records do not identify a Mead Johnson product, show use only after the infant's NEC diagnosis, or fail to demonstrate a NEC diagnosis at all. *See, e.g.,* Pl.'s Resp. to Order to Show Cause at 3, *Tomesia Dawn Whatley v. Mead Johnson & Company, LLC, et al*, No. 1:24-cv-02370 (N.D. Ill July 2, 2026), ECF No. 6 (stating that "the medical records in possession of Plaintiff from the facility in which plaintiff infant developed NEC do not mention or make notation of a Mead Johnson product.")

- Requesting product identification discovery from Mead Johnson well after the CMO 12 time period has expired. *See, e.g.,* Ex. C;

- Not responding to Mead Johnson's letters, requiring Mead Johnson to seek an Order to Show Cause, at which point plaintiffs then send records, issue subpoenas, or dismiss their claims. *See, e.g.,* Notice of Voluntary Dismissal, *Tanner Crow v. Abbott Laboratories, et al*, No. 1:25-cv-14024 (N.D. Ill. June 9, 2026), ECF No. 6;

- Requesting even more time for product identification due diligence in response to a Motion for an Order to Show Cause. *See, e.g.,* Pl.'s Resp. to Order to Show Cause at 2, *Danielle Patterson v. Abbott Laboratories, et al*, No. 1:25-cv-14024 (N.D. Ill July 2, 2026), ECF No. 10 (requesting "an extension of 45 days to provide supporting documentation for product identification" over four months after the 120-day time period under CMO 12 had expired); and

- Failing to respond to the Order to Show Cause, resulting in the Court's dismissal of cases which plaintiffs refused to dismiss voluntarily. *See, e.g., Jamale L. Martin v. Abbott Laboratories, et al*, No. 1:24-cv-06240 (N.D. Ill. Apr. 3, 2025), ECF No. 20.

This is backwards. In CMO 12, the parties stipulated that Complaints against Mead Johnson that fail to plead the ingestion of a Mead Johnson product fail to satisfy the federal pleading standards.

CMO 12 at ¶ III.A.1 ("All Complaints filed in this MDL must contain allegations sufficient to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), *including allegations sufficient to claim that that a Mead Johnson product was ingested*") (emphasis added). The typical remedy for a defendant under the Federal Rules of Civil Procedure when a plaintiff's complaint does not satisfy Rule 8 is to move to dismiss under Rule 12(b)(6), but by entering into CMO 12 Mead Johnson agreed to hold off motion practice and instead allowed plaintiffs an opportunity and a process to cure. As such, by entering into CMO 12, Mead Johnson has already significantly compromised and afforded plaintiffs meaningful concessions. *See In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011) ("[W]hen it comes to motions that can spell the life or death of a case, such as motions for summary judgment [or] motions to dismiss claims . . . it is important for the [MDL] court to articulate and apply the traditional standards governing such motions."). By ignoring the plain terms of CMO 12, too many plaintiffs have abused that process, and Mead Johnson should not be forced to offer plaintiffs additional accommodations to ensure their compliance.

CMO 12 is self-executing and clear in what it requires of plaintiffs: If product identification cannot be established, plaintiffs cannot satisfy the requirements of CMO 12 and must dismiss their cases. *See* ECF No. 507 at ¶¶ III.A.3, III.B.2, III.6.a. It is plaintiffs burden to obtain the requested information or dismiss, not Mead Johnson's burden to chase them.

## II.    ARGUMENT

### A.    *CMO 12 Should be Amended to Shift the Burden and Cost of Product Identification Diligence from Mead Johnson to Plaintiffs.*

Mead Johnson asks the Court to amend CMO 12 to impose cost-shifting in circumstances where plaintiffs' non-compliance with their CMO 12 obligations is egregious. Specifically, Mead Johnson proposes that plaintiffs be required to pay as follows:

6

- $100 if a plaintiff forces Mead Johnson to file a Motion for an Order to Show Cause ("Motion") before dismissing voluntarily;

- $250 for a plaintiff who forces Mead Johnson to file a Motion before providing records establishing product identification; and

- $1,000 where a plaintiff's failure to comply with CMO 12 forces Mead Johnson to file a Motion, which the Court grants.

This Court has full discretion to impose such cost-shifting measures. Federal District Courts have power to shift costs under Rule 37 where parties fail to comply with court orders. Fed. R. Civ. P. 37(b)(2)(C). *See In Re: Nexium (Esomeprazole) Prod. Liab. Litig.* No. 12-ml-2404-DSF at 2, (C.D. Cal. Jan. 27, 2014) (attached as Exhibit D) (setting a payment of $1000 as an "intermediate sanction for failure to comply with this Court's Case Management Orders"). They also have implied, supervisory powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (stating that "[d]istrict courts have an inherent power to control their dockets" and that "[t]he goal is to get cases decided on the merits of issues that are truly meritorious and in dispute"). That is particularly true in the MDL context "[b]ecause multidistrict litigation is a 'special breed of complex litigation where the whole is bigger than the sum of its parts,' [and] the district court 'needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parties in line.'" *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. MDL 16-2740, 2018 WL 6697113, at *1 (E.D. La. Dec. 20, 2018).

Cost-shifting is warranted because many plaintiffs have not been following CMO 12 as this Court envisioned. Instead of diligently pursuing product identification, plaintiffs have shifted to Mead Johnson the burden of policing compliance. For example, in April 2026, Mead Johnson sent deficiency letters in 167 cases, informing plaintiffs that either Mead Johnson had not received any medical records, or that the records were insufficient and requesting that they dismiss Mead Johnson. Of those cases, only 29 plaintiffs immediately dismissed their cases. Another 17 plaintiffs waited to dismiss Mead Johnson until *after* it had moved for an Order to Show Cause. In all, 46 cases — more than a quarter of plaintiffs who received Mead Johnson's letter in the month of April alone — dismissed their claims, but only *after* Mead Johnson had to pursue them for dismissals.

There is simply no excuse for plaintiffs' ongoing disregard of this Court's Order. Federal Rule of Civil Procedure 11 mandates that plaintiffs have a factual basis for their claims *before* filing suit. Fed. R. Civ. P. 11(b). S*ee, e.g., Brunt v. Serv. Employees Int'l Union*, 284 F. 3d 715, 721 (7th Cir. 2002). Rule 11 also requires that the factual contentions in plaintiffs' pleadings have, or are likely to have, evidentiary support, to the best of counsel's "knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*." Fed. R. Civ. P. 11(b)(3) (emphasis added). This requirement was expressly clarified by the Advisory Committee to require plaintiffs to withdraw allegations that do not have evidentiary support after "a reasonable opportunity" for further investigation or discovery:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; ***it is not a license to join parties*** … ***without any factual basis or justification***. Moreover, ***if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention***.

Fed. R. Civ. P. 11 1993 Advisory Committee Notes (emphasis added).

In practice, CMO 12 gives plaintiffs <u>more</u> than a "reasonable opportunity," 120 days after filing, to determine whether there is a factual basis for their claims. ECF No. 507 at ¶¶ III.A.2, III.B.3, III.6.a. Accordingly, if plaintiffs' investigation fails to demonstrate that Mead Johnson is a proper defendant, plaintiffs are *required* to dismiss Mead Johnson. *Id.* at ¶ III.6.a (if the results of the investigation do not show use of a Mead Johnson product then plaintiff "has leave to *and shall* either (a) dismiss or (b) amend the operative Complaint to dismiss Mead Johnson") (emphasis added). Those plaintiffs who eschew their CMO 12 responsibilities should bear at least some of the costs.

Cost-shifting is needed to incentivize plaintiffs' counsel to diligently and proactively manage their cases. In mass tort litigation, identification of the alleged tortfeasor is the most basic requirement for filing a lawsuit. *See, e.g.*, *Lewis v. Lead Indus. Ass'n, Inc.,* 342 Ill. App. 3d 95, 102, 793 N.E.2d 869, 874 (2003) (holding that "plaintiffs' failure to identify which of the defendants manufactured or supplied the lead pigment... to which their children were exposed" meant that the complaint lacked allegations supporting causation and therefore failed to state a claim upon which relief could be granted); *Hamer v. LivaNova Deutschland GmbH,* 994 F.3d 173, 178 (3d Cir. 2021) (holding a court may "require plaintiffs to produce threshold *prima facie* support for their claims, such as . . . medical records" or risk dismissal); *Weddle v. Smith & Nephew, Inc.,* No. 14 C 09549, 2016 WL 1407634, at *2 (N.D. Ill Apr. 11, 2016) ("Weddle's allegation … means that Smith and/or Howmedica and/or DePuy manufactured a defective product is merely a statement of possible scenarios; it does not state a plausible claim against any of the three manufacturers."); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) ("Ordinarily a tort victim who does not know who the tortfeasor is cannot sue. To know that one

has been tortiously injured but not by whom is a ground for tolling the statute of limitations, but it is not a ground for filing suit before the plaintiff knows who injured him and who therefore should be named as the defendants."); *see also* Feb. 6, 2024 Hr'g Tr. at 50-51 ("[T]he Court assumes that plaintiffs in this MDL will conduct the requisite pre-suit diligence[.]").  And case management orders like CMO 12 are "the engine that drives disposition on the merits," and plaintiffs should not be permitted to sidestep its requirements.  *See  In re Phenylpropanolamine (PPA)*, 460 F.3d at 1232 (affirming dismissal for failure to comply with MDL case management order streamlining discovery).

Allowing plaintiffs to continue on the current course will only encourage further flouting of CMO 12 and the filing of more baseless complaints and unfairly—and contrary to the intent of CMO 12—places the onus on Mead Johnson to prove a lack of product identification, instead of requiring plaintiffs to produce it.  Cost-shifting will spur compliance and ensure that the burden of adhering to CMO 12 remains with plaintiffs.

B.      *It is Plaintiffs' Obligation to Demonstrate That Their Infants Received a Mead Johnson Product Before Developing NEC.*

Amendment is also necessary to clarify a point that some plaintiffs continuously fail to understand: product identification requires proof a Mead Johnson product was fed before a NEC diagnosis.

This MDL was established to centralize "cases in which plaintiffs contend that cow's milk-based preterm formula causes necrotizing enterocolitis (NEC) in babies born prematurely." *In Re: Abbott Laboratories Preterm Infant Nutrition Prods. Liab. Litig.*, No. 3026, (J.P.M.L 2022), ECF No. 119.  Plaintiffs' complaints allege that the infants developed NEC after being fed Defendants' cow's milk-based products, and yet many fail to identify (1) a NEC diagnosis, and (2) use of a Mead Johnson product before that diagnosis.  Product identification requires evidence of both

facts, and the burden of demonstrating those facts rests squarely with plaintiffs. Or put differently, merely identifying a product that could not have plausibly caused the plaintiff's injury cannot—as a matter of law, fact, and common sense—satisfy the plaintiff's Rule 8 obligations. *See* CMO 12 at ¶ III.A.1 (incorporating the Rule 8 pleading standard); *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (Rule 8 requires "facial plausibility …that allows the court to draw the reasonable inference that the defendant is liable").

For example, some plaintiffs have argued that they satisfy CMO 12 where the medical records show use of a Mead Johnson product only after a NEC diagnosis. *See*, *e.g.,* Pl.'s Resp. to Order to Show Cause at 2, *Zapata v. Abbott Laboratories, et al*, No. 1:23-cv-00992 (N.D. Ill. July 2, 2026), ECF No. 18. Plaintiffs fundamentally misapprehend their burden. To prevail on their claims, plaintiffs must prove that a Mead Johnson product caused the infant's illness. *See, e.g., In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 752 (3d Cir. 1994) (stating that in order to prove specific causation, a plaintiff must show that the product "in fact did cause the harm."); *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 744 (E.D. La. 2008), aff'd, 388 F. App'x 391 (5th Cir. 2010) ("[I]t is not too much to ask a Plaintiff to provide some kind of evidence to support their claim" that the defendant "caused them personal injury."). In other words, a Mead Johnson product administered only *after* a NEC diagnosis cannot possibly have caused an infant's NEC and therefore cannot suffice for product identification under CMO 12. *See* ECF No. 507 at ¶¶ III.B.1 (allowing post-filing limited discovery "in cases where the medical records do not identify the specific pre-term infant product that allegedly caused the injury at issue.").

Plaintiffs have also made a corollary argument: CMO 12 does not require them to demonstrate a NEC diagnosis *at all*. See Ex. E. Yet, without showing the infant was diagnosed with NEC, they cannot demonstrate that their case belongs in this MDL in the first place. *In Re:*

11

*Abbott Laboratories Preterm Infant Nutrition Prod. Liab. Litigation*, MDL No. 3026, ECF No. 119 at 1.

Amending CMO 12 to state that plaintiffs must establish the use of a Mead Johnson product before a NEC diagnosis simply makes express an obligation that already exists in CMO 12. ECF No. 507 at ¶ III.B.1 ("In cases where medical records collected do not identify the specific pre-term product ***that allegedly caused the injury*** at issue, and pre-filing diligence efforts were unsuccessful," plaintiff may serve targeted subpoenas seeking product identification) (emphasis added). Indeed, CMO 12 repeatedly requires plaintiffs to produce a complete set of "hospital medical and feeding records." *See, e.g.,* CMO 12 at ¶ III.A.2. If ingestion of a Mead Johnson product alone without a subsequent injury was sufficient, then CMO 12 would only require the production of feeding records, not also medical records. The protocol set forth in CMO 12 was established to resolve disputes over product identification and assist this Court in "weed[ing] out non-meritorious cases early, efficiently, and justly." *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 2016 WL 4705827, at *2 (M.D. Ga. Sept. 7, 2016); *see also* ECF No. 496 (ordering "the parties [to] submit a proposed Case Management Order establishing a further protocol for resolving this dispute."). Such an amendment will eliminate cases devoid of proof and ensure that meritless claims do not clog this Court's docket or saddle Mead Johnson with needless expense. *See id.* ("MDL consolidation for products liability actions does have the unintended consequence of producing more new case filings of marginal merit in federal court, many of which would not have been filed otherwise.").

Plaintiffs' product identification obligations under the Federal Rules, the caselaw and CMO 12 are readily apparent. To put an end to plaintiffs' tactics and for the avoidance of any doubt, this Court should amend CMO 12 to state the obvious: that plaintiffs must show evidence

that a Mead Johnson product allegedly caused the injury at issue by showing use prior to the infant's NEC diagnosis.

## III.    CONCLUSION

For the foregoing reasons, Mead Johnson respectfully requests that the Court enter Exhibit A as Amended Case Management Order No. 12.

Dated: July 13, 2026                    By: */s/ Rachel M. Cannon*

Paul W. Schmidt                     Anthony J. Anscombe
Phyllis A. Jones                    Rachel M. Cannon
Emily Ullman                        Michael O'Rourke
COVINGTON & BURLING LLP             STEPTOE LLP
One CityCenter                      227 West Monroe, Suite 4700
850 Tenth Street NW                 Chicago, IL 60606
Washington, DC 20001                312.577.1270
202-662-6000                        aanscombe@steptoe.com
pajones@cov.com                     rcannon@steptoe.com
pschmidt@cov.com                    morourke@steptoe.com
eullman@cov.com

*Attorneys for Defendants Mead Johnson & Co., LLC and Mead Johnson Nutrition Company*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 13th day of July 2026, a true and correct copy of the foregoing Motion for the Entry of an Order to Show Cause was served on all counsel of record via e-mail.

*/s/ Rachel M. Cannon*
Rachel M. Cannon