# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL 3026** |
| | **Hon. Rebecca R. Pallmeyer** |
| **This Document Relates to:** | |
| **ALL ACTIONS** | |

JOINT **[PROPOSED]** AMENDED **CASE MANAGEMENT ORDER NO. 12:**
**PRODUCT IDENTIFICATION INVESTIGATION REQUIREMENTS**

**I.      Purpose of the Order**

All parties agree that Defendants Mead Johnson & Company, LLC and/or Mead Johnson Nutrition Company ("Mead Johnson") should only be named in cases in which the subject Infant ingested products, before the Infant's diagnosis of necrotizing enterocolitis ("NEC"), that Mead Johnson itself manufactured and/or distributed.  ECF No. 461 at 1.  This Order sets forth a protocol for targeted product identification discovery to third parties and, in limited circumstances, to Mead Johnson, that may be conducted in non-bellwether cases, and allows Mead Johnson to move by Order to Show Cause pursuant to this Order to dismiss cases where there is no evidence that an infant received Mead Johnson product before the infant's NEC diagnosis.

**II.     Scope of the Order**

This Order shall govern all actions that are properly filed in, removed to, or transferred to this MDL and that name Mead Johnson as a defendant.

**III.    Product Identification**

      **A.      Product Identification Requirement.**

1.      All Complaints filed in this MDL must contain allegations sufficient to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), including allegations sufficient to claim that that a Mead Johnson product was ingested before the infant was diagnosed with NEC.

2.      Before commencing an action, Plaintiffs' counsel are required to conduct pre-suit due diligence, including by requesting all of the infant's hospital medical and feeding records from birth through discharge and examining those records.  ECF No. 461 at 1.  To the extent those hospital medical and feeding records are incomplete, and/or fail to show the specific product(s) administered to the infant before the infant's NEC diagnosis, which also must be confirmed in the hospital records, Plaintiffs' counsel are expected to conduct further diligence to obtain that information before commencing an action.  *Id.*  Cases in which the Plaintiff retained the counsel of record that filed their lawsuit within 45 days of what said counsel believes in good faith could be the expiration of the statute of limitations are exempted from this requirement, provided counsel discloses this fact when they serve or request waiver of service of their Complaint.  *Id*.

3.      Under CMO 7 Section II.3, "Plaintiffs who file a case in this MDL after September 16, 2022, shall provide their PPF, medical record authorizations, and the medical records in Plaintiff's or counsel's possession, within 30 days of filing."  Any Plaintiff who is unable to produce medical records that identify a Mead Johnson product being fed to the Infant before a documented NEC diagnosis along with Plaintiff's PPF must produce documentation of what requests were sent and what pre-suit diligence was conducted.  Plaintiffs who fail to produce documentation of and the results of their pre-suit investigation are subject to dismissal by Order to Show Cause pursuant to Section D of this Order.

**B.** **Partial Lift of Discovery Stay.**

1.  In cases where the medical records collected do not identify the specific pre-term infant product that allegedly caused NEC, the injury at issue, and pre-filing diligence efforts were unsuccessful, upon filing suit Plaintiffs' attorneys have leave to serve a targeted subpoena on medical providers seeking only identification of the preterm nutrition product(s) administered to the infant, as set forth in Paragraph 4 below. ECF No. 461 at 1. Such subpoenas must be served within twenty-one days after service of the Plaintiff's PPF. The MDL 3026 Court shall retain jurisdiction over said subpoenas regardless of the states in which the medical providers are located.

2.  In cases where the Plaintiff first retained the counsel of record that filed their lawsuit within 45 days of what said counsel believed could be the expiration of the statute of limitations, upon filing suit those Plaintiffs also have leave to serve a targeted subpoena on medical providers seeking only identification of the preterm nutrition product(s) administered to the infant, as set forth in Paragraph 4 below. ECF No. 461 at 1. Such subpoenas must be served within thirty days after commencing an action in this MDL or within thirty days of the action being transferred or removed to this MDL.

3.  For cases currently pending in this MDL where Plaintiffs lack definitive product identification before a NEC diagnosis, Plaintiffs have leave to and shall serve a targeted subpoena on medical providers seeking identification of the preterm nutrition product(s) administered to the infant, as set forth in Paragraph 4 below, within thirty days following entry of this Order or within thirty days of service of Plaintiff's PPF, whichever is later.

4.  The targeted subpoenas shall seek: "All documents identifying all forms of nutrition administered to [the infant] during [the infant's] hospital stay, including human milk fortifier and/or premature infant formula products. These documents shall include but not be

limited to any documents that reference the manufacturer, brand, type, item #, lot #, NDC Format Code and/or any other identifying information. These documents shall include but are not limited to feeding orders, feeding nurses notes, and records from feeding tracking programs or applications such as Timeless." Counsel may, but is not required to, include citations to the infant's feeding records in the subpoena and may attach the infant's feeding records from the medical providers if counsel believes doing so will help the facility better understand what information is being requested.

5. The targeted subpoenas are governed by Rule 45. ECF No. 461 at 1. Plaintiffs shall serve Mead Johnson with notice and a copy of the subpoenas prior to service on the medical provider(s). Plaintiffs shall produce to Mead Johnson any and all documents and information produced in response to the subpoenas within thirty days of receipt.

6. If a subpoena is served pursuant to this section, and the recipient medical provider objects to, or fails to comply with the subpoena, it is the obligation of the Plaintiff who served the subpoena to take appropriate steps to enforce it in order to meet the deadlines set forth in this Order.

7. The deadlines above may only be extended by agreement of the parties or by Order of the Court.

**C.** **Limited Discovery of Mead Johnson Sales and Contract Information.**

1. In the event that an infant's medical and/or feeding records show that the infant received a human milk fortifier and/or preterm infant formula product before a documented NEC diagnosis, but the specific fortifier or formula product or manufacturer cannot be identified, and Plaintiff has complied with the preceding portions of this CMO, then no earlier than sixty days after service of the targeted subpoena, Plaintiffs have leave to serve Mead Johnson with a written

request for the sales and/or contract information specified in subsections (i) and (ii) below. Upon receipt of a written request with supporting documentation of compliance with the preceding portions of this CMO, including the specific records that show the infant received a human milk fortifier and/or preterm infant formula before a NEC diagnosis, Mead Johnson will conduct a reasonable and diligent search for responsive information, and will provide the following within thirty days, to the extent the information exists and can reasonably be located in searchable databases, and if not in a searchable database, Mead Johnson will in writing explain where the documents exist and the burden and cost associated with gathering those records:

      i.      Whether Mead Johnson has records of sales or supply to the relevant healthcare facility of the specific type of premature infant nutrition product administered to the infant prior to being diagnosed with NEC at any point in the 12 months preceding the infant's date of birth; and,

      ii.      Whether Mead Johnson had a contract with the relevant healthcare facility for the provision of infant nutrition products that was in effect during the 12-month period leading up to and including the infant's date of birth and whether the contract required purchase or delivery of a specific percentage of infant formula or fortifier product(s) from Mead Johnson.

5.      The deadlines above may only be extended by agreement of the parties or by Order of the Court.

**6.      Order to Show Cause.**

a.      In the event that (1) the results of the investigation of product identification outlined above in Sections III.A and III.B show only the use of non-Mead Johnson products (i.e., only identify other manufacturers' products, exclusively human milk, or no enteral nutrition at all) before the infant's NEC diagnosis or, (2) the results of the investigation of product identification

outlined above in Sections III.A and III.B do *not* identify the brand or manufacturer of the preterm nutrition products the infant received before the infant's NEC diagnosis *and* the results of investigation under Section III.C fail to show that Mead Johnson supplied the healthcare facility with the type of preterm infant nutrition product administered to the infant before the infant's NEC diagnosis, then that Plaintiff has leave to and shall either (a) dismiss or (b) amend the operative Complaint to dismiss Mead Johnson within 30 days of the completion of the procedures outlined in Section III.B, or, where applicable, III.C., above, and in no event longer than 120 days after filing of the operative Complaint or the entry of this Order, whichever is later. Each party shall bear all of its own costs and fees incurred relating to Plaintiff's lawsuit.

b. In the event that a Plaintiff fails to comply with the preceding paragraph and either dismiss or amend the operative Complaint within the timeframe laid out in that paragraph, all claims in the Complaint against Mead Johnson shall be subject to dismissal upon Mead Johnson moving for an Order to Show Cause.

c. In the event that Mead Johnson moves for an Order to Show Cause in a case where a Plaintiff fails to complete their investigation or dismiss Mead Johnson in compliance with Paragraph III.6.a, Plaintiff shall be required to pay as follows:

i. $100 if Plaintiff voluntarily dismisses their claims against Mead Johnson after the filing of the Motion for an Order to Show Cause;

ii. $250 if Plaintiff provides records establishing product identification only after the filing of the Motion for an Order to Show Cause; or

iii. $1000 if Plaintiff's failure to comply with this CMO causes the

Court to dismiss Plaintiff's claims against Mead Johnson.

c.d.     The deadlines above may only be extended by agreement of the parties or by Order of the Court.

**IT IS SO ORDERED.**

Dated: May July____, 20264

_____
HON. REBECCA R. PALLMEYER
UNITED STATES DISTRICT JUDGE