**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL No. 3026** |
| | **Master Docket No. 1:22-cv-00071** |
| **This Document Relates to:** | **Hon. Rebecca R. Pallmeyer** |
| **ALL CASES** | |

**ABBOTT'S REPLY IN SUPPORT OF ITS MOTION TO SELECT BELLWETHER REPLACEMENTS IN LIGHT OF PLAINTIFFS' UNILATERAL DISMISSAL OF TWO BELLWETHERS**

Plaintiffs unilaterally dismissed two of the three second-wave bellwethers—specifically, the cases ***not*** selected by Plaintiffs—and Abbott filed a straightforward request to pick their replacements. Plaintiffs missed the Court-ordered August 17 response deadline by eight days. Their belated filing does not dispute that their dismissals distorted the bellwether process; instead, it tries to sidestep the issue altogether by conflating it with the broader questions of the timing and process for the MDL's eventual conclusion. Allowing Plaintiffs to forsake the current bellwether wave entirely would effectively reward their attempts to manipulate the process. The narrow question before the Court is simple: after Plaintiffs strategically dismissed two bellwethers (including Abbott's selection), can Abbott pick their replacements? The answer should be yes. With this narrow question answered, the parties will be able to move forward with preparation for the next two trials—while they simultaneously work together and with the Court on what the next stage of this litigation should look like and how best to advance the MDL.

**ARGUMENT**

While Abbott fully appreciates both parties' busy workloads, Plaintiffs have no justification for failing to file any response until after Abbott noted its motion was unopposed. Plaintiffs argue

the response was due "literally" the Monday after Rule 56 and 702 replies were due in *Kelton*, but they still did not file for another eight days after that deadline. *Hall*, Dkt. 832 (Resp.) at 1. Plaintiffs mainly argue their untimeliness "was excusable" "given the massive amount of work the entire Plaintiffs' team was engaged in." *Id.* at 2. But "[a]n attorney's busy schedule … does not rise to the level of excusable neglect" under Rule 6(b)(2). *Dean v. Chicago Transit Auth.*, 118 F. App'x 993, 996 (7th Cir. 2005). Nor are Plaintiffs justified in claiming that they had an "understanding" that they did not need to "press Abbott's motion" based on the August 3 status conference (Resp. 3), given that the Court's Order directing Plaintiffs to file objections "within 14 days" came ***after*** that conference (*Hall*, Dkt. 825). The parties' broader conversation on when and how to conclude this MDL is distinct from what should happen after Plaintiffs' dismissals disrupted the existing selection process and trial schedule.

But even if the Court considers Plaintiffs' Response, it does not dispute that courts routinely permit MDL defendants to "select … replacement[s] for any case voluntarily dismissed" by plaintiffs. *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2018 WL 2761849, at *2 (D. Mass. May 17, 2018); *In re Norplant Contraceptive Prods. Liab. Litig.*, 1996 WL 571536, at *1 (E.D. Tex. Aug. 13, 1996). Plaintiffs dismissed one of ***Abbott's*** bellwether picks; there is no "unfairness" in letting Abbott pick the replacement cases after having done so. Plaintiffs' assertion that "no jury has deliberated over an actual Plaintiff's trial pick" is a red herring and is certainly not some function of unfairness in the bellwether process. Resp. 3–4. It is because Plaintiffs' selections have either not survived summary judgment or Plaintiffs have made the strategic choice to dismiss them to avoid that same fate. The bellwether process exists to "garner information useful for the parties to evaluate the strengths and weaknesses of their arguments and evidence as well as to assess the risks and costs of litigation." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab.*

*Litig.*, 2025 WL 354410, at *1 (N.D. Ill. Jan. 31, 2025). Permitting Abbott to pick replacements for Plaintiffs' strategic dismissals does not eliminate representativeness in the bellwether process; it restores it by preventing Plaintiffs from "distort[ing] the results of the [bellwether] process" through strategic maneuvers to avoid adverse judgments in weaker cases. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2021 WL 3883265, at *3 (D. Md. Aug. 31, 2021).

Nor is there any merit to the argument that the two dismissed bellwethers (*Cresap* and *McCarthy*) were unrepresentative. Both cases presented important variations on the threshold causation deficiencies that produced summary judgment for Abbott in *Mar*, *Diggs*, and *Brown*—deficiencies this Court has recognized "may continue to recur in the future." *Diggs*, Dkt. 114 at 14. Strikingly, Plaintiffs fault ***Abbott*** for selecting a case where the infant purportedly "did not have NEC of prematurity." Resp. 4. Plaintiffs do not explain why the members of the PLC filed a complaint, engaged in discovery, and litigated a motion to dismiss representing that the infant had NEC if they, in fact, did not believe the infant had NEC (especially when the infant's death certificate identified "necrotizing enterocolitis" "due to extreme prematurity" as the "immediate cause" of death). *Hall*, Dkt. 823 (Mot.) at 3. Regardless, the difficulty of diagnosing NEC is an issue that pervades this MDL, and in no way would render a dispute about an infant's NEC unrepresentative as a bellwether.

Finally, Plaintiffs' alternative suggestion of a "mini-remand" involving more than a dozen cases is not appropriate. The parties and Court contemplated at least two rounds of bellwethers, the second of which now involves only the one Plaintiff-selected case. Permitting Abbott to select replacements for the cases Plaintiffs dismissed is the only remedy that cures the bias to the process caused by Plaintiffs' dismissals. Plaintiffs' alternative—abandoning the current bellwether wave entirely—would reward their effort to tilt the playing field with the hope of distorting future results

to be in their favor.

The bellwether process requires adjudications on the merits—not strategic dismissals followed by proposals to abandon the process altogether. This is critical to the advancement of this MDL and the litigation more broadly. Accordingly, Abbott respectfully requests that the Court grant Abbott's motion to select replacement bellwether cases for *Cresap* and *McCarthy* and set those cases for trial in August and November 2027.

Dated: September 2, 2026

Respectfully submitted,

*/s/ James F. Hurst*

James F. Hurst, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-5230
james.hurst@kirkland.com
LEAD COUNSEL

Rebecca Fitzpatrick, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
rebecca.fitzpatrick@kirkland.com

Stephen V. D'Amore
Linda T. Coberly
WINSTON TAYLOR LLP
300 North La Salle
Chicago, IL 60654
(312) 558-5600
steve.damore@winstontaylor.com
linda.coberly@winstontaylor.com

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Abbott's Reply in Support of Its Motion to Select Bellwether Replacements in Light of Plaintiffs' Unilateral Dismissal of Two Bellwethers was served upon counsel of record on September 2, 2026 via the Court's electronic filing system and via email for any materials provisionally filed under seal.

*/s/ James F. Hurst*
*Counsel for Defendant Abbott Laboratories, Inc.*